IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 BMK <br><br> WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S MEMORANDUM IN SUPPORT OF WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S CROSS MOTION FOR CLAIM CONSTRUCTION |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND RELIEF SOUGHT ................................................. 1

II.     FACTUAL BACKGROUND/CONTEXT ..................................................... 1

III.    CLAIM CONSTRUCTION LAW ............................................................... 1

IV.     CLAIM CONSTRUCTION ......................................................................... 7

    A.   Claim 67 of the Kowalski Patent ........................................................ 7

        1.   Preamble and Transition ........................................................ 7

        2.   Heating Organic Material To Generate Smoke ........................ 9

        3.   Filtering ............................................................................... 10

        4.   Filtering Components That Impart Smoke Flavor From Said Smoke To Below Limits For Imparting Smoke Flavoring To Food ................................................................. 13

        5.   Exposing Said Filtered Smoke To Food Without Imparting A Smoke Flavor To Said Food .............................. 14

    B.   Claim 1 of the Kowalski Patent ......................................................... 14

        1.   Preamble and Transition ....................................................... 15

        2.   Heating Organic Material To Generate Smoke Having A Gaseous Vapor Phase ............................................................ 16

        3.   Super-Purifying Said Smoke To Reduce Taste Imparting Components Below Thresholds For Imparting Smoke Odor And Taste, Whereby A Substantially Tasteless Super-Purified Smoke Is Created ........................................... 17

        4.   Treating Meat Having A Freezing Point With Said Tasteless Super-Purified Smoke ............................................ 19

    C.   Claim 68 of the Kowalski Patent ....................................................... 19

        1.   Preamble and Transition ....................................................... 20

        2.   Heating Organic Material To Generate Smoke ...................... 20

        3.   Removing Components That Impart Smoke Odor From Said Smoke .......................................................................... 20

# TABLE OF CONTENTS
(continued)

Page

4.  Exposing Food To Said Smoke, Whereby The Quantity Of Smoke Odor Imparting Components Removed From Said Smoke Is Adequate To Prevent Imparting A Smoke Odor To Said Food ...................................................... 20

D.  Claim 69 of the Kowalski Patent ....................................................... 20

1.  Preamble and Transition ......................................................... 21

2.  Heating Organic Material To Generate Smoke That Contains A Vapor Phase Having Smoke Odor And Flavor Imparting Components ................................................. 21

3.  Filtering Said Smoke To Remove Smoke Odor And Flavor Imparting Components ................................................. 21

4.  Exposing Food To Said Filtered Smoke So As To Prevent Smoke Flavoring Of Said Food By Reducing The Quantity Of Said Filtered Smoke Exposed To Said Food ........................................................................................ 22

V.  CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

## CASES

Anderson Corp. v. Fiber Composites, LLC, 474 F.3d 1361
    (Fed. Cir. 2007) ...................................................................... 6, 13

Applera Corp. v. MJ Research Inc., 292 F.Supp.2d 348
    (D.Conn. 2003) ............................................................................ 6

Conoco, Inc. v. Energy & Environmental Int'l, 460 F.3d 1349
    (Fed. Cir. 2006) ........................................................................... 4

D.M.I., Inc. v. Deere & Co., 755 F.2d 1570 (Fed. Cir. 1985) .................................. 4

Freedman Seating Co. v. American Seating Co., 420 F.3d 1350
    (Fed. Cir. 2005) ........................................................................... 1

Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361
    (Fed. Cir. 2004) ........................................................................... 9

Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 228 USPQ 90
    (Fed. Cir. 1985) ........................................................................... 8

Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) ......................... 3, 12

Minton v. National Association of Securities Dealers, 336 F.3d 1373
    (Fed. Cir. 2003) .......................................................................... 18

NTP, Inc., 418 F.3d at 1293 .................................................................. 3

Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329 (Fed. Cir. 1987) ..................... 2

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) ............................ 1, 4, 5, 9

Playtex Products, Inc. v. Proctor & Gamble Co., 400 F.3d 901
    (Fed.Cir. 2005) .......................................................................... 19

# TABLE OF AUTHORITIES
(continued)

**Page**

Riverwood Int'l Corp. v. RA. Jones & Co., Inc., 324 F.3d 1346
(Fed. Cir. 2003) ............................................................... 3

Specialty Composites v. Cabot Corp., 845 F.2d 981 (Fed. Cir. 1988) .................... 5

