CADES SCHUTTE LLP

MILTON M. YASUNAGA     3058-0
MARTIN E. HSIA          2954-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br>   Plaintiffs, <br><br>  v. <br><br>OCEAN DUKE CORPORATION, <br><br>   Defendant. | CIVIL NO. 04-00055 BMK <br><br> WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF MILTON M. YASUNAGA; EXHIBITS 1 - 21; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5; CERTIFICATE OF SERVICE <br><br> <u>HEARING</u> <br> Date: October 23, 2007 <br> Time: 2:00 p.m. <br> Magistrate Judge:  Barry M. Kurren <br><br> Trial: December 4, 2007 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND RELIEF SOUGHT ................................................. 1

II.   SUMMARY JUDGMENT LEGAL STANDARD, AND PATENT
      LAW ...................................................................................................... 1

III.  DISCUSSION ........................................................................................ 4

      A.    Defendant's Motion Should Be Denied Because They have
            Failed To Present Proposed Construction Of the Claims And
            Have Failed To Compare The Process Used On Their Products
            To The Claims .................................................................................... 4

      B.    There Is Ample Evidence To Create At Least A Genuine Issue
            As To A Material Fact ........................................................................ 7

IV.   CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

Amstar Corp. v. Envirotech Corp., 730 F.2d 1476 (Fed. Cir. 1984) ........................ 5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ........................................... 1

Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223
     (9th Cir. 2000) ................................................................................................ 1

Freedman Seating Co. v. American Seating Co., 420 F.3d 1350
     (Fed. Cir. 2005) .............................................................................................. 3

Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605
     (1950) ............................................................................................................. 5

International Glass Co. v. United States, 408 F.2d 395 (Ct. Cl. 1969) ..................... 5

Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043
     (Fed Cir. 2001) .......................................................................................... 2, 4

Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329 (Fed. Cir. 1987) .................... 2

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) .......................................... 2

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626
     (9th Cir. 1987) ............................................................................................... 1

Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870
     (Fed. Cir. 1991) ............................................................................................. 3

Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co.,
     520 U.S. 17 (1997) ........................................................................................ 2

WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    INTRODUCTION AND RELIEF SOUGHT

The Court should deny Defendant's motion for partial summary judgment.

## II.    SUMMARY JUDGMENT LEGAL STANDARD, AND PATENT LAW

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56©.  In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

In patent cases, an accused infringer may obtain summary judgment of non-infringement only by: (1) "providing evidence that would preclude a finding of infringement," or (2) "by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed Cir. 2001). Where the doctrine of equivalents is asserted, summary judgment should be granted "where the evidence is such that no reasonable jury could determine two elements to be equivalent." Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 38 n.8 (1997).

It is the claims of a patent that define the scope of protection granted to the patent holder. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). To infringe a patent, one only needs to fall within one claim of the patent. Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329, 1330 at fn. 1 (Fed. Cir. 1987). Although some of the Kowalski Patent's 73 claims are more narrow and specific and cover certain specific examples for practicing within the Kowalski Patent or were created as "fallback" narrower alternatives in case the PTO had not approved the broader claims, many of the claims are broad and require no particular temperatures or numbers or equipment or species (e.g., the asserted claims: 67, 1, 68, and 69 – see Ex. 1 at Col. 28 and 22).

To determine whether a patent has been infringed or not infringed, courts

employ a two-step process. "First, the court must construe the asserted claim.

Second, the court must determine whether the accused product or process contains

each limitation of the properly construed claims, **either literally or by a**

**substantial equivalent**." <u>Freedman Seating Co. v. American Seating Co.</u>, 420

F.3d 1350, 1356-57 (Fed. Cir. 2005) (emphasis added). Furthermore, "whether the

accused product or process contains each limitation of the properly construed

claims either literally of by a substantial equivalent "is a question of fact." <u>Id.</u>

    This case involves a process patent. A process patent can be infringed in at

least two ways. One way is to use the patented process. Another way is to

"import into the United States or offer to sell within the United States a product

which is made by a process patented in the United States …." 35 U.S.C. § 271(g).

