IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TUNA PROCESSORS, INC., | ) | CIV. NO. 05-00517 BMK |
| | ) | CIV. NO. 05-00679 BMK |
| Plaintiff, | ) | CIV. NO. 06-00182 BMK |
| | ) | CIV. NO. 05-00787 BMK |
| v. | ) | |
| | ) | CLAIMS CONSTRUCTION |
| HAWAII INTERNATIONAL | ) | ORDER FOR THE YAMAOKA |
| SEAFOOD, INC., | ) | AND KOWALSKI PATENTS |
| | ) | |
| Defendant/Counterclaim | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Additional Counterclaim | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TUNA PROCESSORS, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. KOWALSKI and | ) | |
| HAWAII INTERNATIONAL | ) | |
| SEAFOOD, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |

EXHIBIT A

still describe only a process in which the smoke has already been cooled prior to exposure. "Cooled" is a participial adjective that modifies the word "smoke." It is formed from the past participle of cool, which is "cooled," and then used as an adjective rather than a verb. Because it is derived from the *past* participle, rather than the present participle, the use of "cooled" as an adjective indicates that the action has already taken place or already been completed. Here, that means that the smoke has already been cooled to a specific temperature, namely, to between 0° and 5℃.

D. <u>Limitation to Tuna</u>

The literal language of the Yamaoka patent claims only a process for "curing raw tuna meat" (Ex. 1, Col. 7). HISI requests that the claim be limited to tuna, and not be extended to other fish or meats. TPI "does not dispute that Claim 1 of the Yamaoka '619 patent is limited to tuna." (TPI Reply 8.) The Court concurs that the Yamaoka Patent claims only a process for curing tuna, and not any other kind of fish or meat.

## II. THE KOWALSKI PATENT

In contrast to the Yamaoka Patent, which has only two claims, the Kowalski Patent makes 73 distinct claims. The Court has only been asked to

17

construe two of these 73 claims, namely, Claim 1 and Claim 67. Claim 1 of the Kowalski Patent claims:

> 1. A process for treating meat comprising:
> heating organic material to generate smoke having a gaseous vapor phase;
> super purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created; and
> treating meat having a freezing point with said tasteless super-purified smoke.

(Kowalski Patent, Col. 22 -23, at 65.) Claim 67 of the Kowalski Patent claims:

> 67. A process for treating food comprising:
> heating organic material to generate smoke;
> filtering components that impart smoke flavor from said Smoke to below limits for imparting smoke flavoring to food; and
> exposing said filtered smoke to food without imparting a smoke flavor to said food.

(Kowalski Patent, Col. 28, at 11-18.)

### A. "Heating Organic Materials To Generate Smoke"

Both Claim 1 and Claim 67 claim the process of "heating organic material to generate smoke." The parties disagree about the meaning of two words in this phrase, namely, "heating" and "organic."

#### 1. "Heating"

HISI requests that "heating" not be limited to any particular temperature range in Claims 1 and 67. (HISI Brief 18.) TPI, on the other hand,

18

requests that "heating" be "limited to the temperature 510° centigrade or less." (TPI Opp. 13.) TPI bases this construction on the specifications of the patent, which state that the "manufacturing process" includes combusting wood sawdust "at temperatures in an operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade)." (Kowalski Patent, Col. 11, at 44-49.) TPI argues that HISI's claim is limited by what the Kowalski Patent has defined as the operable range of the invention.

While claims need not be limited to their preferred embodiments, "claims may be no broader than the supporting disclosure" made in the specifications. Gentry Gallery v. Berkline Corp., 134 F.3d 1473, 1479 (Fed. Cir. 1998) (finding a claim invalid where it extended beyond the scope of what was disclosed in the patent's specifications); see also Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1323 (Fed. Cir. 2002) (stating that "a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope").

