IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | Case No. CV04-00055 BMK <br><br> **MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

**I.     INTRODUCTION**

Movant respectfully requests that the December 2007 trial date, and certain past and anticipated pretrial deadlines (including the discovery cutoff, past and upcoming motions deadlines, pretrial submission deadlines, and settlement conference and associated deadlines) be continued for approximately five months, in order (A) to address important issues that have arisen as a result of the November 1 and 2, 2007, deposition of plaintiff William Kowalski, (B) to give the parties sufficient time to complete additional discovery, including potentially the taking of depositions and conduct of investigations in the Philippines and Indonesia; and (C) to brief, supplement, and/or file dispositive motions that Ocean Duke anticipates will narrow the issues to be tried.

**II.    GOOD CAUSE FOR CONTINUANCE OF TRIAL DATE**

A.     *New Issue of plaintiff Hawaii International Seafood's Standing to Sue*

A significant new issue of standing relating to one of the two plaintiffs in this case -- Hawaii International Seafood, Inc. ("HISI") -- has arisen as a result of the very recent deposition of William Kowalski on November 1 and 2, 2007.  In short, it appears that HISI lacks standing to bring claims for patent infringement.  If this "standing" issue is resolved in favor of Ocean Duke Corporation, it will potentially reduce plaintiffs' purported damages by approximately 90%, since the

660,749 / 8827-1                                                        1

vast majority of the damages being claimed consist of lost profits of plaintiff HISI. Further, because standing is an issue which federal courts must consider even if the parties fail to raise it (*United States v. Hays,* 515 US 737, 742 (1995)), Ocean Duke urges that the issue be considered promptly, and that the trial of the case be continued so that this potentially case-altering issue can be fully briefed and resolved.

    1.    <u>Facts Regarding HISI's Lost Profits Claim and Standing</u>

As this court is aware from having mediated settlement discussions, plaintiffs are seeking over ten million dollars, chiefly in "lost profits" damages. However, the only plaintiff earning profits that could be the subject of a "lost profits" claim is the corporate plaintiff, HISI, and not the individual plaintiff, William Kowalski. This can be seen from the fact that defendant Ocean Duke Corporation ("Ocean Duke") does not process its own seafood; therefore, the only actionable conduct alleged is that Ocean Duke imports and sells seafood that *someone else* has processed, allegedly using the Kowalski patent's processes. This purported wrongful conduct leads to HISI's lost profits claim, under the theory that HISI would be selling the seafood that Ocean Duke now sells, but for Ocean Duke's purported (secondary) infringement (*i.e.*, the sale of product acquired from *someone else* who allegedly infringed the Kowalski patent). Because HISI, and not Mr. Kowalski individually, is in the business of selling seafood, only HISI can

claim lost profits damages.

The problem is that HISI apparently does not have standing to bring a claim for patent infringement, under recent case law from the Federal Circuit. At his recent deposition, Mr. Kowalski admitted:

1. He alone has always owned the Kowalski patent;
2. He is not aware of any written assignment of the patent to HISI;
3. HISI's right to sue in this case arises out of an alleged *oral* agreement between him and HISI, dating from the initiation of this litigation (in late 2004).

(Marks Decl., ¶ 5, Exh. A.)

Other facts bear out the truth and accuracy of the foregoing testimony by Mr. Kowalski (except, perhaps, for the alleged oral agreement). The United States Patent and Trademark Office does not show a recorded assignment of the patent from Mr. Kowalski to HISI (although it does show an assignment to someone else, apparently for financing reasons). (Marks Decl., Exh. B.) Further, the proposed licensing agreements which plaintiffs sent to Ocean Duke both before and during the litigation indicate that Kowalski is the sole owner of the patent, and that Mr. Kowalski himself retains the right to control patent infringement litigation. (Marks Decl., ¶ 7, Exh. C.) Finally, license agreements that have been turned over in discovery confirm that Mr. Kowalski, and not HISI, has always been the

"licensor" of rights in the Kowalski patent.  (Marks Decl., ¶ 8, Exh. D.)

