IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>   Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>   Defendant. | Case No. CV04-00055 BMK<br><br>**DECLARATION OF PAUL S. MARKS** |

## DECLARATION OF PAUL S. MARKS

I, Paul S. Marks, declare as follows:

1. I am a lawyer with Neufeld Law Group, counsel to defendant Ocean Duke Corporation, admitted *pro hac vice* in this case. I make this declaration in support of the Motion to Continue Trial and to Extend Pretrial Deadlines.

2. I have personal knowledge of the facts described in this declaration, except where otherwise indicated, and if called upon to testify in court under oath, I could and would so testify.

3. I took the deposition of William Kowalski and his company, Hawaii International Seafood, Inc. ("HISI"), on November 1 and 2, 2007. I had requested these depositions and served deposition notices in mid-August, setting the

depositions for early October, *after* the settlement conference that had been set for October 1, 2007. However, the depositions did not take place until early November because plaintiffs demanded that Ocean Duke's executives be deposed first, so they could oppose Ocean Duke's summary judgment motion. Ocean Duke agreed to move the Kowalski deposition in order to accommodate plaintiffs' desires (although Ocean Duke did not agree to travel to Hawaii for the depositions, and the Court did not order Ocean Duke to do so).

4. Because the depositions were taken so recently, the final transcripts are not yet available. I have reviewed a rough draft of the transcripts, and have confirmed that the rough drafts accurately depict what Mr. Kowalski testified to at the deposition.

5. The testimony referred to or quoted in the foregoing points and authorities proceeded as follows, and true and correct copies of the relevant pages from the transcript rough draft are attached hereto as Exhibit A:

Q: . . . In other words, no written agreements between you and your company related to the licensing of the patent?

A: Not that I can think of.

Q: Okay. Same question, but relating to the right to assert claims under the patent. In other words, are there any written agreements between you, the patent owner, and Hawaii

International Seafood that related to either your right or Hawaii International Seafood's right to make claims for infringement of the patent?

A: I can't think of any.

Q. Okay. Do you know, as you sit here today, and if you don't know, then you don't know, do you know the basis upon which Hawaii International Seafood, which is not an owner of the patent, is making a claim in this lawsuit for patent infringement?

A. Yes, I believe I do. Yes.

Q. Okay. And what is your understanding or what is your belief based on?

A. Well, I own the patent and I own the company, so if -- if it weren't for their infringement then, you know, I would personally benefit from additional business HIS would do, which I own.

* * *

Q: Well, yeah. You said that there was an agreement between you and the company that would allow the company to bring the lawsuit. Was that the extent of the agreement or was there

more to the agreement?

A: I think that's the essence of the agreement.

Q: Okay. And am I correct that there's nothing in writing that is from that time frame when the agreement was made that confirms or refers to the agreement?

A: Yes.

Q: I'm correct.

A: I believe you're correct.

6. Attached hereto as Exhibit B is a true and correct copy of two printouts from the United States Patent and Trademark Office website, showing no assignment of any patent to Hawaii International Seafood, Inc., but showing instead an assignment to an individual who is not a party to this lawsuit. I obtained these documents by logging onto the website of the United States Patent and Trademark Office, at the URL "http://www.uspto.gov/," and searching for assignments of the Kowalski patent, as well as any assignments of any patent to "Hawaii International Seafood." The assignment of the Kowalski patent to the individual (Mr. Sandau) is the only assignment of the Kowalski patent shown by the website.

7. Attached hereto as Exhibit C is a true and correct copy of a January 24, 2000 letter from Mr. Kowalski to Duke Lin, along with a proposed Importation

and Distribution License Agreement. The opening paragraph of the Agreement states that Mr. Kowalski is the "Licensor," and paragraph 8.1 provides that Mr. Kowalski will have full control of any patent litigation. There is no reference in the agreement to Mr. Kowalski's company, HISI, and no place for that entity to sign the document.

