# Bill Kowalski
P.O. Box 30486
Honolulu, HI 96820
Phone: (808) 839-5010, Ext. 105; Fax: (808) 833-0712

---

January 24, 2000

Mr. Duke Lin, President
Ocean Duke Corporation dba Duke International
3450 Fujita St.
Torrance, CA 90505

Re: **Importation of tasteless smoked product for U.S. distribution**

Dear Mr. Lin:

Included in this package are two letters --one notifying you that you may be infringing on my U.S. tasteless smoked seafood patent No. 5972401, and this letter offering you a solution so that you may continue your importation and distribution of tasteless smoked seafood. We hope to avoid disrupting your business and plan to work expeditiously with you and your manufacturers to complete licensing as soon as possible.

The 73 claims of my patent broadly cover all processes of making tasteless smoke and using it to treat all seafood and meat products. If you are importing product that is manufactured using a process that is covered by my patent then you can avoid action against infringement and possible treble damages by purchasing from licensed manufacturers, or by having your unlicensed manufacturers become licensees. We respectfully request that you identify all your manufacturers so that we may enter into patent licensing agreements with them. Please provide us with each manufacturer's company name, contact name, address, telephone, fax and email address.

If you wish to avoid action against infringement during the interim period until we have licensed your manufacturers, you may enter into a temporary license agreement with us. Enclosed please find a copy of this temporary license agreement whereby you agree to pay the standard royalty rate of $.25 per pound for all product shipped from each manufacturer after your receipt of the accompanying letter of notification that you may be infringing. In other words, you will be paying us royalties prior to your manufacturers being licensed. As each of your manufacturers becomes licensed, they will begin paying us royalties and you will stop paying on their behalf. You should carefully document the first shipment for which each manufacturer has paid so that there will be no double payment of royalties.

EXHIBIT C          ODC 69

*Bill Kowalski*
January 21, 2000
Page 2

All your unlicensed inventory and shipments in transit prior to your receipt of the letter of notification are not subject to royalties and may be sold. However, any of your customers that are intermediate distributors may choose to avoid action against infringement and not purchase such product from you until you have a temporary agreement with us or your manufacturers are licensed. If you choose to enter into the temporary agreement with us, please provide us with the following information:

- Number of pounds of your current inventory of tasteless smoked seafood.
- Number of pounds in transit after your receipt of the letter of notification.
- Number of pounds of purchase orders scheduled to be shipped after your notification.
- All future shipments from each manufacturer until the manufacturer notifies you, and we confirm, that they have become licensed.

Royalty payments will be due the fifteenth of the following month for all shipments leaving all factories during a month. A refundable one month security deposit equal to the royalty rate times average monthly shipments over the past year is required to initiate the temporary agreement. In the event of non-payment of royalties greater than 45 days after the month of shipment, you will be considered to be in default of the temporary agreement. If royalties are not paid your product will be considered unlicensed and will not be authorized for distribution in the U.S. market as tasteless smoked product.

As soon as we identify all tasteless smoked seafood manufacturers, we will be working to license them as quickly as possible. One important requirement of licensing is that they certify that they are complying with the quality standards of the tasteless smoke treatment process in terms of smoke composition, smoke treatment, and product labeling. This is to ensure that the product is not misbranded for distribution in the U.S.

This certification requires an on-site inspection by a third party such as the U.S. National Marine Fisheries Service (NMFS) within six months of the manufacturer's signing of the licensing agreement. We can provide technical assistance and cylinders of tasteless smoke as needed to bring each manufacturer into compliance with the specifications. Such certification will be invaluable to you as the direct importer. You can confidently inform your customers that your product is made with the genuine patented tasteless smoke process.

There is great potential to expand the U.S. importation and distribution of tasteless smoked seafood. I look forward to your favorable consideration of our offer to enter into a temporary license agreement to continue your business uninterrupted.

Sincerely yours,

Bill Kowalski

IMPORTATION AND DISTRIBUTION LICENSE AGREEMENT

Effective as of _____, 2000 (the "Effective Date"),

WILLIAM R. KOWALSKI, a U.S. citizen, with residence and mailing address at 2161 Kalia Road, No. 306, Honolulu, Hawaii 96815 (the "Licensor")

and

_____, a U.S. or foreign citizen, partnership, or corporation, with mailing address at _____, a direct importer and distributor of tasteless smoked seafood (the "Licensee")

agree as follows:

I. BACKGROUND AND CERTAIN DEFINITIONS.

The Licensor, invented certain inventions (the "Inventions") relating to tasteless smoking of fish that are disclosed in U.S. Patent 5,972,401 issued October 26, 1999 (the "Patent").

The Licensee wishes to obtain the right to import and distribute in the U.S. tasteless smoked seafood produced at foreign facilities using inventions disclosed in the Patent until the manufacturers of the tasteless smoked seafood enter into patent license agreements with the Licensor directly. Accordingly, the Licensee and the Licensor have entered into this agreement (this "Agreement").

II. DEFINITIONS.

As used in this Agreement, the following terms shall have the meanings set forth below:

2.1 "Licensed Territory" means the United States of America (U.S.) and its territories and its possessions and anywhere else subject to U.S. law.

2.2 "Licensed Products" means and is limited to products which, in the absence of this Agreement, would infringe at least one claim of the Patent.

2.3 "Affiliate" of a business entity or individual means any other business entity or individual which directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the business entity or individual. Such control can be exercised by stock ownership, contractual relationships, understandings or family relationships.

