IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>Defendant. | CIVIL NO. 04-00055 BMK<br><br>**DECLARATION OF MILTON M. YASUNAGA IN SUPPORT OF MOTION IN LIMINE # 4** |

**DECLARATION OF MILTON M. YASUNAGA IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE # 4**

MILTON M. YASUNAGA, hereby declares:

1. I am a partner in Cades Schutte, LLP, counsel for Hawaii International Seafood, Inc. (HISI) and William R. Kowalski (Kowalski) (jointly, Plaintiffs). I make this declaration based upon my personal knowledge, unless otherwise stated, and am competent to testify to the facts related herein.

2. Plaintiffs move the Court, *in limine*, for an Order excluding as a trial witness Charles Cardile because of (1) failure to meet the court-ordered deadlines for expert witness opinions and reports – he is in effect a late-named expert; (2) failure to answer interrogatories and document requests in violation of the

discovery rules and the Court's order compelling discovery, (3) failure to indicate in any way that he has knowledge regarding this case until after the discovery cutoff, (4) his being named is contrary to representations to the Court by Ocean Duke, (5) undue prejudice to Plaintiffs that would occur if the motion is not granted, and (6) the opinions Ocean Duke seeks to have Mr. Cardile give would usurp the functions of the judge and jury – the judge says what the Patent's claims mean and what the law is, and it is the role of the jury to compare the facts against the claims as defined by the Court.

3. By not naming Mr. Cardile as a witness until its October 16, 2007 pretrial statement (a true and accurate copy of which is attached as Exhibit G), Ocean Duke is seeking to obtain the services of an expert witness long after the due date for disclosing expert witnesses and their reports and long after the October 5 discovery cutoff. Mr. Cardile is a "hired gun" - he is a consultant that hires himself out as an expert to various companies and groups. For example, Exhibit F is a true and accurate copy of an Internet version of an October 12, 2004 article from the Los Angeles Times about delays caused by increased scrutiny by the FDA of foods from Asia, reporting:

> Food Tests Hold Up Asian Imports ….
>
> "Asian people, by and large, love dried products,' said Charles Cardile, a consultant helping the importers. 'Oysters, shiitakes, sharks' fin, whatever. They lend themselves to some insect or filth. It's an easy kill for the FDA.'

> Cardile argues that such foods are rarely eaten raw and are usually washed before serving, a process that lessens the chance of contamination....
>
> [A]n FDA agent ... ordered an importer to destroy $250,000 worth of jellyfish .... The inspector allegedly confused salt ... with dirt.... Cardile and an aide from the office of Assemblywoman Judy Chu eventually persuaded the inspector to reverse her decision.

4. Further indication that Cardile is a late-named expert is the stated matter on which Ocean Duke seeks to have him testify – Ocean Duke's pretrial statement (Exhibit G) states:

> Mr. Cardile is expected to testify about the processes used for the treatment of seafood imported by Ocean Duke Corporation from Bali, and the comparison of those processes with the processes described in the Kowalski patent.

This description is similar to the description of the expert opinions Ocean Duke stated in its "Expert Witness Disclosure" sent August 15, 2007 (but which notably did not mention Mr. Cardile) (a true and accurate copy of that expert disclosure is attached as Exhibit E:

> Prof. Iwaoka's testimony shall be a comparison of and the differences relating to the processes and methods of the Kowalski and Shih patents.
>
> Mr. [Roger] Lin is a non-retained expert who will ... provide expert testimony relating to ... a comparison and differences relating to the processes and methods of the Kowalski and Shih patents.

Further indicating that Mr. Cardile is actually serving the role of a late-named expert witness is that Exhibit B of the Pretrial Statement (Ex. G) shows that Ocean Duke intends for Mr. Cardile to testify about exhibits that are also being testified to by Ocean Duke's expert Iwaoka and its "non-retained experts" Lin and Shih.

5. Exhibit D attached hereto is a true and accurate copy of the Stipulation To Extend Deadlines For Disclosure Of Expert Witnesses filed June 4, 2007 (the "Experts Deadline Order"). Ocean Duke's expert disclosure and report deadline was, according to that order, on August 15, 2007, but Ocean Duke failed to disclose Mr. Cardile or produce his opinions and report by that date (see Ocean Duke's "Expert Witness Disclosure" dated August 15, 2007, Exhibit E.

