IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAI'I SEAFOOD, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CV NO 04-00055 DAE-BMK <br><br> FILED IN THE UNITED STATES DISTRICT COURT DISTRICT OF HAWAII <br><br> JUN 0 7 2004 <br><br> at _1_ o'clock and _55_ min. _P_ M. <br> WALTER A.Y.H. CHINN, CLERK |

## ORDER DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE

The court heard Defendant's Motion on June 1, 2004. Milton M. Yasunaga, Esq., appeared at the hearing on behalf of Plaintiff; Erik W. Kvam, Esq., appeared at the hearing on behalf of Defendant, and Timothy L. Neufeld, Esq., appeared at the hearing by telephone on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court DENIES Defendant's Motion for Change of Venue.

## BACKGROUND

Plaintiffs William Kowalski ("Mr. Kowalski") and Hawai'i International Seafood, Inc. ("HIS") (together, "Plaintiffs") assert that on October 19, 1999, the U.S. Patent and Trademark Office ("the Patent Office") issued United States Patent No. 5,972,401 ("Patent 401") to Mr. Kowalski. Opposition,

Exhibit H

at 1. Plaintiffs claim that Patent 401 pertains to a process that Mr. Kowalski invented that treats food with smoke "from which sufficient taste causing components have been removed so that the treated food does not end up with taste imparted from the smoke." Id. Plaintiffs assert that preserving food using "tasteless smoke" is preferable to freezing it because when meat is treated with tasteless smoke it retains its natural red color. Id. at 2. Plaintiffs aver that all of the previous patents that the Patent Office had issued for processes using smoke to treat meat had involved smoke that caused the meat to taste like smoke. Id. at 3. Consequently, the Patent Office concluded that Mr. Kowalski's invention was novel and issued Patent 401.

Plaintiffs assert that under the Process Patent Amendment Act of 1998, an individual is liable for patent infringement if he or she imports or sells a product that was made using a patented process. Id. at 3 (citing 35 U.S.C. § 271(g) (2000)). Mr. Kowalski claims that after he received his patent, he sent notices of infringement and offers to license to importers and distributors who appeared to be importing or selling fish using his patented process. Id. at 4. Mr. Kowalski states that he was required to send these notices under 35 U.S.C. § 287(b)(2). Id. at 4. According to Plaintiffs, Mr. Kowalski sent one of these notices to Defendant Ocean Duke Corporation ("Defendant"). Plaintiffs maintain

that under 35 U.S.C. § 287(b)(5)(C), Defendant was required to send the notice to its manufacturers and obtain a written statement from them indicating that they did not believe that the identified patents were being infringed. Id. at 4. Plaintiffs claim that Defendant never informed Plaintiffs that it took this action.

Plaintiffs filed a Complaint against Defendant on January 27, 2004, alleging that 1) Defendant violated Mr. Kowalski's patent in violation of 35 U.S.C. § 271; 2) Defendant infringed Mr. Kowalski's trademark in violation of 15 U.S.C. § 1114; 3) Defendant engaged in unfair competition in violation of 15 U.S.C. § 1125; 4) Defendant committed deceptive trade practices in violation of Hawai'i Revised Statute § 481 A-3; and 5) engaged in common law unfair competition. Id. at 7. Plaintiffs seek treble and/or punitive damages.

On March 4, 2004, Defendant filed a Motion for Change of Venue ("Motion"). Plaintiffs filed a Memorandum in Opposition to Defendant's Motion ("Opposition") on May 14, 2001. Defendant filed a Reply Memorandum in Support of Motion ("Reply") on May 21, 2001.

## STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.

§ 1404(a) (2000). The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960)).

Transfer is limited, however, "to those federal districts in which the action 'might have been brought.'" Van Dusen, 376 U.S. at 616; see also A. J. Indus., Inc. v. United States Dist. Court for Central Dist. of California, 503 F.2d 384, 387 (9th Cir. 1974).

