CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA        2954-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL
SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 DAE-BMK <br><br> PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS |

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND THINGS

Pursuant to Fed. R. Civ. P. 34, Plaintiffs WILLIAM R. KOWALSKI and

HAWAII INTERNATIONAL SEAFOOD, INC., by their attorneys, hereby request

Exhibit C

that Defendant produce the following documents and things for inspection and copying by November 15, 2004 at 9:00 a.m. at the offices of Cades Schutte LLP, Honolulu, Hawaii 96813, in accordance with the Definitions and Instructions attached to these Requests.

## Definitions

A.    "Ocean Duke", "Defendant", "YOU" or "YOUR" (regardless of use or non-use of capital letters) means OCEAN DUKE CORPORATION and any of its subsidiaries, divisions, departments, predecessors or successors, subsidiaries, parents and affiliates, including, but not limited to, any past or present directors, officers, agents, employees, contractors, consultants, attorneys, and others acting on behalf of or controlled by OCEAN DUKE CORPORATION.

B.    "Kowalski" (regardless of use or non-use of capital letters) means William R. Kowalski, and any agents, employees, contractors, consultants, attorneys, and others acting on behalf of or controlled by William R. Kowalski.

C.    "HISI" means Hawaii International Seafood, Inc., and any of its subsidiaries, divisions, departments, predecessors or successors, subsidiaries, parents and affiliates, including, but not limited to, any past or present directors, officers, agents, employees, contractors, consultants, attorneys, and others acting on behalf of or controlled by Hawaii International Seafood, Inc.

D.    "'401 patent" (regardless of use or non-use of capital letters) refers to United States Patent No. 5,972,401, the patent-at-issue.

E.    "Document" (regardless of use or non-use of capital letters) means all matter within the scope of Fed. R. Civ. P. 34, and includes without limitation things, correspondence, records, reports, memoranda, notes, e-mails, letters, telegrams, telexes, messages (including without limitation reports of telephone conversations and conferences), studies, analyses, books, magazines, newspapers, publications, booklets, pamphlets, circulars, bulletins, instructions, minutes, or other communications (including without limitation inter-office and intra-office communications), tangible things, objects, models, questionnaires, surveys, contracts, memoranda of agreement, assignments, books of account, orders, working papers, records of summaries or negotiations, voice recordings, records or summaries of personal interviews or conversations, appointment calendars, diaries, schedules, printouts, drawings, specifications, patents, patent applications, certificates of registration, applications for registration, graphs, charts, studies, plans and planning materials, statistical statements, notebooks, data sheets, microfilm, microfiche, photographic negatives, breadboards, architectural diagrams, blueprints, schematics, logic diagrams, timing diagrams, pictures, photographs, microscopically obtained photographs, test results, belts, tapes, magnetic tapes, paper tapes, plotter output recordings, discs, data cards, films, data

processing films and other computer readable records or programs, object codes, source codes, and all other written, printed or recorded matter of any kind, and all other data compilations from which information can be obtained, and translated if necessary, and all originals (or, if originals are not available, identical copies thereof), drafts and non-identical copies thereof. If the original of a document is not available or was not reviewed or received by a particular person, "document" includes any identical copy of the original. Any document bearing any marks, including without limitation initials, stamped indicia, comments or notations not a part of the original text or photographic reproduction thereof is a separate document. English translations of all documents should be produced to the extent they exist.

F.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

G.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender, and singular or plural, as in each case is most appropriate.

H.     The term "including" means including but not limited to.

I.     The term "each" means each and every (regardless of use or non-use of capital letters).

J.     The term "person" (regardless of use or non-use of capital letters) refers to natural persons, corporations, firms, proprietorships, partnerships, trusts,

joint ventures, groups, associations, institutes, organizations, and any other business, governmental or legal entities, including any divisions, department and units thereof.

K.    The term "prior art" (regardless of use or non-use of capital letters) shall be construed in accordance with its generally accepted meaning as applied under 35 U.S.C. Sections 102 and 103.

L.    The terms "relating to" or "relate to" or "related to" (regardless of use or non-use of capital letters) means comprising, relating to, referring to, depicting, in any way relevant to, concerning, evidencing, describing, identifying, mentioning, constituting, memorializing, discussing, considering, reviewing or reporting on.

M.    The term "communication" (regardless of use or non-use of capital letters) is used in the broadest possible sense, and means any transmission or exchange of information from one person or entity to another, by any means.

N.    "Patent" (regardless of use or non-use of capital letters) refers to any patent, patent application, patent publication, utility model or design.

## Instructions

1.    All responsive nonprivileged documents in the possession, custody or control of Ocean Duke (as defined above) are to be produced. If, after exercising due diligence to secure the documents requested, you cannot produce all

responsive documents, so state, produce to the extent possible, specify the reasons why you are unable to provide a full and complete response, and state what information and knowledge you do have concerning the unproduced portion.

2.     If any portion of a document is responsive to a request, the entire document shall be produced, redacting only privileged material, if any.

3.     You are to produce the original and each non-identical copy of each document requested herein which is in your possession, custody or control.

4.     If you decline to produce any document or part thereof based on a claim of privilege or other claim, you shall, where applicable:

    (a)     Describe generally the subject matter of the document and/or communication;

    (b)     Identify the author and addresses and recipients of the documents;

    (c)     Identify the participants in and witnesses to, the communication and all other persons to whom the substance of such communications has been disclosed;

    (d)     State the date on which the document was prepared or that communication was made;

    (e)     Identify each person who has ever had possession, custody or control of the document or any copy; and

(f)    Provide sufficient further information concerning the document and/or communication to explain the privilege and permit adjudication of the propriety of such claim.

5.    Each document produced in response to this set of document requests should include a production number.

6.    Pursuant to Fed. R. Civ. P. 34, all documents must be made available for inspection pursuant to this set of document requests as those documents are kept in the usual course of business or shall be organized or labeled to correspond with the categories in this set of document requests.  Documents which were stapled, clipped or otherwise fastened or bunched together shall be produced in that form.

7.  These requests are of a continuing nature, and any additional responsive documents discovered subsequent to the scheduled date of production herein should promptly be produced.

DATED:  Honolulu, Hawaii, October 15, 2004.

CADES SCHUTTE LLP

MILTON M. YASUNAGA
MARTIN E. HSIA
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.

Document Requests

1.    All documents relating to any of the matters referred to in any of the interrogatories or document requests in this litigation or the responses thereto (including but not limited to Plaintiffs' First Request For Answers To Interrogatories or any of Defendant's discovery requests, including but not limited to those documents relied upon or referred to in responding to those requests and those documents related to any matter contained in any response to those requests).

2.    All documents referred to in Defendant's Rule 26(a) Initial Disclosures or any party's complaint or counterclaims or other claims or answer(s) or responses to any complaint or counterclaim or other claims thereto in this litigation or related to any of the matters referred to therein.

3.    All documents relating to any of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses in this litigation, or the identities of the persons with knowledge of the above information and substance of the knowledge of each such person.

4.    All documents relating to the treatment or processing of fish Ocean Duke sold and/or sells in the U.S. that was or is treated or processed with smoke or carbon monoxide for color retention or enhancement, including but not limited to documents related to any of the following details:  the identity of the entities who treated or treat the fish and the details of precisely how and with what substances each treated or treats the fish; from whom each of those treating entities obtained or obtains the smoke or carbon monoxide and precisely how said smoke or carbon monoxide was or is produced, filtered, stored, or used; the identities of the entities that sold the treated fish to Ocean Duke ; when, how, and by whom each treatment process was invented, used or disclosed; precisely how the fish treated with each treatment process was and/or is labeled, described, advertised, listed on product lists or price sheets or U.S. Customs and/or FDA documents, marketed, and/or promoted by manufacturers, Ocean Dukes' suppliers, Ocean Duke, and Ocean Duke's customers (including whether and precisely how the words "smoke" or "smoked" and/or "tasteless" or any variations or abbreviations thereof or the words "carbon monoxide" or "CO" were used or not used); the identities of the persons with knowledge of the above information and what knowledge each possesses.

5. All documents relating to each sale or attempted sale of fish by Ocean Duke in the U.S. which was treated or processed with smoke or carbon monoxide for color retention or enhancement or by any of the methods called for or referred

to in Interrogatory 1 (of Plaintiffs' First Request For Answers to Interrogatories) or your answers thereto or which was described or labeled as being treated with tasteless smoke (with or without the words "wood" or "filtered" included, and whether or not the word "smoke" was used in the past tense), including but not limited to documents involving any of the following details: the dates of the sale by Ocean Duke and the date the fish was purchased by Ocean Duke ; the identities of the manufacturer/processor, the seller to Ocean Duke , and the purchaser from Ocean Duke ; the type of fish (e.g., yellow fin tuna, swordfish, mahimahi, etc.); **the cut of fish (e.g., "saku", "loins", "poke cubes", etc.);** the pounds of each type of fish; **the quality, characteristics, legality, and regulatory approval of the fish;** the revenue, cost and profit of the sale – provide documents related to any of the bases for those amounts and the elements of cost or deduction; the treatment or processing method used and/or how the fish was labeled, described, promoted, advertised, listed on product lists or price sheets or U.S. Customs or FDA documents, marketed, and/or promoted by manufacturers, Ocean Dukes' suppliers, Ocean Duke , and Ocean Duke's customers (including whether the words "smoke" or "smoked" or "tasteless" or "carbon monoxide" or "CO" were used for labeling, descriptions, advertising, marketing, promotion, product lists or price sheets for that fish); and also provide documents regarding monthly and annual and other periodic totals of the above information regarding cost, revenue, profit and poundage (and, if available, broken down by treatment or processing method, manufacturer/processor, and labeling-description-advertising).

6.    All documents relating to each sale or attempted sale in the U.S. by Ocean Duke of frozen tuna, swordfish, hamachi, mahimahi, and snapper which Ocean Duke claims was not treated or processed with smoke or carbon monoxide, including but not limited to documents providing the following details: the dates of the sale by Ocean Duke and the date the fish was purchased by Ocean Duke ; the identities of the manufacturer/processor, the seller to Ocean Duke , and the purchaser from Ocean Duke ; the type of fish (e.g., yellow fin tuna, swordfish, mahimahi, etc.); the pounds of each type of fish; the revenue, cost and profit of the sale – provide the bases for those amounts and the elements of cost or deduction; and how the fish was labeled, described, advertised, listed on product lists or price sheets or U.S. Customs or FDA documents, marketed, and/or promoted by manufacturers, Ocean Dukes' suppliers, Ocean Duke , and Ocean Duke's customers; and provide monthly and annual totals of the above information regarding cost, revenue, profit and poundage (but broken down by treatment or processing method, manufacturer/processor, and labeling-description-advertising).

7.    All documents relating to Ocean Duke's positions as to damages Ocean Duke may owe (assuming liability can be proven), including any documents relating to any of the following details:  for any reasonable royalty theory, all products and processes constituting the royalty base, the royalty rate applied to each such product and process, Ocean Duke's contentions on any factor relevant to a hypothetical negotiation, any other factor that Ocean Duke contends supports a reasonable royalty calculation, and the amount of damages; for any theory other than reasonable royalty, the method of calculation, all products and processes of Ocean Duke  or any other entity relevant to such calculation, the revenue or other base for each such product and process, the profit margin or other rate applied in Ocean Duke's calculation, any other factor that Ocean Duke contends supports the calculation, and the amount of damages; if Ocean Duke contends that Kowalski's lost profits are not awardable, the basis for such contentions; all bases for contesting that such infringement by Ocean Duke is willful; for any theory of pre-judgment and post-judgment interest, the interest rate, the basis for selecting such rate, the method of calculating the interest, and the amount of interest.

8.    All documents relating to Ocean Duke's use of the term "tasteless smoke" (whether or not the words "filtered" or "wood" were used in conjunction therewith, and whether or not the word "smoke" was used in the past tense – e.g., "smoked" and whether any abbreviations were used), including regarding when Ocean Duke first learned of it and how and why and over what specific time periods and in what documents or labels or descriptions and for what specific products Ocean Duke used the term (and how those products were in fact processed), and the quantities and sales revenues and costs of those products.

9.    All documents relating to any actions Ocean Duke took, any information obtained, and any communications related to the notice of infringement, other correspondence from Kowalski or his counsel regarding the '401 patent, or Ocean Duke's 's first becoming aware of the '401 patent and/or what, if anything Ocean Duke  did in response to any of the above.

10.    All documents relating to Kowalski, HISI, the '401 patent, or U.S. Patent 5,484,619, or any products, issues, people, claims or potential claims, or things related thereto.

11.    All documents related to any of the following matters:  the identity of any person who has knowledge of or was involved in the processing or treatment, invention or research or development of the processing or treatment, testing, certification or regulatory approval (including by the U.S. Customs Service, U.S.

Food and Drug Administration, National Marine Fisheries Service, U.S. Department of Commerce; National Oceanic & Atmospheric Administration Seafood Inspection Program, etc.), purchasing, importing, labeling, describing, marketing, promotion, advertising, offers to sell, sales, costs, revenues, or profits of the frozen fish (treated for color retention or enhancement) imported or sold by Ocean Duke , and/or the role or knowledge of any such person.

12.    All documents relating to the amount and/or basis for any claims of Ocean Duke for damages against Kowalski and/or HISI.

13.    All documents relating to prior art pertinent to the '401 patent or the searches or investigations to locate such prior art that Ocean Duke has conducted or caused to be conducted, including documents relating to any of the following matters:  when and by whom each search or investigation was made and at whose request; each prior art reference or device which Ocean Duke contends is pertinent to the '401 patent and any explanation of  why it is pertinent, including but not limited to why it renders a claim of the '401 patent obvious, the reasons for making any combination, the reason why such reference anticipates a claim, why the prior art reference is considered to contain an enabling disclosure, etc., and where in the reference [e.g., by column and line numbers in the patent documents] the alleged teaching or suggestion or anticipating disclosure or other relevant part appears; and any documents prepared by or for or received by Ocean Duke concerning such prior art.

14.    All documents relating to PT Intisamudera Citra Perkasa, Inti Samudra Citra Perkasa, Chih-Hsing Shih, Ever Hope International, Yelin Enterprise, Chung Cheng Fisheries PTE, Empress International, Fortuna Sea Products, Global Fisheries PTE, Hock Bee Frozen Foods PTE, Jana Brands, North Atlantic Inc., PT Balinusa Windumas, PT Lucky Samudra Pratama, Sea One Seafoods, Ocean Duke Seafoods, Slade Gordon, Talon Group, Thai Ocean Venture, Yamaoka Nippon Corporation, Richard Friend, Kanemitsu Yamaoka, Tetsuo Adachi, Perry Yap, PescaRich Manufacturing Corporation, Ocean Manufacturing Corporation, Angel Seafood Corporation, East Asia Fish Co., Joel Santos, Tuna Processors, Inc., or any supplier of Ocean Duke , and (1) relating to any business agreements or arrangements or licenses or purchases/sales Ocean Duke may have or had or is pursuing with any of those entities, or 2) relating to the '401 patent, Kowalski, HISI, prior art relevant to the '401 patent, tasteless smoke, carbon monoxide, this litigation or any issue pertinent to this litigation, fish treated with or the treatment of fish with smoke or carbon monoxide for color retention or

enhancement, frozen tuna, hamachi, swordfish, snapper, tilapia, or mahimahi that Ocean Duke claims was not treated for color retention or enhancement, or claims Kowalski brought or might bring, or U.S. Patent 5,484,619 or U.S. Patent 6,331,322.

15.    All documents related to any patent infringement claims or litigation Ocean Duke (or any entity or organization in which Ocean Duke is a member or with which Ocean Duke is affiliated) brought or thought or is thinking about bringing against anyone, whether in the United States or elsewhere.

16.    Documents sufficient to explain the ownership of Ocean Duke Seafoods.

17.    All documents relating to the involvement or knowledge any owner of Ocean Duke had or have with importing to or selling in the U.S. fish that is treated with smoke or carbon monoxide for color retention or enhancement, the treatment of such fish, or claims or potential claims under the '401 patent.

18.    All documents relating to, sent to, or received from your expert witnesses in this case, or which your expert witnesses saw, reviewed, obtained, possessed, received, or created in connection with this case or the '401 patent, or which contain any opinions such experts have formed regarding this case.

19.    All documents relating to any process for treating food with carbon monoxide, smoke, cold smoke, filtered smoke, or tasteless smoke, including but not limited to documents concerning the invention, conception, reduction to practice, learning, improvement, modification, use, commercialization, labeling or description, legality, standards, requirements or laws regarding, or regulatory approval of, or products treated with any such process.

20.    All documents proving or tending to prove whether or not the frozen tuna, swordfish, hamachi, snapper, and/or mahimahi Defendant imports or sells or imported or sold and claims was not treated for color retention or enhancement was in fact not treated for color retention or enhancement.

21.    All documents relating to purchases of carbon monoxide or the precursor chemicals used to make carbon monoxide, the making of carbon monoxide, the use of carbon monoxide in treating food, or mixing carbon monoxide with smoke or gases to treat food, or labeling of foods treated with carbon monoxide, or Ocean Duke's or its suppliers' relationship or involvement

therewith or with any products treated with such carbon monoxide.

22.    All documents relating to any dealings and communications with or sanctions or rejections or detentions or inspections or certifications by the U.S. Food and Drug Administration ("FDA"), U.S. Department of Commerce ("USDC"), U.S. Customs Service ("Customs"), National Oceanic & Atmospheric Administration ("NOAA"), or the National Marine Fisheries Service ("NMFS"), or efforts to circumvent those entities or to avoid penalties being imposed by any of those entities or to avoid stoppages or rejections of shipments of fish by any of those entities or to keep information from any of those entities.

23.    All documents constituting or relating to brochures, publications, advertisements, labeling, product lists, descriptive statements, and promotional material relating to 1) treatment of food with carbon monoxide or cold, filtered, or tasteless smoke or 2) filtering of smoke or 3) food treated with carbon monoxide or cold, filtered, or tasteless smoke.

24.    All documents relating to any patent or patent application or agreement involving filtering smoke or the use of carbon monoxide or any type of smoke to treat food.

25.    All documents relating to listing of facilities on the National Oceanic & Atmospheric Administration of National Marine Fisheries Service list for lot inspection of tasteless smoke treated tuna, including but not limited to actions or representations or supply of information made to get on the list or stay on the list or qualify for lot inspections, and/or anything regarding the truth or falsity of such representations or information.

26.    All documents relating to purchasing, servicing, maintenance, or use of equipment, parts or supplies related to smoke, carbon monoxide, formic acid, sulfuric acid, filtering smoke, or mixing smoke and carbon monoxide, and also documents indicating the identities or involvement of the suppliers, servicers, users, technicians, consultants, persons, companies, and entities involved in such activities.

27.    All documents relating to any processor of fish stopping the use of smoke after having its facility certified by the FDA, USDC, NMFS, or NOAA and/or after the FDA, USDC, NMFS, or NOAA inspectors leave, and any connection Ocean Duke  has to such matters or the fish involved.

28.   All of your accounting and other records and documents related in any way to your purchases, sales, costs, and other activity or knowledge or communications or information concerning frozen fish that has been treated with smoke or carbon monoxide.

29.   All documents concerning the products or processes at issue in this litigation or processing fish with carbon monoxide or smoke or the fish so processed.

30.   All documents which relate to any comparison of any products imported, sold, or offered for sale by you to the invention and/or subject matter claimed and/or disclosed in '401 patent.

31.   All documents which relate to your competition with any entity in the sale or distribution of fish processed with smoke or carbon monoxide, including all documents which relate to the financial and market effects of such competition, and the strategies and actions taken or considered for responding to such competition.

32.   All documents which relate to any communications between you and your attorneys or any other person which relate to the validity, enforceability and/or infringement of the '401 patent, including any documents upon which you would rely to establish that your alleged infringement of the '401 patent was not wanton or willful.

33.   All documents which comprise or relate to any United States patents, United States patent applications, and/or foreign patents or applications which relate to any of the processed frozen fish you import, offer for sale, or sell.

34.   All documents that refer to or relate to any analysis or interpretation of the '401 patent, including, but not limited to, all documents that refer to the subject matter disclosed in the '401 patent, the prior art of the '401 patent or the enforceability, infringement or validity of the '401 patent.

35.   All documents which show or otherwise relate to the date and the circumstances under which you first became aware of the '401 patent or any efforts made or actions taken by you, after you became aware of the '401 patent or as a result of or in response to that awareness.

36.    Any licenses or prospective licenses (even if not consummated) that you or any affiliate organization have taken or negotiated to take that relate to the frozen fish you import, offer for sale, or sell.

37.    All documents that identify or otherwise show all subsidiaries, parents and affiliates, predecessors or successors-in-interest, or other businesses or entities related to you, including each and every officer and director of each such entity, and including your corporate organization chart.

38.    All documents upon which you intend to rely at trial in this case.

39.    All documents relating to contracts or agreements for insurance or indemnification regarding the claims in this lawsuit or actual or potential claims by Kowalski for patent infringement, including but not limited to insurance contracts and indemnification agreements with manufacturers or processors or sellers of the product or seafood you buy, import, sell, or otherwise handle or with your customers, and related correspondence or notes.

40.    All documents related to U.S. Patent 5,484,619 or related to agreements or communications with or licenses or help from Kanemitsu Yamaoka.

41.    All documents relating to industry-wide production capacity, actual or projected, of any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process from 1996 to the present.

42.    All documents relating to market research, market studies, market share analysis, sales forecasts and/or competitive analyses concerning of any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

43.    All documents relating to competition and competitive conditions for the sale of any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

44.    All documents relating to the marketing of, or market for, any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

45.     All documents relating to marketing, sales and/or distribution strategies for any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

46.     All documents relating to pricing or competition for sales related to any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

47.     All documents relating to any allegations, whether formal or informal, of unfair competition, patent infringement, violations of State, Federal, or foreign law concerning the treating, labeling, importing, or condition of fish, or any other Federal, State, or foreign statute or regulations asserted against or by Ocean Duke or any of its suppliers or processors.

48.     All documents relating to any non-Ocean Duke sales (quantity, price, treatment method, manufacturer, supplier, labeling, seller) of fish treated with smoke or carbon monoxide for color retention or enhancement.

49.     All documents relating to communications between Ocean Duke and any other entity relating to any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

50.     All documents relating to Ocean Duke's production, manufacture, distribution, and/or sale of any process for treating fish with smoke or carbon monoxide for color retention or enhancement or any fish treated with any such process.

51.     All documents relating to projected U.S. market demand (for the period 1997 through 2015) for any process for treating fish with smoke or carbon monoxide for color retention or enhancement or fish treated with any such process.

52.     All documents relating to any statements of witnesses that Ocean Duke intends to or may call to testify at trial and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial.

53.     All documents containing or constituting information that may be relevant to the issue of whether or not Ocean Duke should be subject to enhanced damages for willful infringement.

54.     All documents relating to what if anything Duke Lin had to do with any of the activities or types of activities referred to in Plaintiffs' interrogatories to

Defendant.

55.    All documents concerning the terms or marks "Cryofreeze" or "Cryofresh".

56.    All documents concerning U.S. Patent 6,331,322 or the process described in that patent.

57.    Any trademark registrations you have for the term or mark "Cryofreeze".

58.    All of Ocean Duke' tax returns for 1997 through 2005 or the discovery cutoff, which ever is later.

59.    All of Ocean Duke' financial statements for 1997 through 2005 or the discovery cutoff, which ever is later.

60.    All documents related to the knowledge or involvement of any relative of Duke Lin concerning the processing or labeling or description or promotion or sale of the frozen fish imported, purchased, sold or offered for sale by Ocean Duke.

61.    All documents concerning the compensation from Ocean Duke of Duke Lin or any relative of Duke Lin.

62.    All documents related to or describing Duke Lin's or his family's ownership interest in or connection with any of the suppliers or processors or buyers of the frozen fish imported, purchased, sold, or offered for sale by Ocean Duke.

63.    All documents related to the knowledge or involvement of (a) any owner or affiliate of Ocean Duke, or (b) any owner of any owner or affiliate of Ocean Duke concerning the processing or labeling or description or promotion or sale of the frozen fish imported, purchased, sold or offered for sale by Ocean Duke.

64.    All documents reflecting or relating to communications between Defendant or Duke Lin (or any of their relatives, employees or affiliates) and any of the suppliers or processors or customers of the frozen fish imported, purchased, sold, or offered for sale by Defendant.

65.    Any indemnification agreements concerning frozen fish imported, purchased, sold, or offered for sale by Defendant.

66.    All documents which relate to any comparison of any products imported, sold, or offered for sale by either Defendant to fish treated with tasteless smoke or smoke.

67.    All documents which relate to any comparison of (a) chemical carbon monoxide not derived from smoke with (b) tasteless smoke or smoke.

68.    All documents which relate to any comparison of (a) foods treated with chemical carbon monoxide not derived from smoke with (b) foods treated with tasteless smoke or smoke.

69.    All documents referring or related to shelf life or alleged shelf life of the frozen or previously frozen fish Defendant imported, purchased, sold, or offered for sale.

70.    All documents relating or referring to the appearance or customer reaction to the appearance of the frozen or previously frozen fish you imported, purchased, sold, or offered for sale.

71.    All documents relating to the labeling or description of any of the frozen fish imported, purchased, offered for sale or sold by Defendant, including but not limited to accuracy, inaccuracy, changes, or failure to make changes of or to such labeling or descriptions.

72.    All documents regarding or relating to any visit or inspection or demonstration or viewing or description of the facilities of any of the suppliers or processors of the frozen fish you import(ed), purchase(d), offer(ed) for sale, or sell or sold.

73.    All photographs and videotapes or documents depicting, describing, or relating to (1) any aspect of the processing or inspection of frozen fish imported, purchased, sold or offered by Defendant; or (2) the equipment or supplies used in the abovementioned processing or inspection.

74.    All documents related to, indicating, identifying, describing, or proving whether any frozen or previously frozen tuna, swordfish, hamachi, grouper, snapper, mahimahi, tilapia, or other fish imported, purchased, offered for

sale, or sold by either Defendant was **not** treated with carbon monoxide or smoke, and the quantities, revenues, and costs thereof.

75.    All documents that help indicate which of the products imported, purchased, sold or offered for sale by Ocean Duke was treated with carbon monoxide, which were treated with smoke for color retention, which were treated with smoke in order to give the food a smoke taste, and which were not treated with carbon monoxide or smoke.

76.    All records of purchases of carbon monoxide by Defendant or any of Defendant's suppliers.

77.    All records of the creation of carbon monoxide by Defendant or any of Defendant's suppliers.

78.    All documents regarding or relating to the use or meaning of the term "tasteless smoke"

79.    Any attorney opinion letters re use or meaning of term "tasteless smoke".

80.    All communications (including but not limited between [1] Duke Lin (and any of his relatives) and Ocean Duke (or any of its employees or executives or owners or agents) or [2] between Duke Lin and any of his relatives) relating to the '401 Patent, Kowalski or HIS, this litigation or related litigation or the claims therein, frozen fish, the labeling or description or promotion or marketing of frozen fish, the processing of fish for color retention or enhancement, carbon monoxide, smoke, the appearance or shelf life or characteristics or benefits or problems of fish processed with carbon monoxide or smoke, or any of the matters covered in interrogatories served on Defendants.

CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA    2954-0
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4216
Telephone:  (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL
SEAFOOD, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 8 2004

at __11__ o'clock and __15__ min __A__ M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE PRODUCTS CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00056 ACK-LEK <br><br> CERTIFICATE OF SERVICE <br><br> (Re: PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS) |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 15, 2004 an original and

one (1) copy of PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF

DOCUMENTS AND THINGS, dated October 15, 2004 was duly served by hand

delivery to the following person(s) at their last known address.

      WILLIAM G. MEYER, III, ESQ.
      Dwyer Schraff Meyer Jossem & Bushnell
      1800 Pioneer Plaza
      900 Fort Street Mall
      Honolulu, HI 96813

      Attorney for Defendant

DATED: Honolulu, Hawaii, _____October 18_____, 2004.

      CADES SCHUTTE LLP


      MILTON M. YASUNAGA
      Attorney for Plaintiffs
      WILLIAM R. KOWALSKI and
      HAWAII INTERNATIONAL SEAFOODS,
      INC.