## DECLARATION OF ROGER LIN

I, Roger Lin, declare:

1. I am Chief Operating Officer of Ocean Duke Corporation. I have personal knowledge of the matters set forth in this declaration, except where otherwise indicated. If called upon to do so, I could and would testify under oath to said matters in a court of law.

2. Ocean Duke Corporation ("Ocean Duke") is a California corporation, founded in 1984, with its headquarters located in Torrance, California. Ocean Duke is a family-run business, and I have been involved in the operation of the business for much of my adult life, rising to the level of Chief Operating Officer which I currently hold. As Chief Operating Officer, I am the corporate officer who is primarily responsible for responding to and handling legal claims against the company.

3. Ocean Duke's business is the importation into the United States, and distribution throughout the United States, of fresh and frozen seafood products. We obtain our seafood, pre-processed, from our supplier in Bali, Indonesia; Ocean Duke is not directly involved in the processing of seafood.

4. In the year 2001, Ocean Duke received a demand letter from Hawaii International Seafoods, Inc., alleging that seafood products that we distribute had been processed with methods that infringed on U.S. Patent 5,972,401 (hereafter, the "Kowalski" patent). A true and correct copy of the demand letter is attached hereto as Exhibit A. In my role as Chief Operating

2

Exhibit K

Officer, I investigated the matter, and directed the company's response to the letter. The allegation in the demand letter was that our supplier had used processes described in the Kowalski patent to treat seafood for color retention. (It is well known in the industry that maintaining the natural color of seafood enhances the market value of the product.)

5.  From at least the year 2001 to the present, Ocean Duke has purchased all of its fish that has been treated for color retention from its supplier located in Bali, Indonesia. The corporate name of our supplier is PT Inti Samudera Citra Perkasa. I have traveled to Indonesia on several occasions and have visited our supplier's processing facilities on several occasions. In particular, after we received the demand letter relating to the Kowalski patent, I visited our supplier's facilities in Bali as part of my investigation into this matter.

6.  As a result of my personal observations and inquiries at our supplier's facilities, I have learned that our supplier processes all of its seafood for color retention using a patented process known as U.S. Patent No. 6,331,322 (hereafter, the "Shih Patent"). The processes described in the Shih patent were created by Steven Shih, an officer of our supplier in Bali, and one of the inventors and owners of the Shih patent. I have known Mr. Shih for several years and have discussed his patented process with him. Further, I have seen the equipment used in the Shih process in our supplier's facilities in Bali, and have gained an understanding of how that equipment

3

works to treat seafood for color retention. Specifically, to process fish for color retention, our supplier heats charcoal in a vacuum oven to a temperature of about 180°C. The equipment then separates the resulting carbon monoxide by removing water vapor in a separating device. The carbon monoxide is then drawn into an airbag, and then into a seafood processing device, where the carbon monoxide treats the seafood for color retention.

7.  As I understand the process for the Kowalski patent, as alleged in the instant lawsuit, sawdust is used to create smoke, and that smoke is then altered by a certain process that creates "tasteless super-purified smoke" to treat the seafood. It is alleged by plaintiff that the Kowalski patent uses a tower purification system that is made up of ice, two cloth filters, and activated carbon, to remove certain chemical constituents of smoke and smoke particulates, thereby producing the "tasteless super-purified smoke." The Shih patent process that I have seen in use in Bali does not use anything resembling this process, but instead involves a separating device that simply separates water vapor and carbon monoxide. The Shih patent does not claim to "purify" the carbon monoxide by the method described in the Kowalski patent; rather, it separates carbon monoxide from water vapor and uses the resulting carbon monoxide to treat the seafood.

8.  To the best of my knowledge, and the knowledge of Ocean Duke Corporation, in the course of its business Ocean Duke Corporation has never acquired, purchased, stored, owned, held possession of, or sold any fish

4

treated with the processes or methods described in the Kowalski patent, as alleged by plaintiff in its complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I signed this declaration in Torrance, California, on August 15, 2007.

*[signature]*

**ROGER LIN**

5