CADES SCHUTTE LLP

MILTON M. YASUNAGA     3058-0
MARTIN E. HSIA         2954-0
ALLISON MIZUO LEE      7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 BMK <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL AND RELATED DEADLINES DUE TO (1) NEW ISSUE OF PLAINTIFF'S LACK OF STANDING TO SUE; (2) REQUESTED BRIEFING OF DISPOSITIVE MOTIONS; AND (3) READINESS FOR TRIAL; DECLARATION OF MILTON YASUNAGA; EXHIBITS "A" – "C"; CERTIFICATE OF SERVICE** <br><br> **TRIAL DATE: December 4, 2007** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL AND RELATED DEADLINES DUE TO (1) NEW ISSUE OF PLAINTIFF'S LACK OF STANDING TO SUE; (2) REQUESTED BRIEFING OF DISPOSITIVE MOTIONS; AND (3) READINESS FOR TRIAL**

## I.    INTRODUCTION

On November 13, 2007, merely three weeks before trial is set to commence in this action on December 4, 2007, Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") filed the instant Motion to Continue Trial and Related Deadlines Due To (1) New Issue of Plaintiff's Lack of Standing to Sue, (2) Requested Briefing Of Dispositive Motions, (3) Readiness For Trial (the "*Motion*").[1]  Good cause does not exist to continue the trial and the Motion should be denied because:

(1)    Plaintiff WILLIAM R. KOWALSKI ("*Kowalski*") has standing to pursue the lost profit damages of his wholly owned company HAWAII INTERNATIONAL SEAFOOD, INC. ("*HISI*");

(2)    Ocean Duke has no excuse for failing to raise arguments, conduct discovery, and move for summary judgment on the matters raised in the Motion within the deadlines established by the Court and therefore those deadlines should not be re-opened at this late stage of the litigation; and

(3)    Continuing the trial will severely inconvenience and harm Plaintiffs.

---

[1] The following day on November 14, 2007, the Court granted Ocean Duke's request to hear the Motion on an expedited basis and set a hearing date of November 16, 2007, affording Plaintiffs very little time to respond.

## II.    <u>RELEVANT FACTUAL BACKGROUND</u>

The Complaint in this lawsuit was filed and served nearly four years ago in January 2004.  After Ocean Duke unsuccessfully moved to change venue in March 2004, this case was originally assigned a **December 13, 2005** trial date.  <u>See</u> Scheduling Order, filed 7/01/04.  Since then, **the trial dated has already been continued <u>four times</u>**:  to **June 14, 2006**, <u>see</u> Scheduling Order, filed 5/09/05, **December 12, 2006**, <u>see</u> Scheduling Order, filed 11/22/05, **June 27, 2006**, <u>see</u> Scheduling Order, filed 8/04/06, and finally **December 4, 2007**, <u>see</u> Scheduling Order filed 1/23/07.

Plaintiffs served written discovery requests directed to Ocean Duke in October 2004.  Ocean Duke's failure to respond to discovery was so bad that a broad order compelling discovery from Ocean Duke had to be entered in mid-2006, yet Ocean Duke continued to stall and fail to produce what was requested (e.g., Ocean Duke never provided any tax returns or financial statements or accounting reports or product labels or damage information regarding its position on damages).

In contrast to Plaintiffs' prompt discovery attempts, Ocean Duke waited until August 15, 2007 to serve its first written discovery request on Plaintiffs and also to notice Kowalski's deposition.  Although Ocean Duke appears to imply that a continuance of the trial is warranted because of "new" information revealed in

Kowalski's deposition, Ocean Duke chose the time frame for taking Kowalski's deposition.  Ocean Duke initially selected October 2 and 3, 2007 for Kowalski's deposition, apparently to coincide with the October 1, 2007 settlement conference attended by Ocean Duke's mainland counsel and Chief Operating Officer.  <u>See</u> Yasunaga Decl. ¶ 2. Kowalski agreed to be available and both he and his counsel reserved time to attend the October 2-3 noticed deposition. <u>See</u> <u>id.</u>  At the October 1 settlement conference, however, Ocean Duke informed Plaintiffs that it was unilaterally canceling Kowalski's October 2-3 deposition. <u>See</u> <u>id.</u>  Ocean Duke chose to reschedule Kowalski's deposition for November 1-2, 2007, the same week that Ocean Duke's mainland counsel would be in Hawaii for further settlement negotiations. <u>See</u> <u>id.</u>  Thus, to the extent that information gained from Kowalski's November 1-2, 2007 deposition alerted Ocean Duke to issues previously unknown to Ocean Duke, it could easily have obtained this information by deposing Kowalski at an earlier time rather than choosing to wait until so late in the lawsuit, and even after the discovery cut-off lapsed on October 5, 2007.

With respect to expert reports, this deadline was continued five times.  In addition to the extensions granted in connection with the four trial continuances, an Order to Extend Deadlines for Expert Witnesses and Reports, filed on June 4, 2007, extended the expert witness report deadline to August 15, 2007.  While Plaintiffs provided Ocean Duke with a copy of their expert David Francom's

damage report on July 16, 2007,[2] the August 15, 2007 extended deadline lapsed

without any expert damage report from Ocean Duke. See Yasunaga Decl. ¶ 3. In

fact, no such damage report has been provided to date, see Mot. at 16 n.3 ("Mr.

McEnerney is currently working on a rebuttal report to that of plaintiffs' damages

expert David Francom, now that his scheduled opened up."), and Fed. R. Civ. P.

37(c) requires that McEnerney be excluded as a witness. See Plts' Mot. in Limine

#3 Re Excluding Damage Expert McEnerney And Any Other Expert Whose

Opinions and Written Report And Papers Were Not Produced, filed 11/13/07.

   Thus, it is evident that Ocean Duke, not Plaintiffs, has dragged its feet in this

case all along.  To find away around the missed deadlines and to make getting to

trial more expensive and inconvenient for Plaintiffs, Ocean Duke has taken up a

recent campaign to manufacture reasons for delay and to re-open pre-trial

deadlines that lapsed months ago.  For example, on September 5, 2007, Ocean

Duke unsuccessfully moved to trifurcate the trial.  On November 1, 2007, in

opposition to Plaintiffs' Cross and Supplemental Motions for Claim Construction,

Ocean Duke requested an opportunity to "re-brief" its motion for partial summary

judgment, i.e. re-open the deadline for filing dispositive motions that passed on

---

[2] Plaintiffs had no choice but to have their damage expert do the best he could with
the limited information provided due to Ocean Duke's failure to provide financial
information, and it was a very expensive process because of Ocean Duke's failure
to provide accounting reports, but individual invoices for only parts of the period
involved.

August 15, 2007, on new defenses (indefiniteness and inadequate written description) that had not been properly disclosed in discovery. <u>See</u> Plt's Reply in Supp. of Mot. for Claim Construction, filed 11/8/07. Ocean Duke's instant motion reveals that a continuance of the trial date is sought so that Ocean Duke can conduct discovery and move for summary judgment on other new defenses such as (lack of standing, patent misuse, inoperability). <u>See</u> Motion at 10, 12, 14. The deadline for filing dispositive motions lapsed months ago on August 15, 2007 and should not be re-opened. <u>See</u> Plt's Reply in Supp. of Mot. for Claim Construction, filed 11/08/07.

Notably, while devoting time to prepare the instant Motion to Continue Trial, Ocean Duke shirked its responsibility to meet critical trial deadlines. The deadline to exchange exhibits was November 6, 2007 and Plaintiffs diligently provided actual copies of its exhibits and an exhibit list to Ocean Duke on that date. <u>See</u> Yasunaga Decl. at ¶ 4. Plaintiffs, however, received no actual exhibits or exhibit lists that day and received only Ocean Duke's exhibit <u>list</u> on November 8, 2007. <u>See id.</u> Ocean Duke did not provide actual copies of its exhibits until November 9, and even then, 21 of the 67 exhibits on the list were not provided, and to this date have not been provided. <u>See id.</u>, <u>see also</u> Ex. "A" (email from Yasunaga to Ing dated 11/9/07).

Ocean Duke also failed to provide its proposed jury instructions on time. Pursuant to LR. 51.1(a) the parties were required to exchange their proposed jury instruction on November 13, 2007. While Plaintiffs prepared their proposed jury instructions and provided them to Ocean Duke by the deadline, see Ex. "B" (certificate of service), Plaintiffs are yet to receive Ocean Duke's proposed jury instructions.

Under these circumstances, a continuance of the trial is certainly not warranted or justified.

## III.  ARGUMENT

### A.  Kowalski Is Entitled To Pursue HISI's Lost Profits As His Damages For Ocean Duke's Infringement Under 35 U.S.C. § 271.

Ocean Duke's contention that HISI lacks standing is yet another attempt by Ocean Duke to obtain leave of Court to move for summary judgment on an issue that was not raised in discovery or asserted prior to the dispositive motions deadline and to delay trial. The Complaint, filed in January 2004, makes clear that Kowalski is the owner of the patent and that he is the entity that owns the rights to license the Kowalski Patent. See Compl. ¶ 4, 12. There is no reason why Ocean Duke could not have raised this issue earlier, i.e. in compliance with the deadlines set by the Court, if they so intended.

In addition to being time-barred, Ocean Duke's standing argument lacks substantive merit. Ocean Duke's suggestion that the issue of HISI's standing has

the potential to divest the court of federal court jurisdiction is incorrect.  See Mot. at 2 ("because standing is an issue which federal courts must consider even if the parties fail to raise it) . . . "), 7 ("it appears that HISI lacks standing to bring this suit for patent infringement, and without standing to use, a plaintiff does not have a 'case and controversy' upon which to base federal court jurisdiction").  Kowalski, the patent holder, is a plaintiff to the lawsuit and certainly has standing to sue for infringement of his patent.  Thus, regardless of whether HISI has standing to sue, there certainly is a "case and controversy" and no possibility that federal court jurisdiction will be divested.

Properly framed, the issue is not whether HISI has standing to sue for patent infringement, but whether Kowalski is entitled to pursue HISI's lost profits as a part of his damages for Ocean Duke's infringement under 35 U.S.C. § 271.  The answer is yes.

In SEB, S.A. v. Montgomery Ward & Co., Inc., 412 F. Supp. 2d 336 (S.D.N.Y. 2006), concluded that the patent holder, whose subsidiary manufactured and sold deep fryers, could present a damage claim for any income they may have lost because of the defendant's sale in the U.S. of competing deep fryers that were alleged to infringe the patent.  See id. at 345-348.  In so doing, the court reasoned that "Congress intended in § 284 that a patent owner would in fact receive full compensation for any damages the patent owner suffered as a result of the

infringement" and that the Supreme Court had interpreted "adequate" damages as that will "fully compensate the patentee for infringement." Id. at 346-47. Relying on Federal Circuit law, the court remarked that "If this Court prohibited SEB from recovering 'damages adequate to compensate' simply because it did not sell the product itself, this Court would subvert the meaning of the statute [Section 284]." Id. at 347. The Court held that "If SEB can show that it lost profit from T-Fal's [subsidiary] sales because of Defendants' alleged infringement, it should be able to recover damages in an amount that would make it whole." Id. at 347, n. 16.

By the same analysis, to be made whole, Kowalski is allowed to prove that he, as the sole owner of HISI, lost profit from HISI's sales because of Ocean Duke's infringement.[3] See id.

**B.      Ocean Duke Has No Excuse For Failing To Raise Arguments, Investigate, And Conduct Discovery On The Matters Raised In The Motion Within The Deadlines Established By The Court; Therefore Those Deadlines Should Not Be Re-Opened At This Late Stage Of The Litigation.**

Ocean Duke does a poor job of explaining why the matters it would like to pursue now could not have been pursued in a timely manner in accordance with the deadlines set by the Court. First, Ocean Duke seems to imply that information revealed at Kowalski's November 1-2 deposition warrants a continuance. As

---

[3] With respect to Ocean Duke's argument regarding HISI's Lack of Standing for trademark damages, Plaintiffs point out that they request injunctive relief with respect to the trademark claim, but are not seeking separate trademark damages.

explained, however, Ocean Duke selected the time frame for taking Kowalski's deposition. See discussion supra Section II. Thus, any delay in receiving the "new" information was of Ocean Duke's own doing.

Second, the Court's TPI Markman Ruling is not a basis to continue the trial in this proceeding. The finding of invalidity was recently reversed when the Court granted Plaintiffs' Motion for Clarification and Reconsideration. Nor is the Court's anticipated claim construction order a reason to continue the trial. There is no reason why Ocean Duke could not have moved for claim construction much earlier in this case and then conducted discovery and moved for summary judgment on whatever defenses it properly disclosed by the deadlines set by the Court.

Third, the video tape and information regarding Frescomar is not "new" to Ocean Duke. As the Court knows, Ms. Ing, who substituted in as counsel for Ocean Duke as early as July 2007, is counsel for Jake Lu and TPI in the consolidated case Tuna Processors, Inc. v. Hawaii International Seafood, Inc., et al., Civ. Nos. 05-00517 BMK, 05-00679 BMK, 06-00182 BMK, 05-00787 BMK. Thus, ODC, through its counsel Ms. Ing, has long had knowledge of Mr. Lu and TPI's actions and accusations regarding Frescomar, so ODC has no excuse for failing to supplement its answers to interrogatories to add the new defenses as required by the order compelling discovery.

Ocean Duke mentions a videotape of operations at the Frescomar facility, but that is no excuse to continue the trial because that videotape was produced to Ocean Duke a long time ago[4] -- Ocean Duke did not even serve any discovery requests until August 15, and Plaintiffs promptly responded to those requests, including agreeing with Ms. Ing's suggestion that Ocean Duke be able to simply get a copy from Ms. Ing of what Plaintiffs had earlier already produced to Ms. Ing's other clients (Lu, TPI, etc.).  See Yasunaga Decl. ¶ 5.  If Ocean Duke had any problem with these videotapes or felt it needed discovery regarding those matters, it should have acted in a timely manner to get more information AND to amend its answers to the interrogatories about its defenses instead of waiting until three weeks before trial.  The videotapes in question are the videotapes the Court has already seen, and they are videotapes of inspections at which Ms. Ing's co-counsel were present to test what was going on.  Any objections to use of the videotapes at trial should be handled when objections to exhibits are taken up (they are due on November 20), but they are not grounds for continuing the trial.

Plaintiffs' having to use a different smoke supplier in the future now that Ms. Ing's client Mr. Lu has paid Frescomar to cut off Plaintiffs is not relevant to

---

[4] Ex. "A" is November 9, 2007 email in which Ms. Ing asks if the videos listed on Plaintiffs' exhibit list are things Plaintiffs already produced and Mr. Yasunaga responded "My exhibit list descriptions of the videos and the copies of the videos in the box of exhibit copies I delivered on Tuesday shows that these videos were produced before the discovery cutoff."

damages in this case because the damages sought are only regarding sales up to the time of trial, which involved smoke produced and shipped by Frescomar earlier, and which do not involve the new supplier. <u>See</u> Ex. "C" (Francom Depo. Tr.) at 90: 5-8.

Last, Ocean Duke seems to imply that it has not conducted discovery, moved for summary judgment, or prepared for trial in the manner it would like to in the next five months because settlement negotiations were taking place. Certainly, that parties are engaging in settlement talks does not provide either with an excuse for failing to meet deadlines set by the Court or to diligently prepare for trial.  <u>See In re Bendectin Litigation</u>, 857 F.2d 290, 315 (6th Cir. 1988) ("**While settlement discussions often dull the edge of advocacy, they do not provide a legal excuse for failure to continue preparations for trial.**") (emphasis added); <u>see</u> <u>also</u> <u>Mings v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan</u>, No. 1:04-CV-0584-RLY-TAB, 2005 WL 115510 *1, *4 (S.D. Ind. Jan. 18, 2005) ("However, neither of these explanations provides good cause to ignore Court-ordered deadlines. As the Plan points out, "[i]f **settlement discussions were allowed to stay all scheduling deadlines and excuse compliance therewith, such practice would greatly impair the court's docket and render scheduling plans meaningless, as such discussions often continue up to trial.**") (emphasis added).  Moreover, the fact show that time was taken up, not with settlement talks,

which occurred only in September 2004 and October 2007, but with Ocean Duke's stalling.

**C.    <u>Continuing The Trial Will Severely Inconvenience And Harm Plaintiffs.</u>**

Plaintiffs have diligently prepared for trial, and unlike Ocean Duke, have met all of its trial deadlines. Arrangements (plane and hotel) have already been made for Plaintiffs' witnesses to travel from out of the state to attend the trial and their arrival and departure times have been scheduled based on a December 4 trial start-date. <u>See</u> Yasunaga Decl. ¶ 6. Those witnesses (two of which are experts) have reserved, and not booked other work, for that period. <u>See id.</u> Moreover, Plaintiffs' damage expert's opinions have been based on activities up to December 2007, and a continuance would require him to do further work to cover a new period of time, which would involve additional expense, which, if Plaintiffs cannot afford it (along with the other additional expenses a continuance would pose) , would severely prejudice Plaintiffs.

With trial scheduled to commence in three weeks and the preparation that Plaintiffs have undertaken, a continuance of the trial at this late stage is far more than an inconvenience to Plaintiffs. There is absolutely no doubt that a continuance will be very harmful to Plaintiffs, especially if Ocean Duke is allowed to re-open the discovery and dispositive motions deadlines, requiring among other things, multiple expensive trips to far off places. <u>See</u> Yasunaga Decl. at ¶ 7.

Ocean Duke's counsel has indicated an interest in taking advantage of Plaintiffs' relative lack of financial strength.  See id.  They have made statements to the Court (e.g., at the October 1 settlement conference) and others which show that they perceive Plaintiffs as being financially weak and they believe that weakness can be exploited to cause Plaintiffs to have to accept a small settlement because Plaintiffs cannot afford to get to and go through trial.  At the deposition of Plaintiffs' damage expert, Ocean Duke's counsel seemed obsessed with Plaintiffs financial condition and ability to continue the litigation, asking questions such as "Q.  Do you know if there's any outstanding invoice that has not yet been paid for the Ocean Duke case?", "Q.  [H]ave you learned how Mr. Yasunaga's law firm is being compensated for its work in the Ocean Duke case??"  "Q.  So you don't know if his firm has a contingency arrangement or an hourly billable arrangement or some other arrangement?"; "Q. ... [H]ave you ever heard anyone talking about the possibility of HIS voluntarily filing for bankruptcy protection?" and "Q.  About its creditors filing a petition for involuntary bankruptcy?"  Ex. "C" (Francom Depo. Tr.) at 19: 12-15, 69: 714, 114: 9-17.  Indeed, a five month continuance for the purposes explained by Ocean Duke in the Motion could possibly escalate the expense of getting to trial beyond Plaintiffs' financial capacity, which is precisely what Ocean Duke hopes to accomplish.  See id.

## IV.   <u>CONCLUSION</u>

Plaintiffs urge the Court to see Ocean Duke's Motion to Continue the Trial for what it really is:  An attempt by Ocean Duke to get around missed deadlines set by the Court years in advance and to avoid a trial on the merits by wearing out Plaintiffs' resources.  The trial date in the four year old case has already been continued four times.  Under these circumstances, a fifth continuance is certainly not warranted or justified.

DATED:  Honolulu, Hawaii, November 15, 2007.

CADES SCHUTTE LLP

<u>/s/ Milton M. Yasunaga</u>
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE