CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA        2954-0
ALLISON MIZUO LEE     7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>Defendant. | CIVIL NO. 04-00055 BMK<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGED STATEMENTS BY CHRIS RAGONE AS INADMISSIBLE HEARSAY; DECLARATION OF MILTON M. YASUNAGA; EXHIBITS "A" – "C"; CERTIFICATE OF SERVICE<br><br><u>Hearing</u><br>Date: November 26, 2007<br>Time: 2:00 pm<br>Judge: Hon. Barry M. Kurren<br><br>**TRIAL DATE: December 4, 2007** |

ImanageDB:793854.2

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGED STATEMENTS BY CHRIS RAGONE AS INADMISSIBLE HEARSAY

## I.   INTRODUCTION

Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") filed a Motion in Limine to Exclude Alleged Statements By Chris Ragone As Inadmissible Hearsay on November 13, 2007 (the "*Motion*").  The Motion seeks to preclude Mr. John Stalker ("*Stalker*"), HISI's former employee, from testifying at trial about statements alleged made by Mr. Chris Ragone ("*Ragone*") "unless and until" plaintiffs lay a foundation showing that Ragone is qualified to speak on behalf of Ocean Duke.  See Memo. in Support of Mot. at 2, 5.  The Motion should be denied because independent evidence, particularly the deposition testimony of Duke Lin, shows that Ragone was knowledgeable and authorized to speak on behalf of Ocean Duke about the allegedly infringing products imported and sold in the United States by Ocean Duke.

## II.   ARGUMENT

Under Rule 801(d)(2) of the Federal Rules of Evidence, admissions by party-opponents do not constitute hearsay.  Rule 801(d)(2), provides in relevant part:

> (d) **Statements which are not hearsay.**  A statement is not hearsay if –
>
> . . . .

> (2) **Admission by party-opponent.** The statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

Ocean Duke claims that Ragone's statements do not qualify under Rule 801(d)(2) "unless and until" Plaintiffs provide independent evidence that Ragone is qualified to speak on behalf of Ocean Duke. See Memo. in Supp. of Motion at 5.

Plaintiffs do not dispute that controlling caselaw requires the proffering party to show that Ragone's statements to Stalker regarding the "Tasteless Smoke Processed Ahi Saku" sold by Ocean Duke and the process used to treat that product were within the scope of his employment. Plaintiffs submit, however, that the testimony of Duke Lin, founder and CEO of Ocean Duke, to the effect that:

> (1) Ragone was the sole salesperson for Ocean Duke and that Duke Lin decided to begin importing for resale the fish smoked for color retention from Mr. Shih's plant because, when Duke Lin asked Ragone whether Ocean Duke's customers could use a product like that, Ragone replied, "We have some customer that could use that kind of product.", and
>
> (2) Duke Lin did not know whether Ocean Duke's customers were told it was okay to use the term "tasteless smoke" in regards to Ocean Duke's fish treated for color retention because he delegated such matters to the sales department,

serves as sufficient foundation. See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (employee identified by company chairman's deposition testimony sufficed as foundation required under

Rule 801(d)(2)). At his deposition, Duke Lin testified that:

>Ex. "A" (Duke Lin Depo. Tr.) at 32: 5-25, 33: 1-7:
>
>Q. When did you first – well, at some point, Ocean Duke started buying fish from Mr. Shih's plant [PT Inti Samudera Citra Perkasa], right?
>
>A. Yes.
>
>Q. About when did that begin?
>
>A. About after one year when I first meet him.
>
>Q. So about 1997?
>
>A. Yes.
>
>Q. And why is it that you started buying this – oh, and that first from Mr. Shih's plant that you started buying, that was treated with this smoke that was treated from burning charcoal?
>
>A. Yes.
>
>Q. And **why did you start buying that fish from Mr. Shih** around 19 – in 1997?
>
>A. First one, after I check with him about "That idea is so good. Do you have any patent applied?" He said he is in the process at that time.
>
>**So after that, I talk with my salespeople. He said, "We have some customer that could use that kind of products. They have market."**
>
>Q. Who are those marketing people?
>
>A. **At that time, I have only one sales.**
>
>Q. Who was that?
>
>A. **Chris Ragone.**

Q.   **Chris?**

A.   **Ragone.**

Q.   **Can you spell that last name?**

A.   **R-a-g-o-n-e.**

Ex. "A" (Duke Lin Depo. Tr.) at 114: 2-12, 115: 5-7, 18-25:

Q.   Look at the third arrow on Exhibit 13. It says, "Each and **every vacuum tuna product** and carton **must be permanently marked** (with food safe ink) in English with the following statement: **'Yellow finned tuna steaks-number 1 cooking grade, natural tasteless wood smoke used to maintain fresh-like taste and color.**" Do you see that?

A.   Yeah.

Q.   And that's part of A-Hold's – **this is a specification of Ahold, right?**

**A.   You just showed me, yeah.**

…

Q.   **You just know about Ahold?**

A.   No. <u>**My sales department do it.**</u> If they need my help, so far they didn't call for help.

…

Q.   Okay…. [M]y question is, **did Ocean Duke ever tell any of its customers that it is okay to use the term "tasteless smoke" in regards to Ocean Duke's fish** treated for color retention?

A.   Based on my knowledge, <u>**I don't know. That's the sales department job.**</u>

Duke Lin's deposition testimony establishes that Ragone was far from a

4

"low level employee" or summer intern at Ocean Duke. See Memo. in Supp. of Mot. at 3 (citing MCI Comm. Corp. v. Am. Tel & Tel. Co., 708 F.2d 1081, 1143 (7th Cir. 1982), for the proposition that "low-level employees without management responsibility are not admissions"), 4-5 (relying on ACT, Inc. v. Sylvan Learning Sys., Inc., 296 F.3d 657 (8th Cir. 2002), a case involving a summer intern's statements). Ragone was Ocean Duke's only salesperson. He even played an important role in Duke Lin's decision to start buying fish from PT Inti Samudera Citra Perkasa. See Ex. "A" (Duke Lin Depo. Tr.) at 32: 5-25, 33: 1-7. Also, Duke Lin delegated to the sales department, i.e. Ragone, and made Ragone responsible for, the tasks of describing Ocean Duke's product to people in the industry and seeing that the product met the customers' specifications. See Ex. "A" (Duke Lin Depo. Tr.) at 114: 2-12, 115: 5-7, 18-25.

Further evidence that Ragone was authorized to speak for Ocean Duke to describe Ocean Duke's product and how it was made is the fact that, when Ragone made these admissions about Ocean Duke's product to Stalker, Stalker wrote down Ragone's answers on a form that contained the questions asked, a notice of infringement letter detailing Ragone's admissions was sent to Ocean Duke on January 24, 2000 by Plaintiffs, and Ocean Duke never responded to deny that Ragone was authorized to make such a statement, never denied that Ragone made such a statement, and never denied that the statement describing Ocean Duke's

product was accurate. See Yasunaga Decl. at ¶ 3. Exhibit B is a true and accurate copy of the form containing the questions Stalker asked Ragone and the answers Ragone gave, as follows:

> Company Name: Ocean Duke Corp.
> Product Offered for Sale: TASTELESS SMOKE PROCESSED AHI SAKU
>
> The representative of the named company above represents the following:
>
> 1. They sell frozen seafood treated with tasteless smoke – YES.
>
> 2. Smoke flavor components have been removed from the smoke to make tasteless smoke – YES.
>
> 3. The tasteless smoke treated seafood does not retain a smoke flavor after smoke treatment – YES.
>
> 4. The tasteless smoke treated tuna they sell maintains its red color at -10f – YES.
>
> 5. Supplemental carbon monoxide has been added to the tasteless smoke – NO CO.

Plaintiffs' notice of infringement letter dated January 24, 2000 stated:

> In response to an inquiry by our clients' representative John L. Stalker on January 20, 2000, your representative, Chris Regone, acknowledged that (1) your company is offering for sale frozen seafood treated with tasteless smoke, (2) the tasteless smoke used to treat the seafood was made by removing smoke flavor components from the smoke, (3) the tasteless smoke treated seafood does not retain a smoke flavoring after treatment with the smoke, , and (4) the tasteless smoke treated seafood maintains its red color at -10°F. Because of (1) these facts about your company's activities and (2) the fact that U.S. Patent 5,972,401 broadly covers the process of treating food with tasteless smoke, regardless of the equipment used and other particulars, the patent owner in good faith believes the product you are selling necessarily was made using the patented process.

Exhibit "C" (Notice of Infringement and FedEx verification confirming receipt on

January 25, 2000).

Thus, there can be no doubt that Ragone was acting within the scope of his employment when he described Ocean Duke's product "Tasteless Smoke Processed Ahi Saku" to Stalker. Ragone's statements to Stalker therefore do not constitute hearsay under Rule 801(d)(2).

## III. CONCLUSION

For the foregoing reasons, the Motion should be denied.

DATED: Honolulu, Hawaii, November 20, 2007.

        CADES SCHUTTE LLP

        /s/ Milton M. Yasunaga
        MILTON M. YASUNAGA
        MARTIN E. HSIA
        ALLISON MIZUO LEE