LOUISE K. Y. ING           2394-0
ALSTON HUNT FLOYD & ING
1800 ASB Tower, 1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:    ling@ahfi.com

TIMOTHY L. NEUFELD      Pro Hac Vice
PAUL S. MARKS           Pro Hac Vice
NEUFELD LAW GROUP
360 East 2nd Street, Suite 703
Los Angeles, California 90012
Telephone: (213) 625-2625
Facsimile: (213) 625-2650
E-mail:    tneufeld@neufeldlawgroup.com
           pmarks@neufeldlawgroup.com

Attorneys for OCEAN DUKE CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>Defendant. | Case No. CV04-00055 BMK<br><br>**TRIAL BRIEF OF DEFENDANT OCEAN DUKE CORPORATION**; CERTIFICATE OF SERVICE<br><br>Trial Date: December 4, 2007 |

130897.1                              1

# TRIAL BRIEF OF DEFENDANT OCEAN DUKE CORPORATION

**A.     Introduction**

Defendant Ocean Duke is being sued by Plaintiff Kowalski for alleged patent and trademark infringement.  Ocean Duke Corporation ("Ocean Duke") is located in Torrance, CA and incorporated in the state of Delaware.  This court has jurisdiction under both federal question and diversity.

Ocean Duke distributes seafood that is processed under U.S. Patent No. 6,331,322 (the "Shih Patent").  Plaintiff has alleged that Ocean Duke infringed on U.S. Patent No. 5,972,401 (the "Kowalski Patent").  However, Ocean Duke's supplier uses the Shih patent which does not infringe on the Kowalski patent.  In addition, Ocean Duke maintains that the Kowalski patent is unenforceable and invalid.

 Overall, plaintiffs' claims for relief are barred because Ocean Duke Corporation has not practiced the alleged patented process, Ocean Duke Corporation has not imported products which are the subject of the alleged patented process, and Ocean Duke Corporation lacked and still lacks knowledge that a patented process other than that disclosed in U.S. Patent No. 6,331,322 was used to make the subject product imported into the United States.

The Plaintiff's trademark infringement claims are also without merit.  Plaintiffs have asserted that Ocean Duke infringed on plaintiffs "Cryo-Fresh" trademark by using the term "cryo-freeze" on some of its packaging.  But Ocean Duke's use of the word "cryo-freeze" merely indicates the source of a product and is a fair use.  (*See* Lanham Act, § 33(b) (permitting uses that are "descriptive of and used fairly and in good faith only to describe the goods or services of such party"; 15 U.S.C. 1115(b)(4)).)  Plaintiffs have not provided **any** evidence that a single consumer has been deceived or confused by the descriptive term "cryo-

freeze" and therefore their claim of trademark infringement is unfounded. Furthermore, any action regarding the trademark violation would be barred by the doctrine of unclean hands.

**B.     Statement of Facts**

Ocean Duke's supplier uses a process known as the Shih patent to preserve the flavor and visual appeal of fish that Ocean Duke imports to the United States. The Shih patent is used in strict accordance with the disclosure and teachings of U.S. Patent No. 6,331,322. Considering that the Kowalski and Shih processes have the same basic end result (processing seafood for taste and color retention), the differences between the two patents are surprisingly obvious and apparent. The Kowalski patent requires the burning of wood or wood byproducts (such as sawdust) to produce the requisite carbon monoxide, which is itself generated through a filtering process

In contrast, the Shih patent involves the production of volatile compounds that are produced by heating charcoal in a vacuum oven at a temperature approximately *half* that of the '401 patent (180ºC vs. 343ºC-399ºC), and separating carbon monoxide (CO) from water vapor in a separating device. The CO is then drawn into an airbag, and then into a marine food processing device where it reacts with the meat of marine foods.

Thus, the materials used in the two processes are completely different; the required temperatures described in the patents are of a different magnitude; the byproducts generated by the burning are different in quality and quantity (with the Shih process producing a much lower quantity of materials, of more varied scope); and the separating process is completely different as well. The Shih patent differentiates itself by using altogether different standards to process and filter the carbon monoxide used to preserve its seafood.

Ocean Duke distributes its products under the mark Black Tie. This mark indicates the source of the product for consumers. The word "cryo-freeze" appears in plaint font under the Black Tie mark on such packaging, as part of the description "CRYO-FREEZE TUNA STEAK". This labeling indicates to the purchaser of the product the frozen nature of the seafood.

**C.     Patent Infringement**

The complaint alleges that Ocean Duke is liable for patent infringement through the importation and distribution of seafood processed with a method that infringes on the Kowalski patent. Ocean Duke's supplier uses the processes described in the '322 patent, which does not infringe on the Kowalski patent. In addition, Ocean Duke maintains that the Kowalski patent is unenforceable and invalid. To be blunt, in order for the Shih patent to infringe upon the Kowalski patent, the Kowalski patent must be interpreted so broadly as to cover virtually any method of seafood processing for taste and color retention. Such a broad interpretation leads to patent invalidity (discussed below).

Noninfringement is a complete bar to liability in a patent infringement case. 35 U.S.C. § 282 (1). Because Ocean Duke processes its seafood in a manner that does not fall within the scope of the Kowalski patent no liability exists for infringement. The process used by Ocean Duke falls exclusively within the Shih patent and its listed specifications.

Even if the court determines that some of the process used by Ocean Duke did fall under the Kowalski patent, that patent is invalid because of existing prior art, obviousness, lack of best mode, lack of novelty and public use, lack of enablement, as well as an inadequate written description. *See* 35 U.S.C. §282 (2). Ocean Duke cannot be held liable for infringement if Kowalski's patent is invalid.

Because Kowalski's patent fails to meet the standards set forth in 35 U.S.C. §112, which requires a written description and the best mode of utilizing the

patent, any infringement action fails. Section 282(3) states that a defense to an action for infringement exists if a patent, or any claim, is found invalid "for failure to comply with any requirement of § 112."

Section 271 states that a "product which is made by a patented process will, for purposes of this title, not be considered to be so made after- (1) it is materially changed by subsequent processes; or (2) it becomes a trivial and nonessential component of another product." 35 U.S.C. § 271 (g) (1)&(2). Because the process that Ocean Duke's supplier uses is materially different from the claims in the Kowalski patent, there is no infringement and no liability.

**D.    Patent Invalidity**

Kowalski's patent is invalid for the following reasons: 1) unable to meet requirements of a written description; 2) lack of definiteness; 3) fails to disclose best mode 4) lack of novelty and public use, 4) fails obviousness requirements; and 5) prior art exists that invalidates the patent.

1. Written Description §112 ¶1

Patent law requires that "the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such a full, clear, concise, and exact terms to enable any person skilled in the art to which it pertains. . . make and use the same." 35 U.S.C. §112 ¶1. The Federal Circuit has explained that the "purpose of the 'written description' requirement is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

2. Claim definiteness 35 U.S.C. §112 ¶2

Section 112 further requires that the specification "particularly point[ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention." §112 ¶2. The definiteness requirement of § 112, ¶2, "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (*citing S3 Inc. v. VIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001).

Claim definiteness "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F. 3d 684, 692 (Fed. Cir. 2001). The purpose of §112 is to ensure that patentees define their inventions with enough particularity that would-be infringers know the "metes and bounds of legal protection to which the patentee is entitled." *Palmer v. U.S.* 423 F.2d 316, 319 (Ct. Cl. 1970). "Patents may be held invalid for failure to meet the written description requirement of 35 U.S.C. § 112 when narrow specifications fail to support a broad claim." Order Granting Motion for Clarification and Reconsideration of Claims Construction Order, at 5, filed in *Tuna Processors, Inc. v. Hawaii International Seafood, Inc.*, Civ. No. 05-00517 BMK and related cases (11/15/07) (quoting *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed Cir. 1998). Whether a specification complies with the "written description" requirement is a question of fact. *Id.*

The Kowalski patent requires the burning of wood or wood byproducts (such as sawdust) to produce the requisite carbon monoxide, which is itself generated

through a filtering process.   The burning in the Kowalski patent requires that the wood or wood byproducts burn at high temperatures.

In contrast, the process used by Ocean Duke's supplier under the Shih patent, involves the production of volatile compounds that are produced by heating charcoal (not wood byproducts) in a vacuum oven at a temperature approximately *half* that of the Kowalski patent and separating carbon monoxide (CO) from water vapor in a separating device.  The CO is then drawn into an airbag, and then into a marine food processing device where it reacts with the meat of marine foods.

Thus, the materials used in the two processes are completely different; the required temperatures described in the patents are orders of magnitude different; the byproducts generated by the burning are different in quality and quantity (with the Shih process producing a much lower quantity of materials, of more varied scope); and the separating process is completely different as well.  *Indeed, the Shih patent cited the Kowalski patent as prior art, yet the patent was issued by the Patent and Trademark Office in any event.*

The Federal Circuit has stated that to "establish literal infringement, every limitation set forth in a claim must be found in the an accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed Cir. 1995).  Furthermore the Federal Circuit has held that "when a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of the filing. *Kopykake Enters v. Lucks Co.,* 264 F.3d 1377, 1383 (Fed. Cir. 2001).  *See also Schering Corp. v. Amgen Inc.,* 222 F.3d 1347-1352-54 (Fed. Cir. 2000).

The Shih process is significantly different from the process that is contained within the claims of the Kowalski patent.  Kowalski cannot go back and plead that

his process incorporates temperatures clearly excluded from his patent specifications and apply it to material that was not listed on his specifications.

    3. <u>Failure to disclose best mode</u>

Kowalski's patent failed to disclose the best mode for his process and thereby his patent invalid. Patent law requires that an inventor has to disclose his preferred embodiment of invention at the time of filing. 35 U.S.C. § 112 ¶1. According to the Federal Circuit, you must fully disclose your invention or you will be denied protection because the public is not getting the benefit of the disclosure. *Chemcast Corp. v. Arco Industries Corp*., 913 F.2d 923, 928 (Fed. Cir. 1990). "A specification can be enabling yet fail to disclose an applicants contemplated best mode." *Id. citing Spectra-Physics v. Coherent, Inc.*, 827 F.2d 1524, 1537 (Fed. Cir. 1987)

"[W]here the inventor has failed to disclose the only mode he ever contemplated of carrying out his invention, the best mode requirement is violated." *Chemcast Corp*. 913 F.2d at 930 *citing Dana Corp. v. IPC Limited Partnership,* 860 F.2d. 415, 418-20 (Fed. Cir. 1988) (best mode violated where inventor concealed the only surface treatment used, and consequently the only one known to work, even though he disclosed several others). Kowalski failed to disclose the best mode for his process by listing a patent with over 73 claims in it and temperatures that varied from 204ºC to 571ºC. This fails to disclose the best mode by trying to capture an impermissible large range of possible heating temperatures.

    4. <u>Prior art for non-obviousness §102(e) and (g)</u>

Invalidation of the Kowalski patent based on prior art will result in the loss of plaintiffs' patent rights. It will cut off any current or prospective royalty payments, regardless of the terms of existing or proposed license agreements. (*See Scheiber v. Dolby Labs, Inc., 293* F.3d 1014 (7th Cir. 2002), *cert. denied*, 71

U.S.L.W. 3471 (2003) (patent owner may not enforce a contract for the payment of patent royalties beyond the expiration date of the patent).

5. <u>Misuse</u>

Misuse is also an issue in this case. Patent misuse occurs when a patent owner wrongfully attempts to enforce a patent, either because the patent was fraudulently obtained or because the enforcement methods are unlawfully anticompetitive. Patent misuse may be shown from the totality of conduct and business practices. (*Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648 (D.S.C. 1977).) Plaintiffs here are liable for patent misuse for a variety of reasons: the extremely lengthy and convoluted patent, with no fewer than 73 claims, was undoubtedly prepared and prosecuted with litigation in mind; plaintiffs have named many of their competitors in meritless lawsuits, alleging that different processes infringe on the Kowalski patent; plaintiffs have leveraged their litigation fund by obtaining one-time payments from small seafood distributors in exchange for informal agreements not to pursue litigation against them; and plaintiffs have engaged in conduct constituting unclean hands, such as suing on behalf of an entity with questionable standing.

D.  **Trademark Infringement**

Plaintiffs assert that Ocean Duke has infringed on plaintiffs' "Cryo-Fresh" trademark by using the term "cryo-freeze" on some of its packaging. The Ninth Circuit has stated that to prove trademark infringement, a plaintiff must show that there is a likelihood of confusion between the marks. Lanham Trademark Act §§ 32, 43(a), 15 U.S.C.A. §§ 1114, 1125(a); *Murray v. Cable Nat. Broadcasting Co.* 86 F.3d 858, 860 (9th Cir. 1996). The likelihood of confusion must be "probable" and not merely "possible". *Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996). Plaintiff will not be able to meet this burden. *In arguendo*, if there

was a likelihood of confusion, Ocean Duke's use of the word "cryo-freeze" is a fair use that is protected under the Lanham Act, §33(b), 15 U.S.C. 1115(b)(4).  Lastly, the plaintiff's claims will be barred by the doctrine of unclean hands.  Plaintiff's trademark infringement claim has no merit.

Courts have used an 8 factor test to determine whether there is a likelihood of confusion between the related goods in a trademark infringement action.  *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir. 2005).  These eight facts are: 1) strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  When reviewing each of these factors it is clear that there is no likelihood of confusion between customers of Ocean Duke, and those of Kowalski.

There are three types of marks that are afforded different levels of protection: arbitrary or fanciful marks, descriptive marks, and suggestive marks. Arbitrary or fanciful marks are the most protected and they afford "the widest ambit of protection from infringing uses."  *Sleekcraft Boats*, 599 F.2d at 348; *See, e.g.*, *National Lead Co. v. Wolfe,* 223 F.2d 196, 199 (9th Cir. 1955) cert. denied, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955).   Descriptive marks tell something about a product and will only be protected when a secondary meaning is shown.  *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 509 (2nd Cir. 1969); cf. *Hesmer Foods, Inc. v. Campbell Soup* Co. 346 F.2d 356 (7th Cir.), cert. denied. 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965) (barbeque beans is not a trademark, but merely a description).  The final category is suggestive marks which "subtly connote something about the products." *Sleekcraft Boats*, 599 F.2d at 349.  This mark, although comparatively weak next to fanciful marks, will be

protected without proof of secondary meaning. *Watkins Products, Inc. v. Sunway Fruit Products, Inc.*, 311 F.2d 496, 499 (7th Cir. 1962).

Ocean Duke uses the word "cryo-freeze" simply to describe its goods, and more specifically, their frozen character. This is a descriptive term that will only be protected if it has gained secondary meaning. *Miss Universe, Inc. v. Patricelli*, 408 F.3d 506 (CA 2 1969); cf. *Hesmer Foods, Inc. v. Campbell Soup* Co. 346 F.2d 356 (CA 7), cert denied. 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965).

Courts also consider the danger that the public will be confused by the proximity of the goods. "[T]he danger presented is that the public will mistakenly assume that there is an association between the producers of related goods, though no such association exists." Cf. *Stork Restaurant, Inc. v. Shati*, 166 F.2d 348, 356 (9th Cir. 1948). Ocean Duke sells its products with the Black Tie mark to specifically identify its goods. The term cryo-freeze is only used to denote the frozen nature of the product.

Courts consider three elements when determining the similarity of the mark, sight, sound and meaning. *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 638 (9th Cir. 1963). The words cryo-freeze and Cryo-fresh have similar visual appeal, but the terms are used in different contexts. The word cryo-freeze is used in smaller text on the packaging of Black tie products and denotes the process used by Ocean Duke.

Most significantly, plaintiffs have no survey evidence or other evidence to support their claims of deception and confusion. In the Ninth Circuit, to prevail on

a claim under the Lanham Act, a plaintiff must establish, among other things:

(1) the purported infringing use actually deceived or had the tendency to deceive a substantial segment of the audience;

(2) the deception was material, in that it is likely to influence the purchasing decision;

(3) plaintiff has been or is likely to be injured as a result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public.

(*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).) If plaintiffs are unable to prove any one of these elements, their claims fail. (*See Rice*, 330 F.3d at 1181, n. 7.) Quite simply, plaintiffs have no evidence that a single consumer has ever been confused by Ocean Duke's use of the descriptive term "cryo-freeze."

After reviewing the above factors to determine the likelihood of confusion, it is clear that the plaintiff's have failed to meet their burden. "[T]his eight-factor test for likelihood of confusion is pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). It is clear that these factors favor Ocean Duke when viewed in their entirety. The facts show that there has been no evidence presented that there has been any actual confusion by consumers; the consumers who purchase the products are relatively sophisticated; Ocean Duke used good faith when selecting the mark; the marks are dissimilar; the products are marketed in different geographic locations; and there is no evidence that the two companies will be competing in the same market.

Finally, Ocean Duke has not infringed on plaintiffs trademark because the term "cryo-freeze" is used as a descriptive term and therefore a fair use. Ocean Duke does not use the word "cryo-freeze" as a trademark to indicate the source of a product. Instead, Ocean Duke uses the word "cryo-freeze" simply to describe its goods, and more specifically, their frozen character. This is a fair use. (*See* Lanham Act, § 33(b) (permitting uses that are "descriptive of and used fairly and in good faith only to describe the goods or services of such party"; 15 U.S.C. 1115(b)(4)).) On some of Ocean Duke's frozen fish packaging, the word "cryo-freeze" is used in conjunction with its Black Tie mark. The Black Tie mark indicates the source of the product; the word "cryo-freeze" does not. The word "cryo-freeze" appears in plaint font under the Black Tie mark on such packaging, as part of the description "CRYO-FREEZE TUNA STEAK." There is no basis for plaintiffs' assertion of a likelihood of confusion between the CRYOFRESH mark and the Black Tie mark, under which the word "cryo-freeze" is fairly used, in a purely descriptive way, to indicate the frozen nature of the seafood product.

DATED: Los Angeles, California, November 20, 2007.

/s Paul S. Marks_____
LOUISE K. Y. ING
ALLISON KIRK GRIFFITHS
TIMOTHY L. NEUFELD
PAUL S. MARKS
Attorneys for defendant Ocean Duke Corp.