CADES SCHUTTE LLP

MILTON M. YASUNAGA      3058-0
MARTIN E. HSIA               2954-0
ALLISON MIZUO LEE        7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4216
Telephone:  (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 BMK <br><br> **PLAINTIFFS' WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC'S OBJECTIONS TO DEFENDANT OCEAN DUKE CORPORATION'S PROPOSED EXHIBITS; DECLARATION OF MILTON YASUNAGA; EXHIBITS "A" – "E", EXHIBITS D-2, D-6, D-8 - D-13, D-22 - D-23, D-25 - D-46, D-49 - D-61; CERTIFICATE OF SERVICE** <br><br> **TRIAL DATE:  December 4, 2007** |

### PLAINTIFFS' WILLIAM R. KOWALSKI AND HAWAII INTERNATIONAL SEAFOOD, INC'S OBJECTIONS TO DEFENDANT OCEAN DUKE CORPORATION'S PROPOSED EXHIBITS

## I.      INTRODUCTION[1]

Plaintiffs WILLIAM R. KOWALSKI ("*Kowalski*") and HAWAII

INTERNATIONAL SEAFOOD, INC. ("*HISI*") (collectively "*Plaintiffs*") submit

their objections to the exhibits proposed by Defendant Ocean Duke Corporation

("*Ocean Duke*" or "*ODC*") for use at trial.

The deadline to exchange exhibits was November 6, 2007. See Am.

Scheduling Order, filed 1/23/07, at ¶ 24 ("By November 6, 2007, the parties shall

premark for identification all exhibits and shall exchange or, when appropriate,

make available for inspection all exhibits to be offered, other than for impeachment

or rebuttal, and all demonstrative aids to be used at trial.").  Plaintiffs received

Ocean Duke's exhibit list two days late on November 8, 2007; Ocean Duke

provided actual copies of some of its exhibits three days late on November 9, 2007

and Plaintiffs are yet to receive copies of the remaining exhibits. [2] See Yasunaga

---

[1] Plaintiffs incorporate by reference the facts and evidence set forth in the factual background sections of their Opposition To Defendant's Motion to Continue Trial And Related Deadlines, filed on November 15, 2007, and Motion in Limine #1 Re Presumption of Infringement Under 35 U.S.C. § 295, filed on November 13, 2007.

[2] Twenty one of the 67 exhibits on Ocean Duke's list were not provided (Exhibits 3, 4, 5, 7, 14, 15, 16, 17, 18, 19, 20, 21, 24, 42, 48, 56, 63, 64, 65, 66, and 67 – referred to herein as the "*unproduced exhibits*") on November 9, and to this date have not been provided.  See Ex. "A" (email from Yasunaga to Ing dated 11/9/07).

Decl.; <u>see</u> <u>also</u> Ex. "A" (email from Yasunaga to Ing dated 11/9/07). Plaintiffs submit that Ocean Duke's exhibit list and all proposed exhibits should be stricken as untimely.

To the extent that the Court does not grant Plaintiffs' above-requested blanket objection, Plaintiffs object to the following exhibits proposed by Ocean Duke on the following grounds:

Prej:   Prejudice, confusion under Fed. R. Evid. 403

Arg:    Argumentative

HS:     Hearsay

IR:     Irrelevant

LF:     Lack of Foundation

LA:     Lack of Authenticity

UNP:    Untimely (never produced)

UL:     Untimely (produced late)

E:      Estopped/contrary to prior representation to Court or Plaintiffs

---

Upon being notified of Plaintiffs' objection to the unproduced exhibits, counsel for Ocean Duke withdrew Exhibits 14 through 21, 24, 42, and 56, and represented that the only unproduced exhibits that Ocean Duke intends to use at trial (that are not duplicative of exhibits listed by Plaintiffs) are Exhibits 5, 7, and 64 through 67. <u>See</u> Ex. "B" (email from Marks to Yasunaga dated 11/12/07). However, Ocean Duke also never produced at any time its Exhibit 4 ("Shih patent history"), Exhibit 48 ("Notice of Infringement Letter to Ocean Duke and Exhibit 63 ("Packaging of Ocean Duke 'Black Tie' products). Yasunaga Decl.

Set:   Compromise or offer of compromise - Rule 408

Other relevant abbreviations, for the Court's convenience, are:

Dup:  Duplicate of Plaintiffs' list, so Ocean Duke agreed to withdraw.

Withdrawn: Withdrawn by Ocean Duke

(Although paragraph 26 of the Court's 1/23/07 Amended Scheduling Order requires that "Copies of any exhibits to which objects are made shall be attached to the objections," Plaintiffs are unable to attach copies of Ocean Duke's proposed exhibit numbers 4, 5, 7, 48, 63, 64, 65, 66, and 67 because Ocean Duke has not yet (even as of the filing of these objections) produced these proposed exhibits. See Yasunaga Decl.)

## II.    OBJECTIONS/ARGUMENT

### A.    Exhibit 2 – Shih Patent

| ODC Ex 2 | "Shih Patent"  (attached hereto as Exhibit D-2) | IR, Prej |
|---|---|---|

Objectionable as Irrelevant and Prejudicial.  Patent infringement is determined, not by comparing two patents, but by matching the evidence of what process is actually used on the alleged infringer's product with the asserted claims (as construed by the court) of the plaintiffs' patent.  Therefore, introducing the Shih Patent will only confuse the jury and lead it to evaluate the case on the wrong basis.  See motions in limine against Cardile and against Roger and Duke Lin as

experts. "The law of infringement requires that the asserted claims be compared with the products or processes accused of infringement." Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1481 (Fed. Cir. 1984). It is improper to merely compare the subject patent with another patent as a means of determining whether the subject patent has been infringed. See Vaupel Textilmashinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991), Int'l Glass Co. v. United States, 408 F.2d 395, 400 (Ct. Cl. 1969); see also Plts' Mot. in Limine #7, filed 11/13/07.

Furthermore, there is ample evidence that the process actually being used on Ocean Duke's product does not follow the Shih Patent, which makes it especially misleading for the jury to get the Shih Patent and be told in conclusory fashion that Ocean Duke's product is made according to the process disclosed therein. For example, evidence showing that the process used on Ocean Duke's product is different from what's disclosed in the Shih Patent is:

- Duke Lin testified at his deposition that he saw filtering material, like the type in a home water filtration system, when he observed Citra Perkasa's smoke generation machine. See Ex. "15" (D. Lin Depo. Tr.) to Plts' Mot. in Limine #1, filed 11/13/07.

- The documents indicating that the charcoal might actually be heated at 250 degrees C rather than the 180 degrees C stated in the Shih Patent. See Ex. "12" to Plts' Mot. in Limine #1, filed 11/13/07.

- The document indicating that air is added to the vacuum oven, whereas the Shih Patent does not mention that. <u>See</u> Ex. "25" to Plts' Mot. in Limine #1, filed 11/13/07, ("Let small amount of air enter the vacuum oven from the bottom right").

- Ocean Duke's knowledgeable salesperson Chris Ragone admitted in January 2000 that Ocean Duke's "Tasteless Smoke Processed Ahi Saku" was made with a process in which "smoke flavor components have been removed from the smoke to make tasteless smoke," <u>see</u> Ex. "6" (Stalker Report) to Plts' Mot. in Limine #1, filed 11/13/07.

- After receiving the Notice of Infringement Letter on January 25, 2000, <u>see</u> Ex. "7" (Notice of Infringement) to Plts' Mot. in Limine #1, filed 11/13/07, which informed Ocean Duke of Ragone's statements, Ocean Duke never responded to deny that Ragone was authorized to make such statements, never denied that Ragone made the statements, and never denied that the statement describing Ocean Duke's product was accurate.

- Citra Perkasa is listed on NOAA's approved tasteless smoke facilities list indicating that Citra Perkasa demonstrated to the government that it is treating tuna through the tasteless smoke process having CO as a component of the gas which has been generated from smoke, <u>see</u> Ex. "5" (NOAA list) to Plts.' Mot. in Limine #1, filed 11/13/07.

- Ocean Duke sells its products to Ahold, who requires "Frozen Tasteless Cold Smoke (wood origin) Processed Yellowfin Skinless Tuna Steaks" properly described as "YELLOWFIN TUNA STEAKS - #1 cooking grade, natural tasteless wood smoke used to maintain fresh-like taste and color," <u>see</u> Exs. "18" and "19" (Ahold specification and Giant label) to Plts' Mot. in Limine #1, filed 11/13/07.

**B.    <u>Exhibit 4 – Shih Patent History</u>**

| ODC Ex 4 | "Shih patent history" (not produced by Ocean Duke, so no exhibit attached) | UNP, IR, Prej |
|---|---|---|

Irrelevant and Prejudicial for the same reasons as for Exhibit 2, the Shih Patent, but, in addition, objectionable as Untimely because Ocean Duke never produced this exhibit even as of today, so Plaintiffs cannot tell what the actual exhibit proposed by Ocean Duke looks like.

### C.    Exhibit 5 – Videos of seafood processing at PT Inti Samudera Citra Perkasa

| ODC Ex 5 | "Videos of seafood processing at PT Inti Samudera Citra Perkasa" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

Untimely-never produced, Lack of Foundation, Lack of Authenticity, Hearsay, Irrelevant, Prejudicial, Estopped (Ocean Duke represented to the Court in Roger Lin's declaration that "all critical witnesses, documents, and evidence relating to … Kowalski's … lawsuit against Ocean Duke are located in Los Angeles …, not in… Indonesia …." [see Ex. 23 to Plaintiffs Motion in Limine #1] and Ocean Duke never produced this, even as of today, so it should be estopped from trying to introduce it at trial).

As of the filing of these objections, Exhibit 5 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6 Re Evidence (Exhibits and Witnesses) That Was Not Timely Produced Or Identified by Defendant Ocean Duke ("*Plts' Mot. In Limine #6*"), filed on November 13, 2007.

Plaintiffs add that allowing Ocean Duke to use Exhibit 5 at trial would contravene the deadlines set forth in the Court's Am. Scheduling Order, filed on January 23, 2007, ("**Am. Scheduling Order**") and Stipulated Order Compelling Discovery From Defendant Ocean Duke Corporation, filed on October 25, 2006 ("**Stip. Order Compelling**") including: the July 12, 2006 deadline set by the Stipulated Order Compelling, the October 5, 2007 discovery cut-off, and the November 6, 2007 deadline to exchange proposed exhibits.

Notably, the videos of seafood processing at PT Inti Samudera Citra Perkasa ("**Citra Perkasa**") sought to be introduced by Ocean Duke as Exhibit 5 are directly responsive to many of Plaintiffs' requests for production of documents, including among others:

> 52. … and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial
>
> 72. All documents regarding or relating to any visit or inspection or demonstration or viewing or description of the facilities of any of the suppliers or processors of the frozen fish you import(ed), purchase(d), offer(ed) for sale, or sell or sold.
>
> 73. **All photographs and videotapes or documents depicting, describing, or relating to (1) any aspect of the processing or inspection of frozen fish imported, purchased, sold or offered by Defendant; or (2) the equipment or supplies used in the abovementioned processing or inspection.**

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6; see also id. at ¶ 4, 14, 38.

It appears that Ocean Duke may argue that it is entitled to use Exhibit 5

notwithstanding its failure to produce it to Plaintiffs because it is not yet in Ocean

Duke's possession and/or does not exist yet.  <u>See</u> Ex. "B" (11/12/07 email from

Marks to Yasunaga).  The purpose of rule 37(c) to prevent sandbagging would be

severely undermined if a party could wait until the eve of trial to commission a

videotape of processes that have been in existence since long before the filing of

the Complaint four years prior (according to the Lins' depositions) and escape

Rule 37(c)'s mandatory exclusionary effect on grounds that they did not have

possession of the videotape or the videotape was not yet in existence.  <u>See</u> <u>Klonski,</u>

<u>M.D. v. Mahlab, M.D.</u>, 156 F.3d 255, 271-72 (1st Cir. 1998) (holding that letters

not timely produced should have been excluded by trial court and rejecting

defendant's excuse for non-compliance because: "If letters or other documents are

allowed in evidence after a trial starts for the sole reason that they were not

obtained sooner by the party offering them, the rules of discovery and court orders

pertaining thereto would become empty phrases signifying nothing. **Trial by**

**ambush would be re-born.**  Enforcement of discovery rules and orders is

necessary to prevent abuse by future litigants[,]" and "defendants [cannot] be

excused for the failure to comply [with the court's pretrial discovery orders].  That

defense counsel did not obtain the letters until two days before their use  at trial on

cross-examination does not make them admissible. . . . .  The defendants could, at

that [earlier] time, have undertaken the same investigation that for some

unexplained reason did not come to fruition until the trail was near completion.

They have offered no legitimate explanation for why they waited as long as they

did, knowing that the federal rules and the court had required them to disclose

potential trial exhibits and all relevant responses to discovery requests well before

the trial began.") (emphasis added).

Ocean Duke has precluded Plaintiffs from asserting additional objections by

failing to produce this exhibit. Ocean Duke should not be allowed to ambush

Plaintiffs at trial.

### D.    Exhibit 6 – Photos of seafood processing at PT Inti Samudera Citra Perkasa

| ODC Ex 6 | "Photos of seafood processing at PT Inti Samudera Citra Perkasa" (attached hereto as Exhibit D-6) | LF, LA, HS, IR, Prej, E |
|---|---|---|

Lack of Foundation, Lack of Authenticity, Hearsay, Irrelevant, Prejudicial,

and Estopped. These are photos and captions in Chinese, done by some

unidentified person at an undisclosed time in an undisclosed place, but the photos

and captions were not made by Roger or Duke Lin or anyone employed by Ocean

Duke or anyone in Los Angeles, even though Ocean Duke represented to the Court

that "all critical witnesses, documents, and evidence relating to ... Kowalski's ...

lawsuit against Ocean Duke are located in Los Angeles ..., not in... Indonesia ...."

(see Ex. 23 to Plaintiffs Motion in Limine #1). Because the submission of this

exhibit is contrary to Ocean Duke's representation to the Court, Ocean Duke

should be estopped from using it.  Duke Lin indicated in his deposition e.g., at p.

58, l. 7-15 – excerpts of Duke Lin's deposition are Exhibit C) that the photos and

what they depicted were unclear, -- for example, one cannot determine the size of

the various things shown in the photos:

> Q.  And the bottom of the chamber is at about the man's waist, and top is about at his chest right?
>
> A.  I don't know [if] the man is close or far away.  That's a big difference.
>
> Q.  Well, it looks like he's standing –
>
> A.  I cannot look at the picture and see how far across.  You can see from here and there how big they are or you can't say like this, no.
>
> Q.  Well, assuming that this man looks like he's standing –
>
> A.  I don't want to guess.  If you want to guess, you guess.  I don't remember exactly.

The last page states "English Translation of Power Point presentation on

carbon monoxide generator", but neither Roger Lin nor Duke Lin saw any Power

Point presentation, and Duke Lin, in fact, never saw these photos and captions until

the day before his October 9, 2007 deposition, which was 4 days after the

discovery cutoff because the Lins refused to make themselves available before that

time (Yasunaga Declaration).  Duke Lin's deposition (Ex. C, at p. 69, l. 6 to p. 70,

l. 17) states:

> Q.  Okay.  Mr. Lin, when did you first see Exhibit 1, about?
>
> A.  I remember –

Q. I'm talking about the photos and the words printed on Exhibit 1.

A. Until yesterday.

Q. Yesterday was the first time you saw Exhibit 1?

A. Yeah, yeah.

Q. So Mr. Shih prepared this, but he didn't –

A. No. Roger taking care.

Q. Oh, I see. Your son dealt with it?

A. Yeah.

Q. Exhibit 2 seems to be some written explanations of a lot of the photos in Exhibit 1, and I take it you did not see this until yesterday or maybe just now?

A. Just now.

Q. Okay. At the top of Exhibit 2, it says "English translation of Poer Point presentation on carbon monoxide generator." Did you ever see any PowerPoint presentation that shows these photos in Exhibit 1?

A. I didn't see "PowerPoint" name on that.

Q. You know what PowerPoint is, right? They have like a projector or they put it on a TV screen, and I guess they have a computer that has information of the photos, and they can project up photos on some screen.

A. On this date, I don't see.

Q. Okay. You didn't see any presentation like that?

A. Yeah, Yeah.

Q. So did you help Mr. Shih create Exhibit 1 or Exhibit 2?

A. No.

Roger Lin also could not vouch for or understand the photos and captions of this

exhibit.  For example, he stated in his deposition (excerpts attached as Exhibit D):

Roger Lin deposition at p. 90, l. 5-8:
Q.  … I'd like to mark as Exhibit 1 some photos that Ocean Duke produced to me during this litigation, and the pages are Bates stamped ODC-1 through ODC-10 ….

Roger Lin deposition at p. 92, l. 11-14:
Q.  Mr. Lin, can you translate the Chinese characters on the first page of Exhibit 1 for me and tell me what it says?

A.  I can to some degree.

Roger Lin deposition at p. 96, l. 2-6:
Q.  Okay, "enclosed burning" which you said you think that a more proper meaning would be "vacuum ovening," something like that?

A.  Now that I read it one more time, **I don't know what a proper translation would be.**

Roger Lin deposition at p. 99, l. 25 to p. 100, l. 4:
Q.  What's leading to the left?  At the top of the oven I don't know if it's wiring or tubing, but it's going to the left of the oven as you look at the picture.  **Do you know what that is?**

A.  **No, I don't.**

Roger Lin deposition at p. 100, l. 23 to p. 101, l. 6, 21-23:
Q.  But when you were actually at the plant, you didn't see it in that kind of detail, did you, or did you?

A.  **I do not believe I saw this type of detail.**

Q.  There are two knobs, looks like to me, under that circular gauge.  **Can you make out the wording under each of those knobs to say what those knobs are for?**

A.  **No, I can't.**

Q.  So **you didn't see what is shown in ODC-3** when you were on your trip?

A.  **No, I do not believe so.**

Roger Lin deposition at p. 103, l. 10-13, 25 to p. 104, l. 2:
Q. And that hose at the left of the picture in ODC-4, it's going into some roughly cylindrical-shaped thing; right?

A. Yes.

Q      **You don't actually have a memory of seeing it when you were at the plant, right?**

A. **No, I don't.**

Roger Lin deposition at p. 118, l. 18-20:
Q. … you don't know what "and also open bottom right opening" refers to?

A. My answer is **I do not know.**

E.      **Exhibit 7 – Diagrams of seafood process at PT Inti Samudera Citra Perkasa**

| ODC Ex 7 | "Diagrams of seafood process at PT Inti Samudera Citra Perkasa" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

As of the filing of these objections, Exhibit 7 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth above in regards to Exhibit 5 (the unproduced videos allegedly of seafood processing at PT Inti Samudera) and in their Motion in Limine #6.

**F.**    **Exhibits 8 through 13 – Kowalski income statements 1999 through 2004**

| ODC Ex 8 through 13 | Kowalski income statements 1999 through 2004 (Exhibit D-8 thru D-13 hereto, but attorneys eyes only, so to be submitted separately under seal) | IR, Prej, E, Cum |
| --- | --- | --- |

Irrelevant, Prejudicial, Estopped, Cumulative.  Ocean Duke seems intent on using these to suggest to the jury that Plaintiffs are not entitled to collect lost profit damages because they lost money in some or many years of their operations.  That is not a defense to damages because the harm is by definition that the business did not do as well as it would have had the infringer not infringed.  Had Plaintiffs had the sales lost to the infringer, Plaintiffs would have had greater profits or at least smaller losses, given that its fixed overhead would have remained the same, but its gross revenues and profits on sales of fish would have been much greater.  To allow Ocean Duke t suggest to the jury that Plaintiffs are not entitled to damages because they lost money overall in some or many years would be incorrect as a matter of law, misleading, and therefore prejudicial.

**G.**    **Exhibit 22 – Ocean Duke Patent Opinion**

| ODC Ex 22 | "Ocean Duke patent opinion" (attached hereto as Exhibit D-22) | LF, HS, Prej, Irrel, AR, LA |
| --- | --- | --- |

Lack of Foundation & Hearsay & Lack of Authenticity (the alleged creator of the letter has never been named as a witness for trial – it is not clear who wrote

it and what the basis for the letter was or if this is an accurate copy of the alleged

writer), Argumentative (legal argument for Ocean Duke), Irrelevant and Prejudicial

Prej., (the letter dated 2002 was written too late after the January 2000 notice of

infringement and is not based on the actual evidence relevant to the creation of

Ocean Duke's product, therefore it is not a proper opinion letter to avoid willful

infringement and the prejudice it poses outweighs its probative value).

Plaintiffs object to Exhibit 22 on grounds that the probative value of the

patent opinion dated April 24, 2002 allegedly from Aaron Borrowman to Roger

Lin (the "***Borrowman opinion letter***") is outweighed by the danger of unfair

prejudice, confusion of the issues and misleading the jury. See Fed. R. Evid. 403

("Although relevant, evidence may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by considerations of undue delay, waste of time, or

needless presentation of cumulative evidence.").

The willfulness of allegedly infringing activity is determined as of the later

of the date that the activity began or the date on which the alleged infringer became

aware of the patent. See Jurgens v. McKasy, 927 F.2d 1552, 1563 (Fed. Cir.

1991). "When an infringer has actual notice of a patentee's rights, the infringer

has an affirmative duty of due care to avoid infringement." LNP Eng. Plastics, Inc.

v. Miler Waste Mills, Inc., 275 F.3d 1347, 1357 (Fed. Cir. 2001).

Delay in obtaining an opinion letter decreases the probative value regarding whether the alleged infringer had a good-faith belief of non-infringement **at the time it became aware of the accusation of patent infringement**. See LNP Eng. Plastics Inc., 275 F.3d at 1357 (discussing objection to admissibility of attorney opinion letter obtained two years are the accused infringer had notice), see also Rivera-Davila v. Asset Conservation, Inc., No. 98-1075, 2000 WL 27891 *1, *5 (Fed. Cir. Jan. 12, 2000) (unpublished opinion) (awareness of patent for more than one year before receiving attorney opinion letter rendered letter "not particularly probative of Appellants' good-faith belief of non-infringement . . . at the time they became aware of the patent"). Here, Ocean Duke received the notice of infringement letter in January 2000, see Notice of Infringement and FedEx confirmation of receipt (Ex. "7" to Plaintiffs' Motion in Limine #1, filed 11/13/07), but did not obtain the Borrowman opinion letter until more than two years later on April 24, 2002. See Ex. "D-22" (Opinion Ltr.). As such, the Borrowman opinion letter is hardly probative of whether Ocean Duke had a good faith belief of non-infringement in January 2000, when it received Plaintiffs' Notice of Infringement yet chose to continue to infringe.

Moreover, the Borrowman opinion letter is inherently unreliable and lacking in competency because it is not based on accurate information. One of the factors bearing on the competency of an opinion letter is whether material information was

withheld from the attorney.  See K.W. Muth Co. v. Bing-Lear Mfg. Group, LLC,

219 F.R.D. 554, 562 (E.D. Mich. 2003) (citing Comark Comm., Inc v. Harris corp.,

156, F.3d 1182, 1190-93 (Fed. Cir. 1998), for the proposition that "[f]actors

bearing on the competency of an opinion letter include . . . "whether material

information was withheld from the attorney").  It is evident that Borrowman's

opinion is premised on the assumption that the product imported by Ocean Duke is

treated with the Shih process, see Ex. "D-22," and that Ocean Duke did not

disclose to that attorney its knowledge of conflicting information including,

without limitation:

- In 2000, Ocean Duke's sole salesperson, Chris Ragone, who played an important role in Duke Lin's decision to start buying fish from PT Inti Samudera Citra Perkasa and was responsible for the tasks of describing Ocean Duke's product to people in the industry and seeing that the product met the customers' specifications, see Plts' Opp. to Def.'s Mot. in Limine To Exclude Alleged Statements By Chris Ragone As Inadmissible Hearsay, filed 11/20/07, admitted that Ocean Duke's "Tasteless Smoke Processed Ahi Saku" product was treated with a process in which "smoke flavor components have been removed from the smoke to make tasteless smoke;" see Mot. in Limine #1 Re Presumption of Infringement Under 35 U.S.C. § 295, filed 11/13/07 (**"*Plts' Mot. in Limine #1*"**) at 5-6.

- After receiving the Notice of Infringement Letter on January 25, 2000, see Ex. "7" (Notice of Infringement) to Plts' Mot. in Limine #1, filed 11/13/07, which informed Ocean Duke of Ragone's statements, Ocean Duke never responded to deny that Ragone was authorized to make such statements, never denied that Ragone made the statements, and never denied that the statement describing Ocean Duke's product was accurate.

- Citra Perkasa is listed on NOAA's approved tasteless smoke facilities

list indicating that Citra Perkasa demonstrated to the government that it is treating tuna through the tasteless smoke process having CO as a component of the gas which has been generated from smoke, see id. at 4-5 and Ex. "5" (NOAA list) thereof.

- Duke Lin saw filtering material, like the material in a water filter, in the machine used by Citra Perkasa to make smoke. See id. at 12-13 and Ex. "15" (D. Lin Depo. Tr.) thereof.

- The documents indicating that the charcoal might actually be heated at 250 degrees C rather than the 180 degrees C stated in the Shih Patent. See Ex. "12" to Plts' Mot. in Limine #1, filed 11/13/07.

- The document indicating that air is added to the vacuum oven, whereas the Shih Patent does not mention that. See Ex. "25"to Plts' Mot. in Limine #1, filed 11/13/07, ("Let small amount of air enter the vacuum oven from the bottom right").

- Ocean Duke sells its products to Ahold, who requires "Frozen Tasteless Cold Smoke (wood origin) Processed Yellowfin Skinless Tuna Steaks" properly described as "YELLOWFIN TUNA STEAKS - #1 cooking grade, natural tasteless wood smoke used to maintain fresh-like taste and color," see Exs. "18" and "19" (Ahold specification and Giant label) to Plts' Mot. in Limine #1, filed 11/13/07.

- Also, the attorney was never told Dr. Maga's opinion and that even Ocean Duke's own expert said that, if you burn charcoal at 180 degrees C, you will get much more than carbon monoxide and water, and condensing out the vapors and removing the resulting liquid will also remove water soluble things and also particulates.

In contrast to its minimal probative value, the Borrowman opinion letter presents a significant danger of unfair prejudice and a high likelihood of confusion of the issues and misleading the jury. First, unfair prejudice will result because the Borrowman opinion letter, which is the equivalent of a legal expert opinion in

written form, in inadmissible hearsay; Plaintiffs' will not be able to challenge those

opinions through cross-examination. <u>See</u> <u>Livingston Chem., Incorp. v. Permviro</u>

<u>Sys., Incorp.</u>, No. 92-1063, 1991 WL 374024 *1, *4-5 (4th Cir. 1992) (unpublished

opinion) (two documents written by attorney were not only "hearsay but the

opinion expressed in the attorney's letter were irrelevant" and that "Permviro was

attempting to use Livingston's former lawyer, not present in the courtroom, 'as an

expert witness to comment on whether or not these facts would constitute a cause

of action.'"). Second, while minimally relevant to the issue of willful infringement

due to the over two year lapse in time between receipt of the notice of infringement

and the Borrowman opinion letter, the jury may assume that Borrowman's analysis

on infringement is correct, and rather than comparing the process used to treat

Ocean Duke's imported product against the claims of the Kowalski Patent, as

construed by the Court, as they should, improperly compare the Shih Patent claims

with the Kowalski Patent claims. Third, that the Borrowman opinion letter

discusses the Yamaoka Patent, which is not at issue here, heightens the probability

of confusion of the issues. Exhibit 22 should be excluded under Rule 403. Fourth,

the Borrowman letter construes the claims of the patent differently than the Court

has construed those claims, which causes the danger that the jury will follow

Borrowman's construction when it should be following the Court's.

   <u>See also</u> <u>Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.</u>, 265 F.3d

1294, 1309 (Fed. Cir. 2001) ("In addition to the lack of probative value of the challenged evidence, we agree with the district court that admitting evidence of Medtronic's legal activities regarding the 548 and 273 patents would have been potentially prejudicial to ACCS. As we have noted, Medtronic asserted its attorney-client privilege with respect to its legal consultations regarding the 233 patent. A party asserting its attorney-client privilege runs the risk of having the fact-finder draw a negative inference. Admitting the evidence in question, however, would potentially have allowed Medtronic, in addition to asserting privilege, to establish an inference that it acted in a legally reasonable manner with respect to the 233 patent. This would have prejudiced ACS.").

### H.    Exhibit 23 – Yamaoka Patent

| ODC Ex 23 | Yamaoka Patent (attached as Exhibit D-23) | IR, Prej |
|-----------|-------------------------------------------|----------|

The Yamaoka Patent should not be admitted because it is irrelevant – Ocean Duke has waived all validity arguments by failing to mention any in its answers to interrogatories, and, in any event, the USPTO and this Court (in the TPI case) construed the Yamaoka Patent as not involving a process for tasteless smoke (the Yamaoka Patent repeatedly talks about imparting taste from the smoke, and the USPTO examiners ruled that Kowalski deserved a patent despite Yamaoka because Kowalski is different from the prior art by not imparting smoke taste and

odor). To admit such an irrelevant document would only risk prejudice through jury confusion or misuse of that patent.

### I.    Exhibit 25 – USPTO Patent Assignment to Leo Sandau

| ODC Ex 25 | "USPTO Patent Assignment to Leo Sandau" (attached as Exhibit D-25) | IR, Prej, E, UNP* |
|---|---|---|

Irrelevant, Prejudicial, Untimely because not produced by the discovery cutoff and in fact never produced at all (all that was produced – long after the discovery cutoff -- was a USPTO statement indicating that a financing statement of some kind is on file, but that actual document was not produced), and also untimely because it relates to a defense that is barred because Ocean Duke failed to describe it in answers to interrogatories, Estopped (Ocean Duke represented to the Court that it would rely only on documents from Los Angeles).

Plaintiffs object to Exhibit 25 under FRE 401 and 402. Ocean Duke, for the first time, mentioned the assignment to Mr. Sandau in their unsuccessful Motion to Continue Trial filed on November 13, 2007 and noted that the assignment was merely the filing of a financing statement as security, i.e. there was no change in ownership of the Kowalski Patent. Ocean Duke has not indicated an intent to challenge Kowalski's standing to assert a claim for patent infringement, nor can it, because it waived this defense by failing to explain it in response to Interrogatory No. 3. See Plts' Mot. in Limine #2. Thus, Exhibit 25 is irrelevant, and thus may

merely cause confusion, which would be prejudicial.  See FRE 401 ("'Relevant evidence' means evidence having any tendency to make the existence **of any fact that is of consequence to the determination of the action** more probable or less probable than it would be without the evidence.") (emphasis added).

Moreover, Exhibit 25 was not produced in discovery by Ocean Duke, notwithstanding that it is directly responsive to Plaintiffs' requests for production of documents, including among others:

> 3.   All documents relating to any of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses in this litigation, or the identities of the persons with knowledge of the above information and substance of the knowledge of each such person.

> 38.  All documents upon which you intend to rely at trial in this case.

> 52.  … and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6.

**J.   Exhibits 26 – Patent Agreement Between Kowalski and HISI**

| ODC Ex 26 | "Patent agreement between Kowalski and HISI" (Exhibit D-26 hereto, but attorneys eyes only, so to be submitted separately under seal) | IR, Prej, E |
|---|---|---|

This is Irrelevant (it merely gives HISI rights to sell tasteless smoked products), and may be misleading or confusing, and is therefore Prejudicial.  Ocean Duke is estopped from using it because it represented to the Court that all critical

documents were in Los Angeles.

### K.    Exhibits 27 – USPTO Patent Assignment Details of Non-Assignment to HISI

| ODC Ex 27 | "USPTO Patent Assignment details of non-assignment to HISI" (attached as Exhibit D-27) | IR, Prej, E, UL |
|---|---|---|

This is just a document from the USPTO that indicates there is no data at the USPTO that HISI was assigned ownership of the patent.  Ocean Duke apparently intends to use it for its argument that lost profit damages are not awardable because HISI does not own the patent, but that argument is without merit and barred as too late (see Plaintiffs' opposition memorandum filed 11/20/07 regarding Ocean Duke's motion in limine regarding alleged lack of standing of HISI).  As such, this exhibit is Irrelevant, Prejudicial, Estopped (by Ocean Dukes' representation that it would rely only on documents from Los Angeles), and it is untimely – it was never produced until days after the November 6, 2007 exchange of exhibits date (not to mention the October 5, 2007 discovery cutoff).

### L.    Exhibits 28 through 43 – Kowalski License Agreements

| ODC Ex 28 through 43 | "Kowalski License Agreements" (Exhibits D 28-43 hereto, but attorneys' eyes only, so to be submitted separately under seal) | IR, Prej, E |
|---|---|---|

Irrelevant and prejudicial -- Ocean Duke is evidently trying to use these to persuade the jury that damages cannot be greater than royalty rates entered into

with other people, but that is not the law. Licenses entered into in the context of existing infringement and litigation to stop that existing infringement is not the measure for reasonable royalty damages – see Francom's report and the case authority he cites – a reasonable royalty is determined by the hypothetical negotiation that would have occurred between a willing licensor and willing licensee just before the infringement began, and without the threat or pressure of existing infringement or litigation. Ocean Duke is also estopped by its representation to the Court that it will rely only on documents from Los Angeles.

### M.    Exhibit 44 – Management Services Agreement

| 44 | "Management Services Agreement: Kowalski and HISI" (Exhibit D-44 hereto, but attorneys' eyes only, so to be submitted separately under seal) | IR, Prej, E |
|---|---|---|

This is Irrelevant (it merely states that, for a time, Kowalski will use his royalties to reimburse HISI for paying patent-related expenses for him), and may be misleading or confusing, and is therefore Prejudicial. Ocean Duke is estopped from using it because it represented to the Court that all critical documents were in Los Angeles. It seems Ocean Duke wanted to use it regarding its meritless and tardy argument about lost profit damages not being awardable because HISI does not own the patent.

**N.**      **Exhibits 45 and 46 – Cryofreeze Trademark Registrations In Unrelated Industries**

| 45 | "USPTO Cryofreeze Trademark Record" (for laboratory equipment) (attached as Exhibit D-45) | IR, Prej, E |
|----|-----|-----|
| 46 | "USPTO Cryofreeze Trademark Record (for topical analgesic) (attached as Exhibit D-46) | IR, Prej, E |

Irelevant, Prejudicial, Estopped. These are trademark registrations for "Cryofreeze", but they are irrelevant because they are in other industries (Ex 45 is for the laboratory equipment industry while Ex. 46 is for the industry of "Topical Analgesics"). Ocean Duke apparently wants to use these to lead the jury to believe the use by Ocean Duke of Cryofreeze cannot infringe Kowalski's trademark, but that would be contrary to law and misleading, because the fact that someone has a trademark in one industry does not mean that use of that name in another industry cannot be trademark infringement of a trademark in that industry. For example, someone who uses the name "Delta" for plumbing fixtures will not be able to avoid infringement of the "Delta Faucet" company's trademark by pointing out that Delta is also a registered trademark in the airline industry.

**O.**      **Exhibit 48 – Notice of Infringement Letter Never Produced**

| 48 | "Notice of Infringement Letter to ODC" (ODC never produced, so no copy attached) | UNP, E |
|----|-----|-----|

Ocean Duke never produced a copy of Exhibit 48 to Plaintiffs. As such, the exhibit is excludable for being untimely, and never produced to this day.

**P.** **Exhibits 49 through 59 – HIS Sales and Gross Profit Summaries 1999 – 2004**

| 49 through 59 | HIS Sales and Gross Profit Summaries 1999-2004 (Exhibit D-49 thru D-59 hereto, but attorneys' eyes only, so to be submitted separately under seal) | IR, Prej, E, Cum |
|---|---|---|

Same objections and explanations as re Exhibits 8-`13 above. ODC seems intent on using these to suggest to the jury (see Francom deposition) that Plaintiffs are not entitled to collect lost profit damages because they lost money in some or many years of their operations. That is not a defense to damages.

**Q.** **Exhibit 60 – January 2000 letter (Proposing Settlement/Licensing**

| 60 | "January 2000 letter (Kowalski to Duke Lin enclosing agreement)" (attached as Exhibit D-60) | Set, IR, Prej, E |
|---|---|---|

This is excludable as a Settlement document, Irrelevant, Prejudicial, and Estopped (Ocean Duke represented to the Court it would only use documents in Los Angeles. As a document proposing a settlement, it is irrelevant to whether there is infringement and what the damages should be, and as such it may be misleading and prejudicial.

**R.**     **Exhibit 61 – February 2000 letter from Insurer Proposing Settlement**

| 61 | "February 2000 letter (IP Insurance Services Corp. to Duke Lin)" (attached as Exhibit D-61) | Set, IR, Prej, E |
|----|------------------------------------------------------|------------------|

This is excludable as a Settlement document, Irrelevant, Prejudicial, and Estopped (Ocean Duke represented to the Court it would only use documents in Los Angeles. As a document proposing a settlement, it is irrelevant to whether there is infringement and what the damages should be, and as such it may be misleading and prejudicial. **Moreover, because it is from an insurer, it will be prejudicial because the jury may think that Plaintiffs do not need a monetary award in this case because they have insurance. That is not the law, and, in any event, that insurance was only insurance that fronted litigation funds under certain narrow conditions, but required that the money be paid back at a premium, and was discontinued years ago**, soon after the letter was written.

**S.**     **Exhibit 63 –Packaging of Ocean Duke Black Tie Products**

| 63 | "Packaging of Ocean Duke 'Black Tie' products" (not produced by Ocean Duke, so no exhibit attached) | UNP, LA, LF, IR, Prej, E |
|----|------------------------------------------------------|--------------------------|

As of the filing of these objections, Exhibit 63 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6 and for Exhibit 5 above. Untimely – never produced, even as

of today, Lack of Authenticity, Lack of Foundation, Irrelevant, Prejudicial,

Estopped (by Ocean Duke's failure to produce these in response to discovery

requests.

Plaintiffs add that allowing Ocean Duke to use Exhibit 63 at trial would

contravene the deadlines set forth in the Court's Am. Scheduling Order and Stip.

Order Compelling including:  the July 12, 2006 deadline set by the Stipulated

Order Compelling, the October 5, 2007 discovery cut-off, and the November 6,

2007 deadline to exchange proposed exhibits.

Notably, "packaging of Ocean Duke's 'Black Tie' products" are directly

responsive to many of Plaintiffs' requests for production of documents, including

among others:

> 4.  All documents relating to the treatment or processing of fish Ocean Duke
> sold and/or sells in the U.S. that was or is treated or processed with smoke or
> carbon monoxide for color retention or enhancement, including but not
> limited to documents related to any of the following details:  ... **how the
> fish treated with each treatment process was and/or is labeled,
> described, advertised, listed on product lists or price sheets or U.S.
> Customs and/or FDA documents, marketed, and/or promoted by
> manufacturers,** Ocean Dukes' suppliers, Ocean Duke, and Ocean Duke's
> customers (including whether and precisely how the words "smoke" or
> "smoked" and/or "tasteless" or any variations or abbreviations thereof or the
> words "carbon monoxide" or "CO" were used or not used); ....
>
> 5.  All documents relating to each sale or attempted sale of fish by Ocean
> Duke in the U.S. which was treated or processed with smoke or carbon
> monoxide for color retention or enhancement or by any of the methods
> called for or referred to in Interrogatory 1 (of Plaintiffs' First Request For
> Answers to Interrogatories) or your answers thereto ..., including but not
> limited to documents involving any of the following details:  ... **how the**

**fish was labeled, described, promoted, advertised, listed on product lists or price sheets or U.S. Customs or FDA documents, marketed, and/or promoted by manufacturers, Ocean Dukes' suppliers, Ocean Duke, and Ocean Duke's customers (including whether the words "smoke" or "smoked" or "tasteless" or "carbon monoxide" or "CO" were used for labeling, descriptions, advertising, marketing, promotion, product lists or price sheets for that fish) ….**

11.   All documents related to any of the following matters:  … labeling, describing, marketing, promotion, advertising, offers to sell, sales … of the frozen fish (treated for color retention or enhancement) imported or sold by Ocean Duke ….

23.   All documents constituting or relating to brochures, publications, advertisements, **labeling**, product lists, descriptive statements, and promotional material relating to 1) treatment of food with carbon monoxide or cold, filtered, or tasteless smoke or 2) filtering of smoke or 3) food treated with carbon monoxide or cold, filtered, or tasteless smoke.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6;

see also id. at ¶ 38, 52.

It appears that Ocean Duke may argue that it is entitled to use Exhibit 63

notwithstanding its failure to produce it to Plaintiffs on ground that it is not yet in

Ocean Duke's possession and/or does not exist yet.  See Ex. "B" (11/12/07 email

from Marks to Yasunaga).  It seems highly unlikely that Ocean Duke did not have

the packaging for its own "Black Tie" product in its possession or that this

packaging was not in existence until a few days before trial.

Ocean Duke has precluded Plaintiffs from asserting additional objections by

failing to produce this exhibit.  Ocean Duke should not be allowed to ambush

Plaintiffs at trial.  See Klonski, M.D., 156 F.3d at 271.

**T.**   **Exhibit 64 – Documents relating to the processes actually used by HIS, Kowalski and their licensees and suppliers to generate tasteless smoke**

| 64 | "Documents relating to the processes actually used by HIS, Kowalski and their licensees and suppliers to generate tasteless smoke" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

As of the filing of these objections, Exhibit 64 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6 and Motion in Limine #2 Re Defenses Not Described by Defendant Ocean Duke Corporation In Its Answer to Interrogatories, filed on November 13, 2007 ("***Plts' Mot. in Limine #2***"), as well as the points made above regarding Exhibit 5. **In addition, this exhibit appears aimed at promoting defenses such as patent misuse, which affirmative defenses have been waived.** Untimely – never produced even to this day, Lack of Foundation, Lack of Authenticity, Hearsay, Irrelevant, Prejudicial, and Estopped (Ocean Duke represented to the Court that it would only rely on documents from Los Angeles, and there was no relevant evidence from the Philippines or Indonesia or Hawaii).

Plaintiffs add that allowing Ocean Duke to use Exhibit 64 at trial would contravene the deadlines set forth in the Court's Am. Scheduling Order and Stip. Order Compelling including:  the July 12, 2006 deadline set by the Stipulated

Order Compelling, the October 5, 2007 discovery cut-off, and the November 6,

2007 deadline to exchange proposed exhibits.

Notably, Exhibit 64 is directly responsive to many of Plaintiffs' requests for

production of documents, including among others:

> 3. All documents relating to any of Ocean Duke's claims,
> contentions, positions, defenses, or affirmative defenses in this
> litigation, or the identities of the persons with knowledge of the above
> information and substance of the knowledge of each such person

> 10. All documents relating to Kowalski, HISI, the '401 patent, or
> U.S. Patent 5,484,619, or any products, issues, people, claims or
> potential claims, or things related thereto.

> 29. All documents concerning the products or processes at issue in
> this litigation or processing fish with carbon monoxide or smoke or
> the fish so processed.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6;

see also id. at ¶ 38, 52.

It appears that Ocean Duke intends to use Exhibit 64 to advance affirmative

defenses (such as patent misuse), see Defendant's Motion to Continue Trial at 14,

that Ocean Duke waived by failing to identify and explain them in response to

Interrogatory No. 3 of Plaintiffs' First Request For Answers to Interrogatories

("*Interrogatory No. 3*"). See Plts' Mot. in Limine #2.

Ocean Duke has precluded Plaintiffs from asserting additional objections by

failing to produce this exhibit. Ocean Duke should not be allowed to ambush

Plaintiffs at trial. See Klonski, M.D., 156 F.3d at 271.

**U.**     **Exhibit 65 – Documents relating to the operability of devices built according to the claims of the Kowalski patent**

| 65 | "Documents relating to the operability of devices built according to the claims of the Kowalski patent" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

As of the filing of these objections, Exhibit 65 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6 and Motion in Limine #2, and the arguments regarding Exhibits 5 and 64 above. Untimely – never produced even to this day, Lack of Foundation, Lack of Authenticity, Hearsay, Irrelevant, Prejudicial, and Estopped (Ocean Duke represented to the Court that it would only rely on documents from Los Angeles, and there was no relevant evidence from the Philippines or Indonesia or Hawaii).

Plaintiffs add that allowing Ocean Duke to use Exhibit 65 at trial would contravene the deadlines set forth in the Court's Am. Scheduling Order and Stip. Order Compelling including: the July 12, 2006 deadline set by the Stipulated Order Compelling, the October 5, 2007 discovery cut-off, and the November 6, 2007 deadline to exchange proposed exhibits.

Notably, Exhibit 65 is directly responsive to many of Plaintiffs' requests for production of documents, including among others:

3. All documents relating to any of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses in this litigation, or the identities of the persons with knowledge of the above information and substance of the knowledge of each such person

10. All documents relating to Kowalski, HISI, the '401 patent, or U.S. Patent 5,484,619, or any products, issues, people, claims or potential claims, or things related thereto.

29. All documents concerning the products or processes at issue in this litigation or processing fish with carbon monoxide or smoke or the fish so processed.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6; see also id. at ¶ 38, 52.

It appears that Ocean Duke intends to use Exhibit 65 to advance affirmative defenses (such as inoperability), see Defendant's Motion to Continue Trial at __, that Ocean Duke waived by failing to identify and explain them in response to Interrogatory No. 3. See Plts' Mot. in Limine #2.

Ocean Duke has precluded Plaintiffs from asserting additional objections by failing to produce this exhibit. Ocean Duke should not be allowed to ambush Plaintiffs at trial. See Klonski, M.D., 156 F.3d at 271.

## V.    Exhibit 66 – Additional exhibits revealed by ongoing discovery and investigation

| 66 | "Additional exhibits revealed by ongoing discovery and investigation" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

As of the filing of these objections, Exhibit 66 has not been produced to Plaintiffs. The discovery cutoff occurred long ago, so Ocean Duke is not entitled to add anything from "ongoing discovery". Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6, and the arguments regarding Exhibits 5 and 64 above. Untimely – never produced even to this day, Lack of Foundation, Lack of Authenticity, Hearsay, Irrelevant, Prejudicial, and Estopped (Ocean Duke represented to the Court that it would only rely on documents from Los Angeles, and there was no relevant evidence from the Philippines or Indonesia or Hawaii).

Plaintiffs add that allowing Ocean Duke to use Exhibit 66 at trial would contravene the deadlines set forth in the Court's Am. Scheduling Order and Stip. Order Compelling including: the July 12, 2006 deadline set by the Stipulated Order Compelling, the October 5, 2007 discovery cut-off, and the November 6, 2007 deadline to exchange proposed exhibits.

Notably, Exhibit 66 is directly responsive to Plaintiffs' requests for production of documents, including among others:

3.   All documents relating to any of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses in this litigation, or the identities of the persons with knowledge of the above information and substance of the knowledge of each such person.

38.  All documents upon which you intend to rely at trial in this case.

52. … and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6.

Ocean Duke has precluded Plaintiffs from asserting additional objections by failing to produce this/these exhibit(s). Ocean Duke should not be allowed ambush Plaintiffs at trial. See Klonski, M.D., 156 F.3d at 271.

### W.    Exhibit 67 – Demonstrative evidence

| 67 | "Demonstrative evidence" (not produced by Ocean Duke, so no exhibit attached) | UNP, LF, LA, HS, IR, Prej, E |
|---|---|---|

As of the filing of these objections, Exhibit 67 has not been produced to Plaintiffs. Plaintiffs incorporate by reference the arguments set forth in their Motion in Limine #6, and re Exhibit 5 and 66 above.

Plaintiffs add that Ocean Duke should not be allowed to contravene the deadlines set forth in the Court's Am. Scheduling Order and Stip. Order Compelling including: the July 12, 2006 deadline set by the Stipulated Order Compelling, the October 5, 2007 discovery cut-off, and the November 6, 2007 deadline to exchange proposed exhibits. Thus, except for demonstrative evidence that consists merely of blow-ups or excerpts of properly produced and listed exhibits that were not objected to by Plaintiffs, the as yet unproduced "demonstrative evidence" should be excluded.

Notably, Exhibit 67 is directly responsive to Plaintiffs' requests for production of documents, including among others:

> 3. All documents relating to any of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses in this litigation, or the identities of the persons with knowledge of the above information and substance of the knowledge of each such person.

> 38. All documents upon which you intend to rely at trial in this case.

> 52. … and all documents constituting or relating to exhibits which Ocean Duke intends to or may introduce at trial.

Plts' First Request for Prod. Of Docs – Ex. "A" to Plaintiffs' Motion in Limine #6.

Ocean Duke has precluded Plaintiffs from asserting additional objections by failing to produce this/these exhibit(s). Ocean Duke should not be allowed to ambush Plaintiffs at trial. See Klonski, M.D., 156 F.3d at 271.

## III.    CONCLUSION

Ocean Duke should be prevented from trying to introduce any document or thing if any one of the following defects applies – not yet produced, not produced by exhibit deadline of Nov 6, not produced by discovery cutoff (or in conjunction with the deposition of a witness whose deposition was noticed for a date before the discovery cutoff but which occurred later by agreement of the parties), not produced sufficiently before discovery cutoff to allow Plaintiffs to do discovery about it, not produced in compliance with order to compel, not described in answers to interrogs [or produced in response to Req for Prod], not from Los

Angeles (representation to the Court that all docs in Los Angeles).

**Exhibit E is a chart showing all the exhibits and objections.**

DATED:  Honolulu, Hawaii, November 20, 2007.

CADES SCHUTTE LLP


/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.