IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 BMK <br><br> MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiffs acknowledge that Motion in Limine #8 is brought after the November 13, 2007 deadline to file motions in limine. Plaintiffs were not able to address the many new defenses raised by Ocean Duke on or after November 13, 2007, given the motions in limine deadline. The Motion should be granted because:

(1)    Ocean Duke has no excuse for failing to raise the new defenses during discovery or at the very least in its October 16, 2007 pretrial statement, and

(2)    Plaintiffs will suffer prejudice as a result of its inability to meaningfully prepare to meet the new defenses at trial.

## II.    **RELEVANT FACTUAL BACKGROUND**

This case proceeded for nearly four years as a simple case of infringement versus non-infringement. Then, about a month from trial, and long after all of the pre-trial deadlines lapsed -- e.g. the July 2006 deadlines to comply with Stipulated Order Compelling Discovery From Defendant Ocean Duke Corporation, August 15, 2007 cut-off for dispositive motions and expert opinions, October 5, 2007 discovery cut-off, etc. – Ocean Duke began a campaign to spring many new defenses on Plaintiffs. On <u>November 1, 2007</u>, in a brief that was supposed to be for claim construction, Ocean Duke indicated for the first time that it intended to pursue the following invalidity defenses: (1) **written description** and (2) **indefiniteness**. <u>See</u> Def.'s Opp. to Plts' Cross and Suppl. Mot. for Claim Construction, filed 11/1/07. Even later yet, on <u>November 13, 2007</u>, Ocean Duke also revealed for the first time its intent to pursue the following defenses: (3) **HISI's lack of standing** to pursue lost profit damages, (4) **patent misuse**, and (5) **inoperability**. <u>See</u> Def.'s Mot. to Continue Trial, filed 11/13/07. Ocean Duke's trial brief and jury instructions filed on <u>November 20, 2007</u> added additional defenses: (6) **best mode**, (7) **lack of novelty (anticipation) or public use**, (8) **obviousness** (9) **prior art,** (10) **more types of misuse,** and (11) **lack of enablement**. None of these new defenses were litigated in any fashion prior to November 2007 or even mentioned in Ocean Duke's Pretrial Statement filed on

October 16, 2007. **To this date, i.e. less than a week before trial is set to commence on December 4, 2007, Ocean Duke has not given Plaintiffs any indication of what its theory or evidence will be at trial to support its inoperability, lack of enablement, best mode, lack of novelty/anticipation and public use, prior art, obviousness and some misuse defenses.** The addition of the many new defenses not only deprived Plaintiffs the opportunity to conduct discovery, retain experts, find other witnesses and evidence, bring motions for summary judgment, and prepare for trial, they will also create a tremendous burden on Plaintiffs and the Court in terms of preparing and settling appropriate jury instructions.

As Court knows, the defenses that Ocean Duke now (on the eve of trial) raise for the first time were the subject of specific interrogatories made by Plaintiffs in 2004. Among other things, Plaintiffs inquired and Ocean Duke responded as follows:

> **Interrogatory No. 3. Explain with particularity (and as to each claim of the '401 patent) and identify all reasons, facts, references, prior art, documents, and bases for or relating to each of Ocean Duke's claims, contentions, positions, defenses, or affirmative defenses; the identities of the persons with knowledge of the above information and the substance of the knowledge of each person.**
>
> [Ocean Duke's Response]: Discovery is continuing into the prior art relating to the '401 patent and otherwise in response to this Interrogatory. In general, Ocean Duke imports fish that have been processed and produced in strict accordance with the disclosure and teachings of U.S. Patent No. 6,331,332, issued on or about December 18, 2001, to Chi-Hsing Shih and

Tien Pao Chiu. That patent and the processes, disclosures, claims and teaching thereunder are completely different from the patent alleged in plaintiff William R. Kowalski's complaint on file herein. To Ocean Duke Corporation's knowledge, in the course of its business Ocean Duke Corporation has never acquired, purchased, stored, owned, held possession of, or sold any fish treated with the '401 patent alleged by plaintiff.

**Interrogatory No. 4.** **Assuming liability can be proven, state all facts, contentions, and theories that relate to Ocean Duke's position as to damages Ocean Duke may owe (including specifically stating: . . . if Ocean Duke contends that lost profits are not awardable, set forth in detail the basis for such contentions; . . . .**

[Ocean Duke's Response]: . . . . Ocean Duke Corporation alleges in response to this Interrogatory that liability cannot be proven; hence any position it may take on damages at this point in the litigation would be hypothetical, speculative, and covered by attorney-client privilege and work product.

Ex. "11" (Def's Suppl. Resp. to Plts' 1st RAI) to Plts' Mot. in Limine #1.

Ocean Duke cannot escape its failure to answer the interrogatory by arguing it is too broad or burdensome because Ocean Duke waived its objections to the above interrogatories by stipulating to an Order Compelling Discovery[1] and also because Fed. R. Civ. P. 33(b)(1) requires parties to "answer to the extent that the interrogatory is not objectionable." Ocean Duke has not offered any reason why it

---

[1] Ocean Duke entered into a stipulated order compelling it to provide of "full and substantive" written responses to Plaintiffs' above interrogatory requests and to produce all responsive non-privileged documents requested in Plaintiffs' first request for production of documents by July 12, 2006. The Court's stipulated order compelling discovery also reminded Ocean Duke's of its duty to supplement its responses under Fed. R. Civ. P. 26, but Ocean Duke provided no further supplementation to the responses cited above. Plaintiffs are not aware of further action that it should have taken to ferret out Ocean Duke's defenses prior to the discovery cut-off.

could not have so much as mentioned the defenses of "misuse" (not even pled in the Answer), "inoperability," "lack of enablement," "best mode," "anticipation," "obviousness," "prior art," "written description," "indefiniteness" or "standing to pursue lost profits" and/or provided a short explanation of its defense theories and identified the prior art. A good faith response from Ocean Duke to Interrogatories Nos. 3 and 4 was particularly important in this case because Ocean Duke asserted no less than 67 affirmative defenses in its Answer to the Complaint, giving Plaintiffs no real notice of the defenses actually intended to be relied upon by Ocean Duke. Plaintiffs were not required to prepare to meet all 67 of the affirmative defenses asserted by Ocean Duke. Cf. Sprint Comm. Co., LP v. TheGlobe, Inc., 233 F.R.D. 615, 619-20 (D. Kan. 2006) ("Title 35 of the United States Code includes 112 discrete sections. It is unreasonable to make Sprint guess which of these sections Vonage is relying upon to contend that Sprint's patent claims are unenforceable.").

Instead, Ocean Duke waited until two weeks of less before trial to spring the new defenses on Plaintiffs, and only with respect to a few of them actually disclosed in any way what their defense theories will be. Plaintiffs have not had and will not have an opportunity to conduct discovery on any of these defenses, or even basic legal research to determine the requirements/legal standards of each defense necessary to prepare adequate jury instructions given that trial is scheduled

to commence in a few days. In short, allowing Ocean Duke to ambush Plaintiffs at trial with many new defenses disclosed about two weeks or less prior to trial (despite that this case has been pending for nearly four years) is manifestly unfair and prejudicial.

## III.    <u>ARGUMENT</u>

Plaintiffs asked Ocean Duke to disclose and explain its defenses as early as 2004, even obtained a stipulated order compelling a substantive response from Ocean Duke, but the new defenses were not mentioned. Ocean Duke admitted at the hearing on the motions in limine that it has no excuse for not disclosing any of the new defenses during discovery. This alone is ample reason to preclude Ocean Duke from pursing the new defenses at trial. <u>See</u> <u>Thorm EMI N. AM. Incorp. v. Intel Corp.</u>, 936 F. Supp. 1186, 1191 (D. Del. 1996) ("The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a contention interrogatory.").

But what makes preclusion of the new defenses imperative is that Plaintiffs will suffer undue prejudice if the new defenses are not excluded because it has not had an opportunity to prepare to meet the new defenses at trial. <u>See</u> <u>Payne v. Exxon Corp.</u>, 121 F.3d 503, 508 (9th Cir. 1997) ("Many of the discovery responses eventually tendered by the plaintiffs came only as the discovery period was drawing to a close, or after it had already closed. Exxon and VECO were therefore

deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy."). It is unfair and incorrect to assume that Plaintiffs would not have done anything differently if timely disclosure of these defense theories were made by Ocean Duke. There is little doubt that, among other things Plaintiff would have:

- engaged in discovery requesting Ocean Duke to explain the theory or facts supporting these defenses or inquired at the depositions of Roger and Duke Lin what the bases for these defenses were, for example, Re **best mode**: "what is the best mode that Kowalski concealed?", "why does Ocean Duke claim that mode was hidden?", Re **anticipation and obviousness**: "what prior art[2] is Ocean Duke relying on?", Re **public use**: "what is the alleged public use?", Re **patent misuse**: "what is the fraud or material misrepresentation made or omitted to the PTO?" and "what anticompetitive effect do you claim and what is your proof?", Re **inoperability and lack of enablement**: "why do you think that Kowalski's process does not work?" and "why do you think that the Kowalski patent does not enable a person with ordinary skill in the art to practice the invention?";

- gathered evidence (including expert testimony) to refute the defenses including conducting tests, for example, Re **best mode**: evidence and expert testimony showing that Kowalski did not know of that mode, or that it was in actuality not the best mode, Re **anticipation**: evidence (including expert testimony) to help prove that the earlier patent or publication was sufficiently different from the Kowalski patent and that Kowalski's invention was in fact novel compared to the alleged prior art, examine all communications with PTO and file history of prior art patents, Re **public use**: evidence to show that the alleged public use was not public; Re **obviousness**: expert testimony and other proof that the alleged prior art did not make the Kowalski invention obvious by suggesting or motivating people to come up with

---

[2] In fact, as discussed in greater below, 35 U.S.C. § 282 requires exclusion of prior art not identified in writing by Ocean Duke within 30-days of trial.

the same process Kowalski did, evidence showing that the prior art publication was not available to the public or that it did not give sufficient details to teach the public how to perform the process, Re **patent misuse**: find evidence and witness to rebut accusation that Kowalski hid something from the PTO or that the PTO was already aware prior art or facts allegedly not disclosed, research in the patent history to find evidence that there was no intent to deceive or that the prior alleged misrepresentation was true or that there was no omission, Re **enablement**: evidence showing that the Kowalski process works and expert testimony that a person of ordinary skill in the art would have been able to practice Kowalski's invention re **prior art**: evidence showing the alleged prior art does not meet the patent statute's definition of prior art;

- <u>conducted legal research</u> to determine the standards and requirements of the new defenses, which involve complex areas of patent law (anticipation/public use, obviousness, lack of enablement, misuse (including antitrust and fraud on the patent office), written description, indefiniteness) a workable knowledge of which cannot be established within a few days prior to trial as necessary to prepare proper jury instructions, among other things;

- <u>moved for summary judgment</u> on those defenses that were not supported by evidence or the law to simplify trial and avoid jury confusion, just as successfully accomplished by Plaintiffs in the <u>Jana Brands</u> lawsuit with respect to the best mode and lack of enablement defenses and in the <u>MGTR</u> lawsuit with respect to the inequitable conduct defense. <u>See</u> Exs. "1" (Jana Brands Order Granting)[3] and "2"

---

[3] In the <u>Jana Brands</u> case, Jana filed a motion for summary judgment which set out in detail Jana's best mode defense, so Plaintiffs knew precisely what the alleged best mode was and why Jana claimed it was concealed, but it still took months of researching the law, gather helpful evidence, and briefing the defense, including filing a cross motion for summary judgment, which Kowalski won. Jana's motion was filed on December 27, 2004, the hearing was held on March 28, 2005, and Judge Ezra's ruling did not come out until May 11, 2005 – half a year to deal with the issue. Ocean Duke's late disclosure affords Plaintiffs merely two weeks before trial to prepare meet this defense. This is not enough time to prepare adequately. <u>See</u> Yasunaga Decl. ¶ 2.

(MGTR Order Granting). Plaintiffs would certainly have moved for dismissal of the misuse defense on grounds that fraud was not pleaded with particularity as required. See Mills, Patent Law Fundamentals (2d ed. 2007) at §15.88, p. 15-290, citing Papst Motoren GmbH & Co. KG v. Kanematsu Goshu, 629 F.Supp. 864 (S.D.N.Y. 1986).

Ocean Duke's last minute disclosure of the new defenses deprived Plaintiffs of the opportunity to undertake the above efforts and allowed it to gain an unfair advantage at trial. The Federal Rules of Civil Procedure are designed for the purpose of preventing unfair surprise and trial by ambush. See Burton v. Weyerhaeuser Timber Co., 1 F.R.D. 571, 573 (D. Or. 1941) ("surprise, both as a weapon of attack and defense, is not to be tolerated under the new Federal procedure"). Regardless of whether intentional or negligent, Ocean Duke's last minute attempt to raise a host of new defenses on the eve of trial is unduly prejudicial to Plaintiffs because Plaintiffs have not been afforded a fair opportunity to properly and adequately prepare to meet those defenses. In Ruiz v. Hamburg-Am. Line, 478 F.2d 29 (9th Cir. 1973), the Ninth Circuit Court of Appeals required a new trial on grounds, among others, that "**when a party in its answers to interrogatories misleads another party into believing that a defense will not be offered at trial, the later introduction of that defense will support a motion for a new trial.**" Id. at 33.

Affording a patent holder a fair chance to adequately prepare a defense against invalidation of his/her patent is so important that Congress enacted a statute specifically for this purpose. Title 35, United States Code § 282 requires that:

In actions involving the validity of infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party **at least thirty days before the trial**, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication **to be relied upon as anticipation of the patent in suit** or, except in actions in the United States Claims Court, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. **In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.**

35 U.S.C. § 282.

"The object of this most salutary provision is to prevent patentees being surprised at the trial of the cause by evidence of a nature which they could not be presumed to know, or be prepared to meet, and thereby to subject them either to most expensive delay, or to a loss of their cause." Thermo King Corp. v. White's Trucking Service, Inc., 292 F.2d 668, 674 (5th Cir. 1961) (citing Philadelphia & Trenton R. Co. v. Stimpson, 39 U.S. 448, 459 (1840)). In Thermo King Corp., like in this case, "not a single prior patent was cited in the infringer's pleadings and down to the commencement of trial no written notice of any kind was given of prior patents, prior publications, prior use or prior art." Id. at 671. The Fifth Circuit Court of Appeals held that it was left with the certain conviction that the patentee was not afforded a fair and adequate opportunity to present his cause where the trial judge allowed the defendant to pursue invalidity despite that no notice of any prior art had been given. In so doing the Thermo King Court

reasoned as follows:

> This statute [Section 282], just as interrogatories, requests for admission, and the like under the Rules, is intended to do more than alert an adversary to the existence of evidence. It enables the plaintiff to know what sort of defense is going to be asserted. In a very real sense it determines what is to be tried. . . . . The nature of patent litigation makes this of unusual importance. . . . .
>
> **This whole search for truth in a specialized field where matters seldom turn on credibility in its cruder sense – who is telling the unvarnished truth? – is impeded unless the adversaries are fully prepared. Preparation, quite obviously, requires knowledge of what principal, specific, factual issues are to be examined.**
>
> Hence it is unrealistic to suggest as does the defendant that the Patentee could have overcome the impact of the court's disregard of § 282 by asking for a continuance at the trial's end in order to meet or refute the prior art evidence admitted. . . . . But in any event, a trial is something more than a truncated parade of one group of witnesses who swear 'yea' and another who respond 'nay.' The time to demonstrate effectively that the factual thesis advanced by a witness is not worthy of acceptance is while he is on the stand. **But cross-examination in a technical area frequently requires the availability of material or at least effective demonstrative aids. Consequently, it is one thing to assert as do the defendants that counsel for the Patentee knew of a patent of a series of patents, or for that matter perhaps all of the patents in this patent office classification. It is quite a different matter to contend that by reason of such imputed knowledge such counsel, on the opening of the trial, had to contemplate that every one of such patents would be the subject of close examination and adversary contention.**

Id. at 675-77.

The nature of patent litigation and the subject matter of the new defenses are not susceptible to last minute introduction without substantial prejudice to Plaintiffs. The new defenses, even those that may turn on questions of law, are riddled with underlying fact determinations that Plaintiffs could have done

discovery and presented evidence in support of their position if afforded the opportunity. For example, with respect to indefiniteness a critical factor is whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." Plaintiffs have been deprived of the opportunity to gather and present evidence (including expert testimony) and argument regarding what "one skilled in the art would understand" as a result of Ocean Duke's late disclosure. Also, (1) the written description requirement turns on whether one skilled in the art would understand the specification (which Section 112 ¶2 says includes the claims in the original application) includes the inventions claimed in the issued patent and (2) details that are not novel but are instead known by people skilled in the art do not have to be mentioned in the specification. As a result of Ocean Duke's late disclosure, Plaintiffs have been deprived of the opportunity to gather and present evidence (including expert testimony) and law regarding what "one skilled in the art would understand." See Plts' Reply Memo. in Support of Cross Motion for Claim Construction, filed 11/15/07.

The patent misuse defenses[4] also warrants close scrutiny because if allowed Ocean Duke will be free to cast Mr. Kowalski in a false light and accuse him of wrongdoing in front of the jury. See Ocean Duke's Trial Brief at 9:

_____

[4] Ocean Duke offers several different theories under the umbrella term "misuse."

Misuse is also an issue in this case. Patent misuse occurs when a patent owner wrongfully attempts to enforce a patent, either because the patent was fraudulently obtained or because the enforcement methods are unlawfully anticompetitive. Plaintiffs here are liable for patent misuse for a variety of reasons: the extremely lengthy and convoluted patent, with no fewer than 73 claims, was undoubtedly prepared and prosecuted with litigation in mind; plaintiffs have named many of their competitors in meritless lawsuits, alleging that different processes infringe on the Kowalski patent; plaintiffs have leveraged their litigation fund by obtaining one-time payments from small seafood distributors in exchange for informal agreements not to pursue litigation against them; and plaintiffs have engaged in conduct constituting unclean hands, such as suing on behalf of an entity with questionable standing.").

**Notably, patent misuse was not pled as a defense by Ocean Duke in its Answer to the Complaint.** Allowing Ocean Duke to assert this defense is particularly improvident given the need for extensive discovery and preparation required to refute the accusations of anticompetitive behavior and meritless lawsuits. For example:

- Ocean Duke speaks of "enforcement methods [that are] unlawfully competitive, but does not specify what they are or why they are unlawfully competitive. Antitrust defenses involve complicated issues and proof concerning what is the anticompetitive effect on the market. Plaintiffs cannot counter vague antitrust defenses in less than two weeks, after the deadlines for discovery and getting experts have long run. Antitrust cases require the hiring of experts to prepare and give complicated opinions on the effects on the market and competition, and whether particular methods are improper or not, but there is no time for that at this late date.

- Ocean Duke says there are a variety of reasons why there has been misuse, one of which is that "plaintiffs have named many of their competitors in meritless lawsuits, alleging that different processes infringe on the Kowalski patent." To defend against this accusation would in effect require relitigating the over ten cases that have been

settled, to show that they were not meritless, and to show that the accused processes did fall within the Kowalski Patent. There is no time for that - exhibits and witnesses have already been chosen, the time reserved for trial is far too short, etc. Plaintiffs would have done discovery into precisely which lawsuits Ocean Duke claims were meritless, and what proof Ocean Duke has to support that allegation.

- Ocean Duke also claims as misuse that Plaintiffs have a patent that is lengthy and has 73 claims, "prepared and prosecuted with litigation in mind". If Plaintiffs had had proper notice, they would have done discovery into why Ocean Duke asserts that a lengthy patent with many claims is improper, despite the fact that the USPTO felt it was issuing a proper patent. Plaintiffs would have also done discovery into why Ocean Duke feels such a patent was prepared and prosecution with litigation in mind, and if so, why that is improper.

- Ocean Duke says Plaintiffs "Leveraged their litigation fund by obtaining one-time payments from small distributors in exchange not to pursue litigation - Plaintiffs would have done discovery into the identities of the small distributors being referred to, discovery into what Ocean Duke means by "leveraged" and why Ocean Duke asserts that getting payments in exchange for not suing is improper, and into the identities of the distributors Ocean Duke has in mind.

An additional potential source of prejudice to Plaintiffs is that the length of the trial was estimated to be about a week prior to Ocean Duke's very recent insertion of the new defenses. Plaintiffs have made travel arrangements for their out-of-state witnesses based on the estimated trial duration of approximately seven days. The assertion of the new defenses, if allowed by the Court, may prolong the trial and potentially clash with Plaintiffs' witnesses' travel arrangements (not to mention that the late assertion of the new defenses have deprived Plaintiffs of the

opportunity to get witnesses, experts, evidence and law needed to oppose those many late defenses).

The deadlines set by the Court's orders, the Federal Rules of Civil Procedure, and even federal statute (35 U.S.C. § 282) exist for a reason . . . to prevent unfair surprise and trial by ambush. See Klonski, M.D. v. Mahlab, M.D., 156 F.3d 255, 271 (1st Cir. 1998) (preclusion of evidence is the appropriate remedy because if not "[t]rial by ambush would be re-born. Enforcement of discovery rules and orders is necessary to prevent abuse by future litigants."). Ocean Duke did not follow the rules and can offer no legitimate excuse for failing to do so. The new defenses should be precluded to prevent undue and substantial prejudice to Plaintiffs.

## IV.  **CONCLUSION**

For the foregoing reasons, the Motion should be granted. In the event that the Court is not inclined to grant the Motion in its entirety, Plaintiffs respectfully request that the Court grant the Motion in part as to any one or more of the following new defenses:

1.  **Lack of Novelty (Anticipation) or Public Use** (first raised 11/20/07 – Trial Brief)

2.  **Obviousness** (first raised 11/20/07 – Trial Brief)

3.  **Prior art** (first raised on 11/20/07 – Trial Brief)

4.    **Best mode** (first raised 11/20/07 – Trial Brief)

5.    **Lack of enablement** (first raised 11/20/07 – Jury instruction No. 16)

6.    **Other patent misuse (anticompetition)** (first raised 11/20/07 – Trial Brief)

7.    **Patent misuse** (first raised 11/13/07 – Mot. to Continue Trial)

8.    **Inoperability** (first raised 11/13/07 – Mot. to Continue Trial)

9.    **HISI's lack of standing to pursue lost profits** (first raised 11/13/07 – Mot. to Continue Trial)

10.   **Written description** (first raised 11/1/07 – Opp. to Plts' Mot. for Claim Construction)

11.   **Indefiniteness** (first raised 11/1/07 – Opp. to Plts' Mot. for Claim Construction).

DATED:  Honolulu, Hawaii, November 28, 2007.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.