IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. CV 04-00055 BMK <br><br> **MEMORANDUM IN SUPPORT OF MOTION** |

665,796 / 8827-1

**MEMORANDUM IN SUPPORT OF MOTION**

## I. INTRODUCTION.

Ocean Duke respectfully requests that the court grant judgment as a matter of law notwithstanding the verdict. The grounds for the motion are as follows:

1. The claims of the Kowalski patent, as construed by the court, are impermissibly broader than the specification of the invention set forth in the written description; and

2. The evidence of damages was insufficient to support an award of damages in favor of plaintiff.

Based on the foregoing, defendant Ocean Duke Corporation urges that judgment be entered in its favor, notwithstanding the jury verdict.

## II. STANDARDS GOVERNING POST-TRIAL RULE 50 MOTIONS.

### A. <u>Standards under Rule 50.</u>

During trial, defendant Ocean Duke Corporation (hereafter, "Ocean Duke") brought four motions under Rule 50(a) of the Federal Rules of Civil Procedure. Two of the motions were granted or granted in part; the remaining motions were denied. The denial of a motion under Rule 50(a) is deemed to constitute a deferral of a final decision on the motion, if the motion is renewed after trial. Thus, the motions brought by Ocean Duke that were denied during trial are now being renewed herein, in accordance with Rule 50(b).

Rule 50(b) provides as follows:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment -- or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged -- the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

(Fed. R. Civ. P. 50(b).)

Post-trial Rule 50 motions may be granted where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where there is such an overwhelming amount of evidence in favor of the moving party that reasonable and fair-minded persons could not arrive at a verdict against that party. (*Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 145 (2nd Cir. 2001); *Hathaway v. Runyon,* 132 F.3d 1214, 1220 (8th Cir. 1997); *Strickland Tower Maintenance, Inc. v. American Tel. & Tel. Communications, Inc.,* 128 F.3d 1422, 1426 (10th Cir. 1997).)

B. **The Timing of This Motion.**

Although the court recently permitted the parties to file post-trial motions within thirty days of entry of the judgment dated December 21, 2007, case law establishes that neither the court nor the parties may extend the ten-day period for the filing of the motions described in Rule 50(b). (*United States Leather, Inc. v. H&W Partnership,* 60 F.3d 222, 225 (5th Cir. 1995); *Hodge ex rel. Skiff v. Hodge,* 269 F.3d 155, 157 (2nd Cir. 2001).) Accordingly, this motion is being filed within ten days of the original entry of judgment.

C. **Request for Filing of Supplemental Declarations.**

Although the moving papers on a Rule 50 motion must be filed within ten days, the court may allow additional time for the filing of affidavits in support of the motions. Rule 6(b) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires . . . ."

In most cases, the consideration of Rule 50 motions will be greatly assisted by reference to the actual trial testimony, as reflected in the official transcripts of the trial. However, the ten-day filing requirement makes it impractical if not virtually impossible to cite to the trial transcripts. Accordingly, Ocean Duke respectfully requests that it be permitted to supplement this motion with additional evidence,

665,796 / 8827-1                                    3

based on the trial transcripts, once the trial transcripts (which Ocean Duke has ordered) become available.

### III. THE CLAIMS OF THE KOWALSKI PATENT ARE BROADER THAN THE SPECIFICATIONS.

#### A. Governing Standards.

Generally speaking, a patent consists of two parts: a written description of the invention, and the claims of the patent. The purpose of the written description is to "disclose one's invention to the public"; to "tell the public what the invention is, in addition to how to make and use it . . . ." (*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1375 (Fed. Cir. 2006).) Requiring the patent owner to disclose his invention to the public "is the quid pro quo for the grant of the period of exclusivity." (*Id.*)

In contrast, the claims of the patent define the "metes and bounds" of what is protectable in a court of law. "Both the Supreme Court and [the Federal Circuit] have adhered to the fundamental principle that claims define the scope of patent protection." (*Johnson & Johnson Associates, Inc. v. R.E. Service, Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002).) "[T]he claims made in the patent are the sole measure of the grant . . . ." (*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed. 592 (1961).) "[T]he claims measure the invention." (*Continental Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122 (1908).) "The claims alone define the patent right." (*Thermoplastics*

*Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992). "It is the claims that measure the invention." (*SRI International v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).)

However, patent law is clear that the "claims may be no broader than the supporting disclosure." (*Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (finding a patent invalid where the claims went beyond the scope of the patent's specifications).) If a patent's claims are broader than the underlying specifications, the claims are invalid as a matter of law. (*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).) In *Gentry Gallery, supra*, the court concluded that the written description requirement was not satisfied because, while the original disclosure clearly identified a "console" as the only possible location for the subject controls, the claims did not limit the location of the controls to the console. *Gentry Gallery* thus applied the "proposition that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." (*Cooper Cameron, supra,* 291 F.3d at 1323.)

The reason behind this rule is clear: it keeps the patent holder honest by preventing him from "overreaching." Thus, an "[a]dequate description of the invention guards against the inventor's overreaching, by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed

within his original creation. The definiteness requirement shapes the future conduct of persons other than the inventor, by insisting that they receive notice of the scope of the patented device." (*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991).) "[I]n whatever form the claims are finally issued, they must be interpreted, in light of the written description, but not beyond it, because otherwise they would be interpreted to cover inventions or aspects of an invention that have not been disclosed." (*Lizardtech, Inc.* 433 F.3d at 1375.) In short, "[o]ne should not be able to obtain a patent on what one has not disclosed to the public." (*Lizardtech, supra*, 433 F.3d at 1375.) "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not." (*Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).)

### B. Question of Law.

Issues surrounding the written description defense often present questions of fact to be determined by a jury. (*Lockwood v. American Airlines*, 107 F.3d 1565, 1573 (Fed. Cir. 1997).) However, where a patents' claims are easily understood, without expert aid, by someone of modest intelligence, then the question does not present a genuine issue of material fact, and summary disposition by the court as a matter of law may be appropriate. (*Continuous Curve Contact Lenses, Inc. v. Rynco Scientific Corporation*, 680 F.2d 605, 607 (9th Cir. 1982).) The Federal Circuit has explained that such issues may "properly be decided as a matter of law, when no

665,796 / 8827-1                                6

genuine issue of material fact exists and no expert testimony is required to explain the nature of the patented invention or the accused product or assist in their comparison." (*Amhil Enterprises, Ltd., v. Wawa, Inc.*, 81 F.3d 1554, 1558 (Fed. Cir. 1996).)

  C. **Kowalski Patent.**

The evidence at trial showed that the claims of the Kowalski patent (*see* Marks Decl., Exh. A) are overwhelmingly broader than the scope of the invention as disclosed in the patent's specifications. Specifically, although the claims cover any possible temperature range, the invention as disclosed in the patent is much more narrowly drawn, with limited temperature ranges for heating the material that generates the so-called "tasteless smoke."

The very first page of the patent discloses that "the smoke is generated by burning an organic smoking material at preferably 500 to 800 degrees F. (260 to 571 degrees C.) . . . ." (Tr. Exh. 1; Marks Decl., Exh. A.) Further, an outside temperature range is clearly listed in three different sections of the patent. That range is 204ºC to 510ºC -- a range that is higher than the 180ºC temperature level disclosed in the Shih patent -- as set forth in the sections of the Kowalski patent that are described in more detail below.

The "Background Art" section of the Kowalski patent, at Column 6, beginning with line 63, discloses as follows:

> To minimize formation of these compounds and to conform to empirical data from our laboratory tests, an operable combustion temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade), a preferred range of 500 to 800 degrees Fahrenheit (260 to 571 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees Centigrade) are established for the process described herein.

Next, the "Summary of the Invention" section of the patent, at Column 11, lines 44-52, discloses as follows:

> The manufacturing process begins with the smoke generating part of the apparatus using a natural gas or electric burner to combust wood sawdust packed into a multiple cylinder retort at temperatures in an operable range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade), a preferred range of 500 to 800 degrees Fahrenheit (260 to 571 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees Centigrade) in an oxygen deprived environment.

Finally, the "Best Mode" section of the patent, at Column 16, lines 37-44, discloses as follows:

> The sawdust packed in this highly oxygen restricted closed system retort is combusted by heating the cylinders with the natural gas burner to an operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees centigrade), a preferred range of 500 to 800 degrees Fahrenheit (260 to 571 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees centigrade).

With regard to the "Best Mode" section of the patent, it is important to note that, in his trial testimony, Mr. Kowalski confirmed that it is actually preferable to heat the sawdust at an even higher range than was disclosed in the "written description" section of the patent. Mr. Kowalski testified,

on cross-examination by Ocean Duke's counsel, that the best range for his invention was 500ºC or higher.  At that time, Mr. Kowalski confirmed information that he had submitted, under penalty of perjury, in opposition to a summary judgment motion filed in another of the patent infringement cases he had filed.

Thus, the only evidence in the record at trial is that Mr. Kowalski's patented process -- that is, his invention -- is associated with specific temperature ranges.  Those temperature ranges are referred to as the "operable range," the "preferred range," and the "optimal range."  The American Heritage Dictionary defines "operable" to mean "being such that use or operation is possible."  Clearly, the "operable range" of 204 to 510 degrees Centigrade disclosed in the Kowalski specification is the range at which use or operation of the invention is possible.  The other ranges within that "operable" range simply improve performance of the invention.

However, the claims of the Kowalski patent go beyond the specific temperature ranges disclosed in the written description; indeed, the claims merely disclose a process of "heating organic material to generate smoke," without any specific temperature ranges.  Further, this court specifically declined, in its claim construction ruling, to read any temperature ranges into the claims of the patent.  Thus, Claims 1, 67, 68 and 69 of the Kowalski patent simply use the word "heating,"

665,796 / 8827-1                                          9

and do not limit the temperature to either the operable, preferred, or optimal ranges of the invention itself.[1]  For example, Claim 1 states as follows, in its entirety:

> A process for treating meat comprising:
>
> heating organic material to generate smoke having a gaseous vapor phase; super purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created; and treating meat having a freezing point with said tasteless super-purified smoke.

(Kowalski Patent, Tr. Exh. 1, at Col. 22, lines 65 *et seq.*; Marks Decl., Exh. A.)

The effect is that the claims of the Kowalski patent are broader than the specifications disclosed in the written description, thus rendering the patent invalid as a matter of law.  As a practical matter, the overbreadth of the claims of the patent has a significant "real world" impact on the case now before the court.  As stated earlier, the Shih patent teaches heating of charcoal at a temperature of 180ºC, and there was no evidence in the record that the seafood imported and/or sold by Ocean Duke was treated with gas or smoke that was generated using a different temperature.  (*See* Marks Decl., Exh. B.)  Only if the claims of the Kowalski patent are broad enough to cover such a temperature range could infringement be found.

---

[1] Claim 33 does list an "approximate" temperature range; however, the term "approximate" appears nowhere in the written description section of the patent in connection with the various temperature ranges described.  Rather, the insertion of the word "approximate" appears to be a deliberate effort to broaden the language of Claim 33 beyond the specification of the invention.

Yet the only way for that to happen would be if the patent's claims depict a temperature range that is broader than the "operable range" of 204 to 501 degrees Centigrade -- that is, the range at which Mr. Kowalski's invention *actually works.*

Stated differently, the process used to treat Ocean Duke's seafood can be held to infringe Mr. Kowalski's patent only if the claims of the Kowalski patent are broader than Mr. Kowalski's invention, as disclosed in the written description. However, under those circumstances, the patent must be deemed invalid as a matter of law, because the Kowalski patent would thereby "cover inventions or aspects of an invention [such as the Shih patent] that have not been disclosed [in the written description of the Kowalski patent]." (*Lizardtech, supra.* 433 F.3d at 1375.) In other words, Mr. Kowalski would be enforcing a patent for an invention that he did not invent. The law does not allow this. The specifications provide limitations for invention and that is what the claims can lawfully cover, nothing more. "One does not receive entitlement to a period of exclusivity for what one has not disclosed to the public." (*Lizardtech, supra,* 433 F.3d at 1375.)

As the court observed in *International Glass Company, Inc. v. United States*, 408 F.2d 395 (Ct.Cl. 1969) (a case relied on by plaintiffs for their jury instructions on infringement), "[p]laintiff cannot have it both ways. Claims cannot be broadly construed to make out infringement and narrowly construed to avoid invalidity." (*Id.*, at 405 (quoting *Wire Tie Machinery Co. v. Pacific Box Corp.*, 107 F.2d 54 (9th

Cir. 1939).) In *International Glass*, the court found no infringement, construing the patent's claims sufficiently narrowly to avoid infringement. The court observed that if they were construed broadly enough to permit a finding of infringement, they would be invalid because the claims would then define "a process obvious to those skilled in the art." (*Id.*) In this case, Kowalski consistently sought a broad construction of his patent claims in an effort to swallow up all other processes developed by others, including that of Mr. Shih. Such a broad construction of his claims should invalidate those claims.

Other evidence supports the notion that the claims of the Kowalski patent are broader than the specifications. The "Notice of Infringement" letter sent to Ocean Duke was practically boastful in proclaiming the "very broad" nature of the patent's claims:

> **You should be aware that the Patent is NOT limited to the use of any particular equipment, any particular method of removing taste components from the smoke, any particular names (e.g., "tasteless smoke", "Filtered Wood Smoke", "Purified", "flavorless smoke", or any other name), etc.** The claims in the Patent, which define the scope of the Patent, are numbered "1." through "73." and appear in the last four pages of the Patent. Because a patent is infringed if even one of the patent's many claims are infringed, **any unauthorized activity falling within even a single one of the broadest of the claims of the patent constitutes infringement of the patent.** As you can see from Patent 5,972,401, **the Patent's claims include several very broad claims, such as Claims 1., 49., 50., 67., 68., or 69., which do not mention (and are therefore not limited to) any particular equipment, method for removing taste from the smoke, names, etc. Thus, if food is exposed to smoke from which smoke taste components have been removed so that the smoke does not impart**

> **a smoke flavor to the food, that food is made by the process covered by the Patent, regardless of the equipment used and other particulars.**

(Tr. Exh. 71; Marks Decl., Exh. C (emphasis in original).)  No more persuasive indictment of the overbreadth of the claims of the Kowalski patent can be made than the language appearing in the "Notice of Infringement" letter.

On cross-examination, defense expert witness Prof. Wayne Iwaoka concurred that the claims of the patent were "too broad," and that Mr. Kowalski's invention was simply another way to produce carbon monoxide, "without really telling the public."  This testimony was in keeping with the idea that all Mr. Kowalski invented was one of many ways to generate carbon monoxide in order to treat seafood.  Indeed, Mr. Kowalski's own technical expert witness, Dr. Maga, testified that there are many ways to generate smoke containing carbon monoxide, and that for many of them "you don't even need a patent."

In summary, plaintiff initiated this lawsuit based solely on one alleged phone call to an Ocean Duke salesperson.  (*See* Tr. Exh. 70; Marks Decl., Exh. D.)  That phone call resulted in the disclosure of ***no information whatsoever*** about the processes by which Ocean Duke's treated seafood was processed.  Yet the lawsuit was filed, based on the "very broad" claims of the patent.  During four years of litigation, plaintiff made no effort to visit the subject facility in Bali to determine what was actually happening "on the ground," at the location where Ocean Duke's

seafood was treated. This was because plaintiff did not and does not care what the Shih process entails; as long as seafood is treated with smoke from which taste and odor components have been removed (*i.e.*, with carbon monoxide), then as far as plaintiff is concerned, his "invention" has been infringed, and he is entitled to damages.

However, as shown above, the only route to this outcome is through the intervention of overly broad patent claims that go far beyond any invention Mr. Kowalski disclosed in the written description section of his patent. On that basis, Ocean Duke respectfully submits that the claims of the Kowalski patent are broader than the specifications, making the patent invalid as a matter of law.[2]

## IV. EVIDENCE OF PATENT DAMAGES WAS INSUFFICIENT.

### A. Introduction and Standards.

A second basis for entry of judgment as a matter of law in favor of Ocean Duke is plaintiffs' failure to introduce evidence of damages sufficient to support the

---

2   Ocean Duke intends to bring a separate motion, under the timing for post-trial motions ordered by the court, for a ruling that the Kowalski patent is indefinite as a matter of law. Such a determination is for the court to make, and not the jury. (*Intel. Prop. Dev., Inc. v. UA-Columbia Cablevision, etc.,* 336 F.3d 1308, 1318 (Fed. Cir. 2003) (indefiniteness is a question of law for the court).) Thus, the issue remains to be decided, in the same fashion as plaintiffs' requested decisions on injunction, willfulness, and other non-jury issues. The basis of the motion will be that the claims of the Kowalski patent that require the process not to impart a smoke taste or odor are indefinite, because they depend entirely on the subjective qualities of the palate and olfactory sensations of the person(s) doing the tasting and/or smelling.

verdict. The only evidence of damages presented at trial came in the form of expert opinion testimony of Mr. David Francom. However, that testimony lacked foundation, and hence should be stricken, because it was not based on any ***admitted*** evidence of the finances or business operations of plaintiff Hawaii International Seafood, Inc. Further, such testimony was based on only the scantest of evidence from Ocean Duke, essentially consisting of a one-page spreadsheet summarizing Ocean Duke's sales of treated fish from 1999 to 2005. (Tr. Exh. 193; Marks Decl., Exh. E.) In other words, except for Exhibit 193, the information used by Mr. Francom (financial statements, documents, reports, spreadsheets, etc.) to arrive at his damages estimates were not made part of the record, and thus, from the perspective of the court, do not exist.

If witness examination discloses that an expert witness's testimony is based entirely on assumptions that lack evidentiary support, the opinion is inadmissible and should be stricken. (*Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69, 75 (3d Cir. 1996); *United States v. Sepulveda*, 15 F.3d 1161, 1183 (1st Cir. 1993).) Accordingly, Ocean Duke moves that Mr. Francom's testimony be stricken, and that judgment on the patent claim be entered in favor of defendant for failure of proof.

   **B.     Evidence of Damages Introduced at Trial.**

Other than expert opinion testimony, plaintiffs submitted virtually no evidence of damages. The plaintiff himself, William Kowalski, did not say anything about

damages, other than that the books and records of his corporation were kept by his staff in the Philippines.  For that reason, it is doubtful that Mr. Kowalski could have authenticated his corporate books and records, but in any event that issue was never joined, as there was no effort to introduce any such financial records at trial.  By Ocean Duke's count, 52 trial exhibits were admitted into evidence; yet none of those exhibits consisted of a financial record of plaintiff's company.

    The only significant evidence of Ocean Duke's corporate finances at trial consisted of (1) the oft-repeated assertion that Ocean Duke's annual revenues are on the order of $200 million, and (2) Trial Exhibit 193.  However, the total revenue amount is irrelevant, as the undisputed testimony proved that only about 3% of Ocean Duke's revenues derive from the sale of *treated* seafood.  Thus, the evidentiary record is left only with Trial Exhibit 193.  That exhibit shows that total Ocean Duke profits on treated seafood, over the seven-year period from 1999 to 2005, were in the range of $3.7 million.  Yet the "reasonable royalty" damages amount reached by the jury ($2.2 million) was greater than *half* of that profit amount.  Ocean Duke submits that the evidence submitted in support of the verdict on damages was therefore insufficient, and that judgment should be entered in favor of Ocean Duke as a matter of law.

### C. Insufficient Evidence of Royalty Damages.

Mr. Francom's testimony about the reasonable royalty damages allegedly sustained by Mr. Kowalski consisted of opinion testimony that completely lacked a foundation in any of the evidence that was admitted at trial. Under such circumstances, a court may properly exclude (or strike) expert testimony that is purely speculative. The foundation required to support expert testimony "connotes more than subjective belief or unsupported speculation." (*Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001); *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (court not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert"); *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 418-419 (7th Cir. 2005).)

The case of *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) is instructive. In *Trevino,* the proposed testimony of a damages expert was predicated on the assumption that the decedent was employed as a full-time mechanic at the time he was killed. However, the only foundation laid for this assumption was testimony that (1) the decedent left in the morning and returned in the evening; (2) he distributed some of his earnings to others at fairly regular intervals; and (3) he was observed on a few occasions working on cars. However, there were no pay stubs, W-2 forms, tax returns, cancelled checks, or employer testimony offered as foundational evidence to

show that the decedent was in fact employed.  The district court excluded the expert testimony for lack of foundation, and that ruling was upheld on appeal.  (*Trevino, supra,* 99 F.3d at 922; *see also Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2nd Cir. 1984) (vague assurances about future support are not an adequate foundation for expert testimony on future income).)

The opinions of Mr. Francom on reasonable royalties were offered without any mooring to facts, figures, numbers, documentary evidence, or other information that was actually admitted at trial.  Under the circumstances, his opinion testimony constituted pure speculation.  Such testimony lacks a sufficient foundation, and should be stricken from the record.  Without such evidence, the jury had no basis to award the damages it awarded.  Ocean Duke respectfully submits that plaintiff William Kowalski did not meet his burden of showing an entitlement to reasonable royalty damages.  On that basis, judgment should be entered in favor of Ocean Duke as a matter of law.

## V. CONCLUSION.

For the foregoing reasons, Ocean Duke respectfully requests that this court (a) to permit the filing of a supplemental declaration, detailing the specific trial testimony on which this motion is based, as set forth in the trial transcript, once the transcript is available; and (b) based thereon, to grant this motion for judgment as a matter of law, notwithstanding the verdict rendered by the jury.

DATED:  Los Angeles, California, December 28, 2007.

                /s/ Paul S. Marks_____
                TIMOTHY L. NEUFELD
                PAUL S. MARKS
                LOUISE K. Y. ING
                ALLISON KIRK GRIFFITHS
                Attorneys for defendant
                    OCEAN DUKE CORPORATION