IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. CV 04-0055 DAE BMK <br><br> **MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION.

Ocean Duke Corporation ("Ocean Duke") respectfully requests that the court

grant a new trial, on the grounds set forth hereinbelow.

## II.    STANDARDS FOR NEW TRIAL MOTIONS.

### A.    Rule 59.

Rule 59 of the Federal Rules of Civil Procedure 59 provides in relevant part

as follows:

The court may, on motion, grant a new trial on all or some of the

issues -- and to any party -- as follows:

(A)    after a jury trial, for any reason for which a new trial has

heretofore been granted in an action at law in federal court; or

(B)    after a nonjury trial, for any reason for which a rehearing has

heretofore been granted in a suit in equity in federal court.

* * *

(b)    Time to File a Motion for a New Trial.

A motion for a new trial must be filed no later than 10 days after the

entry of judgment.

(c)    Time to Serve Affidavits.

When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 10 days after being served to file opposing affidavits; but that period may be extended for up to 20 days, either by the court for good cause or by the parties' stipulation. The court may permit reply affidavits.

**B.      The Timing of This Motion.**

Although the court recently permitted the parties to file post-trial motions within thirty days of entry of the judgment dated December 21, 2007, case law establishes that the ten-day period for the filing of a motion for new trial is jurisdictional, and cannot be extended. (*Tillman v. Assoc. of Apt. Owners of Ewa Apts.,* 234 F. 3d 1087, 1089 (9th Cir. 2000).) Accordingly, this motion is being filed within ten days of the original entry of judgment.

**C.      Request for Filing of Supplemental Declarations.**

Although the moving papers on a Rule 59 motion must be filed within ten days, the court may allow additional time for the filing of affidavits in support of the motions. Rule 6(b) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires . . . ." Further, although Rule 59(c) appears to limit the time for filing affidavits, that provision applies where the motion is based exclusively on

affidavits, or on affidavits disclosing new information (such as newly-discovered evidence, or information relating to jury misconduct not disclosed in trial). The current motion is based on affidavits **only** to the extent that the affidavits serve to establish the actual testimony and exhibits introduced in evidence at trial.

Thus, the consideration of this motion will be greatly assisted by reference to the actual trial testimony, as reflected in the official transcripts of the trial. However, the ten-day filing requirement makes it impractical if not virtually impossible to cite to the trial transcripts. Accordingly, Ocean Duke respectfully requests that it be permitted to supplement this motion with additional evidence, based on the trial transcripts, once the trial transcripts (which Ocean Duke has ordered) become available.

## III.   THE VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

Although the existence of substantial evidence supporting a verdict may prevent a court from granting judgment as a matter of law under Rule 50(b), it does not bar a new trial where the court finds that the verdict is against the clear weight of the evidence. (*Marcano Rivera v. Turabo Med. Ctr. Partnership,* 415 F.3d 162, 171 (1st Cir. 2005); *Tisdale v. Federal Express Corp.,* 415 F.3d 516, 528-529 (6th Cir. 2005); *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007).) Indeed, a trial judge has an affirmative **duty** to set aside a verdict, even though it is supported by substantial evidence, if the judge "is of the opinion that the verdict is against the clear

weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice . . . ."  (*Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 594 (4th Cir. 1985); *Carr v. Wal–Mart Stores, Inc.,* 312 F.3d 667, 670 (5th Cir. 2002); *Atlas Food Systems & Services, Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587 (4th Cir. 1996).)

Indeed, in ruling on a new trial motion based on insufficiency of the evidence, the court does not presume that the verdict is correct, or even view the evidence in the light most favorable to the prevailing party.  (*Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987); *Smith v. Transworld Drilling Co.*  773 F.2d 610, 613 (5th Cir. 1985).)  Rather, the court must weigh the evidence and assess ***for itself*** the credibility of witnesses, even if the result is a rejection of the findings of the jury.  "It is clear that the district judge had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, ***even though supported by substantial evidence,*** where, in his conscientious opinion, the verdict is against the clear weight of the evidence, or . . . to prevent . . . a miscarriage of justice."  (*Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990) (emphasis added); *McDonald v. Petree,* 409 F.3d 724, 727-728 (6th Cir. 2005); *United States v. Hilliard,* 392 F.3d 981, 987 (8th Cir. 2004).)

A few cases illustrate these principles.  In *Thomas v. Stalter,* 20 F.3d 298, 304 (7th Cir. 1994), the district court ordered a new trial in a prisoner's rights action. The

jury found for the inmate who was claiming excessive force, but the court granted a new trial after weighing the evidence for itself and finding that the prison guard's testimony was more credible than the prisoner's. In *Brown by Brown v. Syntex Labs., Inc.*, 755 F.2d 668, 673 (8th Cir. 1985), the jury found in favor of the plaintiff on a product liability claim for injuries to a newborn allegedly caused by baby formula. The court granted a new trial, despite the jury verdict, where it determined that the evidence did not disclose a link between the formula and the medical disorders sustained by the infant; that the qualifications of plaintiffs' medical expert were marginal; and that the expert's testimony contained inconsistencies and unsupported assertions.

In the instant case, Ocean Duke submits that the verdict was against the clear weight of the evidence on grounds of infringement and invalidity, as explained below. The issue of damages is treated later in this memorandum.

## A.    Infringement.

The jury found that Ocean Duke infringed all five of the patent claims proffered by plaintiffs. However, plaintiff Kowalski -- having unsuccessfully tried in a pre-trial motion *in limine* to shift the burden of proof to Ocean Duke -- did not meet ***his*** burden of proving the precise method used by Ocean Duke's supplier to process its seafood. The evidence presented at trial of the method by which the Shih process was employed in Bali was second-hand, conflicting, and unpersuasive on at least one

of the key points on which plaintiffs focused their case.  Specifically, the so-called "filtering," "separating," or "condensation" step, by which the gas was actually separated into water vapor and carbon monoxide, was not the subject of any detailed, first-hand testimony from any witness.  Indeed, plaintiffs could not present such testimony, because plaintiffs never visited the facility in Bali to determine exactly what that mechanism consisted of, and how it operated.

This lack of evidence was demonstrated most clearly by plaintiffs' expert witness Dr. Joseph Maga, who volunteered (in response to no particular question from defense counsel) that "he knew" that the separating device "had nothing in it." Plaintiffs' counsel, in contrast, sought to distance himself from this testimony by relying on the (speculative) testimony of Duke Lin, who guessed that there was some kind of filter in the mechanism, based on the knowledge he had gained while working several years earlier as an engineer at RCA.  Separately, however, defense expert Prof. Wayne Iwaoka opined that the unit was a condensation unit, but did not otherwise speculate as to its inner workings.

This total absence of "hard" evidence as to what the subject unit consisted of illustrates a basic (yet unstated) theme of plaintiffs' case:  to wit, ***it does not matter to plaintiffs*** how Ocean Duke's supplier processes seafood at the Bali facility.  All that matters is that ***some*** process is used to treat fish, with no residual smoke taste or

odor.  According to plaintiffs, if you do that, you are an infringer, and you owe money to Mr. Kowalski.

Ocean Duke maintains that such a theory does not serve to meet plaintiffs' burden of proving infringement.  The jury was instructed to "compare patent claims 1, 33, 67, 68, and 69 . . . *with the accused process*, and determine whether or not there is infringement."  (Jury Instruction No. 23; emphasis supplied.)  Yet plaintiffs failed to show precisely what was required by the jury instruction -- *the accused process* -- and hence failed in their proof.  This court, on a motion for new trial, is authorized to disregard the jury's verdict, if the court considers the verdict to be against the "clear weight of the evidence."  Here, the jury's verdict was based on *no evidence* of one of the key steps of the Shih process.  Ocean Duke urges the court to re-weigh the evidence, as it has the power to do, and grant Ocean Duke a new trial on this basis.

On this issue of infringement, the jury may also have been swayed by certain evidence that relates to Mr. Kowalski's patent and his business.  For example, on the first day of trial the jury was shown an impressive video of seafood processing and smoke generation, and the jury may well have been left with the impression – no doubt fostered by plaintiffs and their counsel -- that what was shown was the *plaintiffs'* business operations.  However, on cross-examination, Mr. Kowalski

acknowledged that he and his company have no factories or facilities, and that the video showed *someone else's* operations.

An additional factor that may have weighed on the jury's minds was testimony from Mr. Kowalski that he "invented" tasteless smoke, and that he "enabled an entire industry." But the clear weight of the evidence was to the contrary. Indeed, Mr. Kowalski's own evidence showed that a company called Pescarich, along with other members of the "Tasteless Smoked Seafood Association," were all treating seafood using their own methods, well before Mr. Kowalski obtained his patent. (*See, e.g.,* Tr. Exh. 53 ("Pescarich . . . pioneered a proprietary method in 1994 . . . [b]ut even though the tuna is smoked, there's no smoke taste, as the taste-imparting particles are filtered from the smoke . . . ."); Tr. Exh. 64 (letterhead of "Tasteless Smoked Seafood Association," showing producers of "tasteless smoke," many of whom Mr. Kowalski later sued for patent infringement).) Further, Mr. Kowalski's own lawyer essentially acknowledged that "tasteless smoke" was not an "invention" that "enabled an industry," but rather is "merely a purified version of the filtered smoke that has been used for decades in the processing of seafood." (Tr. Exh. 57.)

One final factor the jury may have considered to Ocean Duke's detriment was the testimony and argument that carbon monoxide is "suicide gas." The strong implication is that Ocean Duke's seafood is treated with suicide gas, whereas plaintiffs' products are treated with what Mr. Kowalski referred to as either "Nature's

Recipe" or "God's Recipe" – *i.e.*, "tasteless smoke." This, too, could have misled the jury, as the evidence was clear that the only thing that causes seafood to retain its color after freezing and thawing is carbon monoxide, regardless of how the CO is applied to the fish. To modify Mr. Yasunaga's lurid description in his opening statement, it is just as easy to commit suicide by pumping Mr. Kowalski's tasteless smoke into your vehicle as by running a hose from the exhaust pipe.

Ocean Duke urges the court to consider this evidence, as well as the testimony of Dr. Maga (who stated there are many way of producing tasteless smoke, many of which do not require a patent), and re-weigh all of the evidence presented to the jury on this issue of infringement. On that basis, Ocean Duke requests that the court grant it a new trial.

###    B.    Invalidity.

If, in contrast, the court determines that the jury was not mistaken in finding infringement, then Ocean Duke submits that this could only result from the fact that the patent's claims are impermissibly broader than the written description of Mr. Kowalski's invention. Patent law is clear that the "claims may be no broader than the supporting disclosure." (*Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998) (finding a patent invalid where the claims went beyond the scope of the patent's specifications).) If a patent's claims are broader than the underlying specifications, the claims are invalid as a matter of law. (*Cooper*

*Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).)  This rule exists to prevent the patent owner from overreaching, "by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." (*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991).)  In short, "[o]ne should not be able to obtain a patent on what one has not disclosed to the public." (*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1375 (Fed. Cir. 2001).)  "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not." (*Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).)

The evidence at trial showed that the claims of the Kowalski patent are overwhelmingly broader than the scope of the invention as disclosed in the patent's specifications.  Specifically, although the claims cover any possible temperature range, the invention as disclosed in the patent is much more narrowly drawn, with limited temperature ranges.  The very first page of the patent discloses that "the smoke is generated by burning an organic smoking material at preferably 500 to 800 degrees F. (260 to 571 degrees C.) . . . ."  (Tr. Exh. 1.)  Further, an outside temperature range is clearly listed in three different sections of the patent:  the "Background Art" section, the "Summary of the Invention" section, and the "Best

Mode" section. In all three sections, the stated temperature range is 204ºC to 510ºC -- a range that is higher than the 180ºC temperature level disclosed in the Shih patent. Mr. Kowalski confirmed the importance of temperature ranges to his invention by testifying, on cross-examination, that the ***best*** range for his invention was 500ºC or higher -- something he had stated in a written declaration filed in another of the patent infringement cases before this court.

Thus, the only evidence in the record at trial is that Mr. Kowalski's patented process -- that is, his invention -- is associated with specific temperature ranges. Those temperature ranges are referred to as the "operable range," the "preferred range," and the "optimal range." The American Heritage Dictionary defines "operable" to mean "being such that use or operation is possible." Clearly, the "operable range" of 204 to 510 degrees centigrade disclosed in the Kowalski specification is the range at which use or operation of the invention is possible, and the other ranges within that "operable" range simply improve performance of the invention.

However, the claims of the Kowalski patent go beyond the specific temperature ranges disclosed in the written description; indeed, the claims merely disclose a process of "heating organic material to generate smoke," without any specific temperature ranges. Further, this court specifically declined, in its claim construction ruling, to read any temperature ranges into the claims of the patent.

11

Thus, Claims 1, 67, 68 and 69[1] of the Kowalski patent simply use the word "heating," and do not limit the temperature to either the operable, preferred, or optimal ranges of the invention itself.  To give an example, Claim 1 states as set forth below, in its entirety:

> A process for treating meat comprising:
>
> heating organic material to generate smoke having a gaseous vapor phase; super purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created; and treating meat having a freezing point with said tasteless super-purified smoke.

(Kowalski Patent, Tr. Exh. 1, at Col. 22, lines 65 *et seq.*; Marks Decl., Exh. A.)

The effect is that the claims of the Kowalski patent are broader than the specifications disclosed in the written description, thus rendering the patent invalid. As a practical matter, the overbreadth of the claims of the patent had a significant impact on the instant lawsuit.  As stated earlier, the Shih patent teaches heating of charcoal at a temperature of 180°C, and there was no evidence in the record that the seafood imported and/or sold by Ocean Duke was treated with gas or smoke that was generated using a higher temperature (which would have placed the Shih process within the range of the Kowalski patent).  Only if the claims of the Kowalski patent

---

[1]    Claim 33 does list an "approximate" temperature range; however, the term "approximate" appears nowhere in the written description section of the patent in connection with the various temperature ranges described.  Rather, the insertion of the word "approximate" appears to be a deliberate effort to broaden the language of Claim 33 beyond the specification of the invention.

are broad enough to cover such a temperature range could infringement be found.

Yet, the only way for that to happen would be if the patent's claims depict a

temperature range that is broader than the "operable range" of 204 to 501 degrees

Centigrade -- that is, the range at which Mr. Kowalski's invention ***actually works.***

All of these facts were presented to and argued to the jury.  Contrary to

the jury's verdict, these facts show that the Kowalski patent "cover[s] inventions

or aspects of an invention [*i.e.,* the Shih patent] that have not been disclosed

[in the written description of the Kowalski patent]."  (*Lizardtech, supra,* 433 F.3d

at 1375.)  Ocean Duke submits that the jury's finding of "no invalidity" was not

supported by substantial evidence -- *i.e.*, the only evidence that must be considered

are the words of the patent.  Nonetheless, if there was substantial evidence in support

of the jury's finding, then Ocean Duke urges that the court re-weigh the evidence, as

the court has a right to do, and grant a new trial on that basis.

Simply stated, Mr. Kowalski did not create an invention that should be held to

prevent Ocean Duke's supplier from using its own patented process.  "One does not

receive entitlement to a period of exclusivity for what one has not disclosed to the

public."  (*Lizardtech, supra,* 433 F.3d at 1375.)  As Prof. Iwaoka told the jury, the

claims of Mr. Kowalski's patent are "too broad," and Mr. Kowalski's invention is

simply another way to produce carbon monoxide, "without really telling the public."

Mr. Kowalski's own technical expert witness, Dr. Joseph Maga, concurred, testifying

13

that there are many ways to generate smoke containing carbon monoxide, and that

for many of them "you don't even need a patent."

## IV.     THE DAMAGES AWARD WAS EXCESSIVE.

In federal question cases, the standard for determining whether damages

are excessive is whether the award is "grossly excessive . . . , clearly not supported

by the evidence, or based only on speculation or guesswork." (*Del Monte Dunes*

*at Monterey, Ltd. v. City of Monterey,* 95 F.3d 1422, 1435 (9th Cir. 1996);

*Eich v. Board of Regents for Central Missouri State Univ.,* 350 F.3d 752, 763

(8th Cir. 2003); *Moorer v. Baptist Mem. Health Care System,* 398 F.3d 469, 485

(6th Cir. 2005).  In addition, a district court may grant a defendant's motion for

a new trial on condition that plaintiff agrees to accept a remittitur (*i.e.*, to remit

a portion of the damages awarded by the jury).  If plaintiff rejects the remittitur,

a new trial (or an appeal) will occur.  (*Hetzel v. Prince William County, Va.,*

523 U.S. 208, 211, 118 S.Ct. 1210, 1211-1212 (1998) (appellate court's order that

damages be recalculated without affording plaintiff option of a new trial violated

plaintiff's 7th Amendment right to jury trial); *Morgan v. Woessner,* 997 F.2d 1244,

1258 (9th Cir. 1993) (court cannot order verdict reduced without affording plaintiff

option for new trial on damages issue).)  The amount to which the verdict should be

reduced is generally the maximum amount that the jury could reasonably find, based

on the evidence.  However, the court cannot merely substitute its judgment for that of

the jury.  (*D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.,* 692 F.2d 1245,

1249 (9th Cir. 1982); *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 443 (6th Cir.

2000); *Rangolan v. County of Nassau,* 370 F.3d 239, 244 (2nd Cir. 2004).)

Here, there are several reasons why the damages awarded by the jury were

excessive, and should be reduced or eliminated altogether.

First, the only evidence of damages presented at trial came in the form of

expert opinion testimony of Mr. David Francom.  However, that testimony lacked

foundation, and hence should be stricken, because it was not based on any ***admitted***

evidence of the finances or business operations of plaintiff Hawaii International

Seafood, Inc.  Further, such testimony was based on only the scantest of evidence

from Ocean Duke, essentially consisting of a one-page spreadsheet summarizing

Ocean Duke's sales of treated fish from 1999 to 2005.  (Tr. Exh. 193; *see* Marks

Decl., Exh. E.)  The plaintiff himself, William Kowalski, did not say anything about

damages, other than that the books and records of his corporation were kept by his

staff in the Philippines.  For that reason, it is doubtful that Mr. Kowalski could have

authenticated his corporate books and records, but in any event that issue was never

joined, as there was no effort to introduce any such financial records at trial.  By

Ocean Duke's count, 52 trial exhibits were admitted into evidence; yet none of those

exhibits consisted of a financial record of plaintiff's company.

The only significant evidence of Ocean Duke's corporate finances at trial consisted of (1) the oft-repeated assertion that Ocean Duke's annual revenues are on the order of $200 million, and (2) Trial Exhibit 193. However, the total revenue amount is irrelevant, as the undisputed testimony proved that only about 3% of Ocean Duke's revenues derive from the sale of *treated* seafood.

Thus, the evidentiary record is left only with Trial Exhibit 193. That exhibit shows that total Ocean Duke profits on treated seafood, over the seven-year period from 1999 to 2005, were in the range of $3.7 million. Yet the "reasonable royalty" damages amount reached by the jury ($2.2 million) was greater than *half* of that profit amount. Ocean Duke submits that the evidence submitted in support of the verdict on damages was therefore insufficient, and that judgment should be entered in favor of Ocean Duke as a matter of law. In other words, except for Exhibit 193, the information used by Mr. Francom (financial statements, documents, reports, spreadsheets, etc.) to arrive at his damages estimates were not made part of the record, and thus, from the perspective of the court, do not exist.

If witness examination discloses that an expert witness's testimony is based entirely on assumptions that lack evidentiary support, the opinion is inadmissible and should be stricken. (*Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69, 75 (3rd Cir. 1996); *United States v. Sepulveda*, 15 F.3d 1161, 1183 (1st Cir. 1993).) Accordingly,

without such evidence, the jury verdict was impermissibly based on speculation or guesswork, and was against the clear weight of the evidence.

Second, the opinion evidence of royalty damages was likewise based on speculation and surmise. Mr. Francom's testimony about the reasonable royalty damages allegedly sustained by Mr. Kowalski consisted of opinion testimony that completely lacked a foundation in any of the evidence that was admitted at trial. Under such circumstances, a court may properly exclude (or strike) expert testimony that is purely speculative. The foundation required to support expert testimony "connotes more than subjective belief or unsupported speculation." (*Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 250 (6th Cir. 2001); *J.B. Hunt Transport, Inc. v. General Motors Corp.,* 243 F.3d 441, 444 (8th Cir. 2001) (court not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert"); *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.,* 395 F.3d 416, 418-419 (7th Cir. 2005).)

The case of *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) is instructive. In *Trevino,* the proposed testimony of a damages expert was predicated on the assumption that the decedent was employed as a full-time mechanic at the time he was killed. However, the only foundation laid for this assumption was testimony that (1) the decedent left in the morning and returned in the evening; (2) he distributed some of his earnings to others at fairly regular intervals; and (3) he was observed on

a few occasions working on cars.  However, there were no pay stubs, W-2 forms, tax returns, cancelled checks, or employer testimony offered as foundational evidence to show that the decedent was in fact employed.  The district court excluded the expert testimony for lack of foundation, and that ruling was upheld on appeal.  (*Trevino, supra,* 99 F.3d at 922; *see also Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2nd Cir. 1984) (vague assurances about future support are not an adequate foundation for expert testimony on future income).)

The opinions of Mr. Francom on reasonable royalties were offered without any mooring to facts, figures, numbers, documentary evidence, or other information that was actually admitted at trial.  Under the circumstances, his opinion testimony constituted pure speculation.  Such testimony lacks a sufficient foundation, and should be stricken from the record.

Even if the evidence from Mr. Francom is allowed to remain as part of the record, its probative value is low, and it should be re-weighed by the court. Mr. Francom testified to a reasonable royalty range from 4 cents per pound to 20 cents per pound.  He then used the ***higher*** number to calculate his preferred damages amount of slightly over $2,000,000.  However, he gave no rational basis for using that number, as opposed to any other.  Based on the testimony, the "correct" damages figure could just as easily have been 4 cents per pound, as opposed to 20 cents per pound.   Without a reasoned and rational basis for choosing the 20 cents

per pound figure, the jury's award was based on speculation -- essentially, the verdict was a "coin toss" between the two figures, with the result being that the jury awarded the *highest possible* damages number.

The damages amount that the jury awarded, however, is greater than one-half of Ocean Duke's profits for the relevant time period, as set forth in Tr. Exh. 193. Thus, the "reasonable royalty" figure that plaintiffs were limited to recovering appears much more like a "lost profits" figure -- even though the "lost profits" measure of damages was excluded by the court.

Furthermore, the jury's award was even higher than the number requested by plaintiffs' counsel in closing argument and testified to by Mr. Francom. One can surmise that the jury added additional dollars for some perceived damage that was not the subject of an evidentiary showing, and would be improper in any event -- such as attorneys' fees, or interest.

Finally, there were errors in calculation committed by Mr. Francom that were testified to at the trial. For example, Mr. Francom erroneously assumed that certain entries on Ocean Duke invoices meant that the seafood at issue was "treated" product -- that is, product that would be relevant in this lawsuit -- when in fact the product was not. This was most apparent by Mr. Francom's allocation to the category of "treated" product *all* seafood showing the word CRYO on an Ocean Duke invoice. However, that information was erroneous, as not all such product was treated; much

of the product came from other locations than Bali. As a result of these errors,

Mr. Francom assumed that Ocean Duke underreported its sales in Tr. Exh. 193,

when in fact Ocean Duke had not. Thus, Mr. Francom's damages numbers were

necessarily ***overstated.*** The jury apparently did not take this into account;

Ocean Duke urges that the court do so in connection with this new trial motion.

In conclusion, because the jury had no rational basis for awarding damages in

the amount of the verdict, and because the amount of damages awarded is excessive

and against the clear weight of the evidence, Ocean Duke urges the court to grant a

new trial, subject in the court's discretion to a remittitur.

## V.    OPPOSING COUNSEL COMMITTED MISCONDUCT.

At the outset, it must be said that Ocean Duke does not lightly make

accusations of "misconduct" against opposing counsel. Indeed, although the precise

term used in the authorities is "misconduct," what happened in the one instance that

is cited herein may have been a momentary lapse, and may even have been purely

unintentional, and committed with no improper motive (in the heat of battle at trial,

so to speak). Nonetheless, what was said was stated directly to the jury, and it could

easily have been interpreted (or misinterpreted) to mean that the jury could reject one

or more important rulings made by the court that were adverse to the plaintiffs' case.

As such, Ocean Duke respectfully urges that the court should consider the statement

made by plaintiffs' counsel in determining this motion.

A new trial may be ordered where the opposing counsel committed misconduct at trial that made it reasonably probable that the verdict was influenced by prejudicial statements.  (*Tesser v. Board of Ed. of City School Dist. of City of New York,* 370 F.3d 314, 321 (2nd Cir. 2004).)  To determine the prejudicial effect of attorney misconduct, courts look to the "totality of the circumstances" and weigh such factors as the "nature of the comments, their frequency, their possible relevancy to the real issue before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself."  (*Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1193 (9th Cir. 2002) (internal quotes omitted).)

Here, although "misconduct" may be a strong word, plaintiffs' counsel did say one thing in closing argument that he should not have said, and which almost certainly influenced the jury.  Indeed, what plaintiffs' counsel said, if it was accepted and acted upon by the jury, could be the one thing that explains why the jury awarded *more* in damages than was testified to by plaintiffs' expert witness, and *more* than was even requested by plaintiffs' counsel in closing argument.

Here's what happened.  Plaintiffs' counsel was talking about damages in his closing argument, and specifically about the fact that much of the trial had been devoted to harm and damages suffered by Mr. Kowalski's company, and that much of the expert testimony on damages related to lost profits -- all of which had been excluded from consideration by the court, in granting defendant's Rule 50(a)

motions.  Counsel then explained that the jury was limited to reasonable royalty damages.  However, at that point, counsel said what he should not have said. Specifically, in apparent reference to the court's adverse rulings on lost profits, counsel stated that ***"it's really not fair"*** (or words to that effect).

It is, of course, difficult to determine the prejudicial impact of one improper statement to the jury.  However, the law is crystal clear that counsel are prohibited from criticizing rulings of the court in the presence of the jury.  Yet that is just what counsel appears to have done.  The jury could easily have interpreted counsel's argument to mean, in essence, "We put on evidence of $11,000,000 in damages, and the court took that away from your consideration, and away from us as plaintiffs. That's not fair, and you should therefore award more than what the court is limiting me to arguing and you to deciding."  Granted, counsel did not use those exact words, but the jury may well have understood the statement "it's really not fair" to mean just that.  And, as has been seen, the jury did indeed award almost $200,000 more in damages than requested by counsel or testified to by the damages expert.

If indeed the improper statement by plaintiffs' counsel resulted in the excessive damages award, then that is another basis for the grant of a new trial.

## VI.    THE JURY COMMITTED MISCONDUCT

Juror misconduct may be a ground for new trial if prejudicial to the losing party.  (*See, e.g., Anderson v. Ford Motor Co.,* 186 F.3d 918, 920 (8th Cir. 1999);

*Caterpillar Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358, 1368-1373 (Fed. Cir. 2004).)

Specifically, a juror's protracted failure to pay attention to the evidence (as opposed

to momentary lapses) may constitute misconduct.  (*See United States v. Tierney,*

947 F.2d 854, 868 (8th Cir. 1991) (jurors slept and read magazines; conduct held

insufficient to cause prejudice because not protracted).)

    Here, although Ocean Duke appreciates the time and effort expended by all

jurors in this complex trial, it did appear that at least one juror -- indeed, the juror

who ended up being the foreman of the jury -- was inattentive, and may well have

been dozing during the trial (slumped in chair, with head leaning against back wall,

and eyes closed).  If the court noted this as well, it would present additional grounds

for a new trial.

## VII.    ERRORS OF LAW DURING TRIAL

    A new trial motion can be granted on the ground of error of law occurring

during the trial (for example, on evidentiary rulings).  "A new trial is only warranted

when an erroneous evidentiary ruling 'substantially prejudiced' a party."  (*Ruvalcaba*

*v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995); *Arlio v. Lively,* 474 F.3d

46, 51-52 (2nd Cir. 2007) (admission of testimony on prior arbitration was irrelevant

and overly prejudicial); *Elcock v. Kmart Corp.,* 233 F.3d 734, 757-758 (3rd Cir.

2000) (damages award based on inadmissible expert testimony required new trial

on damages).)  Erroneous jury instructions, as well as the failure to give adequate

instructions, are also grounds for a new trial.  (*Cobb v. Pozzi,* 363 F.3d 89, 112

(2nd Cir. 2004); *Texas Digital Systems, Inc. v. Telegenix, Inc*., 308 F.3d 1193, 1201

(Fed. Cir. 2002); *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990).)

Here, Ocean Duke assigns as error the following issues, each of which was either fully briefed or objected to in detail on the record, and are mentioned here briefly:

1.    Exclusion of Michael McEnerney as a witness, preventing defendant from rebutting plaintiffs' damages expert.

2.    Exclusion of Charles Cardile as a witness, preventing the jury from hearing a witness who has detailed knowledge of the inner workings of the Shih process.

3.    Exclusion of Richard Friend as a witness, preventing the jury from hearing more detailed information about Pescarich's "pioneering" efforts in "tasteless smoke."

4.    Lack of instructions of the "invalidity" defenses of anticipation, best mode, prior art, misuse, and other instructions objected to on the record.

5.    The court's claim construction order, which was issued after full briefing by the parties.

6.    The failure to answer the jury's question about damages with a simple "yes" or "no," or adding the words "if any," such that the jury may have been left

with the impression that it had to award the damages amount testified to by plaintiffs'

expert witness.

## VIII.  CONCLUSION.

For the foregoing reasons, Ocean Duke respectfully requests that this Court

grant this motion in its entirety and permit a re-trial of the complaint on file herein.

DATED:  Los Angeles, California, December 28, 2007.


/s/ Paul S. Marks_____
TIMOTHY L. NEUFELD
PAUL S. MARKS
LOUISE K. Y. ING
ALLISON KIRK GRIFFITHS

Attorneys for Defendant
   OCEAN DUKE CORPORATION