CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA    2954-0
ALLISON MIZUO LEE    7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-00055 BMK <br><br> PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR NEW TRIAL FILED 12/28/07; DECLARATION OF MILTON M. YASUNAGA, EXHIBITS "1" TO "18"; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5; CERTIFICATE OF SERVICE <br><br> TRIAL: December 4-13, 2007 |

**PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR NEW TRIAL FILED 12/28/07**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    ARGUMENT ................................................................................. 1

    A.    The Jury's Verdict On Infringement And Invalidity Were Not Against The Clear Weight Of The Evidence ...................................... 1

        1.    The weight of the evidence supports the jury's determination that Ocean Duke infringed all of the asserted claims of the Kowalski Patent ..................................... 2

        2.    The weight of the evidence supports the jury's determination that Ocean Duke failed to establish by clear and convincing evidence that the Kowalski Patent is invalid ................................................................................ 15

    B.    The Damage Award Was Not Excessive, Nor Is A Remittitur Warranted ................................................................................ 16

    C.    Plaintiff's Counsel Did Not Engage In Misconduct, Nor Is A New Trial Warranted On This Ground ............................................... 24

    D.    Jury Misconduct Is Not A Proper Basis To Grant A New Trial ....... 28

    E.    The Court's Pre-Trial And Trial Rulings Of Which Ocean Duke Assigns Error Were Correct ............................................................. 30

III.   CONCLUSION .............................................................................. 31

# TABLE OF AUTHORITIES

## CASES

Barzelis v. Kulikowski, 418 F.2d 869 (9th Cir. 1969)............................................. 25

Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103 (9th Cir. 1991).......... 25, 28

Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422
(9th Cir. 1995) .................................................................................... 18, 22, 23

Digidyne Corp. v. Data General Corp., 734 F.2d 1336 (9th Cir. 1984) .................. 3

Early v. United States, 309 F. Supp. 421 (D. Kan. 1969)....................................... 30

Int'l Adhesive Coating Co., Inc v. Bolton Emerson Int'l Inc., 851 F.2d 540
(1st Cir. 1988) ............................................................................................ 19

Kehr v. Smith Barney, Harris Upham & Co., Incorp., 736 F.2d 1283 (9th
Cir. 1984) .................................................................................................. 28

Kelly v. City of Oakland, 198 F.3d 779 (9th Cir. 2000)........................................ 11

Los Angeles Mem. Coliseum Comm. v. Nat'l Football League, 791 F.2d
1356 (9th Cir. 1984)............................................................................... 18, 22

McGhee v. Arabian Am. Oil Co., 871 F.2d 1412 (9th Cir. 1989) ........................... 3

Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F.3d 1365 (Fed. Cir.
2001).............................................................................................................. 3

Poulot v. Paul Arpin Van Lines, Inc., 235 F.R.D. 537 (D. Conn. 2006) ............... 22

Robinson v. Shapiro, 484 F. Supp. 91 (S.D.N.Y. 1980), *affirmed on appeal*
646 F.2d 735 (2nd Cir. 1981)........................................................................ 22

Roy v. Volkswagen of Am., Inc., 896 F.2d 1174 (9th Cir. 1990) ........................... 3

Ruvalcaba v. City of Los Angeles, 64 F.3d 1323 (9th Cir. 1995) ................... 11, 15

<u>Settlegoode v. Portland Public Sch.</u>, 371 F.3d 503 (9th Cir. 2004)............ 26, 27, 28

<u>Synder v. Freight, Construction, General Drivers, Warehousemen & Helpers Local No. 287</u>, 175 F.3d 680 (9th Cir. 1999) ................................. 18

<u>Tanner v. United States</u>, 483 U.S. 107 (1987) ......................................... 31

<u>United States v. Moore</u>, 580 F.2d 360 (9th Cir. 1978)............................. 29

<u>United States v. Sorenson</u>, 611 F.2d 701 (8th Cir. 1979) ................................ 29, 30

<u>United States v. Tierney</u>, 947 F.2d 854 (8th Cir. 1991)..................................... 30, 31

<u>Venegas v. Wagner</u>, 831 F.2d 1514 (9th Cir. 1987) ................................ 3, 10, 15, 17

## STATUTES

35 U.S.C. § 282   ................................................................................... 13

35 U.S.C. § 284 ..................................................................................... 27

Fed. R. Evid. 703 ................................................................................... 18

## I.    **INTRODUCTION**

Plaintiff WILLIAM R. KOWALSKI ("*Mr. Kowalski*" of "*Plaintiff*") submits his memorandum in opposition to the Motion for New Trial filed by Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") on December 28, 2007 (the "*Motion*"). The Motion should be denied because, as discussed in detail below:

(1)    The jury's verdict on infringement is not against the clear weight of the evidence;

(2)    The jury's verdict that Ocean Duke did not prove by clear and convincing evidence that the Kowalski patent is invalid is not against the clear weight of the evidence;

(3)    The damage award was not excessive, nor is a remittitur warranted;

(4)    Kowalski's counsel did not commit misconduct;

(5)    Juror misconduct does not warrant a new trial; and

(6)    The Court's pre-trial and trial rulings in which Ocean Duke assigns error were correct.

## II.    **ARGUMENT**

### A.    **The Jury's Verdict On Infringement And Invalidity Were Not Against The Clear Weight Of The Evidence.**

Ocean Duke asserts that the jury's verdict in Plaintiff's favor on infringement and invalidity are against the clear weight of the evidence.

Under Ninth Circuit law,[1] "a stringent standard applies when the motion is based on insufficiency of the evidence." Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir. 1987) (citing Digidyne Corp. v. Data General Corp., 734 F.2d 1336, 1347 (9th Cir. 1984)). Thus, a "motion for a new trial may be granted only if the verdict is against the 'great weight' of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'" Id. (quoting Digidyne Corp., 734 F.2d at 1347). The trial court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury. See Roy v. Volkswagen of Am., Inc., 896 F.2d 1174, 1176 (9th Cir. 1990). In fact, the Ninth Circuit has held that "if the jury's verdict is not clearly against the weight of the evidence, the trial court abuses its discretion in ordering a new trial." McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1420 (9th Cir. 1989).

The weight of the evidence supports the determinations reached by the jury on infringement and invalidity. As discussed below, review of the trial record shows clearly that the jury did not reach a "seriously erroneous result."

    1.    The weight of the evidence supports the jury's determination that Ocean Duke infringed all of the asserted claims of the Kowalski Patent.

Ocean Duke contends that the Court should re-weigh the evidence and grant

---

[1] Because whether a new trial should be granted is a "procedural issue not unique to patent law," regional (Ninth) circuit law applies. Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F.3d 1365, 1374 (Fed. Cir. 2001).

a new trial because (1) Plaintiff supposedly did not meet his burden of establishing that the process used to treat Ocean Duke's imported fish product includes the "filtering" step, see Memo. in Support of Mot. at 5, id. at 7 ("Here, the jury's verdict was based on *no evidence* of one of the key steps of the Shih process."), (2) the jury may have been swayed by the Cryofresh video presentation (Trial Exhibit 140), see id. at 7-8, (3) Mr. Kowalski's testimony that he "enabled an entire industry" may have "weighed on the juror's minds," id. at 8, and (4) the testimony and argument that carbon monoxide is "suicide gas" may have been detrimental to Ocean Duke. See id. at 8-9.

First, Ocean Duke's contention that there is insufficient evidence supporting that its imported product is treated with a process that is covered by the "filtering" step is contradicted by the trial record. The jury was instructed that the subject step of Claim 67[2] of the Kowalski patent had been construed by the Court as follows:

> **Filtering or separating out or reducing** (including by cooling, **condensing**, settling out, and/or aging) the parts of the smoke which give smoke flavor to food at least enough so that the resulting or remaining smoke does not give smoke flavoring to food when food is exposed to that smoke.

Jury Instructions, filed 12/13/07, at 27 (Instr. No. 20) (emphasis added) ("*filtering*

_____

[2] The other asserted claims contained a similar step which will not be discussed herein because the language of Claim 67 is sufficiently representative.

*step*"). In closing argument, Plaintiff's counsel specifically explained and pointed out the evidence supporting that Ocean Duke's supplier used a process that included the filtering step, including but not limited to:

- Admissions by Ocean Duke (Trial Exhibits 70 and 71, attached to the Motion as Exs. "D" and "C") and Stalker Testimony:  Mr. John Stalker ("*Stalker*"), a former employee of HISI testified that Ocean Duke's representative Mr. Chris Ragone ("*Ragone*") made the admission to Stalker that Ocean Duke's product "Tasteless smoke processed ahi saku" was treated with a process where "smoke flavor components have been removed from the smoke to make tasteless smoke" and "The tasteless smoke treated seafood does not retain a smoke flavor after smoke treatment."  Trial Ex. 70 (attached as Ex. "D" to Mot.).  Duke Lin, founder and Chief Executive Officer of Ocean Duke, testified that Ragone was the highest ranking sales manager at the time that the time Ragone spoke to Stalker in 2000 and is still employed by Ocean Duke, currently holding the position of Vice President of Sales.  Plaintiff's January 2000 Notice of Infringement letter, (Trial Exhibit 71, attached to the Motion as Ex. "C" at 2), referenced the admission that Ragone made to Stalker regarding smoke flavor components being removed so that the seafood ended up without smoke flavor, but Ocean Duke never denied the admission and never responded to the letter.  None of Ocean Duke's witnesses denied that Ragone admitted to Stalker that Ocean Duke's product was treated with smoke in which the smoke flavor components had been removed to make tasteless smoke, not even Ragone, who Ocean Duke chose not to bring to trial despite (1) naming him in its witness list and (2) representing to Plaintiff's counsel during trial (near the close of Plaintiff's case) that Ragone would be called to testify.  See Yasunaga Decl. ¶ 2.

- Shih Diagram & Notes (Trial Exhibit 177, attached hereto as Ex. "1"): Roger Lin testified that he received Trial Exhibit 177 and that the handwritten notes on the diagram were from Mr. Steven Shih ("*Mr. Shih*"), the owner of Ocean Duke's supplier PT Intisamudera Citra Perkasa ("*PT*") and the inventor of the Shih Patent.  The diagram purported to explain the process in which PT generated the smoke used to treat the fish products imported by Ocean Duke.  Mr. Shih's

handwritten notes included comments such as "we get a good quality smoke" and "we used a filter over here" which (together with Ocean Duke's admissions that its fish did not have smoke taste) evidences that the process used by PT to treat Ocean Duke's imported fish includes the Kowalski Patent claims' filtering step.

- Dr. Maga Testimony:   Plaintiff's expert Dr. Joseph Maga ("**Dr. Maga**") testified consistent with his written report that in his opinion the processing of the smoke used for Ocean Duke's fish filters out smoke taste and smoke odor imparting components because (1) smoke taste and odor causing components that are vapors are removed when the vapors are converted to liquid and the liquid is then removed and (2) other smoke taste and odor causing components are dissolved or trapped or settled into the liquid and are removed when the liquid is removed.   Furthermore, some smoke taste and odor causing components may be separated out because they settle out or stick to or are absorbed by the walls of the pipes, devices and bags that the smoke passes through and sits in before it is used to treat the fish.  See Ex. "2" (Maga Report dated 9/14/07) at ¶ 7-8.

- Iwaoka Testimony:   Ocean Duke's own expert Prof. Wayne Iwaoka ("**Prof. Iwaoka**") testified consistent with his deposition testimony and Dr. Maga's testimony that the Shih process involves condensation of vapors, which removes water soluble things that are suspended in the water and that particulate matter would also be removed when the water was removed.   See Iwaoka Depo. Tr. at 49: 19-25, 50: 1 attached hereto as Ex. "3" (Q. When the Shih process then goes to the next step of removing water vapor, that removal of water vapor removes not just the water vapor but some particulate matter as well as other things that were generated, right? A. It could. Q. Especially the highly water soluble things? A. That's correct. Q. [P]articulates that are suspended in the water would be removed when you remove the water?   A.   Yes.").   Prof. Iwaoka's opinion that the plastic container pictured in Trial Exhibit 502 (bate stamped ODC 4), attached hereto as Ex "4," which according to Roger Lin looked like the machine he saw when he visited PT's facility, was a condensation unit also supports that PT's process employed the filtering step of separating out or reducing by condensing the parts of the smoke that give smoke flavor to food.

- <u>Duke Lin Testimony</u>:  Duke Lin admitted that he said under oath during his deposition two months earlier that he saw filtering material – similar to the type in a home water filtration device – in a clear plastic container that was a component of PT's smoke generation machine.  <u>See</u> Duke Lin Depo. Tr. (attached hereto as Ex. "5") at 46: 8-21 ("Q.  Okay.  But you said from what you saw, it looked like the kind of water filter people might have at their house, right?   A.  Looked like that.  Q.  Okay.  You mean the type that people would attach to their faucet?  A.  Idea like that.").  He was not speculating as Ocean Duke now suggests – he was testifying under oath that he saw this at the factory.  Prof. Iwaoka testified that water filtering material includes activated carbon, which removes tastes and odors.  On the witness stand, Duke Lin tried to run away from his deposition testimony by saying that Prof. Iwaoka (who had never been to PT's facility) suggested to Lin that morning that Lin did not see filtering material and the device was a "condensation unit."  The jury was entitled to discredit Duke Lin's inconsistent trial testimony and believe his original deposition testimony (which at trial he admitted giving in his deposition) that he saw filtering material like in a home water filtration system.  Regardless of whether Duke Lin saw filtering material or a condensation unit, his testimony proves the filtering step because there was ample evidence at trial that condensation is a means that removes smoke taste and odor causing components.  (In addition, Ocean Duke's interrogatory answers stated that its product was treated with "filtered smoke," and Roger Lin admitted that at trial.)

Thus, contrary to Ocean Duke's contention that there was "***no evidence***," <u>see</u> Memo. in Support of Mot. at 7, the trial record contains ample support showing that the process used by PT to treat Ocean Duke's imported fish included the filtering step.

In contrast, Ocean Duke says that the weight of the evidence compels rejection of the jury's verdict.  The evidence relied upon by Ocean Duke is limited to purported statements by Plaintiff's expert Dr. Maga that (1) the device depicted

in Trial Exhibit 502 (bate stamped ODC 4), attached hereto as Ex. "4," "had nothing in it" and (2) "there are many ways of producing tasteless smoke, many of which do not require a patent". See Memo in Support of Mot. at 6, 9.  Notably, Ocean Duke presented no persuasive evidence or argument to show that the process used by PT to treat the fish products it imports did not include the filtering step of separating out or reducing (including by condensing) the parts of the smoke that give smoke flavor to food.

Assuming *arguendo* that Prof. Maga's testified as Ocean Duke contends, this testimony does not help Ocean Duke and certainly does not outweigh the evidence identified above.  Dr. Maga testified with respect to Trial Exhibit 502 that he could not tell from the pictures whether the machine was in operation at the time the photograph was taken, suggesting the likelihood that when in operation, something (such as the filtering material observed by Duke Lin) may have been placed in the device.

Second, even if it is assumed that the device during operation did not contain filtering material, the filtering step would still be met because of the evidence that filtering occurred through condensation that was caused by cooling the smoke by passing the smoke conveying pipe through the bucket of water that preceded the cylinder.

Dr. Maga's testimony that there are many ways of producing tasteless smoke and that some do not require a patent does nothing to contradict that the evidence shows the process used by PT to treat Ocean Duke's fish (which was described by Mr. Ragone, Mr. Shih, Prof. Iwaoka and Duke Lin) includes the filtering step. As Plaintiff's counsel explained during closing, statements about Kowalski not having a patent for the product of smoke without taste or that smoke without taste can be made in many ways without a patent may be correct but they are no defense to Ocean Duke. This is because the Kowalski Patent is a process patent, and covers the import or sale of fish made with the process of filtering smoke to make it tasteless AND applying it to fish, so while it may be true that merely creating the smoke does not infringe, Ocean Duke infringes because the evidence shows that it imported and sold fish that was treated with the process of filtering smoke to make it tasteless and then treating the fish with the resulting smoke with the result that the fish ended up without smoke taste. In short, Dr. Maga's testimony does not support Ocean Duke's position, much less warrant the conclusion that the jury's verdict was against "the great weight of the evidence" or a "seriously erroneous result." Venegas, 831 F.2d at 1519.

Next, Ocean Duke's contentions that certain evidence – i.e. (1) the Cryofresh video, (2) testimony that Mr. Kowalski enabled an entire industry by inventing "tasteless smoke," and (3) reference to carbon monoxide as the "suicide

gas" – may have swayed the jury are evidentiary challenges. "Objections to evidence must be made contemporaneously." Kelly v. City of Oakland, 198 F.3d 779, 786 (9th Cir. 2000). "A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced a party." Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995). Thus, Ocean Duke cannot rely on these objections now because it waived them.

As to the Cryofresh video, Ocean Duke's counsel stated that he had no objection to introduction of Trial Exhibit 140. See Ex. "6" (Day 1 Trial Tr.) at 7: 16-20 ("MR YASUNAGA: Your Honor, I would move Exhibit 140 into evidence, so we can show it to the jury. THE COURT: Any objection? MR. MARKS: No, Your Honor."). Moreover, Ocean Duke does not say why the Cryofresh video was improper. Ocean Duke's admission that "Mr. Kowalski acknowledged that he and his company have no factories or facilities, and that the video showed someone else's operations," Memo. in Support of Mot. at 7-8, in any event cured any possible perceived mis-impression that the facilities depicted in the video were Mr. Kowalski's factories. In fact, rather than confuse the jury, both Mr. Kowalski and his damage expert Mr. Francom emphasized that Mr. Kowalsk's distribution company did not own its own factories but instead relied on other companies which Mr. Kowalski's people had trained. This emphasis that he did not own the factories was made in the context of explaining to the jury that this arrangement

was advantageous because it meant his distribution company could easily handle more sales by simply having these many suppliers increase production or training additional suppliers. Most important, even assuming that the video was in some way improper, it was not "substantially prejudicial" to Ocean Duke. As Ocean Duke itself acknowledges, the jury was expressly instructed to compare the asserted patent claims with the evidence of the process used on Ocean Duke's fish ("the accused process") to determine the infringement issue. See Memo. in Support of Mot. at 7 ("The jury was instructed to 'compare patent claims 1, 33, 67, 68 and 69 *with the accused process*, and determine whether or not there is infringement"). Whether or not Mr. Kowalski owned the facilities in the Cryofresh video, while pertinent for background and damages, was not relevant to the jury's infringement analysis.

Ocean Duke also did not object to Mr. Kowalski's testimony about inventing the tasteless smoke process (the context makes clear that the words "tasteless smoke" were used to refer to is patented invention, which is a process for using smoke without adding taste) and about "enablement of an industry." See Ex. "7" (Day 2 of Trial Tr.) at 77-78. This statement was true as supported by the USPTO's determination that Mr. Kowalski's patent application was the first to teach the use of smoke to preserve food without giving the food a smoke taste or odor, see Trial Exhibit 9 (Interview Summary), attached hereto as Ex. "8,"

("applicant defines over prior art of record [including the Yamaoka Patent and Pescarich brochure which were identified by Mr. Kowalski as prior art] by not imparting smoke taste & flavor & odor"). The FDA banned the use of chemical carbon monoxide in 1997, see Trial Exhibit 56 (Memo. from Cano dated 9/3/98), attached hereto as Ex. "9," and the public had a negative attitude towards chemical carbon monoxide, so Mr. Kowalski's invention did in fact enable an entire industry, as he explained in his testimony, and as various exhibits also showed (e.g., the government documents approving fish treated with smoke for color retention and not to add smoke taste [id. and Trial Exhibit 47, attached hereto as Ex. "16"] and showing the increasing number of factories that treated fish with tasteless smoke [see Trial Exhibit 67, attached hereto as Ex. "18"]). In any event, Ocean Duke tried hard to discredit this statement by arguing to the jury misleadingly and, in fact fraudulently,[3] that others had invented tasteless smoke

---

[3] Ocean Duke in effect tried to assert a defense of prior art that it had no right to assert because of untimeliness and waiver and failure to comply with the statutory requirement that prior art to be asserted be identified at least 30 days before trial (35 USC § 282). Ocean Duke's counsel argued that Trial Exhibit 64, attached as Ex. "G" to the Motion, dated June 21, 1999 showed that there were multiple members of the Tasteless Smoked Seafood Association before Kowalski's Patent issued (on October 26, 1999), and that proved that others invented the tasteless smoke process before Kowalski, but that was fraudulent because, as Ocean Duke's counsel well knew, and as Kowalski's counsel pointed out to the jury during closing argument, Kowalski applied for his patent in March 1997 which proved he had invented the process before that and he immediately began advertising his process through labeling and educating the government and the public, so others were able to copy his process by the time of the June 1999

Tasteless Smoke Seafood Association letter.   Far from being evidence that Kowalski's statement of invention merits a new trial, Ocean Duke's reliance on this and other clearly false arguments show the jury had ample justification for finding that the Ocean Duke's infringement was willful.  Similarly, Ocean Duke's counsel argued during closing that a May/June 1998 newspaper article (Trial Exhibit 57, attached to the Motion as Ex. "F") mentioned Richard Friend claiming that PescaRich pioneered a method for using smoke without giving the food smoke taste, but this after the fact attempt to take credit for Mr. Kowalski's invention is clearly an attempt to mislead because PescaRich was Mr. Yamaoka's company, and it claimed to use the Yamaoka patent process, which the USPTO and this Court established did not teach the tasteless smoke process but instead taught imparting a smoke taste to the fish.  Ocean Duke's counsel also tried to mislead the jury by citing Trial Exhibit 57 as proof that Kowalski did not invent the tasteless smoke process for treating food because Trial Exhibit 57 contains a statement that tasteless smoke is "merely a purified version of the filtered smoke that has been used for decades in the processing of seafood.   Trial Exhibit 57 is the filing Kowalski's company made with the FDA as part of the effort to show the government that food treated with tasteless smoke was safe and should be allowed because the government has long recognized conventional – that is, smoky tasting – smoke as Generally Recognized As Safe ("GRAS") and so tasteless smoke should also be recognized as GRAS because it does not have any thing added but is merely a purified version of conventional smoke used to make smoky tasting foods.  Although tasteless smoke and conventional smoke are similar in terms of safety, as the USPTO determined, the difference in terms of the affect on taste of food treated therewith is significant and the use of tasteless smoke was novel and deserving of a patent.  See pages 14, 15 and 18 of the 6/23/06 summary judgment order entered by The Honorable David A. Ezra in rejecting a similar argument in Kowalski, et al. v. Jana Brands, CV 03-0015 (""Defendant claims that Plaintiff Kowalski intentionally withheld form the patent & Trademark Office the fact that prior art processes were 'substantially equivalent" to his process ….  Defendant makes this argument baed on statements made by Plaintiff Kowalski to the FDA in the GRAS submission….  Plaintiffs assert that this passage simply explains that tasteless smoke is just as safe as conventional smoke, because it adds nothing to conventional smoke and only differs from conventional smoke in that it contains less of certain things….  When read in the context of the entire GRAS submission, it is clear that Plaintiffs' statements therein only stand for the propositions that tasteless smoke contains no additional elements not found in conventional smoke ….Consequentially, the Court GRANTS Plaintiffs' Motion for partial Summary Judgment …."  A copy of the order is Ex. 117 of Plaintiffs' trial exhibits (attached

before Mr. Kowalski and having Prof. Iwaoka make the false statement that tasteless smoke was merely carbon monoxide. Most importantly, however, Mr. Kowalski's statement was made in the context of establishing damages and whether he actually enabled an entire industry or invented the tasteless smoke process as the USPTO determined could not have affected the jury's infringement analysis[4] of whether the accused process fell within the construed claims, and therefore, was not substantially prejudicial to Ocean Duke.

Finally, Ocean Duke did not object to testimony regarding the public's impression of carbon monoxide as the "suicide gas." See Ex. "6" (Trial Tr. of Day 2) at 77. At no time did Plaintiff or Plaintiff's counsel insinuate that Ocean Duke's product was treated with "suicide gas."[5]  On the contrary, Plaintiffs' (as well as Ocean Duke) consistently took the position that Ocean Duke's fish was treated with smoke rather than chemical carbon monoxide, and Mr. Kowalski's testimony about carbon monoxide was elicited for the legitimate purpose of explaining and proving that fish treated with 100% carbon monoxide was not a reasonable

---

as Ex. "17" hereto), but it was not offered into evidence because ocean Duke did not raise this argument until closing argument.

[4] This testimony was relevant for among other things (1) background purposes, (2) damages (e.g. reasonably royalty rate depends in part on whether a patent is a narrow modification or a pioneering invention).

[5]  To establish that PT's process was covered by the construed claims, Plaintiff elicited testimony from Duke and Roger Lin that Ocean Duke's product was treated with smoke, not 100% pure carbon monoxide (i.e. the "suicide gas").

substitute (relevant to lost profit damages) for fish treated with Mr. Kowalski's tasteless smoke process due to, among other things, the negative public perception of carbon monoxide as a means for committing suicide.[6]  See Ex. "2" (Day 2 of Trial Tr.) at 77: 16-20 ("I don't think carbon monoxide is a substitute. . . . . It has the impression of a suicide gas, as for people that want smoke, it's not a substitute.").   The testimony regarding the public's perception of 100% carbon monoxide as the "suicide gas" did not impact the jury's infringement verdict and does not warrant a new trial.  See Ruvalcaba, 64 F.3d at 1328.

In summary, the jury's verdict on infringement is not against the great weight of the evidence nor has Ocean Duke clearly shown that the jury reached a seriously erroneous result.  See Venegas, 831 F.2d at 1519 (a "motion for a new trial may be granted [based on insufficiency of the evidence] only if the verdict is against the 'great weight' of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'").   A new trial is not warranted on this ground.

---

[6]  Ocean Duke's witnesses Duke and Roger Lin testified that they did not want to get too close to PT's smoke machine or smell the smoke because it was dangerous.

2.    The weight of the evidence supports the jury's determination that Ocean Duke failed to establish by clear and convincing evidence that the Kowalski Patent is invalid.

Ocean Duke contends that "[t]he evidence at trial showed that the claims of the Kowalski patent are overwhelmingly broader than the scope of the invention as disclosed in the patent's specification." Memo. in Support of Mot. at 10. Ocean Duke's invalidity arguments are addressed in detail in Plaintiff's Memorandum In Opposition To Defendant Ocean Duke Corporation's Motion For Judgment As A Matter Of Law Notwithstanding The Verdict, filed 12/28/07 ("**Plaintiff's JMOL/JNOV Opposition**"), which Plaintiff hereby incorporates by reference along with all supporting exhibits and declarations. Plaintiff submits that a new trial is not warranted based on the evidence in the trial record and arguments made in opposition to Ocean Duke's request for judgment as a matter of law[7]. For the reasons explained in Plaintiff's JMOL/JNOV Opposition, the jury's verdict finding that Ocean Duke had not sustained its burden of proving the Kowalski Patent invalid is neither against "the great weight of the evidence" nor is it clear that "the jury reached a seriously erroneous result." Venegas, 831 F.2d at 1519. A new trial is not warranted on this ground.

---

[7]    Plaintiff submitted a Memorandum Re Defendant's Written Description Defense for the Court's consideration in response to Ocean Duke's Motion for Judgment As A Matter of Law, filed 12/11/07. This unfiled memorandum is attached hereto as Exhibit "10."

**B.    The Damage Award Was Not Excessive, Nor Is A Remittitur Warranted.**

Ocean Duke contends that the damage award was excessive because the testimony of Plaintiff's damage expert, Mr. David Francom ("***Mr. Francom***") should be stricken.    According to Ocean Duke, Mr. Francom's testimony was speculative and not supported by admitted evidence, but rather based on the "scantest of evidence from Ocean Duke."   Memo. in Support of Mot. at 15; see also id. at 18 ("The opinions of Mr. Francom on reasonable royalties were offered without any mooring to facts, figures, numbers, documentary evidence, or other information that was actually admitted at trial.   Under these circumstances, his opinion testimony constituted pure speculation.   Such testimony lacks a sufficient foundation, and should be stricken from the record.").   Ocean Duke also contends that if Mr. Francom's testimony is allowed to remain in the record, the Court should re-weight it, and in effect, over-ride the jury's determination that Mr. Francom's opinion was credible and sufficiently supported.   Significantly, Ocean Duke did not even suggest an alternative number to counter the approximately $2 million figure proposed by Mr. Francom, choosing instead to insist that damages in any amount should not be awarded.[8]

---

[8] Ocean Duke was not allowed to put on expert testimony on damages because it did not produce its expert report until the eve of trial (on November 20, 2007 in response to Plaintiff's Motion in Limine #3 Re Exclusion of McEnerny As

The Ninth Circuit instructs that courts should afford "substantial deference to a jury's finding of the appropriate amount of damages." Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1995). The jury's finding on damages must be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." Id. A new trial is warranted only if such a damage award "gives rise to an inference that 'passion and prejudice' tainted the jury's finding of liability." Synder v. Freight, Construction, General Drivers, Warehousemen & Helpers Local No. 287, 175 F.3d 680, 689 (9th Cir. 1999). Where "the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof," the court should not "'play Monday morning quarterback' and supplant the jury's evaluation[.]" Los Angeles Mem. Coliseum Comm. v. Nat'l Football League, 791 F.2d 1356, 1366 (9th Cir. 1984).

Ocean Duke's contention that Mr. Francom's testimony should be stricken because it is not based on financial documents that were admitted into evidence, as the Court has already ruled during trial, lacks merit. Fed. R. Evid. 703 provides in relevant part:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need

---

A Witness, filed 11/13/07), months after the August 15, 2007 stipulated continued deadline.

not be admissible in evidence in order for the opinion or inference to be admitted.

Thus, Mr. Francom's testimony should not be stricken as Ocean Duke urges because none of Plaintiff's/HISI's[9] voluminous financial records and documents were not admitted into evidence. Economists and accountants regularly rely on the financial statements and records of the nature provided to and analyzed by Mr. Francom to calculate damages. See Int'l Adhesive Coating Co., Inc v. Bolton Emerson Int'l Inc., 851 F.2d 540, 545 (1st Cir. 1988) ("Vesey [expert] testified that he derived his damage estimates by reviewing International's business and financial records and through interviews with company personnel. We think it obvious that these are sources of information normally and reasonably relied upon by accountants, and Vesey testified to this effect as well. The jury was entitled to believe Vesey's testimony. The verdict demonstrates that it did."). Mr. Francom testified about the time consuming analysis of the records and financial data provided by Plaintiff's company HISI and the methodology employed, factors considered, and references consulted to form his opinion on the appropriate reasonable royalty damages sustained by Plaintiff. Mr. Francom's report, which

---

[9] Given that the Court ruled as a matter of law that Plaintiff was not entitled to lost profit damages and this issue was not submitted to the jury, Mr. Francom's reliance on Hawaii International Seafood, Inc.'s business records does not appear to be relevant to whether the jury's reasonably royalty damage award was excessive.

was timely produced to Ocean Duke during discovery, summarized these opinions and included the voluminous back-up in the form of data and spreadsheets, was not admitted into evidence because Ocean Duke objected, and the Court apparently felt that the underlying records were not necessary. Despite Ocean Duke's attempts to discredit Mr. Francom and cast doubt on his calculations during cross-examination, the jury determined that Mr. Francom's opinions/damage figures were credible and reasonably certain.

Second, Ocean Duke's contention that Mr. Francom's testimony regarding the reasonable royalty damages "completely lacked a foundation in any of the evidence that was admitted at trial" is wrong.[10] As testified to at trial and reflected in his report, see Ex. "12" (Francom Report) at 19, Mr. Francom relied upon the chart summarizing Ocean Duke's profits on treated seafood from 1999 to 2005 put together by Ocean Duke. This document was admitted into evidence as Trial Exhibit 193. See Ex. "13" attached hereto. Ocean Duke's Chief Operating Officer and majority shareholder Roger Lin verified on the stand that the figures stated in

---

[10] Ocean Duke's criticism that Mr. Francom relied on the "scantest of evidence from Ocean Duke," Memo. in Support of Mot. at 15, is particularly disturbing because Ocean Duke failed to provide any additional data regarding Ocean Duke's finances and operations despite discovery requests specifically designed to elicit responsive documents of the nature Ocean Duke faults Mr. Francom for not relying upon and a stipulated protective order compelling Ocean Duke to produce those documents. See Yasunaga Decl. ¶ 3; see also Ex. "11" (email from Yasunaga to Marks dated 5/04/07).

Trial Exhibit 193 were accurate.

Finally, the record shows ample support for the jury's reasonable royalty damage award in the amount of $2.2 million.  Trial Exhibit 193 provided evidence that in the years 1999 to 2005 alone (not including 2006 and 2007), Ocean Duke realized revenue in the amount of $30,239,543 from sales of the infringing product with a net profit of $3,768,523 after subtracting out "cost of goods" in the amount of $24,136,827 and "overhead & expenses" in the amount of $2,334,193.  When asked by Plaintiff's counsel at trial what type of expenses were included in the "overhead & expenses" figure, Roger Lin could not explain, suggesting that the net profit amount was actually higher than what Ocean Duke had reported in Trial Exhibit 193.  As indicated in his report and testimony, Mr. Francom used the data available and his expert training in the field to reasonably come up with estimates for the missing 2006 and 2007 sales figures, so the total pounds sold and profits realized from infringing product were justifiably greater than those shown on Ex. 193, which left out 2006 and 2007.  In addition, Mr. Francom testified that his opinions were based on conservative assumptions and that, among other things, (1) the starting point for determining reasonable royalty damages is that the licensor would receive approximately 25% of the expected future benefit (net profit on the infringing product), (2) it appeared that Ocean Duke had understated its sales of certain species of treated fish based on an analysis of the invoices produced by

Ocean Duke, and (3) the royalty rate could be adjusted upward based on the Georgia-Pacific 15 Factors.  Although Mr. Francom testified that in his opinion the reasonable royalty damages that should be awarded Plaintiff was just over $2 million, the jury was entitled, based on the above evidence, to award a higher, especially the only slightly higher, amount of $2.2 million. [11]   See Robinson v. Shapiro, 484 F. Supp. 91, 97-98 (S.D.N.Y. 1980) (jury entitled to award $750,000 even though Plaintiff's expert's estimate of damages was $485,139), *affirmed on appeal* 646 F.2d 735 (2nd Cir. 1981), Poulot v. Paul Arpin Van Lines, Inc., 235 F.R.D. 537, 549 (D. Conn. 2006) (jury entitled to determine that past lost wages could have been higher than figure based on expert's estimate).  The jury's award is certainly "within the range sustainable by the proof," Los Angeles Mem. Coliseum Comm., 791 F.2d at 1366, and far from "grossly excessive or monstrous," Del Monte Dunes at Monterey, Ltd, 95 F.3d at 1435, given the above trial record.  Also, the law, as properly reflected in the jury instructions, expressly directed the jury to make the reasonable royalty determination for itself, taking into account various factors specified in the instructions, only one of which was the

---

[11] Ocean Duke's contention that the $2.2 million jury award "appears much more like a 'lost profits' figure," Memo. in Support of Mot. at 19, is disingenuous. Mr. Francom calculated and testified at trial that Plaintiff's total lost profit damages were in the range of $6 million, exclusive of the additional approximately $2 million in excessive bank interest and fees incurred by Plaintiff's company HISI as result of Ocean Duke's infringement of the Kowalski Patent.  See Ex. "12" (Francom Report) at 7.

opinion of experts, so the fact that the jury's award differed slightly from the expert's figure should not be surprising or deemed improper.   Under these circumstances, a remittitur in any amount is not warranted and deference should be given to the jury's finding on the appropriate amount of reasonable royalty damages[12] that should be awarded to Plaintiff.  See id at 1435.

Ocean Duke's request that the Court "re-weigh" the evidence on damages is puzzling given that it did not proffer any evidence at trial, and even still does not suggest in this Motion, the amount of reasonable royalty damages that should be awarded to Plaintiff.  Regarding Mr. Francom's purported erroneous assumption that product labeled "CRYO" on Ocean Duke's invoices were treated product, the jury was certainly entitled, as it apparently did, to discredit Roger Lin's testimony to this effect.  Evidence introduced at trial established that Ocean Duke labeled its imported product that was treated with smoke to promote color retention (i.e., the

---

[12]  No evidence of Plaintiff's attorney's fees was introduced or admitted. Also, though not reflected in the jury instructions filed by the Court on December 13, 2007, the jury was advised by the Court in connection with the reading of Jury Instruction Nos. 33 and 34 that the Court, not the jury, would award prejudgment interest to the extent it was applicable.  See Yasunaga Decl. ¶ 4.  The special verdict form asked the jury "What is the total amount of 'reasonable royalty' damages Ocean Duke should have to pay Mr. Kowalski?"  Special Verdict, filed 12/13/07, at 4.   The jury instructions on reasonable royalty damages did not indicate that attorney's fees or interest were an appropriate component.  See Jury Instructions, filed 12/13/07, at Nos. 33 and 34.  Thus, Ocean Duke's contention that the jury improperly added attorney's fees and interest in its reasonable royalty damage award is baseless.

allegedly infringing product) "CRYO-FREEZE." <u>See</u>, <u>e.g.</u>, Trial Exhibit 111, attached hereto as Exhibit "14". In fact, at his deposition, Roger Lin testified as follows:

> Q. How can you tell from Ocean Duke's invoices or purchase orders or other documents that were produced to us, how can you tell which was treated with smoke for color retention as opposed to which product was untreated?
>
> A. On our invoices treated products would stated "cryo-freeze" to my knowledge.
>
> Q. I won't mark it as an exhibit, but document ODC-30741 is a packing list that mention "Cryo-freeze mako shark steak (Paradise)." So that would indicate that that was mako shark treated with smoke for color retention; right?
>
> A. Yes, it would appear so.
>
> Q. And is the name "cryo-freeze" sometimes abbreviated as just "cryo" in some of the Ocean Duke or PT documents?
>
> A. I don't know.
>
> Q. Could be?
>
> A. Possibly.
>
> Q. Paradise and Black Tie are brand names that Ocean Duke uses; right?
>
> A. Yes.

Exhibit "15" (Roger Lin Depo. Tr.) at 183: 15-25, 184: 1-2.

Finally, Ocean Duke falsely argues that Mr. Francom testified that a reasonable royalty "ranged" from 4 cents per pound to 20 cents a pound and he allegedly improperly used the higher number but "just as easily" could have used 4

cents and so the award was a "coin toss" between the two figures. This argument is factually untrue. Mr. Francom testified that 20 cents was the reasonable royalty for tuna, grouper, and swordfish, and 4 cents was the reasonable royalty for other species and that is how he arrived at his over $2 million opinion – he did not say there was a range of 4 cents to 20 cents, so no coin toss was involved.

In summary, there is no legitimate basis to find that Mr. Francom's damage estimate was flawed or is there reason to second guess the jury's determination that Ocean Duke should pay reasonable royalty damages in the amount of $2.2 million to Plaintiff.

### C.    Plaintiff's Counsel Did Not Engage In Misconduct, Nor Is A New Trial Warranted On This Ground.

Ocean Duke contends that Plaintiff's counsel engaged in misconduct by saying words to the effect that "its really not fair" in closing argument. See Memo. in Support of Mot. at 21-22. According to Ocean Duke, Plaintiff's counsel made this statement in the context of criticizing the court's ruling that Kowalski was not entitled to collect lost profit damages. See id.

Notably, Ocean Duke did not object to Plaintiff's counsel's purported misconduct during closing argument. This alone constitutes grounds for denying Ocean Duke's request for a new trial. See Barzelis v. Kulikowski, 418 F.2d 869, 870-71 (9th Cir. 1969) (objection prior to raising issue on motion for new trial required in civil cases); Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103,

1107 (9th Cir. 1991) (appellate court "will review for plain or fundamental error, absent a contemporaneous objection or motion for new trial before a jury has rendered its verdict, where the integrity or fundamental fairness of the proceedings in the trial court is called into serious question.").

The significance of raising a timely objection is explained in <u>Settlegoode v. Portland Public Sch.</u>, 371 F.3d 503, 517 (9th Cir. 2004), as follows: "First, raising an objection after the closing argument and before the jury begins deliberations permits the judge to examine the alleged prejudice and admonish counsel or issue a curative instruction, if warranted.' Second, 'allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error.'"

Moreover, Plaintiff's counsel does not recall making any statement of the nature claimed by Ocean Duke during closing argument. Plaintiff's counsel did not in any way criticize the Court's decision regarding Plaintiff's entitlement to lost profit damage – Plaintiff's counsel (like Ocean Duke's counsel) certainly understood that a jury would frown upon an attorney that appeared in closing argument to be criticizing the Court. <u>See</u> Yasunaga Decl. ¶ 5. With respect to the damages that the jury should award Plaintiff for Ocean Duke's infringement, Plaintiff's counsel recalls saying during closing argument something to the effect that, if the jury awarded damages, it was to award reasonable royalty damages and

that, as Mr. Francom had explained, reasonable royalties are the minimum type of damages and constitute only a fraction of the profit made by the infringer and left the infringer with the majority of the profits from the infringing sales, so counsel argued that the jury should award the full amount of the royalties calculated by Plaintiff's expert Mr. Francom – i.e., $2,009,073.  See id.  Title 35, U.S.C. § 284, provides in relevant part that "[u]pon a finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, **but in no event less than a reasonable royalty for the use of the invention by the infringer** . . . ."  35 U.S.C. § 284 ( emphasis added).  Plaintiff's damage expert's testified that the starting point for the hypothetical negotiation to determine reasonable royalties is that the licensor would receive 25% of expected future benefit and the licensee approximately 75%.  See Ex. "12" (Francom Report) at 19.  Thus, Plaintiff's counsel's statement was factually and legally accurate, and well-within the permissible bounds of advocacy.  See Settlegoode, 371 F.3d at 518 ("A trial lawyer's job, after all, is to present his client's case in the most sympathetic light consistent with the evidence.  Using some degree of emotionally charged language during closing argument in a civil case is a well-accepted tactic in American courtrooms.").

Furthermore, even assuming *arguendo* that Plaintiff's counsel made the statement "it's really not fair" and that such statement was critical of the Court's

ruling on Plaintiff's entitlement to lost profit damages, though Plaintiff's counsel denies having made any such statement or a statement criticizing any of the Court's rulings, "[a] new trial should only be granted where the 'flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" Settlegoode v. Portland Public Sch., 371 F.3d 503, 517 (9th Cir. 2004). Here, the alleged misconduct is an isolated statement made during closing argument. See Kehr v. Smith Barney, Harris Upham & Co., Incorp., 736 F.2d 1283, 1285-86 (9th Cir. 1984) ("the offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial. They were isolated rather than persistent."); see also Settlegoode, 371 F.3d at 518 ("We have held that where 'offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial we are less inclined to find that the statements pervaded the trial and thus prejudiced the jury.'") (citation omitted). In addition, the Court specifically instructed the jury that the "attorneys' statements, arguments and remarks during . . . closing arguments, during the trial are not evidence." Jury Instructions, filed 12/13/07, at Jury Instr. No. 5. Thus, even assuming that Plaintiff's conduct engaged in the misconduct alleged by Ocean Duke, such misconduct does not rise to the level of warranting a new trial. See Cooper, 945 F.2d at 1107-08 (new trial not warranted

where alleged misconduct occurred only in the argument phase of trial, the remarks were isolated rather than persistent, most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument, and the damage award was not excessive).

### D.    Jury Misconduct Is Not A Proper Basis To Grant A New Trial.

Ocean Duke also contends that it is entitled to a new trial because "at least one juror – indeed, the juror who ended up being the foreman of the jury – was inattentive, and may well have been dozing during the trial (slumped in chair, with head leaning against back wall, and eyes closed)."  Memo. in Support of Mot. at 23.  The alleged misconduct of the foreperson is not a basis for granting a new trial for the reasons that follow.

First, Ocean Duke did not object or otherwise bring to the Court's (and Plaintiff's) attention the problem it perceived during trial.  Had Ocean Duke done so, the Court may have taken measures to correct the problem, i.e. advise the jury of the importance of paying attention or taking more frequent breaks.  Having failed to raise the issue at an appropriate time bars Ocean Duke from complaining now that the jury has rendered an adverse verdict.  See United States v. Moore, 580 F.2d 360, 364-65 (9th Cir. 1978) ("'The only conclusion possible from this record is that defense counsel, fully aware of the existence of the problem that is now pressed upon us [sleeping juror], deliberately chose to proceed with the original

jury to create a no-lose situation: either a not guilty verdict would be returned or an arguably tainted guilty verdict would provide a basis for appeal."); see also United States v. Sorenson, 611 F.2d 701, 702 (8th Cir. 1979) ("objections based on jury misconduct during the trial cannot be raised for the first time on appeal when counsel did not apprise the trial court of the alleged misconduct at trial").

Next, Plaintiff disputes that any juror was inattentive or dozing off during trial. What Ocean Duke's counsel claims to have seen may have been merely the juror in question looking down at his notes, concentrating on hearing the testimony or instructions, or resting his eyes. See Yasunaga Decl. ¶ 6. Plaintiff's counsel believes that all of the jurors were very attentive throughout the trial, and even expressed appreciation for the same (which seems to have been reiterated by Ocean Duke's counsel) during his closing argument. See id. The fact that the other jurors elected this person foreperson shows they certainly did not think that person had been inattentive.

In any event, even assuming that a juror had been "dozing off" as Ocean Duke contends, "the mere fact that a juror fell asleep in the jury box during a part of the trial is not ground[s] for a new trial." Early v. United States, 309 F. Supp. 421, 423 (D. Kan. 1969). As recognized in a case cited by Ocean Duke, "courts have universally taken the approach that the party claiming error must also demonstrate that as a result of the lack of attention the juror failed to follow some

important or essential part of the proceedings." <u>United States v. Tierney</u>, 947 F.2d

854, 868-69 (8th Cir. 1991) (citation omitted). Ocean Duke wholly fails to show

what, if any, important issues or items the inattentive juror ignored. Instead, Ocean

Duke merely states that one of the juror may have been dozing off. This allegation

is too vague to establish prejudice. <u>See</u> <u>id.</u> (citing <u>Tanner v. United States</u>, 483

U.S. 107, 125 (1987), for the proposition that where the evidence suggested at

worst that several of the jurors fell asleep at time, the evidence was insufficient to

find jury incompetence). A new trial is not warranted on this ground.

### E.    The Court's Pre-Trial And Trial Rulings Of Which Ocean Duke Assigns Error Were Correct.

In closing, Ocean Duke summarily assigns error to various of the Court's

pretrial and trial rulings. <u>See</u> Memo. in Support of Mot. at 24-25. Plaintiff asserts

that the Court did not err with respect to these issues and in opposition,

incorporates the arguments and supporting exhibits set forth in the following

submissions:

(1)   <u>Re Exclusion of McEnerney</u>:  Plaintiff's Motion in Limine # 3 Re Excluding Damage Expert McEnerny and Any Other Expert Whose Opinions And Written Report and Papers Were Not Produced, filed 11/13/07 and transcript of hearing on same;

(2)   <u>Re Exclusion of Charles Cardile</u>:  Plaintiffs' Motion in Limine #4 Re Exclusion of Charles Cardile, filed 11/13/07 and transcript of hearing on same;

(3)   <u>Re Exclusion of Richard Friend</u>:  Plaintiffs' Motion in Limine #6 Re Exclusion of Evidence (Exhibits and Witnesses) That Was Not Timely Produced Or Identified by Ocean Duke, filed 11/13/07, Plaintiffs' Motion in Limine #2 Re

Exclusion of Defenses Not Described by Ocean Duke In Its Answer To Interrogatories, filed on 11/13/07, and Plaintiffs' Motion in Limine #8 Re Defenses Raised By Ocean Duke On Or After November 13, 2007, filed on 11/29/07 and transcript of hearing on same, also, the court will recall the arguments by counsel on both sides in the afternoon of December 10 regarding the untimeliness of the naming of this witness;

(4)    Re Lack of Instructions of the "invalidity" defenses of anticipation, best mode, prior art, misuse, and other instructions objected to on the record: Plaintiffs' Motion in Limine #2 Re Exclusion of Defenses Not Described by Ocean Duke In Its Answer To Interrogatories, filed on 11/13/07, Plaintiffs' Motion in Limine #8 Re Defenses Raised By Ocean Duke On Or After November 13, 2007, filed on 11/29/07, Plaintiffs' Trial Brief, filed 11/20/07, Plaintiffs' Objections to Ocean Duke's Proposed Set of Jury Instructions, filed 11/30/07 and as stated for the record, and Transcript of proceeding in which Ocean Duke's counsel represented that Ocean Duke's "invalidity" defenses were limited to "overbreadth" and fact that Ocean Duke's objections to Plaintiff's jury instructions were untimely filed on 12/11/07;

(5)    Re Court's claim construction order: Plaintiffs' Cross Motion for Claim Construction, filed 10/05/07, Supplemental Motion for Claim Construction, filed 10/22/07, Ocean Duke's Memorandum in Opposition to same filed 11/01/07(which improperly argued the written description and indefiniteness defenses rather than proposing alternative construction) and Plaintiffs' Reply Memorandum in Support of same, filed 11/08/ 07. Plaintiffs also did not object to the portion of the Court's jury instructions in which the claim construction was provided in chart form.

(6)    Re Court's response to jury question: Ocean Duke's counsel expressly approved the Court's neutral and well-reasoned response to the jury's question about damages. See Yasunaga Decl. ¶ 7.

## III.    CONCLUSION

For the foregoing reasons, the Motion should be denied. In the event that the Court permits Ocean Duke's request that it be allowed to supplement the Motion when additional trial transcripts are available, Plaintiff respectfully

requests that it be allowed an opportunity to respond to such supplementation.

DATED:  Honolulu, Hawaii, January 8, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE