IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 11 2005

at __ o'clock and 16 min. __M
WALTER A.Y.H. CHINN, CLERK

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JANA BRANDS, INC., <br><br> Defendant. | CV. NO. 03-00015 DAE-KSC |

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S LACK OF ENABLEMENT AND BEST MODE DEFENSES; ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S INEQUITABLE CONDUCT DEFENSE; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INVALIDITY OF '401 PATENT FOR LACK OF ENABLEMENT AND FAILURE TO DISCLOSE THE BEST MODE; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: UNENFORCEABILITY OF THE '401 PATENT**

The Court heard Plaintiffs' and Defendant's Motions on March 28, 2005. Milton M. Yasunaga, Esq., Stacey Kawasaki Djou, Esq., and Martin Hsia, Esq., appeared at the hearing on behalf of Plaintiffs; Stephen G. Dyer, Esq., Andrew K. Beverina, Esq., and William Enos, Esq., appeared at the hearing on

K86175

EXHIBIT 17                                         Exhibit 117

behalf of Defendant. After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS Plaintiffs' Motion for Summary Judgment as to Defendant's Lack of Enablement and Best Mode Defenses, GRANTS Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Inequitable Conduct Defense, DENIES Defendant's Motion for Summary Judgment RE: Invalidity of '401 Patent for Lack of Enablement and for Failure to Disclose the Best Mode, and DENIES Defendant's Motion for Summary Judgment RE: Unenforceability of the '401 Patent.

## BACKGROUND

On January 13, 2003, Plaintiffs William Kowalski and his company, Hawaii International Seafood, Inc., filed a complaint against Defendant Jana Brands, Inc., alleging that Defendant has infringed Plaintiff Kowalski's U.S. Patent No. 5,972,401. This patent protected a process invented by Plaintiff Kowalski that uses "tasteless" smoke to both preserve seafood and meat and maintain the food's natural color throughout the process of freezing and thawing. This so-called tasteless smoke is smoke from which taste-causing components, or phenols, have been removed so that it does not impart a smokey flavor on the food. Although smoke has been used to preserve meat since recorded time, Plaintiffs' invention improves upon the preexisting processes by both preserving

2

KS6176

the natural color of fish when frozen and leaving the fish free of any smokey flavor. In Plaintiffs' papers, they explain that generally, when tuna is frozen and then thawed, it takes on an unappetizing brown color and is no longer acceptable for use as sashimi. Plaintiff Kowalski's goal was to invent a process by which fish could be frozen, preserving the fish and killing parasites, but which also maintains the fish's natural color so as to preserve its commercial value in Japanese and American restaurants.

On March 31, 2003, Defendant filed its amended counterclaim against Plaintiffs. An amended complaint was filed by Plaintiffs on November 5, 2004; Defendant filed a second amended counterclaim on November 24.

On December 27, Defendant filed a Motion for Summary Judgment RE: Invalidity of '401 Patent for Lack of Enablement and for Failure to Disclose the Best Mode, along with the accompanying concise statement of material facts. On January 13, 2005, Defendant filed a Motion for Summary Judgment RE: Unenforceability of the '401 Patent, along with the accompanying concise statement of material facts.

Plaintiffs filed a Countermotion for Summary Judgment as to Defendant's Inequitable Conduct Defense, along with the accompanying concise statement of material facts, on March 10, 2005. The same day, Plaintiffs also filed

3

K86177

a Countermotion for Summary Judgment As To Defendant's Lack of Enablement and Best Mode Defenses.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. Id. at 323.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed. R. Civ. P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

K86178

Cir. 1987); Fed. R. Civ. P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id. The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. Id. at 254. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. See Celotex, 477 U.S. at 322.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary

judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. Id. (citation omitted).

## DISCUSSION

Plaintiffs and Defendant have each filed two motions for summary judgment currently before the court. As the subject matter of each of Plaintiffs' motions, which seek to defeat Defendant's proffered defenses, is substantially identical to one of Defendant's motions, which seeks to defeat the validity of Plaintiff Kowalski's patent, the Court will discuss the motions in pairs.

I. <u>The Court GRANTS Plaintiffs' Motion for Summary Judgment as to Defendant's Lack of Enablement and Best Mode Defenses, and DENIES Defendant's Motion for Summary Judgment RE: Invalidity of Patent, because Defendant has brought forth no evidence that Plaintiffs' patent application was not enabling or violated the best mode requirement.</u>

In its Motion for Summary Judgment RE: Invalidity of '401 Patent For Lack of Enablement and For Failure to Disclose the Best Mode, Defendant asserts that Plaintiff Kowalski's patent must be invalidated because Plaintiff did not disclose the level of carbon monoxide that must be present in his tasteless smoke in order for his process to work. Defendant asserts that Plaintiff Kowalski knew that, in order for his invention to work, the smoke produced must contain at

6                                              K86180

least 5 percent carbon monoxide. Instead, Defendant argues, Plaintiff Kowalski's patent specifies that the resultant smoke contains less that 5 percent carbon monoxide. As such, Plaintiff Kowalski's patent application does not enable a person reasonably skilled in the art to make and use the invention, and further fails to disclose the best mode of carrying out the invention, Defendant asserts. Defendant also bases these arguments on statements made by Plaintiff Kowalski in letters he wrote while attempting to obtain FDA recognition of tasteless smoke as a safe treatment for food.

      Specifically, to support its argument that Plaintiff Kowalski misstated his patent application, Defendant cites a passage of the "Best Mode" section of the patent application, which states that "[t]he combustion within the retort cylinders [of the smoke generator] packed full of wood sawdust produces water vapor and the smoke emissions described in Table 2." Table 2, entitled "Chemical Composition of Wood Smoke," lists the carbon monoxide content as 80-370 g/kg wood.

      Plaintiffs counter that the letters cited by Defendant are taken out of context. Plaintiffs assert that Plaintiff Kowalski was uncertain about the levels of carbon monoxide in the tasteless smoke when he filed the patent application, and that he had not developed a reliable method for testing the carbon monoxide

K86181

levels. Moreover, Plaintiffs maintain that there was no need for any disclosure regarding the carbon monoxide levels in the tasteless smoke, because the process described in the patent application resulted in smoke with the correct carbon monoxide levels, and therefore knowledge of the chemical composition of the resulting smoke was not required to achieve the best results.

The requirements of enablement and best mode are derived from Section 112 of the Patent Statute, which states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. The enablement requirement and the best mode requirement are distinct, and must be separately met. Engel Industries, Inc. v. Lockformer Co., 946 F.2d 1528, 1533 (Fed. Cir. 1991). The enablement requirement is met so long as the description provided enables any mode of making and using the claimed invention. Id. "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1371 (Fed. Cir. 1999) (citing Genentech, Inc. v. Novo Nordisk, A/S, 108

K86182

F.3d 1361, 1365 (Fed. Cir. 1997)). When determining whether claims are sufficiently enabled by a disclosure, the court looks only to the date that the patent application was first filed. Id. (citing Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 (Fed. Cir. 1986)).

For a patent to be held invalid for failure to set forth the best mode, a court must find that (1) the inventor knew of a better mode of carrying out the claimed invention than he or she disclosed in the specification, and (2) the inventor concealed that better mode. Engel Industries, 946 F.2d at 1531-1532 (citing Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 927-28 (Fed. Cir. 1990)). Failure to disclose the best mode must be proved by clear and convincing evidence, and is a question of fact. Id. The crux of the inquiry is the patent applicant's state of mind. Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1535-36 (Fed. Cir. 1987). Concealment may be either accidental or intentional, but the specificity of disclosure required to comply with the best mode requirement must be determined by the knowledge of facts within the possession of the inventor at the time of filing the application. Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1535 (9th Cir. 1987).

Examining compliance with the best mode requirement requires inquiry into the inventor's state of mind with respect to the invention that is

9

K36183

described and claimed in the patent application. Engel Industries, 946 F.2d at 1533. Thus, when inquiring into whether the best mode is disclosed by the patent application, the court looks to what the applicant regards as the invention, which is measured by the claims. Id. at 1531-1532. "Unclaimed subject matter is not subject to the disclosure requirements of § 112; the reasons are pragmatic: the disclosure would be boundless, and the pitfalls endless." Id. at 1532.

The Court finds at the outset that Defendant's interpretation of Plaintiff's patent application, as regards Defendant's assertion that it deceptively represents the carbon monoxide levels in tasteless smoke, is incorrect. As Plaintiffs note, this table reflects the levels of carbon monoxide in unfiltered, natural smoke. In no part of the application do Plaintiffs claim the table reflects the concentration levels of tasteless smoke. The passage of the "Best Mode" section of the patent application that Defendant cites is describing the smoke that is created when combustion first occurs in the smoke generator, which is the first of three parts of the apparatus – the smoke generator, the precipitation filtering tower, and a temporary pressure pot storage chamber. The Best Mode section continues to describe how this smoke created by combustion in the smoke generator is processed through the precipitation filtering tower and the temporary pressure pot storage chamber. Likewise, the Court does not find that anything in

10

K86184

the patent application supports Defendant's extrapolation that the table indicates that tasteless smoke contains between 1 percent and 4.6 percent carbon monoxide.

The Court need not engage in much additional analysis regarding Defendant's claim of lack of enablement, because Defendant has not proffered sufficient assertions, let alone evidentiary support, to lead to a finding that Plaintiffs' patent should be invalidated on this ground. The enablement analysis requires only that the description provided enable any mode of making and using the claimed invention. Defendant never asserts that, following the method described in the patent application, a person reasonably skilled in the art would be unable to reproduce the invention without undue experimentation. Defendant argues that a level of more than 5 percent carbon monoxide in the tasteless smoke is required for the proper result. However, Defendant never even asserts that, by following the method described by Plaintiff in the application, the resultant smoke will not contain the requisite levels of carbon monoxide. As Defendant apparently does not contest that the described method enables successful recreation of the invention, there is no argument before the Court that Plaintiff Kowalski's patent must fail for lack of enablement.

Moreover, Defendant fails to show that Plaintiff Kowalski did not disclose the best mode of practicing the invention. As explained above, Defendant

11

K36185

must show by clear and convincing evidence that Plaintiff Kowalski knew of a better mode of carrying out the claimed invention than he disclosed in the specification, and he then concealed that better mode. Defendant's proffered evidence consists of statements made by Plaintiff Kowalski in his correspondence with various people. First, in writing to the head of the Department of Food Science and Human Nutrition of Colorado State University regarding efforts to persuade the FDA that his carbon monoxide treated seafood is safe for consumption, Plaintiff Kowalski wrote that "[t]he treatment has a powerful discoloration-preventing effect that we conclude is largely caused from the CO component of the smoke (measured at 7 % to 8 %), reacting with the myoglobin in the flesh." Additionally, Defendant cites three letters – one in which Plaintiff Kowalski refers to ordering a carbon monoxide sensor for use in "the commercialization of my patent pending technology," and two in which Plaintiff Kowalski appears to be discussing the building of a new system that would create smoke with carbon monoxide levels of between 7 and 8 percent. Finally, Defendant cites Plaintiff Kowalski's "Generally Recognized as Safe" ("GRAS") submission to the FDA, which sought a ruling allowing him to market products made by his process in the United States, in which Plaintiff Kowalski represents his tasteless smoke to contain between 7 percent and 30 percent carbon monoxide.

12

K86186

Plaintiffs counter with the testimony of Plaintiff Kowalski, who asserts that at the time he filed his patent application, he was unsure of the carbon monoxide levels contained in the smoke and had not yet developed an accurate method of testing to discover the levels. Plaintiffs contend that there is no precedent requiring a patent applicant to disclose the chemical composition of the product of the process the applicant seeks to patent, and that no knowledge of the chemical composition is required to achieve the optimal result by following the described steps.

Defendant argues that a failure to disclosure information "critical" or necessary to practice a claimed invention violates the best mode requirement, and therefore Plaintiff Kowalski violated the requirement by not disclosing that carbon monoxide levels of over 5 percent were necessary to make the process work. However, Defendant never even asserts, let alone proffers evidence, that disclosure of the preferred carbon monoxide levels would have lead to a better mode of practicing the process than the one Plaintiff Kowalski described in the patent application. As aforementioned, Defendant never asserts that the process described by Plaintiff Kowalski does not result in the optimum carbon monoxide levels. The Court cannot hold that the letters and the GRAS submission, which was submitted almost two years after the patent application was filed, constitute

13

K36187

clear and convincing evidence that Plaintiff Kowalski knew of a better mode of practicing the invention and concealed it.

Consequently, the Court GRANTS Plaintiffs' Motion for Summary Judgment as to Defendant's Lack of Enablement and Best Mode Defenses, and DENIES Defendant's Motion for Summary Judgment RE: Invalidity of the '401 Patent for Lack of Enablement and for Failure to Disclose the Best Mode.

II. <u>The Court GRANTS Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Inequitable Conduct Defense, and DENIES Defendant's Motion for Summary Judgment RE: Unenforceability of the '401 Patent.</u>

In Defendant's Motion for Summary Judgment RE: Unenforceability of the '401 Patent, Defendant also argues the Plaintiff Kowalski's patent is unenforceable, because Plaintiff Kowalski engaged in unconscionable conduct. Specifically, Defendant claims that Plaintiff Kowalski intentionally withheld from the Patent & Trademark Office the fact that prior art processes were "substantially equivalent" to his process, and that "the taste- and odor-imparting element (phenols) content of his smoke differed from that of known filtered smoke by only 0.07 %." Defendant makes this argument based on statements made by Plaintiff Kowalski to the FDA in the GRAS submission.

K86188

14

Plaintiffs counter that Defendant is taking Plaintiff Kowalski's words out of context and twisting their meaning. The entire passage of the GRAS submission that Defendant refers to reads:

> Data in this petition establish that tasteless smoke is substantially equivalent in composition to filtered smoke, which is a GRAS ingredient based on common use in foods. Tasteless smoke is generated from wood – the same starting material used to make conventional smoke. There is a tremendous variability in the composition of conventional smoke and the primary constituents of tasteless smoke are within or below this "normal range."

(Pl. Mot. for Summ. J. as to Inequitable Conduct, Ex. 2 at 7-8.) Plaintiffs assert that this passage simply explains that tasteless smoke is just as safe as conventional smoke, because it adds nothing to conventional smoke and only differs from conventional smoke in that is contains less of certain things. Additionally, Plaintiffs assert that the GRAS submission actually states that "the manufacturing process for tasteless smoke removes only 0.07 percent, by weight, of the components found in filtered smoke." Plaintiffs explain that, because the process reduces phenols, which are minute in volume and weight, a 0.07 percent reduction in the total weight of the smoke does not lead to the conclusion that the process removes only 0.07 percent of the phenols found in filtered smoke.

K86189

15

In exchange for the monopoly they are afforded, patent applicants owe a "duty of candor and good faith" to the Patent and Trademark Office. <u>Bruno Independent Living Aids, Inc., v. Acorn Mobility Services, Ltd.</u>, 394 F.3d 1348, 1351 (Fed. Cir. 2005). An applicant breaches this duty and engages in inequitable conduct when he or she fails to disclose information material to patentability with an intent to deceive or mislead the PTO. <u>Id.</u>

Thus, a holding of inequitable conduct requires proof of intent to deceive or mislead. <u>Enzo Biochem, Inc. v. Calgene, Inc.</u>, 188 F.3d 1362, 1371 (Fed. Cir. 1999) (citing <u>Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.</u>, 863 F.2d 867, 876 (Fed. Cir. 1988)). Mere failure to meet the requirements of patentability is not sufficient. <u>Id.</u> "Culpable conduct is required, such as intentional concealment of the best mode under the mask of a fictitious mode." <u>Id.</u> (citing <u>Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.</u>, 910 F.2d 804, 809 (Fed. Cir. 1990)). The party attacking the validity of the patent must prove materiality and intent by clear and convincing evidence; the presence of these requirements, once proved, is weighed "to determine whether the equities warrant a conclusion that inequitable conduct occurred." <u>Bruno</u>, 394 F.3d at 1348.

In its motion, Defendant relies heavily on the Federal Circuit's recent holding <u>Bruno</u>, which Defendant asserts is entirely on point to the facts of the

16                                        K06190

instant case. 394 F.3d 1348 (Fed. Cir. 2005). In Bruno, a manufacturer of "stairlifts," which are devices that allow persons with mobility impairments to ascend and descend stairways on a chair that travels along a rail, sued a competitor alleging infringement of its patent. 394 F.3d at 1350. During discovery, the defendant produced numerous disclosures of prior art stairlifts that had not been considered by the patent examiner. Id. The defendant accused the plaintiff of having intentionally withheld invalidating prior art from the PTO, and asked the district court to declare the case "exceptional" for purposes of awarding attorneys fees. Id. The district court found that the plaintiff had failed to disclose to the PTO information on several invalidating prior art stairlifts, but had submitted information on these stairlifts to the FDA in the GRAS submission. Id. Noting the absence of a credible, good faith explanation for this discrepancy, the district court found the plaintiff to have engaged in inequitable conduct, and declared the case "exceptional." Id. Finding no error, the Federal Circuit affirmed. Id. at 1355.

      The Federal Circuit's language in Bruno makes clear that inequitable conduct can be found when an applicant knew of a prior art, as evidenced by that applicant's disclosure of this prior art in a GRAS submission, and should have known of its materiality. Defendant's proffered evidence here falls far below the

standard required for a finding of inequitable conduct. Defendant points to no specific prior art that it alleges Plaintiffs should have disclosed. Moreover, the Court finds that the evidence proffered by Defendant does not support Defendant's assertions. When read in the context of the entire GRAS submission, it is clear that Plaintiffs' statements therein only stand for the propositions that tasteless smoke contains no additional elements not found in conventional smoke, and that tasteless smoke is 0.07 percent lighter in weight than conventional smoke. These meanings are emphatically different than those proffered by Defendant in support of its motion. Consequently, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Inequitable Conduct Defense, and DENIES Defendant's Motion for Summary Judgment RE: Unenforceability of the '401 Patent.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion for Summary Judgment as to Defendant's Lack of Enablement and Best Mode Defenses, GRANTS Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Inequitable Conduct Defense, DENIES Defendant's Motion for Summary Judgment RE: Invalidity of '401 Patent for Lack of Enablement and for

K86192

Failure to Disclose the Best Mode, and DENIES Defendant's Motion for Summary Judgment RE: Unenforceability of the '401 Patent.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, _____MAY 1 1 2005_____.

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

William R. Kowalski, et al., v. Jana Brands, Inc., CV. NO. 03-00015 DAE-KSC; ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S LACK OF ENABLEMENT AND BEST MODE DEFENSES; ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S INEQUITABLE CONDUCT DEFENSE; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INVALIDITY OF '401 PATENT FOR LACK OF ENABLEMENT AND FAILURE TO DISCLOSE THE BEST MODE; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: UNENFORCEABILITY OF THE '401 PATENT

K86193