IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI et al.,<br>v.<br>MOMMY GINA TUNA<br>RESOURCES, et al. | CIVIL NO. 05-00679 BMK<br>CIVIL NO. 06-00182 BMK<br>CIVIL NO. 05-00787 BMK<br>CIVIL NO. 05-00517 BMK<br><br>DECLARATION OF JOSEPH A.<br>MAGA |
| WILLIAM R. KOWALSKI, et al.,<br>v.<br>INTEGRAL SEAFOOD LLC et al. | |
| WILLIAM R. KOWALSKI, et al.,<br>v.<br>RICHARD FRIEND et al. | |
| TUNA PROCESSORS, INC.,<br>Plaintiff,<br>v.<br>HAWAII INTERNATIONAL<br>SEAFOOD, INC.<br>Defendant/Counterclaim<br>Plaintiff,<br><br>and WILLIAM R. KOWALSKI<br>Additional Counterclaim<br>Plaintiff. | |

## DECLARATION OF JOSEPH A. MAGA

JOSEPH A. MAGA, hereby declares:

1.    This declaration provides opinions and statements of fact in this case,

which involves U.S. Patent 5,972,401 (the Kowalski Patent). This declaration is

based on information available as of the date of this declaration, and it is subject to

review, revision and supplementation based on information that may arise later, and I reserve the right to amend or supplement my findings and declaration. I make this declaration based upon my personal knowledge and opinions, unless otherwise stated, and am competent to testify to the opinions and facts related herein.

2.      I am the author of the book <u>Smoke in Food Processing</u>, first published in 1988. I obtained a Ph.D in Food Science from Kansas State in 1970 and have conducted research in wood and smoke chemistry, food processing, food preservation, and flavor chemistry and sensory evaluation. From 1970 to 1990, I was Associate Professor and Professor of Food Science in Colorado State University's Department of Food Science and Human Nutrition. From 1990 to 1998, I was Director of Colorado State University's Food Research and Development Center. Since 1998, I have been Professor Emeritus of Colorado State University and Director of the Food Industry Consulting Division of J. A. International. I have also previously worked for Bordens Foods and served as a consultant for the U.S. Food and Drug Administration and the U.S. Agency for International Development.

3.      I have read the Kowalski Patent and I have seen that the Kowalski Patent has several claims (e.g., Claims 1 and 67) that mention the step of "heating organic material to generate smoke". In the various claims of the patent, that step

of "heating organic material to generate smoke" is just one step that is put together with other steps, which can be described generally as involving the use of the smoke to treat food so that the food does not end up with a smoke taste or smoke odor. The Patent Office has indicated that the aspect of the food not ending up with a smoke taste or odor is what distinguishes Mr. Kowalski's process from earlier processes and therefore was novel and made him deserving of a patent.

4.      In contrast, the step of "heating organic material to generate smoke" was not new or unknown to people in the field of the use of smoke in food processing. At the time Mr. Kowalski applied for his patent in 1997, a person of ordinary skill in the art of the use of smoke in food processing would have understood how to perform the step of "heating organic material to generate smoke," would have understood that smoke can be generated by heating at various temperatures – including above 510 degrees Celsius and below 204 degrees Celsius, and would have recognized that Mr. Kowalski's invention included and would work with generating smoke at temperatures above, between and below the temperature range of 204 to 510 degrees Celsius.

5.      Therefore, it would be correct to say that someone skilled in the art of processing food with smoke would have recognized and understood that the subject matter described in Mr. Kowalski's patent was using smoke to treat food so that the food does not end up with a smoke taste or odor, and that included

generating the smoke by applying heat at various temperatures, including above, between and below the temperature range of 204 to 510 degrees Celsius.

6.     Someone skilled in the art of processing food with smoke would have recognized and understood from the Kowalski Patent that Mr. Kowalski possessed an invention that involved using smoke to treat food so that the food does not end up with a smoke taste or odor, and that invention included generating the smoke by applying heat at various temperatures, including above, between and below the temperature range of 204 to 510 degrees Celsius.

7.     A person with ordinary skill in the art of processing food with smoke would not, after reading the Kowalski Patent and drawing upon that person's knowledge in the field, have gotten the impression that the only possible temperatures that could be used to generate smoke for Kowalski's tasteless smoke process were the temperatures between 204 and 510 degrees Centigrade or that heating at temperatures between 204 and 510 degrees Centigrade was essential to Mr. Kowalski invention of using smoke to treat food so that the food does not end up with a smoke taste.

8.     A person with ordinary skill in the art of processing food with smoke would not, after reading the Kowalski Patent and drawing upon that person's knowledge in the field, have gotten the impression that using smoke generated at temperatures above or below the range 204 -510 degrees Celsius was outside the

purpose of Mr. Kowalski's invention of using smoke to treat food so that the food does not end up with a smoke taste.

9.    The Kowalski Patent mentions certain temperature ranges, including the range of 204 – 510 degrees Celsius, but mentions them as ranges one might use if one wanted to minimization of the **formation** of deleterious polycyclic aromatic hydrocarbons (PAHS), and oxidation or organic vapors, including both condensable organic compounds as well as volatile organic compounds (VOCs), see Ex. "1" (Kowalski Patent) Col. 6 ln. 63-67, Col. 7, ln. 1-3 ("**To minimize formation of these compounds** . . . an operable combustion temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade), a preferred range of 500 to 800 degrees Fahrenheit (260 to 571 degrees Centigrade) and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees Centigrade) are established for the process described herein."). However, the Kowalski Patent clearly indicates that his invention is not limited to use of those heating temperatures, because the Kowalski Patent states that "**If wood is combusted above this temperature level and these compounds are formed, they can be successfully filtered later in the process.**" Id. at Col. 6, ln. 60-63.

10.    My 1988 book, "Smoke in Food Processing," shows that smoke generation by heating at temperatures such as 540, 650, 760 and 870, and as high as 1000 degrees Centigrade was known to persons of ordinary skill in the art. See

Table 12 – Influence of Combustion Temperature On Product Yields (at page 37, Bates stamped for this litigation as K004688) and pages 115-16 (K004766-67) ("They noted a linear increase in benzo[a]pyrene concentration as smoke generation temperature was increased from 400 to 1000°C."). Persons skilled in the art understood that carcinogenic compounds such as PAHs generated at higher temperatures could be filtered or removed. See my book at page 118 (K004769) ("As mentioned elsewhere, the filtration of smoke can significantly lower PAH concentration."), and at page 115 (K004766) ("Toth and Blaas reported on numerous smoke-processing techniques that can significantly lower PAH levels."), and at page 118 (K004769) ("Relative to filtration of smoke as a means of reducing PAH content, Potthast et al. have shown that the technique can reduce PAH levels up to 97%"). Thus, that smoke could be generated by heating at temperatures above 510 degrees Centigrade was known to persons of ordinary skill in the art and so need not have been specifically disclosed in Kowalski's patent.

11.    Generating smoke at temperatures below 204 degrees Centigrade was also well-known by persons with ordinary skill in the art of food smoking. For example, my book "Smoke in Food Processing," reported at p. 29 (K004680) that "[e]ven at temperature **slightly above 100° C**, significant changes [relating to pyrolysis] can occur in wood" and at p. 30 (Koo4681) that "[a]ctual loss of cellulose polymerization can occur in the **150 to 190°C** temperature range in the

absence or presence of air." and at p. 35-36 (K004686-87) "Fenner and Lephardt followed lignin decomposition over a wide temperature range and found that initial lignin decomposition occurred at 120 to 300°C."

I, JOSEPH A. MAGA declare, verify, certify, and state under penalty of perjury that the foregoing is true and correct.

DATED: Fort Collins, Colorado, October 31, 2007.

JOSEPH A. MAGA