```
                                                                    1

 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3
     WILLIAM R. KOWALSKI and        ) CIVIL NO. 04-00055BMK
 4   HAWAII INTERNATIONAL           )
     SEAFOOD, INC.,                 ) Honolulu, Hawaii
 5                                  ) December 6, 2007
                    Plaintiff,      ) 8:59 a.m.
 6                                  )
            vs.                     )
 7                                  )
     OCEAN DUKE CORPORATION,        )
 8                                  )
                    Defendant.      )
 9   _____)

10
                TRANSCRIPT OF JURY TRIAL (DAY 2)
11           BEFORE THE HONORABLE BARRY M. KURREN,
                UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:       MILTON M. YASUNAGA
14                            ALLISON MIZUO LEE
                              Cades Schutte LLP
15                            1000 Bishop St., Ste. 1200
                              Honolulu, Hawaii  96813-4216
16
     For the Defendant:       LOUISE K.Y. ING
17                            Alston Hunt Floyd & Ing
                              1800 ASB Tower
18                            1001 Bishop Street
                              Honolulu, Hawaii  96813
19
                              PAUL MARKS
20                            Neufeld Law Group
                              360 East 2nd Street, Ste. 703
21                            Los Angeles, California 90012

22   Official Court           GLORIA T. BEDIAMOL, RPR, RMR
     Reporter:                 United States District Court
23                            P.O. Box 50131
                              Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

**Exhibit 13**

```
 1   dust.  Do you remember that?
 2   A    Yes.
 3   Q    And do you remember what that preferable temperature range
 4   was?
 5   A    I don't remember the exact numbers.
 6   Q    Okay.  Does greater than 260 degrees centigrade sound
 7   about right?
 8   A    Maybe.
 9   Q    Now, let me digress for just a second here because I want
10   to ask you about what your company does in practice -- let me
11   just bend over and pick up this -- because you've experimented
12   over the years with the best way to create what you called
13   tasteless smoke, right?
14   A    Yes.
15   Q    And we talked about a number of the lawsuits that you've
16   gotten involved in or people that you've sued, and in the
17   process of those lawsuits you sometimes submit written
18   statements under oath?
19   A    Yes.
20   Q    You've done that in this case, right?
21   A    Yes.
22   Q    Let me ask you this:  Is it correct -- and I'm going to
23   refer to a document to ask you this question, so if you would
24   just bear with me for a half second.
25            Is it correct, Mr. Kowalski, that after you applied
```

1   for your patent and after you received the generally regarded
2   as safe notice, that you learned that producing smoke by
3   burning saw dust at temperatures far higher than 500 degrees
4   centigrade is beneficial for the tasteless smoke process?
5   A    Yes, it's a beneficial method.
6   Q    And is it also correct that the facilities in the
7   Philippines that at least at within time generated your
8   tasteless smoke, in fact, burned saw dust at temperatures far
9   higher than 500 degrees centigrade to create the tasteless
10  smoke.  Is that also correct?
11  A    Yes.
12  Q    You are familiar with the term, because you know a lot
13  about patents, "best mode"?
14  A    Yes.
15  Q    Okay.  If you were to do a patent today for your process,
16  would you agree that the best mode would be higher than 500
17  degrees for burning the saw dust?
18  A    I don't know.
19  Q    Well, I'll just put 500 here with a question mark after
20  that then.  And you don't have a vacuum chamber in your process
21  as patented, correct?
22  A    That's correct.
23  Q    But do you have a super purifying filter system, right?
24  A    We use filters.
25  Q    And what the patent talks about is super purifying; is

1   where the claims define the boundaries, if you will, of what
2   takes place in this Court, right?
3   A   Yes. That's correct.
4   Q   So if it is found that a person trespasses or infringes
5   onto the claims, then there can be patent infringement, right?
6   A   Yes.
7   Q   Okay. Now, would you agree with me or disagree with me
8   that the claims of your patent, which I think you've already
9   agreed, maybe you didn't say very broad but they are broad, are
10  broad enough to cover not just your invention but also the Shih
11  patent?
12  A   Yes.
13  Q   The claims are not nearly limited to the invention that
14  you made and that you patented; would you agree with that?
15  A   No. They are not already limited to the way that I'm
16  using the invention in my business.
17  Q   Okay. I think then you do agree with what I said, unless
18  I misspoke.
19          MR. YASUNAGA:   Objection --
20          MR. MARKS:   I think we get the point.
21          Your Honor, I probably have 20 more minutes. Should I
22  keep going?
23          THE COURT:   Yes, please.
24          MR. MARKS:   Thank you.
25          I'm just going to move this board for a second because