LOUISE K. Y. ING            2394-0
ALLISON KIRK GRIFFITHS      8156-0
ALSTON HUNT FLOYD & ING
1800 ASB Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email: ling@ahfi.com
       agriffiths@ahfi.com

TIMOTHY L. NEUFELD (Admitted *Pro Hac Vice*)
PAUL S. MARKS (Admitted *Pro Hac Vice*)
NEUFELD LAW GROUP
360 East 2nd Street. Suite 703
Los Angeles, California 90012
Telephone: (213) 625 -2625
Facsimile:;: (213) 625-2650
Email: tneufeld@neufeldlawgroup.com
       pmarks@neufeldlawgroup.com

Attorneys for defendant OCEAN DUKE CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. CV 04-00055 BMK <br><br> **DEFENDANT OCEAN DUKE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW NOTWITHSTANDING THE VERDICT;** DECLARATION OF PAUL S. MARK; EXHIBITS A AND B; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE |

667,588

**DEFENDANT OCEAN DUKE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW NOTWITHSTANDING THE VERDICT**

**I.     INTRODUCTION.**

After plaintiff rested its case, Ocean Duke Corporation (hereafter, "Ocean Duke") moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure, on grounds of patent invalidity and lack of evidence of damages. The court denied the motion, and that denial was deemed (under the rules) to be a deferral of the motion until after the verdict. In so ruling, the court wisely[1] permitted the matter to go to the jury, subject to renewal of the motion in the event a plaintiff's verdict was rendered.

A plaintiff's verdict was rendered, and Ocean Duke has now renewed the motions that were denied. In opposition to this renewed motion, plaintiff Kowalski asserts that the evidence at trial demonstrated that the claims of the Kowalski patent were not impermissibly broader than the written description of the invention, and that there was sufficient evidence of damages to support the jury verdict.

---

[1]   "Often it appears . . . that a motion for judgment as a matter of law made at the close of the evidence should be reserved for a post-verdict decision. This is so because . . . a pre-verdict ruling gambles that a reversal may result in a new trial that might have been avoided. For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence . . . . "  (Fed. R. Civ. P. 50; Notes of Advisory Committee on December 1991 Amendment of Rule.)

667,588

Ocean Duke addresses the arguments below.

## II. QUESTION OF FACT vs. QUESTION OF LAW.

Ocean Duke concurs that whether the written description requirement has been met is ordinarily a question of fact. (*See* Opposition at p. 8.) However, that does not end the inquiry. Where the facts can reasonably lead to only one conclusion, the court may enter judgment as a matter of law. "Where a patents' claims are easily understood, without expert aid, by someone of modest intelligence, then the question does not present a genuine issue of material fact, and summary disposition by the court as a matter of law may be appropriate. (*Continuous Curve Contact Lenses, Inc. v. Rynco Scientific Corporation*, 680 F.2d 605, 607 (9th Cir. 1982).) Issues of fact may "properly be decided as a matter of law, when no genuine issue of material fact exists and no expert testimony is required to explain the nature of the patented invention or the accused product or assist in their comparison." (*Amhil Enterprises, Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1558 (Fed. Cir. 1996).)

Here, in connection with the argument that the Kowalski patent's claims are broader than the written description, the *only* aspect of the Kowalski patent which the court permitted to be argued to the jury was the question of the patent's temperature range. Ocean Duke submits that the comparison of numerical temperature ranges is not so complex and difficult to accomplish that it requires expert testimony. To the contrary, as argued herein, one need look no further than the words of the Kowalski

patent itself, in order to recognize that the *claims* of the patent -- which (with one exception[2]) do not express any temperature range -- are impermissibly broader than the invention as disclosed in the written description. As such, the patent is invalid as a matter of law.

This is not an abstract debate without consequences, for temperature ranges are absolutely critical in this case. This is so because it is only by expanding the Kowalski patent's claims beyond the invention, as disclosed in the written description, that an infringement case can be made out against Ocean Duke's supplier. As shown at trial, Ocean Duke's supplier used the Shih patent, which teaches a heating temperature of 180 degrees Centigrade -- a temperature that is clearly outside the temperature range of the invention disclosed in the Kowalski patent (204 to 510 degrees Centigrade).

This court has, on one occasion, invalidated the Kowalski patent, on grounds that the claims are so broad that they, in essence, permit Mr. Kowalski to enforce his patent by suing people who "make use of that which Mr. Kowalski has not invented" (to paraphrase the words of the "overbreadth" cases). (*See* Exh. A, attached hereto

---

[2]   Claim 33 (alone among the claims) does state an "approximate" temperature range of 204 to 510 degrees Centigrade. However, nowhere in the written description does the word "approximate" appear in relation to the stated "operable" temperature range. Thus, the existence of the word "approximate" in Claim 33 is striking proof that the claims are broader than the written description.

for the court's convenience.)  Although the court later vacated that ruling on procedural grounds (*see* Exh. B), those procedural hurdles no longer exist, after a full trial on the merits.

Ocean Duke urges the court to find that the Kowalski patent is invalid as a matter of law.

### III.   TRIAL EVIDENCE ON INVALIDITY.

####   A.   The Kowalski Patent Itself.

The most important single piece of evidence in this case was the Kowalski patent itself.  It should be noted that the Kowalski patent is lengthy (eighteen pages long, compared to the three pages of the Shih patent -- even though both patents achieve the same result of processing seafood).  Thus, the authors of the patent clearly took every opportunity to say what they had to say in order to describe Mr. Kowalski's invention.

Further, it should not escape notice that the lawyer representing Mr. Kowalski in patent prosecution (as listed on the first page of the patent) is a law partner of Mr. Kowalski's trial counsel.  Clearly, then, Mr. Kowalski had sufficient opportunity and access to legal acumen, and with his legal team he took pains to lay out the nature of his invention with great specificity in the written words of the patent.  And, in the written description section of the patent, there were no "wiggle words" as to the temperature ranges therein disclosed.  Note, in the following passages taken

verbatim from the Kowalski Patent, that there are no qualifying or descriptive modifiers associated with the (broadest) stated temperature range of 204 to 510 degrees Centigrade.  To cite just one example, the term "approximately" that appears in Claim 33 does not appear anywhere in connection with the temperature ranges disclosed in the written description.

Rather, the very first page of the patent discloses, quite plainly, that "the smoke is generated by burning an organic smoking material at preferably 500 to 800 degrees F. (260 to 427[3] degrees C.) . . . ."  Then, three different sections of the patent disclose the broadest temperature range of 204ºC to 510ºC -- again without any qualifying language.

Thus, the "Background Art" section of the Kowalski patent, at Column 6, beginning with line 63, discloses as follows (with emphasis added):

> To minimize formation of these compounds and to conform to empirical data from our laboratory tests, an ***operable combustion temperature range*** of 400 to 950 degrees Fahrenheit (***204 to 510 degrees Centigrade***), a preferred range of 500 to 800 degrees Fahrenheit (260 to 427 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees Centigrade) are established for the process described herein.

---

[3]  The patent has a typographical error in referring to the "preferred" range.  The patent calls it 571 degrees Centigrade, but the actual number is 427 degrees Centigrade (equaling 800 degrees Fahrenheit).  This Reply Brief uses the correct number of 427 degrees Centigrade.  The error is not particularly meaningful to the issues in this case.

Next, the "Summary of the Invention" section of the patent, at Column 11, lines 44-52, discloses as follows (with emphasis added):

> The manufacturing process begins with the smoke generating part of the apparatus using a natural gas or electric burner to combust wood sawdust packed into a multiple cylinder retort at temperatures in an ***operable range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade***), a preferred range of 500 to 800 degrees Fahrenheit (260 to 427 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees Centigrade) in an oxygen deprived environment.

Finally, the "Best Mode" section of the patent, at Column 16, lines 37-44, discloses as follows (with emphasis added):

> The sawdust packed in this highly oxygen restricted closed system retort is combusted by heating the cylinders with the natural gas burner to an ***operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade)***, a preferred range of 500 to 800 degrees Fahrenheit (260 to 427 degrees Centigrade), and an optimal range of 650 to 750 degrees Fahrenheit (343 to 399 degrees centigrade).

Ocean Duke asserts in this motion that, in the written description section of the patent, Mr. Kowalski and his legal team said what they meant and meant what they said. Thus, it is ***unreasonable***, as a matter of law, to read the passages quoted above, and the written description section of the Kowalski patent as a whole, without coming to the firm and definite conclusion that Mr. Kowalski's invention was an invention in which ***"[the] operable temperature range [is] 400 to 950 degrees Fahrenheit (204 to 510 degrees centigrade), [the] preferred range [is] 500 to 800 degrees Fahrenheit (260 to 427 degrees Centigrade), and [the] optimal range [is]***

***650 to 750 degrees Fahrenheit (343 to 399 degrees centigrade)."***  Because the claims of the patent (with one exception, discussed below) do not state a temperature range, and because plaintiff by his conduct in prosecuting this action asserts that he has the right to exclude people who generate smoke or gas at ***any*** temperature range, the claims are impermissibly broad, and the patent is therefore invalid.

The language of Claim 33 only supports this analysis.  The word "approximately" that appears in Claim 33 ***must***, by definition, mean that the range stated in the claim is broader than the range stated in the written description.  Otherwise, the word "approximately" would be superfluous and meaningless.  Thus, Claim 33 again demonstrates that the claims are broader than the invention disclosed in the written description, and that as a result, the patent must be deemed invalid as a matter of law.

Contrary to the above-quoted language that comes directly from the Kowalski Patent, plaintiff contends that his invention expressly contemplates "heating" of organic material at temperature ranges ***above*** 510 degrees Centigrade.  (*See* Opposition at p. 15.)  This, the argument goes, would mean that the "operable" range does not limit the invention as disclosed in the specification.  Specifically, plaintiff cites the following language from the patent:

> If wood is combusted above this temperature level and these compounds are formed, they can be successfully filtered later in the process.

(Kowalski Patent, Col. 6, lines 60-63.)

The problem with this argument is that plaintiff seems to be mischaracterizing the actual words of the patent. The *argument* made at page 15 of the opposition papers refers to wood being combusted above the "operable" range (whose upper limit is 510 degrees Centigrade; *see* Opposition at p. 15.) But the section of the patent that is cited in support of this argument actually refers to a *lower* temperature, one that is well within (and, therefore, not "above") the "operable" range. Here is the quote set forth in the opposition papers at page 15, together with the surrounding language from the patent that places the quote in its proper context:

> The smoke produced from burning wood and other organic material fuels is a function of combustion temperature and amount of air intake. FIG 1 shows the composition of wood smoke emissions at varying combustion temperatures. The formation of deleterious polycyclic aromatic hydrocarbons (PAHS), and oxidation of organic vapors, including both condensable organic compounds as well as volatile organic compounds (VOCs) can be prevented by combusting below 850 degrees Fahrenheit (***454 degrees Centigrade***). If wood is combusted ***above this temperature level*** and these compounds are formed, they can be successfully filtered later in the process.

(Kowalski Patent, Col. 6, lines 51-62; emphasis added.)

The full context of the actual language of the patent makes clear that the phrase "above this temperature level" refers to 454 degrees Centigrade, a temperature that is lower than the upper limit of the operable range of 204 to 510 degrees Centigrade that is defined repeatedly throughout the patent specification. Thus, this part of the patent, when read together with the rest of the patent, is saying:

1. Kowalski's invention is to heat material within the range of 204 to 510 degrees Centigrade;

2. However, if you choose to heat the material within this range but at a temperature above 454 degrees Centigrade, you may get compounds;

3. Therefore, it is better to heat in the "preferable" range of 260 to 427 degrees Centigrade;

4. But if you do get compounds because you have gone above 454 degrees Centigrade, those compounds can be filtered out later.

What this part of the patent does NOT say is what plaintiff wants it to say -- to wit, that the upper temperature limit of 510 Centigrade can be exceeded, since the compounds thereby created can be filtered out.

Plaintiff makes a related but equally ineffective argument by attempting to re-define the "operable" temperature range of 204 to 510 degrees Centigrade. At pages 14 to 15 of his opposition papers, plaintiff disputes the common dictionary definition of "operable," which simply indicates the range at which "use or operation" of his invention is possible. Rather, Kowalski now contends that the word "operable" was meant to indicate that that temperature range facilitates an "option" of minimizing the formation of certain smoke-related compounds.

But again, plaintiff's after-the-fact attempt to re-define the words of his patent is undermined by the patent itself. In summarizing the invention, the patent states that the manufacturing process begins with one part of the apparatus, using a natural gas or electric burner, to combust wood sawdust "at temperatures in an operable range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade), . . . in an oxygen deprived environment." (Kowalski Patent, Col. 11, lines 45-53.) There is no reference in this section of the patent to smoke-related compounds, nor to any supposed "option" for minimizing them. Then, in the "Best Mode" section, the patent describes sawdust "combusted by heating the cylinders with the natural gas burner to an operable temperature range of 400 to 950 degrees Fahrenheit (204 to 510 degrees Centigrade)," again with no reference whatsoever to smoke-related compounds or any minimization option. (Kowalski Patent, Col. 16, lines 38-41.)

Indeed, other parts of the patent -- some of which do *not* refer to temperature ranges -- illustrate that the word "operable" is used throughout the patent, in a way that comports with the standard dictionary definition, rather than the narrow and unique meaning plaintiff now attempts to ascribe to it. Thus, the patent refers to "an operable range" of one to seventy-two hours for "immediate" aging of seafood under certain circumstances, and a different "operable range" of hours under other circumstances. (Kowalski Patent, Col. 14, lines 24-30). The patent also recommends "an operable rage [*sic*] of 0.05:1 or greater" ratio of volume of

super-purified smoke to seafood (*see* Col. 14, line 62), and that the "treatment temperature is an operable range from above the variable seafood freezing point to 46 degrees Fahrenheit" (*see* Col. 15, lines 3-6). None of these time, ratio or temperature ranges has anything to do with the supposed "option" of minimizing formation of smoke-related compounds; rather, each use of the word "operable" is obviously intended to indicate the range at which "use or operation" of the invention is possible -- just as indicated in the dictionary definition of the word.

Finally, plaintiff asserts that federal law requires the inventor's intended meaning of a term to take precedence over a dictionary definition. (*See* Opposition at p. 15.) However, to Ocean Duke's knowledge, Mr. Kowalski never testified what he thought the term "operable" meant, as used in this patent, and plaintiff's Opposition does not cite to any such testimony.

In conclusion, the Kowalski Patent is the most important item of evidence in this case, and the analysis of the operable temperature range disclosed in the invention and the lack of such a range appearing in the claims is not one that requires expert testimony. Further, the words of the patent cannot be subject to factual dispute. Simply stated, the claims are impermissibly broader than the invention as disclosed in the written description, thus rendering the patent invalid as a matter of law.

### B.   Dr. Maga's Testimony and the "Smoking" Patents.

Plaintiff next argues, in essence, that the testimony of plaintiff's expert witness Dr. Joseph Maga serves to override the clear dictates of the Kowalski Patent's written description, which explicitly states that the invention encompasses an operable temperature range of 204 to 510 degrees Centigrade.

Plaintiff asserts, correctly, that the written description must "describe the claimed invention so that one skilled in the art can recognize what is claimed." (*See* Opposition at pp. 4 *et seq*.)  Further, plaintiff cites to law and USPTO guidelines establishing that a written description need not disclose what is conventional or well known.  (*See* Opposition at pp. 22 *et seq*.)  Since Dr. Maga testified that smoke can be generated both above and below the "operable range" of the Kowalski patent, therefore a person skilled in the art would understand that the operable range is not a limitation on the invention -- or so the argument goes.

But the authorities cited by plaintiff do not say what plaintiff would like them to say.  What the authorities say is this:

The patent applicant need not disclose what is well known or conventional.

However, the cited authorities cited *do not stand for the following proposition*; nor, frankly, could they:

> Where a written description, in unmistakably clear language, repeatedly recites a specific "operable" heating range for generating smoke, with no qualifiers or modifiers, then that part of the written description can be ignored as if it did not exist, as soon as someone provides (obvious) testimony that it is "possible" to create smoke at temperature ranges outside the "operable" range that is disclosed in the patent.

The authorities do not say or hint at such a thing. Nor could the authorities say such a thing, because if such authority did exist, then the patent system as we know it would collapse unto itself. If a limitation in an invention, as disclosed in the written description of a patent, can be "erased" long after the fact, by having an expert witness testify that "everyone knows" the limitation doesn't have to be there, then patents would be re-written on the witness stand on a daily basis. That is no way to run a system of patent enforcement.

Plaintiff's reliance on the so-called "smoking" patents illustrates this point well. Plaintiff argues that these so-called "smoking" patents prove that people who are "skilled in the art" of food smoking *knew* that smoke generation could be achieved at temperature ranges above and below the "operable" range of the Kowalski patent. (*See* Opposition at p. 11.) But what the smoking patents *really* show is that (1) different temperature ranges are important for different "food

131400.1                                    13

smoking" inventions; and (2) the patents that have been issued based on those inventions have explicitly specified the differing temperature ranges.

Indeed, plaintiff is making a truly remarkable argument here (although plaintiff would presumably not express the argument in this way). What plaintiff really appears to be saying is the following:

1. My patent has an "operable" range of 204 to 510 degrees Centigrade for generating smoke;

2. *Other* patents have *other* temperature ranges for generating smoke that are outside my range;

3. So therefore, I should benefit from other people's inventions, by having their temperature ranges applied to my invention.

In reality, isn't this what plaintiff is saying with this argument? Why have a patent at all? Or, more precisely, why have a written description requirement at all?

## C.   The "Original" Patent Applications.

Plaintiff makes one other brief argument relating to the evidence submitted at trial. At page 16 of his opposition papers, plaintiff seems to assert that, because the original patent application did not refer to operable temperature ranges that appeared in the patent as issued, then the operable ranges listed in the approved patent somehow do not limit the invention. However, the cases cited by plaintiff do not

stand for the proposition that a part of the written specification can be invalidated by a contrary description or claim in an application that was *not* approved.

## IV. CASE LAW ON INVALIDITY.

Plaintiff attempts to distinguish *Gentry Gallery v. Berkline Corp.,* 134 F.3d 1473 (Fed. Cir. 1998) and other similar cases from the instant case. (*See* Opposition at p. 5 *et seq.*) However, the arguments made seem to provide better support for Ocean Duke's case.

Plaintiff quotes the *Gentry Gallery* case at length, in an effort to distinguish the case. (*See* Opposition at pp. 5-6.) But a close look at the language from *Gentry Gallery* cited by plaintiff in its opposition papers (below), together with editorial comments by Ocean Duke (also below), indicates that the instant case falls well within the confines of *Gentry Gallery*. Thus:

> In this case [*Gentry Gallery*], **the original disclosure clearly identifies the console as the only possible location for the controls.** It provides for only the most minor variation in the location of the controls, noting that the control "may be mounted on top or side surfaces of the console rather than on the front wall ... without departing from this invention." '244 patent, col. 2, line 68 to col. 3, line 3. **No similar variation beyond the console is even suggested.**

Ocean Duke submits that the same is true of the temperature range explicitly stated in the Kowalski patent -- each time the "operable range" is mentioned, there is no numerical or other qualification to the range of 204 to 510 degrees centigrade.

> **Additionally, the only discernible purpose for the console is to house the controls.** As the disclosure states, **identifying the only purpose relevant to the console**, "[a]nother object of the present invention is to provide ... a console positioned between [the reclining seats] that accommodates the controls for both of the reclining seats." *Id.* at col. 1, lines 33-37.  Thus, **locating the controls anywhere but on the console is outside the stated purpose of the invention. . . . .**

Ocean Duke submits that the only discernible purpose of the "operable" temperature range is to establish the outside temperature range for the heating of material to create smoke.  Thus, as the patent itself states, "It is a further object of this invention to select a fuel, or fuels, *and a combustion process* that will generate an all natural, organic smoke that can be filtered." (Col. 3, lines 4-6; emphasis added.[4])  As stated above, every place in the written description in which a temperature range is associated with the "combustion process," that range is, at its outermost limits, 204 to 510 degrees centigrade, not a centigrade more or less.

> . . . . It is true . . . that 'an applicant . . . is generally allowed claims, when the art permits, which cover more than the specific embodiment shown.' (*Ethicon,* 93 F.3d at 1582 n. 7 . . . .)  However, we were also careful to point out in that opinion that the applicant "was free to draft claim[s] broadly . . . to exclude the lockout's exact location as a limitation of the claimed invention" only because he "did not consider

---

[4]   *See also* Kowalski Patent at Co. 6, lines 51-53:  "The smoke produced from burning wood and other organic material fuels is a function of combustion temperature and amount of air intake."  Clearly, then, since smoke is a "function" of temperature, temperature is essential to the process."  And nowhere does the written description of the invention disclose a temperature outside the operable range of 204 to 510 degrees Centigrade.

131400.1                                16

> the precise location of the lockout to be an element of his invention."
> (*Id.*)  Here, as indicated above, **it is clear that Sproule considered the location of the recliner controls on the console to be an essential element of his invention . . . .**

Here too, the only reasonable way to read the patent is to conclude that the operable temperature range of 204 to 510 degrees centigrade is an essential element of his invention, as it is the outside range at which the combustion process occurs.

> Similarly, *In re Rasmussen* does not support Gentry's position. . . . The claims at issue in *Rasmussen*, which were limited to the generic step of "adheringly applying" one layer to an adjacent layer, satisfied the written description requirement only because "one skilled in the art who read [the] specification would understand that it is unimportant how the layers are adhered, so long as they are adhered." **Here, on the contrary, one skilled in the art would clearly understand that it was not only important, but essential to Sproule's invention, for the controls to be on the console.**

Here, as stated above, the patent itself establishes that the operable temperature limits the combustion process that is an object of the invention, and the concept is so elementary that there is no need to rely on expert witness testimony from one skilled in the art.

## V.     CONCLUSION.

This court denied this motion during the trial, and the jury awarded a plaintiff's verdict.  Ocean Duke submits that the evidence introduced at trial fully supports this court's earlier ruling invalidating the Kowalski patent on grounds that the claims are too broad, and that they therefore allow plaintiff to sue people who are not using anything Mr. Kowalski invented.

Ocean Duke respectfully submits that the Kowalski Patent should be invalidated again. The procedural hurdles that resulted in the vacatur of the earlier ruling of invalidity no longer exist. Indeed, if the patent is invalidated again, and that ruling is reversed on appeal, there will be no need for a re-trial, as the Federal Circuit could simply reinstate the jury verdict.

For the foregoing reasons, Ocean Duke respectfully requests that the court grant this motion for judgment as a matter of law, notwithstanding the verdict rendered by the jury.

DATED: Los Angeles, California, January 18, 2008.

/s/ Paul S. Marks_____
LOUISE K. Y. ING
ALLISON KIRK GRIFFITHS
TIMOTHY L. NEUFELD
PAUL S. MARKS
Attorneys for defendant
   OCEAN DUKE CORPORATION