Superguide Corp. v. DirecTV, 358 F.3d 870 (Fed. Cir. 2004) ........................ 3, 5, 7

Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165
(Fed. Cir. 1993) ............................................................ 18

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996) .................. 11

Wolens v. F.W. Woolworth Co., 703 F.2d 983 (7th Cir. 1983) .......................... 2, 5

**WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S MEMORANDUM IN SUPPORT OF WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S CROSS MOTION FOR CLAIM CONSTRUCTION**

## I.    INTRODUCTION AND RELIEF SOUGHT

WILLIAM R. KOWALSKI (Kowalski) and HAWAII INTERNATIONAL SEAFOOD, INC. (HISI) (jointly, "Plaintiffs") move for judicial claim construction of claims 67, 1, 68, and 69 of United States Patent No. 5,972,401 ("Kowalski Patent", copy attached as Exhibit 1). This is a proper cross motion to Ocean Duke's motion for partial summary judgment because Defendant's pending motion for partial summary judgment of non-infringement means Defendant already had to have analyzed claim construction, and the filing of Defendant's motion for summary judgment itself actually triggered the claim construction process because it is basic patent law that, to determine summary judgment in a patent case, the asserted claims of the patent must first be construed. Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1356-57 (Fed. Cir. 2005).

## II.    FACTUAL BACKGROUND/CONTEXT

See Plaintiffs' memorandum in opposition to Defendant's motion for partial summary judgment.

## III.    CLAIM CONSTRUCTION LAW

Patents have different sections, but it is the claims of a patent that define the scope of protection granted to the patent holder. Phillips v. AWH Corp., 415 F.3d

1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the

claims of a patent define the invention to which the patentee is entitled the right to

exclude.'").  The claims are the numbered paragraphs located at the end of the

patent.  As can be seen by looking at the claims section of the Kowalski Patent

(Ex. 1, from Col. 22, Ln. 64 which begins "What is claimed is 1. …" to Col. 28,

Ln. 47), the Kowalski patent has 73 claims – in other words, 73 separate

inventions.  Litigation of Patent Rights §20:48 (Ex. 4), citing Wolens v. F.W.

Woolworth Co., 703 F.2d 983, 988 (7th Cir. 1983) ("Each patent claim is a separate

and distinct invention.  Accordingly, it is possible to deal with one claim or more

independently and distinctly from the other claims.  **The additional limitation(s)**

**of a dependent claim will not be read into the broader claim(s) on which such**

**depends."** [A dependent claim is one that incorporates another claim and that

claim's limitations, but then adds additional limitations.]).  Thus, to fall within the

reach of a patent or to infringe it, one only needs to fall within one claim – if the

patent has multiple claims, there is no need to fall within every claim of the patent.

E.g., Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329, 1330 at fn. 1 (Fed. Cir.

1987)("One is liable for patent infringement if one claim be infringed.").  Although

some of the Kowalski Patent's 73 claims are more narrow and specific and cover

certain specific examples for practicing within the Kowalski Patent or were created

as "fallback" narrower alternatives in case the PTO had not approved the broader

claims, many of the claims are broad and require no particular temperatures or numbers or equipment or species (e.g., claims 67, 1, 68, and 69 of Ex. 1 at Col. 28 and 22).

Claim construction is strictly a question of law, and thus is "an issue for the judge, not the jury." Markman v. Westview Instruments, Inc., 517 U.S. 370, 391 (1996). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention." Riverwood Int'l Corp. v. RA. Jones & Co., Inc., 324 F.3d 1346, 1357 (Fed. Cir. 2003). The non-claims portions of a patent serve other functions, such as to give background, describe the need for the new invention(s) or to show **some** examples (also called "embodiments") for practicing the invention, but "**a particular embodiment may not be read into a claim when the claim language is broader than the embodiment**" – thus, the patent covers all that is covered by the broadest claims, and is not limited just to the particular examples shown in other parts of the patent. Superguide Corp. v. DirecTV, 358 F.3d 870, 875 (Fed. Cir. 2004). Courts may also look to, among other things, the specification and patent prosecution history to help ascertain the meaning of a claim term. NTP, Inc., 418 F.3d at 1293. However, there are situations where claims do "not require elaborate interpretation" and, further, the **specifications and**

other "sources are not [to be] used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1314, 1324.

A court normally need not construe a claim that is not in dispute. Thus, where a patent has multiple claims, a court need not construe the claims which are not asserted by the patent holder or the parts of claims that the defendant does not dispute falling under. Because infringement exists if even a single claim is infringed, patent holders often do not need to assert more than one or a few of the broadest claims, and that is the case here. Absent Ocean Duke proposing an unexpected claim construction and the Court accepting it, Kowalski presently intends to rely upon claims 67, 1, 68, and 69 of the Kowalski Patent to prove infringement, so construction of other claims at this time is not necessary.

Courts also normally do not need to construe parts of asserted claims as to which there is no dispute between the parties.

Also, as held by the Federal Circuit in Conoco, Inc. v. Energy & Environmental Int'l, 460 F.3d 1349, 1358 (Fed. Cir. 2006):

"[W]hen a claim term is expressed in general descriptive words, we will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims."

Moreover, as held in D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1574 (Fed. Cir. 1985):

The district court said "as a general rule a limitation cannot be read into a claim to avoid infringement," [citation omitted]. **Where, as here, the limitation sought to be "read into" a claim already appears in another claim, the rule is far more than "general." It is fixed.** It is long and well established. **It enjoys an immutable and universally applicable status comparatively rare among rules of law.** Without it, the entire statutory and regulatory structure governing the drafting , submission, examination, allowance, and enforceability of claims would crumble. [citations omitted.] Indeed, .. this court quoted with approval this clear statement of the rule … :

> **Where some claims are broad and others are narrow, the narrow claim limitations cannot be read into the broad**, whether to avoid invalidity or to escape infringement.

See also, Wolens v. F.W. Woolworth Co., 703 F.2d 983, 988 (7th Cir. 1983) ("**The additional limitation(s) of a dependent claim will not be read into the broader claim(s).**"; Specialty Composites v. Cabot Corp., 845 F.2d 981, 988 (Fed. Cir. 1988) ("An accepted rule of claim construction suggests that, since the dependent claims 8 and 16 add an external plasticizer as a limitation, the broader independent claims 1 and 11 do not have this limitation."); Phillips, 415 F.3d at 1315 (Because of the principle of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Fifth, "**a particular embodiment may not be read into a claim when the claim language is broader than the embodiment.**" Superguide Corp. v. DirecTV, 358 F.3d 870, 875 (Fed. Cir. 2004). Also, Phillips, 415 F.3d at 1323. As

held in <u>Applera Corp. v. MJ Research Inc.</u>, 292 F.Supp.2d 348, 369 (D.Conn. 2003):

> Defendants' proposal to import precise numerical limitations from the preferred embodiments of the claimed invention is inappropriate. Reading numerical precision into imprecise claims is usually incorrect.

**Two claims using different words may cover the same thing. E.g., <u>Anderson Corp. v. Fiber Composites, LLC</u>, 474 F.3d 1361, 1370 (Fed. Cir. 2007) ("[C]laims that are written in different words may ultimately cover substantially the same subject matter." and also "Overlapping patent claims are not unusual, and the overlap does not require us to construe the 'composite composition' claims to cover subject matter that differs from the subject matter covered by the other two sets of claims."). Thus, although Plaintiffs ask for construction of four claims, that does not mean the Court should stretch to construe each one differently – it is perfectly fine that they ultimately be construed substantially as covering the same subject matter, despite having some different words (e.g., the Court need not and – as explained below – should not feel it must construe "filtering" more narrowly than "removing"). After all, the United State Patent Office's Examiners, despite having approved 73 claims, declared in their Interview Summary that they had come to agreement with Kowalski that he deserved a patent because they found that "[A]pplicant [i.e., Kowalski] defines over prior art of record**

by not imparting smoke taste & flavor & odor" – thus, the key, and novel, thing was using smoke to treat food without the food ending up with a smoke flavor or odor.

## IV.  CLAIM CONSTRUCTION

### A.  Claim 67 of the Kowalski Patent

The Kowalski Patent's claim 67 (last page of Ex. 1) states:

**67. A process for treating food comprising:**

**heating organic material to generate smoke;**

**filtering components that impart smoke flavor from said smoke to below limits for imparting smoke flavoring to food; and**

**exposing said filtered smoke to food without imparting a smoke flavor to said food.**

The broadness of claims such as 67 means that the Kowalski Patent is not limited to the narrower examples mentioned elsewhere in the patent, including what was thought to be the "best mode" at the time the patent was applied for back in 1997 or particular variations or numbers mentioned in the narrower, dependant claims (See, Superguide Corp. v. DirecTV, 358 F.3d 870, 875 (Fed. Cir. 2004) ("**a particular embodiment may not be read into a claim when the claim language is broader than the embodiment**").

### 1.  **Preamble and Transition**

The preamble of Claim 67 of the Kowalski Patent – i.e., **_"A process for treating food"_** -- is broad and clear, and there is no need for construction because it

merely indicates in broad and easily understood words that the invention in Claim 67 is a process for treating food.[1]  Claim 67's preamble – like many (but not all) preambles -- merely names the thing claimed, and thus does not itself impose or constitute any limitation.  Robert C. Farber, <u>Landis on Mechanics of Patent Claim Drafting</u> (3rd Ed. 1990) § 6.  "Food" is broad – Claim 67 thus is not limited to any particular specie of fish or any particular type of meat or food.

The last word of the first line of Claim 67 – **<u>"comprising" – is a term of art that means "including" the following limitations set forth in the claim, so that a process infringes if it includes the limitations in the claim, regardless of whether it also includes other steps or features</u>**.[2]  "Comprising" is the

---

[1]  "Process" is clear and does not require any construction, but other terms for "process" are (1) "method" (Webster's Dictionary – e.g., New Collegiate Edition – definition of "method") or (2) action or actions which lead to a result or different state (Webster's Dictionary and Robert C. Farber, <u>Landis on Mechanics of Patent Claim Drafting</u> (3rd Ed. 1990) § 36).  Thus, "process" can be contrasted with "device" – the Kowalski Patent is a patent for a process rather than for a device.

[2]  I. Kayton, <u>Patent Practice</u> (4th Ed. 1989) at 2-15 ("'comprising' (a synonym for which is 'including')….  The 'comprising' or open-ended claim format is desirable because it results in infringement by devices [or processes] even though they have elements beyond those specified in the claim.  <u>Loctite Corp. v. Ultraseal Ltd.</u>, 781 F.2d 861, 865, 228 USPQ 90, 92 (Fed. Cir. 1985).") and 3-3 ("It has the open-ended phrase 'comprising,' which means that as long as the limitations that follow that phrase are found in the infringing device [or process] then that claim is infringed by that device [or process].  This is so irrespective of anything else that the device [or process] may include ….");  <u>Landis on Mechanics of Patent Claim Drafting</u> § 7 ("The word 'comprises' has been construed to mean, in patent law, 'including the following elements but not excluding others.'").

transitional word between the preamble and the body of the claim.  Landis on

Mechanics of Patent Claim Drafting § 7.

2.    **Heating Organic Material To Generate Smoke**

The body of Claim 67 (that is, the part that follows the preamble and the

transitional phrase) begins with "heating organic material to generate smoke",

which is clear and plain.  It is clear that wood, and the sawdust and charcoal that

can be made from wood, are among the organic (that is, carbon containing)

materials that can be used to make smoke.  E.g., Kowalski Patent (Ex. 1) at Col.

15, Ln. 65-66 ("wood and hardwood charcoal smoke emissions").  The word

"heating" is also clear – it is broader than "burning," "combusting," "pyrolizing,"

etc.[3]  Thus, **"heating organic materials to generate smoke" means "heating**

**carbon containing materials (including wood, and the sawdust and charcoal**

**that can be made from wood) to make smoke."**

There should be no need to construe the word "smoke" because Ocean Duke

and its supplier have admitted repeatedly that their fish is treated with smoke.  For

---

[3] The word "heat" is plain and clear, so there should be no need to resort to the specifications or anything else to ascertain its meaning.  E.g., Phillips v. AWH Corp., 415 F.3d 1303, 1314, 1324 (Fed. Cir. 2005) (Recognizing such situations where claims do "not require elaborate interpretation" and holding that **specifications and other "sources are not [to be] used to contradict claim meaning."**); Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1368 (Fed. Cir. 2004) (reversing district court "[b]ecause the plain language of the claim was clear and uncontradicted by anything in the written description or the figures, [and thus] the district court should not have relied upon the written description, the figures, or the prosecution history to add limitations to the claim.").

example, Ocean Duke's Response to Interrogatory No. 1 in its Supplemental

Responses to Interrogatories (Ex. 3) states, "Ocean Duke purchases fish treated for

color retention from PT Inti Samudera Citra Perkasa [which produces its own

filtered smoke." And in Response to Interrogatory No. 3 states that it has used the

terms "processed smoke" and "filtered smoke" in the ingredient section [of the

labels] for its treated fish. Thus, "smoke" need not be construed because there is

no dispute that Ocean Duke's fish is made with a process involving smoke, but if a

**construction** must be given **for "smoke"**, an appropriate one in the circumstances

**would be "gas (and sometimes other matter)[4] created from heating organic**

**material"**.

     3.    **Filtering**

The next portion of the body of Claim 67 is the word **"filtering"**, which

**means**, for the purposes of this patent, **"separating out or reducing, including by**

**cooling, condensing, settling out, and/or aging."** The Kowalski Patent's

specifications expressly and implicitly define "filtering" as including, not just

filtering in the narrow sense or the use of ice, cloth, water, molecular sieve, vapor,

washing, baffle, carbon and other filters, but also settling of taste causing

components by cooling and/or storage over time, or aging of the smoke so as to

---

[4] For example, although most smoke contains particulates, under certain
circumstances it may not – that is why, e.g., Claim 1 of the patent does not mention
a particulate phase.

allow time for the taste causing components to settle or weaken in strength AND

other means – **INCLUDING CONDENSATION** -- for separating out or reducing

taste causing components of smoke, e.g.:

> Ex. 1, Col. 18, Ln. 33-34: "The smoke partially <u>FILTERED BY</u> the ice and
> <u>CONDENSING WATER VAPOR</u> …."

> Ex. 1, Col. 8, Ln. 20-25: "<u>filtered</u> and minimized <u>by many methods …</u>
> <u>including settling</u> systems, baffling systems, and washing systems …. In
> addition<u>, cooling and storage</u> reduces the concentrations …. Some of <u>these</u>
> <u>filtering methods</u> …."

> Ex. 1, Col. 12, Ln. 17-35: "Filtering techniques of adsorption or molecular
> sieve absorption can be used effectively…. Successful combinations include
> bubbling the smoke through a water filter and then a smaller activated carbon
> filter; using a water vapor wash and an activated carbon filter; and using the
> above combinations with cloth filters. <u>Smoke can be super-purified by any</u>
> <u>method, or combination</u> of methods that reduce … flavor imparting … phenols
> below their odor and taste recognition thresholds or by using the preferred
> embodiment described as follows: … a precipitation tower which washes and
> filters the smoke through ice and a combination of adsorbent and molecular
> sieve filters of cloth and activated carbon.

> Ex. 1, Col. 14, Ln. 8-22: "The flavor imparting character of the smoke
> declines in three ways…. [T]hrough contact with the absorbent material on all
> the surfaces …; … phenols <u>settle</u> by gravity over time …; and, … phenols
> <u>naturally lose</u> their flavor-imparting <u>potency over time</u>. This weakening
> potency is due to the unstable characteristic of phenols which chemically react
> with other compounds and structurally decompose over time. Therefore,
> <u>allowing the phenols</u>, and any other remaining carcinogens, in the smoke <u>to</u>
> <u>settle, or 'age'</u>, … in storage canisters for future use, <u>is the final backup</u>
> <u>filtering step</u> in the process. It is analogous to sediment settling in wine
> making."

A patent may give special meanings to terms by implication as opposed to

just expressly. <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582-85 (Fed.

Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms

used in the claims <u>or when it defines them by implication</u>. <u>Markman</u>, 52 F.3d at

979."). Aside from the abovementioned express reference in the patent that smoke

can be "filtered by condensing water vapor" (Col. 18, Ln. 33-34), filtering must

also be construed to include condensing because condensing is a common filtering

method and devices that remove or separate out by condensation are indeed

commonly called "filters" – including in the context of smoke, e.g.:

> Ex. 4 is an internet advertisement for sales of packs of "four **condensation filters**" that allow one to "reduce your intake of tar and nicotine progressively" by sending the smoke into a **"condensation chamber" where the vapors circulate and the tar and nicotine form into larger and larger droplets until they are finally deposited inside the chamber**;

> Ex. 5 is an internet article reporting on the "MD4 stop smoking method … through a series of **condensation filters**;"

> Ex. 6 is an internet ad for the "Stop Smoking **Condensation Filters**;"

> Ex. 7 is an internet ad for the "Weller WFE2P **CONDENSATION FILTER**" "fume extraction unit" which "Reduces harmful soldering emissions" from the air to protect workers doing welding work; and

> Ex. 8 is U.S. Patent 5,501,234 issued in 1996 for a "multi-stage tobacco smoke filtering apparatus" wherein "The filters inside the assembly may include a **condensation filter**, … a desiccating filter, [and others]…. The smoke passing through the filters is completely filtered, deodorized, and decontaminated so as to protect non-smokers from the side-stream and second-hand smoke…. [T]he condensation filter … serves to condense moisture from the cigarette smoke."

**It should be noted that the fact that other claims in the patent use the**

**words "reducing" and "removing" does not prevent "filtering" from being**

**construed to also include "reducing" and "removing/separating out" because**

two claims using different words may cover the same thing.  E.g., <u>Anderson</u>
<u>Corp. v. Fiber Composites, LLC</u>, 474 F.3d 1361, 1370 (Fed. Cir. 2007)
("[C]laims that are written in different words may ultimately cover
substantially the same subject matter." and also "Overlapping patent claims
are not unusual, and the overlap does not require us to construe the
'composite composition' claims to cover subject matter that differs from the
subject matter covered by the other two sets of claims.").

(That "filtering" includes removal by condensation is significant
because Defendant claims that part of its process involves condensing vapors
and removing the resulting liquid, which Plaintiffs' expert Dr. Maga states in
his report [Ex. 9] is a method of filtering out components of smoke, including
taste and odor causing components – see his attached report for an
explanation of how that works, and Exs. 4-8 above, too.)

4.    <u>Filtering Components That Impart Smoke Flavor From Said
Smoke To Below Limits For Imparting Smoke Flavoring To
Food</u>

<u>"filtering components that impart smoke flavor from said smoke to
below limits for imparting smoke flavoring to food"</u> merely <u>means</u> that <u>"the
components (i.e., "parts") of the smoke which impart (i.e., "give") smoke
flavor to food that is exposed to (i.e., brought into contact with)</u>[5] <u>smoke are</u>

_____

[5] "Exposing" means "bringing the smoke into contact with the food" (Webster's

**filtered/reduced/separated out at least enough so that the resulting or**

**remaining smoke does not give smoke flavoring to food when the food is**

**exposed to that smoke**."

> 5. **Exposing Said Filtered Smoke To Food Without Imparting A Smoke Flavor To Said Food**

The final part of Claim 67 is the action of "exposing said filtered smoke to

food without imparting a smoke flavor to said food." Thus, **"exposing said**

**filtered smoke to food without imparting a smoke flavor to said food" means**

**"exposing to or bringing into contact with each other (a) the smoke (that was**

**filtered) and (b) the food, without giving a smoke flavor to that food."**

**B.    Claim 1 of the Kowalski Patent**

Claim 1 of the Kowalski Patent states:

**1. A process for treating meat comprising:**

**heating organic material to generate smoke having a gaseous vapor phase;**

**super-purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created; and**

---

Dictionary defines "expose" as "to submit or subject to an action or influence", while the Kowalski Patent explains that the smoke can be exposed or brought into contact with the food by different means, including (1) using the smoke to "directly flood a smoking treatment chamber filled with seafood or other meats" (Ex. 1, Col. 13, Ln. 13-15); (2) "using the smoke to treat seafood in plastic bags" (Col. 13, Ln. 33-34); or (3) "the … smoke can be administered successfully by injection needles directly into the seafood" (Col. 15, Ln. 24-28).

**treating meat having a freezing point with said tasteless super-purified smoke.**

1.    **Preamble and Transition**

The preamble to Claim 1 is like that of Claim 67, except the preamble of Claim 1 is narrower in that Claim 1 uses the word "meat" whereas Claim 67 uses the word "food".  For the purposes of the present litigation, that difference is irrelevant because Defendant's smoked fish falls within both the terms "food" and "meat".  It is clear that the word "meat" as used in Claim 1 includes the meat of fish or other seafood.  For example, the Kowalski Patent at Col. 13, Ln. 13-15 states "directly flood a smoking treatment chamber filled with **seafood or other meats.**"  More important, Claim 59, a dependent claim, states "59.  A process according to any one of claims 1, 2, 3, 8, 9, 10, 24, 25, 26, 49, or 50, **wherein said meat comprises seafood**."  A dependent claim is narrower than an independent claim, so Claim 59 is narrower than Claim 1.  Claim 59 states that it is limited to instances where the meat involved is seafood.  Thus, it necessarily follows that Claim 1 covers a process for treating meat that is seafood as well as meat that is not seafood.  Thus, **Claim 1's preamble "A process for treating meat" means "a process for treating meat, including the meat of fish or other seafood."**

As explained regarding Claim 67, the transitional phrase **"comprising" means "including," in the sense that infringing processes will fall within the claim even if they include things other than those listed in the claim.**

2.    **Heating Organic Material To Generate Smoke Having A Gaseous Vapor Phase**

The first clause of the body of Claim 1, **"heating organic material to generate smoke having a gaseous vapor phase", means "heating carbon containing materials (including wood, and the sawdust and charcoal that can be made from wood) to make smoke".** It therefore means the same thing as the second clause of Claim 67 because it is identically worded except for the addition of the words "having a gaseous vapor phase", and that addition makes no difference because all smoke has a gaseous vapor phase.[6] Thus, the words "having a gaseous vapor phase" do not change the meaning of the clause, but were merely included in Claim 1 according to patent claim drafting principles to serve as a base for creating later, narrower dependent claims (e.g., Claims 12, 14, 15, 16) via the dependent claims' modification or qualification of that base element.  E.g., see, I. Kayton, Patent Practice (4th Ed. 1989) at 3-8 ("narrowing a claim by modifying or qualifying [in a dependent claim] an element previously recited" in an independent claim).  Again, there is (and should be) no dispute that Defendant's fish is treated

---

[6]  See, e.g., Joseph A. Maga, Smoke in Food Processing (1988), at pp. 42-43 and footnote 20 at p. 47 (said pages attached as Exhibit 17 hereto, and produced earlier as K4693-94, K4698), which state (emphasis added):  "smoke is composed of two phases, namely a particulate or dispersed phase and a **gaseous** or dispersing **phase**.... [M]ost of the characteristic flavor associated with wood smoke is present in the **gas phase**.[20]
Fn 20:  ... Studies of the Smoking Process for Foods.  1.  **The Importance of Vapours.**  J. Sci. Food Agric., 12, 363, 1961."

with smoke containing a gaseous vapor phase generated by heating organic

material.

        3.     **Super-Purifying Said Smoke To Reduce Taste Imparting Components Below Thresholds For Imparting Smoke Odor And Taste, Whereby A Substantially Tasteless Super-Purified Smoke Is Created**

     The second clause of the body of Claim 1, **"super-purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created", means "reduce the taste imparting components (i.e., parts) of the generated (i.e., produced) smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat when brought into contact with the meat, and 'super-purifying' is a name that can be used for such reduction of taste causing components and 'substantially tasteless super-purified smoke' is a name that can be used for the resulting smoke that does not impart smoke taste."** "Super-purifying" is a label or name, and it is

defined by the claim itself as being reduction of the taste imparting components of

the smoke at least enough so that the resulting smoke does not give smoke odor or

taste to meat brought in contact with that smoke. Unlike some of the narrower

dependent claims, independent Claim 1 does not include any numbers, so it is clear

that Claim 1 cannot be read or construed to include any particular numbers, and the

words "super-purify" used in Claim 1 as a name for the action of "reducing the

taste imparting components of the generated smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat" likewise cannot be read or construed to include or refer to any particular numbers. Similarly, as indicated by the word "whereby" and the context, "substantially super-purified tasteless smoke" is a label or name that can be used to refer to the remaining smoke that results after taste causing components have been sufficiently reduced so the resulting smoke does not give a smoke taste to meat exposed to that smoke. As shown by the preceding word "whereby," "substantially tasteless smoke" and "said tasteless superpurified smoke" are not limitations, but merely labels for the smoke that results from the operative step of reducing the taste causing components of the smoke sufficiently so that the smoke does not leave food with a smoke taste that can be perceived by those who eat it. Minton v. National Association of Securities Dealers, 336 F.3d 1373, 1381 (Fed. Cir. 2003) ("a whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited."); Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165, 1172 (Fed. Cir. 1993) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the … substance of the claim…. Therefore, … the 'whereby" clauses do not contain any limitations …."). Moreover, the word "substantially" is a meaningful modifier implying "approximate" or "largely" as opposed to "absolutely" or

"completely" or "perfectly," and the inappropriateness of imposing a numeric constraint is underscored because of the word "substantially". E.g., <u>Playtex Products, Inc. v. Proctor & Gamble Co.</u>, 400 F.3d 901, 907 (Fed.Cir. 2005) ("The term "substantial" is a meaningful modifier implying 'approximate,' rather than 'perfect.' … [W]e refused to impose a precise numeric constraint on the term 'substantially uniform thickness,' noting that the proper interpretation of the term was 'of largely or approximately uniform thickness' ….").

    4.    **<u>Treating Meat Having A Freezing Point With Said Tasteless Super-Purified Smoke</u>**

The last part of Claim 1 – **"<u>treating meat having a freezing point with said tasteless super-purified smoke" – just means "treating meat with the resulting smoke".</u>** The words "having a freezing point" make no difference because all meat has a freezing point (again, those words were merely included in Claim 1 according to patent claim drafting principles to serve as a base for creating later, narrower dependent claims (e.g., Claims 2, 4, and 5) via the dependent claims' modification or qualification of that base element).

C.    <u>Claim 68 of the Kowalski Patent</u>

The Kowalski Patent's claim 68 (last page of Ex. 1) states:

**68. A process for treating food comprising:**

**heating organic material to generate smoke;**

**removing components that impart smoke odor from said smoke;**

exposing food to said smoke, whereby the quantity of smoke odor imparting components removed from said smoke is adequate to prevent imparting a smoke odor to said food.

### 1.    Preamble and Transition

Same as Claim 67.

### 2.    Heating Organic Material To Generate Smoke

Same as Claim 67.

### 3.    Removing Components That Impart Smoke Odor From Said Smoke

"removing components that impart smoke odor from said smoke" means "removing the parts of smoke that give smoke odor."

### 4.    Exposing Food To Said Smoke, Whereby The Quantity Of Smoke Odor Imparting Components Removed From Said Smoke Is Adequate To Prevent Imparting A Smoke Odor To Said Food

"exposing food to said smoke, whereby the quantity of smoke odor imparting components removed from said smoke is adequate to prevent imparting a smoke odor to said food" means "bringing the food and the smoke into contact with each other whereby the amount of smoke odor giving parts that were removed is sufficient to prevent giving a smoke odor to the food."

## D.    Claim 69 of the Kowalski Patent

The Kowalski Patent's claim 69 (last page of Ex. 1) states:

**69. A process for treating food comprising:**

**heating organic material to generate smoke that contains a vapor phase having smoke odor and flavor imparting components;**

**filtering said smoke to remove smoke odor and flavor imparting components;**

**exposing food to said filtered smoke so as to prevent smoke flavoring of said food by reducing the quantity of said filtered smoke exposed to said food.**

1. <u>**Preamble and Transition**</u>

Same as Claim 67.

2. <u>**Heating Organic Material To Generate Smoke That Contains A Vapor Phase Having Smoke Odor And Flavor Imparting Components**</u>

<u>**"heating organic material to generate smoke that contains a vapor phase having smoke odor and flavor imparting components" means "heating carbon containing materials (including wood, and the sawdust and charcoal that can be made from wood) to make smoke that contains vapor having smoke odor and flavor giving parts."**</u>

3. <u>**Filtering Said Smoke To Remove Smoke Odor And Flavor Imparting Components**</u>

<u>**"filtering said smoke to remove smoke odor and flavor imparting components" means "separating out or reducing or removing (including by cooling, condensing, settling out, and/or aging) smoke odor and flavor giving parts from the smoke."**</u>

4.  **Exposing Food To Said Filtered Smoke So As To Prevent Smoke Flavoring Of Said Food By Reducing The Quantity Of Said Filtered Smoke Exposed To Said Food**

**"exposing food to said filtered smoke so as to prevent smoke flavoring of said food by reducing the quantity of said filtered smoke exposed to said food" means "bringing food into contact with a sufficiently reduced amount of smoke so as to prevent the food from having a smoke flavor."**

## V.    CONCLUSION

The Court should grant the Motion and enter an order declaring the claim construction set forth in this memorandum.

DATED:  Honolulu, Hawaii, October 5, 2007.

CADES SCHUTTE LLP


/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
Attorney for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.