Thus, Defendant's protestation in paragraph 3 of it's (actually Mr. Lin's)

declaration that it "is not directly involved in the processing of seafood" is no

defense to infringement, and that paragraph in fact admits that Defendant imports

into and sells in the United States the fish treated for color retention by

Defendant's Indonesian supplier, PT Intisamudera Citra Perkasa (see paragraph 5

of Lin Dec.).

    Defendant claims that it's fish is processed under a method described in it's

supplier's patent, but "the existence of one's own patent does not constitute a

defense to infringement of someone else's patent." <u>Vaupel Textilmaschinen KG v.</u>

Meccanica Euro Italia SPA, 944 F.2d 870, 879 (fn. 4) (Fed. Cir. 1991) ("the

existence of one's own patent does not constitute a defense to infringement of

someone else's patent. It is elementary that a patent grants only the right *to exclude*

*others* and confers no right on its holder to make, use, or sell. *See* 35 U.S.C. § 154

(1988).").

 There are genuine disputes as to material facts concerning how the fish

imported and sold by Defendants was actually processed.

## III. DISCUSSION

###  A. Defendant's Motion Should Be Denied Because They have Failed To Present Proposed Construction Of the Claims And Have Failed To Compare The Process Used On Their Products To The Claims.

 As mentioned, for summary judgment in a patent case, the defendant must

present a proper claim construction and then must either "provid[e] evidence that

would preclude a finding of infringement" – that is, show there is no way a

reasonable jury could find any process used on Defendant's fish fell within even

one claim of the patent or (2) "show… that the evidence on file fails to establish a

material issue of fact essential to the patentee's case".   Novartis Corp. v. Ben

Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed Cir. 2001).  Defendant has not

done either of these.

 Without even mentioning any claim of the patent, Defendant merely makes

conclusory statements comparing the alleged equipment of its supplier to the

equipment described in just one of the many embodiments mentioned in the patent

at the time it was applied for back in 1997 -- see, e.g., pages 8 and 9 of

Defendant's memorandum in support, relying upon it's expert Dr. Iwaoka's

finding at page 6 of his report that there are differences in "the initial heating

device and the respective materials used to generate the volatile compounds" used

by Defendants supplier versus those used by Plaintiffs.  This is certainly not a

proper means for obtaining summary judgment because, as held, e.g., in Amstar

Corp. v. Envirotech Corp., 730 F.2d 1476, 1481-84(Fed. Cir. 1984):

> **The law of infringement requires that the asserted claims be compared with the products or processes accused of infringement.**  Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 (1950); [other cites omitted].  That was not done here.  On the contrary, … the district court was led to take a wrong turn in determining the infringement issue.

> **Infringement is not determined by comparison between parts of the description in a patent and the accused process or product, or by a comparison between commercial products sold by the parties.**  Accused … processes performed before suit must be compared with the claims….

> Modification by mere addition of elements of functions, whenever made, cannot negate infringement ….  "An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent."…  **Furthermore, the law recognizes the irrelevance of apparatus distinctions in determining infringement of process claims.**  International Glass Co. v. United States, 408 F.2d 395, 400 … (Ct. Cl. 1969)….

> The brief filed by Envirotech … contains *not one* [court's own emphasis] reference to any step of process claims 1 and 8 … that is even asserted to be absent from the accused processes … of Environtech.

Defendant's motion relies upon Dr. Iwaoka's report finding certain differences between the particular equipment and material used, but Dr. Iwaoka never even mentions any of the claims of the Kowalski Patent.  At page 6 of his report he says the initial heating equipment is different, even though the Kowalski Patent's broad claims are not limited to any particular heating device.  Dr. Iwaoka says "the respective materials used to generate the volatile compounds" are different, even though they are both organic materials, and the Kowalski Patent is not limited to a particular form of organic material.,  He says the word "smoke" is not properly used in the Kowalski Patent because something has been removed from it, which is irrelevant to infringement, not to mention that he is wrong because a patent applicant may use terms as he sees fit, Defendant and its supplier have themselves said their product is made with smoke even though they certainly remove something from it (see, e.g., Ex. 3, Defendant's supplemental responses to interrogatories at response 1 and 5, and Exs. 15 and 19 [Ex. 18 shows that Black Tie and Paradis are Defendant's brand]), the Patent Office approved the language of the patent (see Ex. 1), the public and industry refer to smoke as smoke even after its been filtered (see Exs. 3 – 8) and the U.S. FDA and U.S. Department of Commerce have themselves referred to the final substance used in the Kowalski process as "smoke" (see, e.g., Exs. 10 – 14), and the much more knowledgeable Dr. Maga – author of the book "Smoke In Food Processing" says the Kowalski

Patent's use of the word smoke is proper (Ex. 9).

Dr. Iwaoka's report makes other totally irrelevant and erroneous arguments, such as that the patent does not use the word "react" according to its definition in the field of chemistry (see Ex. 9, Dr. Maga's report explaining why Dr. Iwaoka is incorrect). Ironically, one difference that Dr. Iwaoka mentions is that he believe the resulting Kowalski smoke is purer than the resulting Shih Patent smoke because the Shih Patent smoke "could contain … volatile organics and methane, and perhaps small amounts of particulate matter." (which seems to be the opposite of what Defendant tries to argue at other times – i.e., that the smoke from the Shih process is cleaner).

**B.      There Is Ample Evidence To Create At Least A Genuine Issue As To A Material Fact.**

Movants have not carried their burden to obtain summary judgment, or to even trigger a duty upon Plaintiffs to come forward with rebuttal evidence. Nevertheless, Plaintiffs can show ample evidence to create at least a genuine issue as to a material fact.

Most fishing resources are located far from consumers in the U.S., so before fish reaches a consumer, many days often pass, during which time contamination and decomposition can occur. Ex. 1 (U.S. Patent 5,972,401 ["Kowalski Patent"], at Column ["Col."] 2 (column numbers are at top of each column), Lines ["Ln."] 14-24). Air transport helps, but is much more expensive than surface shipping. K

Dec. Spoilage and the high cost of air transport can be avoided by freezing fish. However, when frozen and thawed, fish and other meats turn an ugly brown, lowering the value tremendously. Ex. 1, Col. 1, Ln. 22-27, Col. 2, Ln. 35-42, 48-53.

Mr. Kowalski, president and owner of HISI, worked on a solution to this problem. He knew that smoking food was a common method of food preservation, long-accepted by government and consumers. Traditional smoking, however, gives the food a smoke taste not preferred by most people for most types of sashimi, sushi, and even cooked fish. Mr. Kowalski's novel invention was the process of using smoke that contained smoke imparting components at a sufficiently low level that the smoke would preserve food without giving the food a smoke taste. Ex. 1. Proof that he was the first to come forward with that invention is Ex. 2, the Interview Summary written by the United States Patent & Trademark Office Examiner to show why he agreed Mr. Kowalski deserved a patent, in which the Examiner concluded, "applicant [Kowalski] defines over prior art of record by not imparting smoke taste & flavor & odor". Thus, as the U.S. Department of Commerce and Food & Drug Administration (FDA) observed in giving its approval to sale of food made with Mr. Kowalski's process, the common and usual name for such smoke is tasteless smoke, a description first coined by Mr. Kowalski and his company Hawaii International. Exs. 10 and 12 -- government directives.

Mr. Kowalski applied for his patent in early 1997 and was awarded U.S. Patent No. 5,972,401 (Kowalski Patent) on October 26, 1999. Ex. 1.

Tasteless smoke was such a good idea that by the time Kowalski got his patent (which was over two years after he began publicizing his tasteless smoke technology and working to obtain government approvals), many people – including Ocean Duke's longtime supplier PT Intisamudera Citra Perkasa (Ex. 3) -- were selling what they described to the government and consumers as tasteless smoked fish. For example, Ex. 10 is a government announcement ruling that carbon monoxide gas was not allowed but HISI's tasteless smoke – made from wood smoke – was allowed, Ex. 11 is an industry announcement of the government's policy, Ex. 12 is the government's announcement that processors had to be inspected and approved as facilities that in fact process their fish with HISI's tasteless smoke process and added to the government's list of such facilities, Ex. 13 is the government's list of facilities inspected and shown to be processing their fish with tasteless smoke and the fact that Defendant's supplier PT Intisamudera Citra Perkasa is on that list of tasteless smoke facilities is evidence that its process fell within the Kowalski Patent claims (e.g., smoke was generated by heating an organic material and the taste and odor causing components were reduced sufficiently that the treatment merely served to retain color and not add smoke odor or taste, etc.) – Ex. 12 announces that only facilities that showed they were doing

HISI's tasteless smoke process could get onto the USDC tasteless smoke facilities list), Ex. 14 is a later list showing that the government treated the terms "tasteless smoke" and "filtered wood smoke as the same thing (someone complained erroneously that the term "tasteless smoke" was trademarked so the USDC at that time changed the title of its list to "Facilities Utilizing Filtered Wood Smoke"), Ex. 15 shows that Defendant's product was labeled as "processed smoke (to promote color retention) – the words "to promote color retention" show that the smoke is not used to add smoke taste or odor, proving the product is within the Kowalski Patent.  Ex. 18 shows that Black Tie is one of Ocean Duke's brands.).

Further proof that Ocean Duke's product falls within the Kowalski Patent is the fact that Ocean Duke sold its products to Ahold, the giant supermarket consortium, which specified that it would accept only "Frozen **Tasteless Cold Smoked (wood origin)** Processed Yellowfin Skinless Tuna Steaks" properly described as "YELLOWFIN TUNA STEAKS - #1 cooking grade, **natural tasteless wood smoke used to maintain fresh-like taste and color,**" and Ahold insisted that the "Product must be free from supplemental processing with additional chemical carbon monoxide."  Ex. 16 is Ahold's specification.  Proof that Ocean Duke sold to Ahold is Ex. 17 -- a list showing that Giant is an Ahold supermarket chain, Ex. 18 -- showing that "Paradise" is one of Ocean Duke's brands, and Ex. 19 -- labeling showing that Paradise Cryo-Freeze Tuna Steak was

sold at Giant supermarket and described as "THAWED TUNA AND
PROCESSED WITH TASTELESS SMOKE (ADDED AS A PRESERVATIVE
TO PROMOTE COLOR RETENTION)."

The above facts at the very least create a genuine issue of material fact that
Defendant's product is made with Plaintiffs' process and is not made in accordance
with the Shih Patent (e.g., the Shih Patent doesn't talk about filtering, yet
Defendant' answers to interrogatories (Ex. 3) say that their product is made with
"filtered smoke;" to get onto the government's list of tasteless smoke facilities,
Defendant's supplier had to request to be placed on the list and show that it was
processing according to the approved process – which was Kowalski's [as shown
by Exs. 10-14, he showed his process to the government and persuaded it to
approve his tasteless smoke process even though the government had banned
carbon monoxide gas]. Further proof that there is a lack of credibility to the claim
that the Shih patent is followed is Exhibit 20, which is a document from
Defendant's supplier saying that air is added to the oven, even though the Shih
Patent does not mention adding air, and Exhibit 21, communications between
Defendant's employee and one of Defendant's attorneys indicating  that a
temperature of 250 degrees C is used, even though the Shih patent and Mr. Lin's
declaration state that the temperature of 180 degrees C is used.

Furthermore, even if one assumed that Defendant's fish was actually made

in accordance with the Shih Patent, that would not save Defendant because patent law is very clear that claiming to be under a second patent is not a defense to a claim of infringement of a first patent – this is because a process may fall within more than one patent and because infringement is determined by looking to see if what one actually does falls within the claims of the allegedly infringing patent.

Moreover, even if one assumed Defendant's product was made in accordance with the Shih Patent, there would still be evidence that created at least a genuine dispute as to whether Defendant was infringing. That is because a jury could reasonably find that following the Shih Patent would infringe the Kowalski Patent. For example, it was suspected that Ocean Duke might try to argue that the Shih Patent burns charcoal and that produces only carbon monoxide and water, rather than smoke, and the water is then removed, leaving only carbon monoxide. This is belied by Ocean Duke's answers to interrogatories stating that its product is made with "filtered smoke" (Ex. 3 at answer 1), Ocean Duke's labels stating that the product is treated with smoke for color retention (Exs. 19 and 15), Ocean Duke's customer Ahold's specification for only product made with natural tasteless wood smoke (Ex. 16), the USDC listings of Ocean Duke supplier Pt. Intisamudera Citra Perkasa as a facility that processes with tasteless smoke (Exs. 13 and 14), etc.

Furthermore, Ocean Duke's own expert, Dr. Iwaoka, admits that, when

charcoal is heated as in the Shih Patent, much more than carbon monoxide and water will be produced (his report states at page 15, lines 7-8 "it is clear that the Shih process is producing carbon monoxide as well as other unidentified volatile compounds.")

Even assuming that Ocean Duke's product is made according to the Shih patent, it would still fall within the claims of the Kowalski Patent, as shown in the report of Dr. Joseph Maga (Ex. 9), which explains that the step of condensing the water vapor and removing the water does filter out or remove or reduce taste causing components :

2. I am the author of the book Smoke in Food Processing, first published in 1988. I obtained a Ph.D in Food Science from Kansas State in 1970 and have conducted research in wood and smoke chemistry, food processing, food preservation, and flavor chemistry and sensory evaluation....

3. Ocean Duke has indicated in its Supplemental Responses to Interrogatories that:

a) since 1999, it has purchased fish treated for color retention (rather than for giving the fish a smoke taste or odor) from PT Inti Samudera Citra Perkasa;

b) to make it retain its fresh color, PT Inti Samudera Citra Perkasa treats its fish with "filtered smoke"; and

c) PT Inti Samudera Citra Perkasa produces the filtered smoke and uses it to treat the fish for color retention "in strict accordance" with the process disclosed in U.S. Patent 6,331,322, issued in December 2001 to Mr. Shih of PT Inti Samudera Citra Perkasa (the Shih Patent).

4. The Shih Patent indicates that its process "uses natural charcoal burning in a stifling condition" (Column 1, Line 41) by putting the charcoal in an oven, drawing out air from the oven, and heating the interior of the oven to about 180 degrees Centigrade (Column 2, Lines 34-39).

5. Charcoal is an organic material. **Heating charcoal in an oven heated to about 180 degrees Centigrade as described in the Shih Patent would produce much more than just carbon monoxide and water – it would produce smoke, and that smoke would contain components or compounds that would impart smoke odor and smoke taste.**

6. Therefore, the process Ocean Duke has said is used to process its fish treated for color retention falls within or is consistent with the references in the Kowalski Patent [Ex. 1] about heating organic material to generate smoke and heating organic material to generate smoke having smoke odor and smoke taste components or compounds.

7. Ocean Duke has stated that its fish is treated for color retention -- that is, the treatment enables the fish to retain its fresh color but does not give the fish a smoke odor or smoke taste. Ocean Duke has also stated that the smoke used to treat its fish to obtain this result is handled as set forth in the Shih Patent, which says it is cooled to room temperature in a cooling tank, the water vapor is converted into water and removed, the remaining smoke is drawn into a bag, then (when the food is to be treated) the remaining smoke is drawn out of that bag and put it into a fish treatment device along with the fish to be treated (Column 2, Lines 41-54). Given what Ocean Duke says is done and given the result of no smoke odor or taste which Ocean Duke says is achieved, it is my opinion that the processing of the smoke used for Ocean Duke's fish reduces or removes or filters out smoke odor and smoke taste imparting components or compounds of the smoke sufficiently so that fish treated with the remaining smoke retains color but does not end up with a smoke odor or smoke taste. **This result is achieved because (1) smoke taste and odor causing components that are vapors are removed when the vapors are converted to liquid and the liquid is removed and (2) other smoke taste and odor causing components are dissolved or trapped or settled into the liquid and are removed when the liquid is removed. Furthermore, some smoke taste and odor causing components may be separated out because they settle out or stick to or are absorbed by the walls of the various pipes, devices, and bags that the smoke passes through and sits in before it is used to treat the fish.**

8. Therefore, the process Ocean Duke says is used to create and process smoke and treat fish with that smoke for color retention falls within or is consistent with the parts of the Kowalski Patent [Ex. 1] that refer to reducing or removing or filtering out smoke odor and smoke taste imparting components or

compounds of the smoke sufficiently so that food treated with the remaining smoke will not end up with a smoke odor or smoke taste.

The 9/11/07 deposition testimony of Ocean Duke's expert Dr. Iwaoka (Ex. 21) was consistent with Dr. Maga's opinions, e.g.:

P. 46, l. 7-10:
Q. But aren't there other volatile compounds also formed from heating the charcoal besides water and carbon monoxide?
A. Probably, yes.
P. 48, l. 7-10:
Q. But some of the volatiles will be removed along with the water vapor when you remove the water vapor?
A. Yes....
P. 49, l. 19 to P. 50, l. 1 and 14-16
Q. When the Shih process then goes to the next step of removing water vapor, that removal of water vapor removes not just the water vapor but some particulate matter as well as other things that were generated, right?
A. It could.
Q. Especially the highly water soluble things?
A. That's correct.
Q. ... Would you call particulate matter highly water soluble?
A. ... [Rather, they'd be] Suspended in water, yes. So, it's not a dissolution or dissolving of the particulates.
Q. But these particulates that are suspended in the water would be removed when you remove the water?
A. Yes.

In any event, Dr. Iwaoka cannot refute Dr. Maga's opinions because Dr. Iwaoka admitted at his deposition (Ex. 21) that he has no expertise in smoking of food, no experience in smoking of food except for one instance where he and others hot smoked salmon over a fire for their personal consumption, knows nothing about cold smoking, and doesn't even know what components in smoke cause smoke taste.

It is clear that Defendant's fish is processed so that it is exposed to smoke and ends up without a smoke taste, so those portions of the Kowalski Patent's claims are satisfied. We have already shown at least a genuine dispute as to the limitations about heating organic material to generate smoke and filtering or removing or separating out things from the smoke.

There is, moreover, at least a genuine dispute as to whether the smoke used on the Ocean Duke products has smoke taste and odor imparting components. The fact that Defendants have said that the smoke is filtered indicates it does have smoke taste and odor causing components, or else why would it have to be filtered. Also, the supplier's placement on the government list of tasteless smoke facilities is evidence that the smoke is treated to remove such components, as Kowalski described to the government in getting tasteless smoke approved. Also, Dr. Maga's report creates a genuine dispute as to that material fact.

Finally, the process used to make Defendant's fish actually begins with wood, because wood must be burned in order to get to the stage of the wood being charcoal. Therefore, regardless of how clean charcoal smoke might be, one should look at the entire process that results in Defendant's fish, and that entire process begins with burning wood, which certainly creates smoke taste and odor causing substances, which are discarded. A reasonable jury could find that charcoal is only an intermediate stage, and so one needs to look at the initial burning of the wood to

get to the charcoal stage in order to determine the factual question of literal infringement.

Also, Plaintiffs also have the benefit of the doctrine of equivalents, which is also a factual determination for the jury.

## IV.    <u>CONCLUSION</u>

The Court should deny the Motion – Defendant has not made a showing that a reasonable jury could, under literal infringement or the doctrine of equivalents, find for the Plaintiffs under at least one of the asserted claims..

Finally, if the Court is inclined to grant Defendant's motion, Plaintiffs ask for Rule 56f relief so that they can take the deposition of Duke Lin and Roger Lin. Plaintiffs wanted (and earlier requested) the depositions of Roger Lin and Duke Lin to occur in mid-September (and thus, Plaintiffs asked for these depositions well before the weekend of the October 1 settlement conference), but Defendant refused to make them available before October 8 and 9, so Plaintiffs had no choice (after their request for September 29 or 30 was also refused) but to agree to depose them on the 8th and 9th, which is after the due date of Plaintiffs opposition. Plaintiffs did not want to give Defendants an excuse to stall this case so that Plaintiffs are unable to vindicate their rights in court.

DATED:  Honolulu, Hawaii, October 5, 2007.

                          CADES SCHUTTE LLP

                          /s/ Milton M. Yasunaga
                          MILTON M. YASUNAGA
                          Attorney for Plaintiffs
                          WILLIAM R. KOWALSKI and HAWAII
                          INTERNATIONAL SEAFOOD, INC.