Here, it is not only the preferred embodiment of the patent, but nearly every section of the specification that discloses an operable temperature range of 204° to 510° C for the Kowalski Patent. First, after discussing the formation of deleterious compounds in the "Background Art" section of the patent, Kowalski

19

states that "[t]o minimize formation of these compounds and to conform to empirical data from our laboratory tests, an operable combustion temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centrigade), a preferred range of 500 to 800 degrees Fahrenheit . . . [is] established for the process described herein." (Kowalski Patent Col. 6-7.) Second, as mentioned above, the "Summary of the Invention" section of the patent states that the "manufacturing process" includes combusting wood sawdust "at temperatures in an operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade)." (Kowalski Patent, Col. 11, at 44-49.) Third, the "Best Mode" section specifies that the sawdust "is combusted by heating the cylinders with the natural gas burner to an operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees centigrade)." (Kowalski Patent, Col. 16, at 39-41.)

Here, then, just as in Gentry, the "entirety of the specification clearly indicates that the invention is of a much narrower scope," Cooper Cameron Corp., 291 F.3d at 1323, than what is claimed in Claims 1 and 67. The specifications do not support the broad claim language of "heating"; accordingly these claims are deemed invalid on this ground. See Gentry Gallery, 134 F.3d at 1479.

20

2.  **"Organic Material"**

Both Claim 1 and Claim 67 also use the phrase "organic material." HISI requests that "organic material" be interpreted to mean "carbon containing materials (including wood, wood sawdust, and charcoal)." (HISI Brief 18). TPI, on the other hand, argues that "organic" should be limited to things that are "of, relating to, or derived from living organisms," such as wood, wood sawdust, leaves, bagasse from sugar cane, pineapple husks, and rice hulls.[2] (TPI Brief 14-15.)

Both the broad definition of "organic" proposed by HISI and the narrower definition of "organic' advanced by TPI appear equally valid and equally plausible. The claims themselves provide no insight into the intended meaning of "organic." The specifications, however, do describe the types of burning material utilized in this process, albeit without explicitly defining the term "organic." The patent states that "[t]ypical wood fuels for smoking contain primarily a hydrocarbon composition of *hydrogen and carbon along with other elements* . . . ." (Kowalski Patent, Col. 7, at 4-5 (emphasis added).) This language, focusing on the chemical component of smoking materials, and in particular, the presence of carbon, as opposed to focusing on the materials' relation to living organisms, indicates that

---

[2]TPI also requests that "organic" be limited to materials which can burn at temperatures of 510° C or less. TPI argues that charcoal should be excluded because it burns above 510° centrigade. TPI's temperature arguments, however, have already been addressed above.

21

Kowalski did not intend to limit his patent to the narrower definition of "organic." The Court therefore finds that "organic material," as used in the Kowalski Patent, means carbon containing materials, including wood, wood sawdust, and charcoal.

### B. "Filtering Components That Impart Smoke Flavor From Said Smoke to Below Limits for Imparting Smoke Flavoring to Food."

Part of Claim 67 is the claim of "filtering components that impart smoke flavor from said smoke to below limits for imparting smoke flavoring to food." (Kowalski Patent, Col. 22-23.) HISI and TPI disagree about the meaning of two parts of this phrase: "filtering" and "below limits for imparting smoke flavoring to food."

#### 1. "Filtering"

HISI contends that "filtering" includes "not just the use of filters, but also settling of taste causing components by cooling and/or storage over time, or aging of the smoke so as to allow time for the taste causing components to settle or weaken in strength." (HISI Brief 19.) TPI argues, however, that the specifications of the Kowalski patent distinguish "filtering" from cooling and settling, and so "filtering," as used in Claim 67, cannot be read to encompass these other terms. TPI points to the statement in the specifications that "[c]omplete super purification of smoke can be accomplished using one method, or a combination of methods, in current practice, including filtering, separating, distilling, scrubbing, cooling,

22

freezing, inertial impact, centrifugal force, or settling." (Kowalski Patent, Col. 12, at 13-17.) TPI argues that because "filtering," "cooling," and "settling" are each listed as distinct means of achieving "super-purification," the word "filtering" cannot be read to include cooling and settling when used in Claim 67.

In response, HISI points to other places in the specifications where cooling and settling *are* included within the definition of filtering. These include the Kowalski Patent's discussion of prior art techniques that include "cooling" and "settling" as types of "filtering methods,"[3] (Kowalski Patent, Col. 8, at 24-26), as well as its explanation that "allowing the phenols, and any other remaining carcinogens, in the smoke to settle, or 'age' . . . is the final backup filtering step in the process," (Kowalski Patent, Col. 14, at 19-23). Moreover, the Kowalski Patent's preferred embodiment discloses a process in which the smoke is "partially filtered by the ice" through cooling and condensation (Kowalski Patent, Col. 18, at 33-34), and is then eventually put through a final "settling step of aging the smoke" (Kowalski Patent, Col. 19, at 43).

---

[3] This discussion, in its entirety, reads as follows.
> The amounts of tar, soot, ash, char and other microscopic particulates have been *filtered and minimized* by many methods in current practice including tar settling systems, baffling systems, and washing systems in the line form the smoke generator to the smoking chamber. In addition, *cooling* and storage reduces the concentrations of phenolic particulate through *settling*. Some of these *filtering methods* . . . .

(Kowalski Patent, Col. 8, at 19-26 (emphasis added).)

23

There is little doubt that the Kowalski Patent discloses settling and cooling processes to remove certain particles from smoke; the issue is whether the word "filtering," as used in Claim 67, encompasses these processes. The Court finds that it does. While the specifications do occasionally use "filtering" in its narrow sense, they more often use it in a broader sense that does include both cooling and settling processes. This is particularly so when the specifications are read as a whole, in context, from beginning to end. The overview of different filtering processes discussed in the "Background Art" section of the specifications recognizes cooling and settling as two types of filtering. And while filtering is initially used in its narrow sense early in the "Summary of the Invention" section, the later parts of the summary make it clear that "filtering" is a much broader term. (See Kowalski Patent, Col. 14, at 19-23.) Thus, viewed in their entirety, the Kowalski specifications demonstrate that "filtering" is a broadly-defined process including not only passing a gas or liquid through a porous material, but also the cooling and settling of the smoke.

2.  **"Below Limits for Imparting Smoke Flavoring to Food"**

In addition, HISI and TPI disagree over the meaning in Claim 67 of the phrase "below limits for imparting smoke flavoring to food." TPI requests that the "limits for imparting smoke flavoring to food" be defined as "having phenolic

24

fractions less than 2.3 ppm for vapor and 1.4 ppm for particulate." (TPI Brief 17 (emphasis removed).) TPI bases this request on Table 3 in the Background Art section of the Kowalski Patent, which identifies 2.3 ppm and 1.4 ppm as the taste recognition thresholds for the vapor and particulate phases, respectively, of wood smoke. (Kowalski Patent, Col. 11, at 1-20.) HISI responds that this table is merely part of the background art, and cannot be drawn upon to limit the claims of the Kowalski Patent. HISI argues that "Claim 67 is a perfectly good claim without any numbers, and the lack of numbers serves a legitimate purpose." (HISI Reply 10.)

The Court here agrees with HISI that the numerical ranges described in the background art may not be read into this particular limitation. The specifications of the Kowalski Patent do not disclose a numeric limitation for "smoke flavoring" in either the smoke or the food with which the smoke is treated. The table listing the "Odor and Taste Recognition Thresholds (ppm) and Most Desirable Concentrations (ppm) of the Phenolic Fraction Isolated From the Vapor and Particulate Phases of Wood Smoke" (Kowalski Patent, Col. 11, at 1-19) is neither referenced nor commented upon at any other point in the specifications.

Furthermore, while an operable numeric range for tasteless smoke was given for the preferred embodiment of the Kowalski Patent, this was a range which was "determined empirically" for that particular embodiment of the patent.

25

(Kowalski Patent, Col. 17, at 14-36.) The process claimed by the Kowalski Patent and disclosed in its specifications, however, is substantially broader; namely, the treatment of smoke "such that the phenols in both particulate and gaseous vapor phases are reduced to concentrations below recognition thresholds for odor and taste that impart a smoked flavor to the treated food. (Kowalski Patent, Col. 12, at 3-6.) Unlike the "heating" limitation discussed above, where the specifications uniformly disclosed a narrow operable temperature range of between 204° and 510° C., here the specifications disclose a range that is not numerically defined, and further disclose one particular embodiment for which numerical ranges have been determined. The claim here does not exceed the specifications of the patent, and the Court declines to add any numerical boundaries to the phrase "below limits for imparting smoke flavoring to food."

    C.    <u>"Super-Purifying Said Smoke to Reduce Taste Imparting Components Below Thresholds for Imparting Smoke Odor and Taste"</u>

The language of Claim 67, discussed above, is quite similar to the language of Claim 1, which claims "super-purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste." (Kowalski Patent, Col. 28, at 11-18.) TPI raises similar claim construction arguments here as it raised for Claim 67, once again requesting that numerical

26

values listed in Table 3 be ascribed to the process of "super-purifying" the smoke "below thresholds for imparting smoke odor and taste." (TPI Brief 20). For the reasons discussed above, the Court finds that "super-purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste" is supported by the disclosures made in the specifications. It will not be numerically limited by the Court.

> D. **"Whereby a *Substantially Tasteless* Super-Purified Smoke Is Created; and**
> **"Treating Meat Having Freezing Point with *Said Tasteless* Super-Purified Smoke."**

Finally, HISI and TPI dispute the meaning and use of "said tasteless" in relation to "substantially tasteless" in Claim 1. TPI argues that the simultaneous use of "substantially tasteless" and "said tasteless" is "an improper double inclusion of the element." (TPI Response 22.) TPI believes that a person of reasonable skill in the art would not be able to distinguish between "substantially tasteless" and "said tasteless." On this basis, TPI argues, Claim 1 should be ruled indefinite. HISI, on the other hand, that "substantially tasteless smoke" is not a limitation, but a label for what results at the end of the process, and that "said tasteless smoke" is merely an obvious shorthand reference for that product.

27

The Court agrees with HISI's analysis, and finds neither ambiguity nor indefiniteness in this portion of Claim 1. The use of "said" makes it clear that "said tasteless super-purified smoke" refers to the "substantially tasteless super-purified smoke" that is a result of the processes previously described in the Kowalski Patent.

## CONCLUSION

For the foregoing reasons, the claims of the Yamaoka Patent are construed so that: (1) the temperature limitation in the phrase "burning a smoking material at 250° to 400° C." applies to the temperature of the medium, not of the material being burned; (2) the step of "passing the produced smoke through a filter to remove mainly the tar therefrom" includes only filtration processes that allow some of the smaller, non-tar, flavor-giving particles to pass through the filter, such that some smoke flavor remains; (3) the limitation of "exposure to the smoke cooled to between 0° and 5° C." requires that the smoke already be at a temperature of between 0° and 5° C before the fish is exposed to the smoke; and (4) the patent only applies to tuna, and not to other foods.

Similarly, for the reasons described above, the claims of the Kowalski Patent are construed so that: (1) the "heating" limitation of Claims 1 and 67 is deemed invalid on the grounds that the specifications disclose only a process that is capable of operating effectively between 204° C and 510° C; (2) the "organic

28

materials" limitation of Claims 1 and 67 includes all carbon containing materials, including wood, wood sawdust, and charcoal; (3) the "filtering" step of Claim 67 encompasses both the cooling and settling processes described in the specifications; (4) the "below limits for imparting smoke flavoring to food" language of Claim 67 is not numerically limited; (5) the step of "super-purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste" in Claim 1 is similarly not numerically limited; (6) in Claim 1, "said tasteless super-purified smoke" refers to the previously labeled "substantially tasteless super-purified smoke."

    IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: October 17, 2007

Tuna Processrs, Inc. v. Hawaii Seafood International, Civ. No. 05-00517 BMK; Kowalski v. Mommy Gina Tuna Resources, et al., Civ. No. 05-00679 BMK; Kowalski v. Integral Seafood LLC; Civ. No. 06-00182 BMK; Kowalski v. Friend; Civ. No. 05-00787 BMK; CLAIMS CONSTRUCTION ORDER FOR THE YAMAOKA AND KOWALSKI PATENTS.

29