Perhaps the most persuasive evidence that HISI is not a proper plaintiff for patent infringement purposes appears -- or, better, *fails* to appear -- on plaintiff's recently-served Exhibit List.  That Exhibit List reveals that plaintiffs apparently do not intend on offering *any written documentation* at trial that would demonstrate that Mr. Kowalski has assigned to HISI the Kowalski patent, or any significant portion thereof.  (Marks Decl., ¶ 9, Exh. E.)

Case law establishes that, under the facts detailed above, HISI lacks standing to sue for patent infringement, and that HISI's purported lost profits damages are therefore unrecoverable.  This would mean that damages, at most, should be limited to reasonable royalty damages -- which in this case might amount to about one-tenth of what was being claimed as lost profits.[1]

2.  <u>Governing Law on Standing in Patent Infringement Cases.</u>

Under settled law, only the "patentee" can bring actions for patent infringement.  (35 U.S.C. § 281.)  The term "patentee" includes "the successors in title to the patentee."  (*Id.*)  Thus, the party suing for patent infringement must ordinarily be the holder of legal title to the patent.  (*Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F. 3d 971, 976 (Fed. Cir. 2005); *Rite-Hite Corp. v. Kelley*

---

[1] Plaintiffs' damages expert has opined that application of the alternative measure of damages in patent cases -- "reasonable royalty" damages – could result in damages of less than $1,000,000. (Marks Decl., ¶ 10, Exh. F.)

*Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc).) In this case, that person is and has always been Mr. Kowalski, and not his company, which is a separate legal entity.

Importantly, where the plaintiff claiming patent infringement is the assignee of patent rights, the assignment must be in writing. (35 U.S.C. § 261; *Enzo Apa & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093 (plaintiff lacked standing to sue where no written transfer of rights under patent had been made at time claims were brought); *Kahn v. General Motors Corp.,* 33 USPQ 2d 2011, 2013 (S.D.N.Y. 1995) (*accord*).)

A recent leading case in the area of standing to sue for patent infringement is *Propat International Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007). In *Propat*, the key question was whether the plaintiff had sufficient ownership interest in the subject patent to be entitled to sue for patent infringement. (473. F.3d at 1188.) The Court stated that a party can sue even where it does not hold legal title to the patent, provided that the patent's true owner "conveys all substantial rights in the patent" to the plaintiff filing suit. (473 F.3d at 1189.) To determine whether such a conveyance has occurred, courts must look to the agreement between the patent owner and the plaintiff suing for infringement. (*Id.*)

In *Propat*, the Federal Circuit upheld the dismissal of the plaintiff's patent infringement claim for lack of standing. The Court held that the plaintiff's rights in

the patent were insufficient to confer standing.  (473 F.3d at p. 1190 *et seq*.)  Those rights that were deemed insufficient included rights far broader than the rights owned by plaintiff HISI in the present case, including the following:

1. The right to license the patent to third parties;

2. The right to enforce licensing agreements; and

3. The right to sue infringers.

(473 F.3d at 1190.)

In the present case, plaintiff HISI appears not to own even those rights that were held insufficient to confer standing in *Propat*.  There is no evidence of a written assignment to confer "substantially all" patent rights from Mr. Kowalski to HISI.  (Marks Decl., ¶¶ 5-8.)  Indeed, the United States Patent and Trademark Office's website shows no assignment whatsoever to HISI (although it does show an assignment to another individual not a party to these proceedings).  (Marks Decl., ¶ 6, Exh. B.)  Further, all licenses of the Kowalski patent known to defendant Ocean Duke were entered into by Mr. Kowalski himself, and not by HISI.  (Marks Decl., ¶ 8, Exh. D.)  Additionally, the very license agreement that Mr. Kowalski proposed to Ocean Duke before filing suit clearly retained all substantial license rights for Mr. Kowalski himself, including the exclusive right to sue infringers.  (Marks Decl., Exh. C.)  Finally, the only alleged agreement permitting HISI to sue for patent infringement in this case is an alleged ***oral***

660,749 / 8827-1

6

agreement, entered into at the time of filing of suit in 2004. (Marks Decl., ¶ 5.) Other than permitting the filing of the lawsuit, there were no other terms to that agreement, according to Mr. Kowalski. (*Id.*) Thus, there are questions about whether there was adequate consideration for the agreement, and whether it was an agreement to recover past damages for infringement. But those questions are academic, since the law requires patent assignment agreements to be in writing. (*Enzo Apa & Son, Inc. v. Geapag A.G., supra,* 134 F.3d at 1093.)

In summary, as was the case in *Propat, supra*, plaintiff Kowalski in the present case "retains sufficient rights in the patent that [he] cannot be said to have assigned 'all substantial rights' in the patent" to the other plaintiff suing for infringement, HISI. (473 F.3d at 1190-91. *See also Morrow v. Microsoft*, 499 F.3d 1332, 1342 (no standing to sue for alleged transferee of patent rights, where "agreement did not clearly manifest that the owner would refrain from granting a license to anyone else in the particular filed of exclusivity"); *Sicom Systems, Ltd. v. Agilent Technologies, Inc.,* 427 F.3d 971 (Fed. Cir. 2005).) Under the circumstances, it appears that HISI lacks standing to bring this suit for patent infringement, and without standing to sue, a plaintiff does not have a "case or controversy" upon which to base federal court jurisdiction. (*United States v. Hays, supra,* 515 US at 742 (1995).)

      3.      <u>Plaintiff's "Flow-Through" Theory of Damages Is Legally Untenable.</u>

Mr. Kowalski himself may actually agree with foregoing analysis, because at his deposition he gave a different, "non-standing-based" reason for HISI's ability to sue for lost profits. In his deposition, Mr. Kowalski stated that he was entitled to claim lost profits of HISI on grounds that he was, and is, the 100% owner of HISI. He explained his belief as follows:

> Q.    Do you know, as you sit here today, and if you don't know, then you don't know, do you know the basis upon which Hawaii International Seafood, which is not an owner of the patent, is making a claim in this lawsuit for patent infringement?
>
> A.    Yes, I believe I do. Yes.
>
> Q.    Okay. And what is your understanding or what is your belief based on?
>
> A.    Well, I own the patent and I own the company, so if – if it weren't for their infringement then, you know, I would personally benefit from additional business HIS would do, which I own.

(Marks Decl., ¶ 5, Exh. A, p. 37.)

However, this "pass-through" theory of damages, appealing as it may be to non-lawyers, is not supported by the governing statutes, the case authorities, or the

common law.  "Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party."  (*United States v. Stone*, 83 F.3d 1156, 1160-61 (9th Cir. 1996).)  "The law is clear and uniform:  shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations."  (*Container Mfg. Inc v. Ciba-Geigy Corp.,* 870 F. Supp. 1225, 1231 (D.N.J. 1994).)  "In the case of a corporation, . . . since it constitutes a legal entity separate and apart from its individual owners, the shareholders cannot sue to vindicate its alleged . . . rights, even in situations where they are sole stockholders of the victim corporation."  (*Colon-Pratts v. Municipality of San Sebastian*, 194 F. Supp. 2d 67, 72 (D. Puerto Rico 2002).)

    Suffice it to say that the basis upon which plaintiffs are pursuing lost profits in this case appears tenuous and murky.  Although Mr. Kowalski owns the subject patent and has apparently retained for himself the right to sue for infringement and to license the patent, he himself, as an individual, does not conduct business in the same industry as defendant Ocean Duke.  Therefore, Mr. Kowalski himself has sustained no "lost profits" as a result of Ocean Duke's allegedly infringing sales, and he cannot (personally) recover "lost profits" damages based on those sales.  On the other hand, the legal entity which ***does*** conduct business in the same field

as Ocean Duke, and which (according to plaintiffs) *has* suffered lost profits damages -- HISI -- appears not to have standing to sue for patent infringement under established patent law.

Plaintiffs appear to be "mixing and matching" their liability and damages claims, so as to maximize the size of the damages award they are seeking. But given HISI's apparent lack of standing, and the enormous size of HISI's claimed lost profits damages, Ocean Duke urges that this important and newly-discovered issue be briefed, considered, and ruled upon *before* the parties begin their final trial preparation. Given the closeness of the trial date, Ocean Duke respectfully suggests that a continuance of the trial date may be the most efficient manner of achieving this result. On that basis, Ocean Duke respectfully moves the Court for a continuance of the trial date.

4. <u>HISI's Lack of Standing for "Non-Patent" Claims for Relief.</u>

The remaining claims for relief in plaintiffs' complaint are trademark-based.[2] Mr. Kowalski is the record owner of the mark "CRYO-FRESH," and the complaint alleges that Ocean Duke infringes that mark by its use of the term "CRYO-FREEZE" on some of its packaging. However, CRYO-FREEZE is

---

[2] Counts Two and Three of the complaint are trademark infringement claims under the Lanham Act; Counts Four and Five are state law claims based on trademark infringement; and Count Six seeks treble damages based on Counts Two through Five.

660,749 / 8827-1                                10

not a brand name of any of Ocean Duke's products, and its limited use on some of Ocean Duke's packaging is merely descriptive, and a fair use of the term. (15 U.S.C. §1115(b)(4).)

But apart from the merits of the case, it appears HISI is not a proper plaintiff for trademark claims either. Mr. Kowalski admitted in deposition that he alone, and not his company, is the owner of the mark CRYO-FRESH. (Marks Decl., ¶ 11.) Further, neither the United States Patent and Trademark Office, nor plaintiffs' Exhibit List, contains evidence of an assignment or other instrument granting HISI rights in the mark. (Marks Decl., ¶ 12.) As is the case with patents, trademark assignments are not effective unless they are in writing. (15 U.S.C. § 1060(a)(3) ("[a]ssignments shall be by instruments in writing duly executed. . . .").)

In conclusion, it appears that HISI is not a proper plaintiff for any of the claims alleged in plaintiffs' complaint. Mr. Kowalski may be a proper plaintiff, but his *personal* damages -- if any -- are orders of magnitude less than the damages allegedly suffered by HISI. Thus, this newly-discovered issue of lack of standing is critical in this case, and Ocean Duke urges that the Court closely consider its impact on pre-trial scheduling, and whether it is appropriate to postpone the trial of this matter in order to resolve these issues.

B.    *Impact of Claims Construction Decision.*

A claims construction hearing, based on a motion brought by plaintiffs, is set for November 16, 2007 -- about two weeks before trial.  In its papers filed in connection with the motion, defendant Ocean Duke urged that the court construe the Kowalski patent as it did in the related litigation brought by Tuna Processors, Inc. (the "TPI Markman Ruling").  The TPI Markman Ruling not only construed some of the claims of the Kowalski patent, but also invalidated one of the key independent claims.

Meanwhile, plaintiffs have filed a motion for reconsideration of the TPI Markman Ruling, and it is not clear if that motion will be set for hearing.  In any event, defendant Ocean Duke did not have an opportunity to address any of the issues raised in plaintiffs' motion for reconsideration (which was filed just two days before Ocean Duke's opposition was due), and has not done so.  It is also not clear if plaintiffs will raise the same issues in their reply papers for the motion in this case, or if plaintiffs intend for the November 16, 2007 hearing in *this* case to serve as a *de facto* motion for reconsideration of the TPI Markman Ruling.

In either event, defendant Ocean Duke urges that the construction of the claims in the TPI Markman Ruling, if it remains unchanged, makes this an appropriate case for summary judgment.  Ocean Duke believes that plaintiffs have no admissible evidence whatsoever that Ocean Duke's seafood was treated with a

process in which organic materials were heated in the range stated in the TPI Markman Ruling. The Shih patent, used by Ocean Duke's supplier (a company located in Bali, which has no other relationship to Ocean Duke than being its supplier), specifies a range *outside of* the limit stated in the TPI Markman Ruling (that is, about 180 degrees Centigrade), and, to Ocean Duke's knowledge, plaintiffs have no admissible evidence that the seafood sold by Ocean Duke was treated with a process using a different heating range. Accordingly, in its present posture, this case seems like a good candidate for summary disposition. Indeed, Ocean Duke has a pending summary judgment motion (albeit filed before issuance of the TPI Markman Ruling, and brought on different grounds). Ocean Duke has requested in its opposition to plaintiffs' claim construction hearing that supplemental briefing be allowed on the pending summary judgment motion due to issues raised by the TPI Markman hearing.

Thus, the potentially changing nature of the claims construction in this case provides an additional basis upon which Ocean Duke urges the Court to consider adjusting the trial date and related dates in this case.

C.   *Further Investigation and Discovery.*

Defendant Ocean Duke also learned at Mr. Kowalski's recent deposition that his company is no longer using its long-time supplier, Frescomar, and as a result of that information Ocean Duke has learned of a potential new source for information

relevant to this lawsuit. (Marks Decl., ¶ 13.) Specifically, there appears to be evidence suggesting that the Kowalski patent might not work as advertised, and that Frescomar personnel may have used chemical carbon monoxide instead of "tasteless smoke" to process HISI's seafood. (*Id*.) Further, there are allegations that the Frescomar people may have been involved in the fabrication of documentation relating to burn rates and heating ranges. (*Id*.) If these allegations can be proven, such information may be admissible on the question of patent misuse and potential inoperability.

    Based on the Exhibit Lists that were recently exchanged, plaintiffs apparently intend to introduce at trial a videotape, apparently of an inspection of the Frescomar facility. Given the brand new allegations relating to what may go on at the Frescomar facility, it would seem important for defendant to be able to learn whether the evidence plaintiff intends to introduce at trial is vulnerable to attack, on grounds that some of the information may have been fabricated. This new information came to light only at the end of August 2007, and was only discovered by Ocean Duke a short time later, at the November 1-2 deposition of Mr. Kowalski. Indeed, before just a few months ago, what little activity that occurred in this case was focused on pursuing settlement and avoiding the expense that will inevitably be involved in adequately preparing the case for trial. Now, it appears that those expenses must be undertaken.

### III. GOOD CAUSE EXISTS TO CONTINUE THE TRIAL

Motions for continuance are within the sound discretion of the court. (*United States v. 2.61 Acres of Land*, 791 F.2d 666, 670 (9th Cir. 1985).) The district court has broad discretion to grant a continuance. (*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986).) In considering a motion for continuance, the Court should consider, *inter alia*, (1) the movant's diligence in preparing its case, (2) the inconvenience to the court and the other party and (3) the harm to the movant if the motion to continue is denied. (*2.61 Acres*, 791 F.2d at 671.)

In this case, Ocean Duke has been diligent in preparing its case for trial under the circumstances, having been the first side to file a motion for summary judgment and to schedule depositions in this case, which began only recently after a second round of settlement discussions on October 1, 2007, ended at an impasse. Before late summer and early fall of this year, plaintiffs had liberally agreed to extensions of trial and deadlines, seeming to have back-burnered this case while they litigated or tried to settle others. (Marks Decl., ¶ 14.) Now that a third round of settlement negotiations has failed, adequate time should be allowed to narrow issues by way of appropriate motions to prepare the case for trial.

Ocean Duke will be prejudiced if the trial date and related deadlines are not continued. This is a complex case involving technical processes, numerous patent claims and terms, expert testimony, overseas discovery, foreign witnesses,

thousands of pages of documents, and analysis of financial data relating to all the parties. Ocean Duke is proceeding with discovery, but discovery is proceeding slowly due to prior efforts to settle the case over the past few years, Plaintiffs' own lack of attention to litigating the case until only recently, the complexity of the issues, and the fact that witnesses, documents, and processing plants are located overseas.[3]

## IV. CONCLUSION

For the foregoing reasons, Ocean Duke respectfully requests that this Court grant the Motion to Continue Trial and establish motion hearing and related dates as discussed hereinabove.

---

[3] In addition, expert witness exchanges were not clearly set in this case. The pretrial order required disclosure of expert witnesses by certain dates. Subsequently, the parties stipulated to extending the expert witness disclosure deadlines, but the stipulation prepared by plaintiffs' counsel did not specify a deadline for submission of reports by Ocean Duke's experts. Ocean Duke timely disclosed its non-employee experts, Prof. Wayne Iwaoka and Michael McEnerney. Mr. McEnerney is currently working on a rebuttal report to that of plaintiffs' damages expert David Francom, now that his schedule opened up. It is anticipated that just as Dr. Francom's damages analysis is similar to that done in the King Tuna and related cases, Mr. McEnerney's report will criticize that analysis in similar fashion to his report in the King Tuna and related cases. (Marks Decl., ¶ 15.)

DATED:  Honolulu, Hawai`i, November 13, 2007.

        /s/ Louise K. Y. Ing_____
        LOUISE K. Y. ING
        ALLISON KIRK GRIFFITHS
        TIMOTHY L. NEUFELD
For PAUL S. MARKS
        Attorneys for Defendant Ocean Duke