8. In discovery, plaintiffs have turned over many patent license agreements, most or all of which have apparently been entered into in settlement of patent litigation. In this trial, those license agreements have been designated as Defendant's Trial Exhibits Nos. 28 through 43. The license agreements I have found are between Mr. Kowalski (personally) and the following entities: Fishworks, Acuatica, Cong Ty Tnhh, etc., Martee S.A., JACSS Seafood, Kagushima Industrial, Minobe Swissan, PT Cecilisarah Abadi, PT Deho Canning Co., PT ITU, PT Ujung Timur, Pacific Network, Inc., Sherill, Inc., Thai Ocean Venture, Jana Brands, and Universlinks Trading. I have reviewed each of these license agreements, and have determined that in each one, the licensor of the Kowalski patent is Mr. Kowalski himself, and not his company, HISI. Further, HISI is not a signatory to any of the foregoing agreements. In order to reduce the size of this filing, I have decided to attach, for purposes of showing an example, only one such licensing agreement -- Defendant's Trial Exhibit No. 28, which agreement is attached hereto as Exhibit D.

9. Attached hereto as Exhibit E is plaintiffs' Trial Exhibit List. I have reviewed the exhibits on this list and have not been able to find any document that assigns either the Kowalski patent or the CRYO-FRESH trademark to HISI.

10. Attached hereto as Exhibit F is a true and correct copy of the Expert Report by David B. Francom (without accompanying exhibits). This report shows the alternative "lost profits" and "reasonable royalty" damages opinions of Mr. Francom.

11. Attached hereto as Exhibit G is deposition testimony from the "rough" transcript of Mr. Kowalski's deposition, showing that he testified that he, and not his company HISI, owns the CRYO-FRESH trademark.

12. Attached hereto as Exhibit H is a printout from the United States Patent and Trademark Office website, showing no assignment of the CRYO-FRESH trademark to Hawaii International Seafood, Inc. (or anyone else). I obtained this document by logging onto the website of the United States Patent and Trademark Office, at the URL "http://www.uspto.gov/," and searching for assignments of the CRYO-FRESH trademark. Further, the plaintiffs' Exhibit List does not show any such assignment document.

13. The deposition of Mr. Kowalski revealed that he has had a falling out with Frescomar, his former supplier of "tasteless smoke." I am informed and believe that, as a result of this falling out, there is new management, and there are

now allegations that the Kowalski patent may not work as plaintiffs claim it does, that Frescomar may have used pure carbon monoxide to treat seafood, and that certain burn rates and heating temperatures for the Kowalski patent, as practiced, were fabricated. Ocean Duke does not know if these allegations are true or not, but understands that these discovery issues have been brought to the Court's attention in related "Kowalski patent" cases. Further, plaintiffs' Exhibit List contains reference to a videotape of the Frescomar facilities. That videotape (or those videotapes) were not turned over to Ocean Duke in discovery. Thus, one can infer that plaintiffs intend to show the videotape at trial. Because Ocean Duke has not seen the videotape(s), and because in any event there are new allegations that the processes used in the Frescomar facility were not following the Kowalski patent and may be related to fabricated evidence, Ocean Duke requests additional time before trial to investigate and conduct discovery on these matters.

14    Before late summer and early fall of this year, plaintiffs had requested and agreed to extensions of trial and related deadlines, resulting in at least two or three court orders continuing the trial date in this case.

15.    Finally, expert witness exchanges were not clearly set in this case, through no fault of the Court. The pretrial order required disclosure of expert witnesses by certain dates. Subsequently, at plaintiffs' request, the parties stipulated to extending the expert witness disclosure deadlines, but the stipulation

prepared by plaintiffs' counsel did not specify a deadline for submission of reports by Ocean Duke's experts. A true and correct copy of the Stipulation and Order is attached hereto as Exhibit I. Ocean Duke timely disclosed its non-employee experts, Prof. Wayne Iwaoka and Michael McEnerney. However, due to the press of business, Mr. McEnerney was unable to prepare a report to exchange at the same time as the disclosure, and counsel for Ocean Duke relied on the precise language of the stipulated court order in designating Mr. McEnerney as an expert witness without a written report. Mr. McEnerney is currently working on a rebuttal report to that of plaintiffs' damages expert David Francom, now that his schedule has opened up. Mr. McEnerney's report in this case will criticize that analysis in similar fashion to his report in the King Tuna and related cases. It is anticipated that the critique of Dr. Francom's damages analysis will be quite similar, if not virtually identical, to the one he prepared in the King Tuna and related cases. Thus, in essence, plaintiffs have had Mr. McEnerney's report in their possession, as a practical matter, ***well before*** Mr. McEnerney was even designated as an expert witness in this case.

I declare under penalty of perjury of the United States and the State of Hawaii that the foregoing is true and correct.

Executed in Los Angles, California, on __11-13-2007__.

_____
PAUL S. MARKS