III. IMPORTATION AND DISTRIBUTION LICENSE.

The Licensor hereby grants to the Licensee (and to the Licensee's Affiliates) a nonexclusive license to sell, offer to sell and import the Licensed Products in the Licensed Territory. The term of this license shall begin on the date of execution and ends on March 31, 2000. Nothing in this Agreement is intended to preclude the export or sale for export of Licensed Products on which royalties have been paid to any other country in the World.

IV. ROYALTIES.

4.1 Royalty rate. The Licensee shall pay the Licensor a royalty of $.25 per pound.

4.2 Royalty base. The Licensee shall pay royalties for all Licensed Products shipped from Licensee's manufacturing sources after the date of receipt of notification that the Licensee may be infringing. All Licensee tasteless smoked seafood inventory and shipments in transit from manufacturers prior to the date of receipt of notification have no royalties due the Licensor. For each manufacturer with which a patent license agreement has been executed, all tasteless smoked seafood shipments from that manufacturer are free of royalties from the Licensee.

4.3 Royalty payments. The Licensee shall pay royalties equal to the royalty rate times the number of pounds of Licensed Products shipped by all manufacturers to the Licensee each month except for the aforementioned exclusions. The royalties are due by the fifteenth day of the month following shipment.

4.4 Security deposit. A refundable one month security deposit is due upon signing this Agreement and is refundable at the end of the Agreement term less any outstanding royalties due at that time. The security deposit will be equal to the Patent royalties on the Licensee's average monthly U.S. shipments over the past twelve months.

V. INFORMATION REPORTING

5.1 Required upon Execution. In order to compute the initial royalty base and security deposit the following information is required and is attached as Exhibit A:

The number of pounds of Licensee's inventory of tasteless smoked seafood upon receipt of the letter of notification;

the number of pounds of Licensee's tasteless smoked seafood in transit from each of Licensee's manufacturers upon receipt of the letter of notification, and copies of import documents for such shipments in transit;

the number of pounds of Licensee's purchase orders for tasteless smoked seafood to manufacturers scheduled to be shipped after receipt of the letter of notification, and copies of Licensee's purchase orders for such shipments; and

the average monthly shipments in pounds of tasteless smoked seafood to Licensee from all manufacturers over the last twelve months prior to the date of this agreement, and copies of import documents for such shipments.

5.2 Required monthly. In order to compute and verify the royalties due Licensor each month, a report is due with the payment of royalties showing the number of pounds of tasteless smoked seafood shipped from each manufacturer each month after the receipt of the letter of notification, and copies of import documents for such shipments. Beginning with the date that each manufacturer notifies Licensee, and Licensor confirms, that the manufacturer has a direct patent license agreement with the Licensor, that manufacturer's shipments are no longer reported unless that manufacturer appoints the Licensee to pay on his behalf and the Licensee accepts this appointment.

## VI. DEFAULT AND REINSTATEMENT

6.1 Non-payment of royalties. In the event of non-payment of royalties for more than 45 (forty-five) days after the month of shipment, the Licensee will be in default of this Agreement even if royalties have been paid for subsequent shipments. Product in inventory and in transit during the default period is unlicensed for sale in the Licensed Territory. Reinstatement from default of this agreement requires Licensee to pay all back royalties to Licensor.

## VII. EXPIRATION AND TERMINATION.

7.1 Expiration. The Licensee's obligations under this Agreement (including the obligation to pay royalties) shall end at midnight 12:00 a.m. Hawaii Standard Time March 31, 2000 or invalidation of the Patent, whichever is sooner. The Licensee does not have any obligation to pay any maintenance fees for the Patent, and the Licensor agrees that it will be solely responsible for payment of any maintenance fees. If the Patent is invalidated after a partial month under this Agreement, the Licensee shall pay royalties on shipments during the current month prior to the date of the invalidation.

## VIII. LITIGATION.

8.1 The Licensee shall notify the Licensor of any suspected infringement of the Patent in the Licensed Territory. In the event that litigation against an infringer becomes necessary, the

ODC 73

Licensor will have the sole responsibility to initiate that litigation, and will have full control over that litigation.

## IX.  MISCELLANEOUS.

9.1  **Severability**. The parties agree that if any provision of this Agreement is determined to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall remain unaffected.

9.2  **Integration**. This Agreement contains the entire understanding between the parties with respect to licensing of the Patent in the Licensed Territory, and supersedes all other representations and agreements, express or implied, between the parties concerning the Patent in the Licensed Territory.

9.3  **Amendment**. This Agreement may be amended only by a written instrument signed by both parties, except as provided in Section 7.1 above.

9.4  **Governing Law**. This Agreement shall be interpreted and enforced in accordance with the laws of the State of Hawaii. The Courts of the State of Hawaii and the United States District Court for the District of Hawaii, and no other courts, shall have exclusive jurisdiction over any dispute relating to this Agreement (the Licensor hereby consenting to such jurisdiction). This Agreement has been translated for the Licensor, and the Licensor agrees that the English version of this Agreement shall govern over any translation.

9.6  **Assignment**. This Agreement shall be fully assignable by the parties, without notice or payment.

9.7  **Parties in Interest**. As and when used herein, the terms "Licensor" and "Licensee" shall mean and include the Licensor and the Licensee and their respective heirs, personal representatives, devisees, successors, successors in trust and permitted assigns.

IN WITNESS WHEREOF, the Licensor and the Licensee have executed this Agreement as of the Effective Date.

_____
WILLIAM R. KOWALSKI
                         Licensor


_____
                         Licensee

ODC 74