6 Ocean Duke's failure to provide its information/position regarding infringement also constituted a failure to properly respond to interrogatories and requests for production of documents, in violation of the normal discovery rules but, even worse, in violation of the Court's October 25, 2006 Stipulated Order Compelling Discovery From Ocean Duke Corporation ("Order Compelling Discovery"), a true and accurate copy of which is attached as Exhibit A.

5. Exhibit B is a true and accurate copy of Ocean Duke's Supplemental Responses To Plaintiffs' First Request For Answers to Interrogatories Dated October 15, 2004. It shows Interrogatory Nos. 1 and 3 stated and Ocean Duke responded as follows:

> INTERROGATORY NO. 1: Describe with particularity the treatment or processing of fish Ocean Duke sold and/or sells in the U.S. that was or is treated with smoke or carbon monoxide for color retention or enhancement, including ... providing the following details: ... details of precisely how and with what substances each [supplier] treated or treats the fish, ... precisely how said smoke or carbon monoxide was or is produced, filtered, stored, and used; ... [and] the identities of the persons with knowledge of the above information and what knowledge each possesses.

RESPONSE TO INTERROGATORY NO. 1:

… PT Inti Samudera Citra Perkasa produces its own filtered smoke ….

Steven Shih … has knowledge pertaining to the patented process. Roger Lin … has knowledge pertaining to the packaging and labeling.

INTERROGATORY NO. 3: Explain with particularity (and as to each claim of the '401 patent) and identify all reasons, facts, references, prior art, documents, and bases for or relating to each of Ocean Dukes claims, contentions, positions, defenses, or affirmative defenses; the identities of persons with knowledge of the above information and substance of the knowledge of each such person.

RESPONSE TO INTERROGATORY NO. 3:

Persons with knowledge are Roger Lin and the following individual:

Mr. Steven Chih-Hsing Shih

Mr. Cardile's name was never identified and the substance of his knowledge was never mentioned even though these interrogatories required that information if he was someone who had information about those matters. Ocean Duke to date has never supplemented its response to Interrogatory 1 and 3, despite the fact that the Order Compelling Discovery from Ocean Duke ordered that "4. Defendant is further reminded of its duty to timely supplement any discovery response pursuant to Rule 26e." and "5. Appropriate sanctions will be imposed by the Court in the event of non-compliance."

6. Exhibit D is a true and accurate copy of Plaintiffs' First Request For Production Of Documents And Things, which contains numerous requests that

cover an expert's opinions and report and papers or a lay witnesses documents, such as:

> 1. All documents relating to any of the matters referred to in any of the interrogatories … in this litigation or the responses thereto ….
>
> 4. All documents relating to the treatment or processing of fish Ocean Duke sold and/or sells in the U.S. that was treated or processed with smoke or carbon monoxide for color retention or enhancement, including … providing the following details: … details of precisely how and with what substances each [supplier] treated or treats the fish, … precisely how said smoke or carbon monoxide was or is produced, filtered, stored, and used; … [and] the identities of the persons with knowledge of the above information and what knowledge each possesses.
>
> 18. All documents relating to, sent to, or received from your expert witnesses in this case, or which your expert saw, reviewed, obtained, possessed, received, or created in connection with this case or the '401 patent, or which contain any opinions such experts have formed regarding this case.
>
> 29. All documents concerning the products or processes at issue in this litigation or processing fish with carbon monoxide or smoke or fish so processed.
>
> 30. all documents which relate to any comparison of any products imported, sold or offered for sale by you to the invention and/or subject matter claimed and/or disclosed in '401 patent.
>
> 52. All documents relating to any statements of witnesses that Ocean Duke intends to or may call to testify at trial and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial.

These requests cover documents mentioning or involving Mr. Cardile or his work or opinions or comparisons, but none mentioning him or his work or opinions or comparisons was produced to date, and that failure was in violation of the discovery rules and the Order Compelling Discovery from Ocean Duke.

7. Furthermore, the naming of Mr. Cardile is, not only late, but contrary to the representations of Ocean Duke to the Court, which lulled Plaintiffs into not taking action to counter such a witness. Plaintiffs filed this lawsuit on January 27, 2004. Early on, in March 2004, Ocean Duke moved unsuccessfully for change of venue. See Ex. "H" (Order Denying Def's Mot. for Change of Venue, filed 6/07/04) (Ezra, J.). In support of its motion for change of venue, Roger Lin, Chief Operating Officer of Ocean Duke, represented to the Court that "All the witnesses . . . who will testify in the case on issues of importance live and work in Los Angeles, California, almost 2400 miles from this Court," Ex. "I" (R. Lin Decl., dated 3/1/04) at ¶ 3, and that "Ocean Duke's critical witnesses, documents and evidence relating to William Kowalski and Hawaii International Seafood Inc.'s lawsuit against Ocean Duke are located in Los Angeles County, California, not in the Philippines or Indonesia or Hawaii." Ex. "J" (R. Lin Decl., dated 5/19/04) at ¶ 3. These representations signaled to Plaintiffs that domestic persons were knowledgeable of the process used to treat Ocean Duke's imported product and information from Indonesia was not necessary nor would it be used at trial. Roger Lin confirmed this in his August 15, 2007 declaration, in which he stated under oath that:

> 5.    . . . . **I have traveled to Indonesia on several occasions and have visited our supplier's processing facilities on several occasions. In particular, after we received the demand letter**

> relating to the Kowalski patent, I visited our supplier's facilities in Bali as part of my investigation into this matter.
>
> 6.     As a result of my personal observations and inquiries at our supplier's facilities, I have learned that our supplier processes all of its seafood for color retention using a patented process known as [the Shih Patent]. . . . . I have known Mr. Shih for several years and have discussed the patented process with him. Further, **I have seen the equipment used in the Shih process in our supplier's facilities in Bali, and have gained an understanding of how that equipment works to treat seafood for color retention.** Specifically, to process fish for color retention, our supplier heats charcoal in a vacuum oven to a temperature of about 180°C. The equipment separates the resulting carbon monoxide by removing water vapor in a separating device. The carbon monoxide is then drawn into an airbag, and then into a seafood processing device, where the carbon monoxide treats the seafood for color retention.
>
> 7.     . . . . **The Shih patent process that I have seen in use in Bali** does not use anything resembling [Kowalski's] process, but instead involves a separating device that simply separates water vapor and carbon monoxide. The Shih patent does not claim to "purify" the carbon monoxide by the method described in the Kowalski patent; rather, it separates carbon monoxide from water vapor and uses the resulting carbon monoxide to treat the food.

See Ex. "K" (R. Lin Decl., dated 8/15/07) at ¶¶ 5-7 (emphasis added).

8. Great prejudice will occur to Plaintiffs if Ocean Duke is allowed to flout the discovery rules, its representations to the Court (upon which Plaintiffs relied), the scheduling order regarding expert report deadlines, and the Order Compelling Discovery from Ocean Duke (which was issued because of Ocean Duke's extremely dilatory behavior in discovery) – Plaintiffs will either suffer trial by ambush (without an expert to counter Mr. Cardile, since he wasn't named until after the discovery cutoff) or be prejudiced by increased costs which they can ill

afford if this trial is continued. Continuing the trial to allow Defendant to make this litigation even more expensive for Plaintiffs would unfairly prejudice Plaintiffs because Plaintiffs have already made arrangements for their witnesses to travel from out of the state to attend the trial and have scheduled their arrival and departure times based on a December 4 trial start-date. These witnesses have also refrained from taking any other work engagements to be available for trial beginning on December 4, 2007. Ocean Duke's counsel has already indicated an interest in taking advantage of Plaintiffs' relative lack of financial strength, and continuing the trial/reopening the deadlines would unfairly make this litigation even more expensive for Plaintiffs. See id.; cf. Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1063 (9th Cir. 2004) ("If Wong had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance [in its status conference order], and understood by the parties, would have to have been altered as well. **Disruption to the schedule of the court and other parties in that manner is not harmless.**") (emphasis added).

9. See Yeti By Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1105-06 (9th Cir. 2001) (district court properly excluded expert witness testimony where expert's report was produced 28 days prior to trial despite that exclusion of expert's testimony would have made it almost impossible for defendant to rebut

plaintiff's damage calculation), see id. (noting that "Courts have upheld the use of the sanction [under Fed. R. Civ. P. 37(c)(1)] even when a litigant's entire cause of action or defense has been precluded."); see also Fed. R. Civ. P. 37 (c)(1).

10. Furthermore, the opinions Ocean Duke seeks to have Mr. Cardile give would usurp the functions of the judge and jury – the judge says what the Patent's claims mean and what the law is, and it is the role of the jury to compare the facts against the claims as defined by the Court.

11. Therefore, the Court should grant this motion, and exclude as a trial witness Charles Cardile.

I declare, verify, certify, and state under penalty of perjury that the foregoing is true and correct.

DATED: Honolulu, Hawaii, November 13, 2007.

/s/ Milton M. Yasunaga
Milton M. Yasunaga