In determining whether to transfer under § 1404(a), the court should consider the following statutory factors: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. Private interest factors the Court should consider include: (i) relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (iii) possibility of viewing subject premises; (iv) all other factors that render trial of the case expeditious and inexpensive. See Creative Technology, Ltd. v. Aztech Sys. Ptd, Ltd., 61 F.3d 696, 703 (9th Cir. 1995) (quoting Zipfel v. Halliburton Co., 832 F.2d 1477, 1487 (9th Cir. 1987)); see also Decker Coal Co. v. Commonwealth Edison

Co., 805 F.2d 834, 843 (9th Cir. 1986). The relative financial resources of the parties may also be taken into consideration. In re First International Services Corp. v. Econotech Services, Inc., 47 B.R. 882, 883 (D. Conn. 1983). Public interest factors the court should consider include: (i) administrative difficulties flowing from court congestion; (ii) imposition of jury duty on the people of a community that has no relation to the litigation; (iii) local interest in having localized controversies decided at home; (iv) the interest in having a diversity case tried in the forum familiar with the governing law; and (v) the avoidance of unnecessary problems in conflicts of law. See Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1140 (citing Creative Technology, 61 F.3d at 703-04).

## DISCUSSION

In determining whether to grant a motion to transfer, courts typically accord substantial deference to the plaintiff's choice of forum. Securities Investor Protection Corp. V. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). In fact, the Ninth Circuit has stated that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker, 805 F.2d at 843. Transfer should not be granted if changing the venue simply shifts the burden of

inconvenience from the defendant to the plaintiff. Gherebi v. Bush, 352 F.3d 1278, 1303 (9th Cir. 2003).

Defendant argues that this court should transfer venue to the Central District of California due to the inconvenience Defendant and its witnesses will face if this litigation occurs in Hawai'i. Furthermore, Defendant asserts that the interests of justice counsel the transfer of venue. The court considers each of these arguments.

### A.   CONVENIENCE OF THE PARTIES AND WITNESSES

In arguing that this court should transfer venue, Defendant states that it is a small California corporation that operates from one office in Torrance, California. Motion, at 1. Defendant represents that it currently employs less than twenty individuals, and all of these people live in or around Los Angeles. As a result, Defendant maintains that all of the employees and expert witness that would testify in this case on its behalf live and work in California. Defendant foresees that it will call at least three employees to testify in this matter – one salesperson, the chief operating officer, and an operations manager. Id. at 4. Furthermore, Defendant states that it plans to call at least one expert witness to testify. Id. Defendant maintains that if these individuals are required to testify in Hawai'i, a significant burden will be placed upon the witnesses and the

corporation. Defendant represents that its organization is "leanly staffed, without duplication of function from employee to employee." Id. at 5. Defendant states that the absence of even one employee-witness would negatively impact its ability to operate. Defendant further points out that since it sells seafood, it is imperative that it sell its products quickly, or else it will lose money. Id.

In response, Plaintiffs argue that Defendant is "not as vulnerable as it would have the Court believe." Opposition, at 10. Plaintiffs states that in 2001, Defendant was recorded as being the 62nd largest business in Los Angeles and in both 2000 and 2001, Defendant generated revenues exceeding $190 million. Id. As a result, Plaintiffs maintain that Defendant is capable of financing litigation in Hawai`i. Furthermore, Plaintiffs assert that if this court transfers venue to California, then Plaintiffs' witnesses would be significantly burdened by having to travel to California.

Plaintiffs state that at present, they have seven other cases pending in the District of Hawai`i concerning the infringement of Patent 401. Id. at 6. Furthermore, the District of Hawai`i has continuing jurisdiction over two other lawsuits involving the patent. As a result, Plaintiffs argue that the need exists for their employees and counsel to be in Hawai`i to be available for matters relating to these other lawsuits. Id. at 11.

7

In considering these arguments, the court notes that Plaintiffs have not specifically indicated how many witnesses they intend to call to testify who reside in Hawai`i. Regardless of this fact, however, this court notes that in cases concerning motions to transfer venue, courts weigh less heavily concerns about inconvenience to witnesses when the witnesses in question are employees of one of the parties. For instance, in Shelter-Lite, Inc. v. Reeves Bros., Inc., an Ohio District Court denied Defendant's motion to transfer venue and concluded that while "employees of the defendant will be required to leave their place of employment to attend trial in Ohio, it does not appear that their absence would be more damaging to the defendant's affairs than would be the absence of plaintiff's employees from their place of employment to attend trial in North Carolina." 356 F. Supp. 189, 196 (N.D. Ohio 1973). See also Galonis v. National Broadcasting Co., Inc., 498 F. Supp. 789, 793 (D.N.H. 1980). In the case currently before this court, it appears that transferring venue from Hawai`i to the Central District of California would simply shift the burden of inconvenience from Defendant and its witnesses to Plaintiffs and their witnesses. As a result, this factor does not convince the court to transfer venue to California. However, the court also considers Defendant's arguments concerning factors relating to the interests of justice.

B.  THE INTERESTS OF JUSTICE

1.  PRIVATE INTEREST CONSIDERATIONS

Defendant argues that the interests of justice demonstrate that this case should be heard in California. Motion, at 6. Defendant points out that this case concerns Defendant's importation and sale of certain seafood products. Defendant asserts that it imports its products into Los Angeles, and the majority of these products are stored in California. While it sells its products to individuals throughout the United States, Defendant maintains that it does not sell the subject seafood products in Hawai'i. Id. Furthermore, Defendant claims that it does not have any representatives or employees who sell products in Hawai'i. Id.

As a result, Defendant contends that private interest considerations weigh in favor of transferring venue to California. Defendant states that all of its business activities occur in Torrance, California and its records are kept in California. Id. at 7. Furthermore, Defendant argues that "to the extent Ocean Duke has more witnesses than Plaintiffs, it will be more costly for Ocean Duke to produce them if the case proceed[s] in Hawai'i because the witnesses live in California." Id. at 7. Defendant also points out that to the extent that this case requires a view of the subject premises, the vast majority of its products are located in California. Reply, at 7.

9

In response, Plaintiffs argue that their documents and the physical evidence that they will need to litigate this action are located in Hawai`i. Plaintiffs state that in 2000 the Hilo Fish Company filed a lawsuit against Plaintiffs in the District of Hawai`i, seeking a declaration that Hilo Fish was not infringing Plaintiffs' patents, CV No. 00-00185 HG-KSC. Plaintiffs claim that after two and a half years of litigation, the court entered a Consent Judgment and Permanent Injunction in their favor on September 19, 2002. Id. at 5. Plaintiffs state that depositions and exhibits from the Hilo Fish matter are potentially relevant to the matter currently before this court, and these documents are located in Hawai`i and are under a protective order. Id. at 12.

A court typically gives less deference to arguments that venue should be transferred simply to facilitate easier access to documents when the documents in question are easily transportable. For instance, in Met-L-Wood Corp. v. SWS Industries, Inc., the court noted that "[e]ach side argues its preferred venue is more convenient because of the location of documents. That is not an important factor, however, unless documents are so voluminous that their transport is a major undertaking. That is not so here." 594 F. Supp. 706, 719 (N.D. Ill. 1984). In the case currently before the court, Defendant has not made a showing that the

documents involved in this litigation are so voluminous that transfer of venue is required.

### 2. PUBLIC INTEREST CONSIDERATIONS

Defendant also argues that public interest considerations counsel moving this case to California. Defendant concedes that the State of Hawai'i has an interest in protecting its citizens. However, Defendant asserts that all of the alleged misconduct concerning patent infringement occurred in California. As a result, Defendant contends that Hawaii's community interest is diminished. Id. at 7. Defendant also argues that this court should transfer venue due to court congestion in the District of Hawai'i. Reply, at 8. In support of its argument, Defendant notes that there is currently a shortage of federal district judges in Hawai'i. Id.

Plaintiffs dispute Defendant's arguments and assert that public interest factors support keeping the lawsuit in Hawai'i. At present, Plaintiffs argue that there are ten cases involving the patent that are pending in Hawai'i, two of which have resulted in settlement and the entry of Stipulated Judgments and Permanent Injunctions in favor of Plaintiffs. Plaintiffs argue that litigating the matter at bar in Hawai'i will promote efficiency. Plaintiffs contend that since the Hilo Fish lawsuit and another lawsuit concerning these patents was litigated in the

11

district of Hawai`i, "the District of Hawai`i is the court most likely to be able to achieve a quick and economical settlement in the new litigation over the same patent." Id. at 13. Furthermore, Plaintiffs argue that the state of Hawai`i has a significant interest in discouraging injuries that result from patent infringement. Id. at 14. Plaintiffs contend that Hawai`i "is the center of the U.S. tuna fishing industry and a substantial and unique market for raw fish . . . treated with [Mr. Kowalski's] patented process." Id.

In considering the parties' arguments, the court agrees with Defendant that the fact that Plaintiffs have a number of other cases concerning these patents which are pending in this jurisdiction does not, on its own, provide a compelling reason to cause this court to deny Defendant's Motion. Various judges within the District of Hawai`i have been assigned to hear these cases, and as a result, uniformity in interpretation of the patent is not guaranteed. Consequently, the court rejects Plaintiffs arguments that the court should decline to transfer venue so that a court familiar with the law will hear this case and that uniformity in interpretation of the patent will be achieved.

However, the court also concludes that none of the public interest factors cited by Defendant are compelling enough to cause this court to transfer venue to the Central District of California. Furthermore, the court determines that

Plaintiffs make a convincing argument that Hawai'i has a local interest in this matter due to the fact that Hawai'i "is the center of the U.S. tuna fishing industry and a substantial and unique market for raw fish . . . treated with [Mr. Kowalski's] patented process." Opposition, at 14.

In considering Defendant's Motion, the court concludes that Defendant has not demonstrated that this court should transfer venue to California under § 1404(a). Section 1404(a) "provides for transfer to a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient." Gherebi v. Bush, 352 F.3d 1278, 1303 (9th Cir. 2003). In this case, transferring this litigation to the Central District of California would simply transfer the burden of inconvenience from Defendant to Plaintiffs.

C.   VENUE IS PROPER IN THIS CASE

On the last page of Defendant's Motion, Defendant appears to raise the additional argument that the court should transfer venue because venue is improperly laid in the District of Hawai'i. Defendant states that it has not committed any of the alleged acts of infringement in Hawai'i and as a result, this court must transfer venue pursuant to 28 U.S.C. § 1406(a). As Plaintiffs point out, this is an odd argument for Defendant to make since Defendant has also argued that this court should transfer venue under 28 U.S.C. § 1404(a). Section 1404(a)

13

presumes that the court in which a suit was originally filed is a proper venue. See e.g. Van Dusen v. Barrack, 376 U.S. 612, 634 (1964) (stating that "[a]lthough both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege"). Regardless, the court considers Defendant's argument.

28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2000). In considering whether venue is proper in this case, the court notes that 28 U.S.C. § 1400(b) establishes that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2000). The U.S. Code explains that a defendant "resides" in any judicial district where Defendant is subject to personal jurisdiction at the time the action was commenced. 28 U.S.C. § 1391(c) (1993).

In patent-related cases, the law of the Federal Circuit governs the issue of personal jurisdiction. See e.g., 3d Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377-78 (1995) (using Federal Circuit law to determine whether a district court had jurisdiction over an out-of-state defendant corporation in a case where plaintiff had asserted patent and state law claims). Since the parties have not conducted discovery and have not had an evidentiary hearing, Plaintiffs are only required to make a prima facia showing that personal jurisdiction exists. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348-49 (Fed Cir. 2003). Furthermore, this court must accept all uncontroverted allegations by the Plaintiffs as true, and the court must construe all pleadings and allegations in Plaintiffs' favor. Id. at 1349.

Plaintiffs argue that this court has both general and specific jurisdiction over Defendant. It is well-settled that "a defendant whose contacts with a forum are 'continuous and systematic' may be subject to jurisdiction even when the cause of action has no relation to those contacts." Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citation omitted). In arguing that this court can exercise general jurisdiction over Defendant, Plaintiffs assert that Defendant "may very likely be the most significant supplier of "mahi mahi" to Hawai`i in terms of both quality and

15

quantity." Opposition, at 17. Plaintiffs claim that Defendant has captured 20% or more of the market for frozen "mahi mahi" in Hawai`i for at least the past five years. Plaintiffs further allege that Defendant has recorded significant sales of shrimp, squid other seafood products to Hawai`i. Plaintiffs point out that Defendant even markets its product as "mahi mahi," using the Hawaiian name, rather than the name "Dorado," which is the name by which the fish is commonly known in places such as California and Mexico. Id. at 18. Plaintiffs state that chefs at many local Hawaiian restaurants such as the Halekulani and Sheraton, often request "Ocean Duke mahi mahi." Id. Accepting Plaintiffs' uncontroverted arguments as true for purposes of this Motion, this court concludes that it can properly assert general jurisdiction over Defendant.

In order to establish specific jurisdiction, a defendant must "purposefully direct[] his activities at residents of the forum and the litigation result[s] from alleged injuries that arise out of or relate to those activities." Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation, 297 F.3d 1343, 1351 (Fed. Cir. 2002). However, a defendant can defeat jurisdiction, if the defendant can show that exercising jurisdiction would violate "fair play and substantial justice." Id. As Plaintiffs argue, in cases where the controversy concerns a defendant's sale of an injurious product, a court can conclude that

16

purposeful minimum contacts exist if a defendant has "placed the accused [product] in the stream of commerce, . . . knew the likely destination of the product[], and [defendant's] conduct and connections with the forum state were such that [defendant] should reasonably have anticipated being brought into court there." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994).

Plaintiffs assert that Defendant uses Hawaii-based intermediaries to sell the disputed tuna that is treated with smoke to retain the fish's natural color. Opposition, at 19. Plaintiffs assert that "numerous cases" of products that are marked with Defendant's "Black Tie" label are currently located in Hawai'i and are available for sale to Hawai'i consumers. Id. To support this contention, Defendant included with its Opposition photographs of Ocean Duke Tuna Steaks located at a Hawai'i storage company that are marked as "Black Tie Cyro-Freeze Tuna Steaks." Id., Exhibit 15.

In response, Defendant states that Plaintiffs have not sufficiently demonstrated to the court "how these boxes happened to be in storage, where precisely the storage facility is, whether [the] boxes contain any product or who put them there." Reply, at 15. Furthermore, Defendant asserts that it does not purposefully ship its product to Hawai'i using intermediaries. Id. Defendant

17

represents that it has no knowledge of how these boxes with its label could have arrived in Hawai'i. Id. at 15-16. In considering Defendant's representations, this court concludes that Defendant has offered no evidence to directly contradict Plaintiffs' allegations that Defendant has sold the disputed product to Hawaii-based companies. Consequently, for purposes of this Motion, the court accepts Plaintiffs' assertions as true and determines that it can exercise specific jurisdiction over Defendant. As a result, this court concludes that venue is not improper in this case.

## CONCLUSION

For the reasons stated above, the court DENIES Defendant's Motion for Change of Venue.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 7, 2004.

_____
DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

William R. Kowalski, et al. v. Ocean Duke Corporation, Civil No. 04-00055 DAE-BMK; ORDER DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE