LOUISE K. Y. ING                2394-0
ALLISON KIRK GRIFFITHS   8156-0
ALSTON HUNT FLOYD & ING
1800 ASB Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile:  (808) 524-4591
Email:  ling@ahfi.com
            agriffiths@ahfi.com

TIMOTHY L. NEUFELD (Admitted *Pro Hac Vice*)
PAUL S. MARKS (Admitted *Pro Hac Vice*)
NEUFELD LAW GROUP
360 East 2nd Street. Suite 703
Los Angeles, California 90012
Telephone: (213) 625 -2625
Facsimile:  (213) 625-2650
Email: tneufeld@neufeldlawgroup.com
            pmarks@neufeldlawgroup.com

Attorneys for defendant OCEAN DUKE CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>OCEAN DUKE CORPORATION,<br><br>    Defendant. | CIVIL NO. CV 04-00055 BMK<br><br>**DEFENDANT OCEAN DUKE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A NEW TRIAL;** CERTIFICATE OF SERVICE |

131423.1

# DEFENDANT OCEAN DUKE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A NEW TRIAL

## I.    A NEW TRIAL IS WARRANTED.

After the verdict was rendered in this case, the one juror who would speak to the parties approached Roger Lin, the Chief Operating Officer of Ocean Duke Corporation, and apologized to him. She expressed the view that "the verdict had to be unanimous," as a way of explaining why she had voted with the majority. She then added something that resonated with the defense team:

> "You will be all right.  Good always triumphs over evil
>
> in the end."

Putting aside the moral and metaphysical underpinnings of the juror's comments, Ocean Duke asserts that there is a good reason why the thoughts expressed by this juror made sense to Ocean Duke.  The bottom line is that, after a two-week jury trial, the record contained no credible evidence that plaintiffs could point to that suggests that Ocean Duke did anything that was wrong, or (more narrowly) that Ocean Duke committed "patent infringement."  Rather, the weight of the evidence clearly showed that:

1.    Mr. Kowalski did not "enable" an industry, as he testified; rather, he attempted to hijack a (fledgling) industry through litigation, including by turning his back on the members of the Tasteless Smoke Seafood Association, whom he had recruited and led, and then betrayed;

131423.1

2. Mr. Kowalski's purported invention is not new, as he testified at trial; rather, through his own evidence and documents and testimony, it is clear that **PescaRich** was the true pioneer of "tasteless smoke" (if "tasteless smoke" is even something for which one can be called a "pioneer");

3. As Mr. Kowalski's own documents showed, "tasteless smoke" itself was nothing new, but "merely a purified version of the filtered smoke that has been used for decades in the processing of seafood";

4. As Mr. Kowalski's own expert Dr. Joseph Maga testified, there are many ways to create what Mr. Kowalski calls "tasteless smoke," and for many of those "you do not even need a patent";

5. Mr. Kowalski did not prove patent infringement; rather, he simply proved that Ocean Duke is one of many entities whose supplier treats seafood with carbon monoxide that is generated from smoke;

6. Mr. Kowlaski tried to mislead the jury into believing that he had extensive facilities for producing smoke and treating seafood, when he in fact did not and does not;

7. Mr. Kowalski tried to mislead the jury by referring to carbon monoxide as "suicide gas," when his own supposed invention only works because of carbon monoxide;

8. Mr. Kowalski also tried to mislead the jury by bad-mouthing carbon monoxide when he himself had attempted (unsuccessfully) to obtain a patent for seafood processing that used *pure* carbon monoxide; and

9. Mr. Kowalski did not and could not introduce a single shred of financial documentation in support of his claims;

10. Ocean Duke's supplier independently developed its (later) patented process, before Mr. Kowalski developed his process;

11. PT Intisamudera Citra Perkasa sold treated seafood into Japan using the Shih process before Mr. Kowalski had developed his process;

12. The Shih patent was issued "over" the Kowalski patent; and

13. Plaintiffs never travelled to Bali to investigate the Shih process, and could not and did not introduce credible, persuasive evidence of the so-called "filtering" step in that process.

It must also be remembered that plaintiffs originally sought over *eleven million dollars* in damages, and in fact introduced expert testimony of damages in that amount. However, the bulk of those damages were ruled out of order. Further, it must be noted that one party, Hawaii International Seafood, Inc., had no standing to bring claims for patent or trademark infringement, and had judgment entered against it on *all* claims. Mr. Kowalski also had judgment rendered against him on

*all* claims, except for the one claim of patent infringement on which he prevailed.[1]

In contrast to Mr. Kowalski, Ocean Duke showed itself at trial to be a good corporate citizen, a family business that grew from humble beginnings into a very successful enterprise, characterized by hard work, due diligence, and business ethics -- as opposed to make-a-buck schemes and wasteful litigation.  Ocean Duke also proved that it had acted appropriately in response to threats of infringement from Mr. Kowlaski.  Ocean Duke took the notice of infringement letter very seriously, recognized that it had done business with Mr. Kowalski before (with bad results), and prudently decided to investigate.  In conjunction with investigating, Ocean Duke retained patent counsel to investigate and to assess liability issues.  That patent counsel opined that there was no infringement, and Ocean Duke relied on that opinion.  Thus, the oft-repeated notion that Ocean Duke "did nothing" in response to the notice of infringement is contradicted by the evidence.

Given all of the foregoing, how can one explain the adverse verdict against Ocean Duke (albeit on the only surviving portion of the case, which amounted to less than 20% of what the plaintiffs were originally seeking)?

---

[1] These rulings in favor of Ocean Duke are now essentially ironclad, and impervious to appellate reversal, since plaintiffs did not bring Rule 50 motions -- which are, in most cases, a pre-requisite for appellate review.

Two explanations suggest themselves.

First, it could be that all of the detailed testimony and argument about patents, patent law, smoke generation, seafood processing, and other technical matters were somewhat lost on the jury.  This could have opened the door to the consideration of extraneous and improper matter, such as the possibility that the jury sympathized with Mr. Kowlaski, and voted for the party perceived to be the "underdog."  It is possible that the jury viewed Mr. Kowalski as the "little guy," who was forced to admit to having financial difficulties (even a business bankruptcy in his past), and who could not get anyone to testify for him whom he did not pay, in some fashion, to come testify.  In other words, this could be a "David versus Goliath" story, in which David earned an undeserved victory.

Ocean Duke hastens to acknowledge that the foregoing recitation of facts and the history of this case is the way Ocean Duke saw (and sees) the evidence and the facts.  Ocean Duke does not profess to be an unbiased and disinterested observer.  Alternatively, Ocean Duke acknowledges that it could be the case that this court believes that the *infringement* verdict is actually supported by the record evidence introduced at trial.  Although Ocean Duke argued against that concept in its new trial motion, Ocean Duke did go on to say:

> If . . . the court determines that the jury was not mistaken
>
> in finding infringement, then Ocean Duke submits that this

131423.1                                        5

could only result from the fact that the patent's claims are impermissibly broader than the written description of Mr. Kowalski's invention.

As argued at length in its motion for judgment as a matter of law, the claims of Mr. Kowalski's patent are so broad that virtually anyone must be deemed to be an infringer if that person or entity has treated seafood with carbon monoxide that was generated from smoke.  More importantly, it seems quite clear that the claims are far broader than any invention Mr. Kowalski disclosed in the written description section of his patent.

Thus, in either case, Ocean Duke respectfully submits that the correct result is the grant of a new trial.

## II.   STANDARDS FOR A NEW TRIAL.

This court saw the case unfold, just as the jurors did.  Unlike the jurors, however, this court has an affirmative duty to set aside the verdict, if the court "is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice . . . ." (*Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 594 (4th Cir. 1985); *Carr v. Wal–Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002); *Atlas Food Systems & Services, Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587 (4th Cir. 1996).)  The court need not and does not presume that the verdict is correct, or even view the evidence

131423.1                                6

in the light most favorable to the prevailing party. (*Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).) Rather, the court must essentially act as the "thirteenth juror," and should re-weigh the evidence and assess for itself the credibility of witnesses, even if the result is a rejection of the findings of the jury. (*Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990); *McDonald v. Petree*, 409 F.3d 724, 727 728 (6th Cir. 2005); *United States v. Hilliard*, 392 F.3d 981, 987 (8th Cir. 2004).)

Ocean Duke submits that the grant of a new trial is the correct result in this case. Only this court knows how it interprets the evidence presented at trial, and measures the credibility of the various witnesses who testified. However, if the court views any significant portion of the case in the same light as Ocean Duke, then a new trial is warranted.

## III.   SPECIFIC EVIDENCE.

In its opposition, plaintiff points to several items of evidence as supporting the verdict in favor of Mr. Kowalski. Ocean Duke responds as follows:

### A.   **Stalker Testimony.**

Ocean Duke submits that Mr. Stalker was inherently incredible on some points, and in fact ended up being a more powerful witness for Ocean Duke than for plaintiffs.

Mr. Stalker worked for Mr. Kowalski for a few months. If he sold fish for Mr. Kowalski at all, he did not say much about that from the witness stand. Instead, he called around to Mr. Kowalski's competitors for hours at a time each day, not telling them that he was setting them up for being sued, and allegedly asking certain questions based on a script. That script (Trial Exhibit 70) was not designed to elicit a single bit of information about the *process* that Ocean Duke or any other competitor of Mr. Kowalski used to treat seafood. Rather, it simply asked a few questions that illustrate the incredibly broad spin that Mr. Kowalski puts on his patent. This shows that plaintiffs don't care about the "process" used by purported infringers; all they care about is whether a competitor uses something they call "tasteless smoke." Basically, according to plaintiffs, if you are not using pure carbon monoxide, then you are infringing on Mr. Kowalski's patent.

Then, after his brief tenure with Ocean Duke was over, Mr. Stalker actually applied for a job with Ocean Duke. And, in the process, he even admitted to Ocean Duke that he was scared about being sued for patent infringement by Mr. Kowalski.

Overall, what Mr. Stalker brought to the table was proof that:

1. Mr. Kowalski's patent and his business are all about litigation;

2. Mr. Kowalski sued Ocean Duke without knowing a single thing about the process Ocean Duke's supplier used to treat seafood;

3. The only basis on which Mr. Kowalski believes litigation is warranted is if a competitor uses something he considers to be "tasteless smoke."

### B. Shih Diagram.

Plaintiffs place weight on the Shih diagram, which supposedly says "we used a filter over there." This hearsay evidence should be accorded the scant weight it deserves. "We used a filter over there" could mean anything. It could mean that a paper filter was used on one occasion; it could mean a charcoal filter was used before the patent was issued; it could even be that "over there" had nothing to do with the seafood that Ocean Duke imports. This one lone handwritten phrase could mean virtually anything, and its probative value borders on the insignificant.

### C. Maga Testimony.

Dr. Maga's testimony was most helpful to Ocean Duke, as explained above. He admitted that there are many ways to produce what Mr. Kowalski calls "tasteless smoke," and that for many no patent is needed. Although no patent is needed for many such processes, the truth is that Ocean Duke's supplier does have a patent -- the Shih patent, which was issued over the Kowalski patent.

### D. Iwaoka Testimony.

Professor Iwaoka was credible and persuasive, as well as being highly credentialed. His testimony, elicited on cross-examination, was that the claims

of the Kowalski patent were "too broad." As shown in the companion motion for judgment as a matter of law, Ocean Duke submits that that testimony is correct from a legal as well as a scientific perspective.

### E. Duke Lin Testimony.

Plaintiffs' reliance on Duke Lin's testimony illustrates the weakness of its showing on the issue of infringement. The testimony quoted at page six of plaintiffs' opposition papers simply says that the separation unit in Bali "looked like" the kind of filter in a home water filtering system attached to faucets. From this and this alone, plaintiffs leap to the unfounded conclusion that it was some kind of filtering system, of the sort that infringes on the Kowalski patent. In Ocean Duke's view, this is hardly credible, persuasive evidence of the details of the process that was actually in place at the PT factory in Bali. Plaintiffs had every opportunity to travel to Bali to investigate that process, but chose not to, and as a result they had to rely on second hand evidence that turned out to be of weak probative value.

### IV. CONCLUSION.

Ocean Duke respectfully submits that plaintiffs failed to provide convincing, credible, persuasive evidence in support of their patent infringement claims. Ocean Duke does not even process its own seafood, yet it now faces a judgment of over two million dollars for patent infringement. Ocean Duke submits that the totality of

evidence, including, importantly, the credibility of the key witnesses, when viewed dispassionately, simply does not support the verdict that was rendered.

    This court has already ruled in favor of Ocean Duke on all other claims brought against it, and has reduced the claimed patent infringement damages from over $11,000,000 down to $2,000,000. Ocean Duke respectfully requests that the patent infringement verdict was, like all other claims asserted by plaintiffs, against the clear weight of the evidence. On that basis, Ocean Duke respectfully requests that a new trial be granted, whether or not conditional on a remittitur of damages.

DATED: Los Angeles, California, January 18, 2008.

                                                  /s/ Paul S. Marks_____
                                                  LOUISE K. Y. ING
                                                  ALLISON KIRK GRIFFITHS
                                                  TIMOTHY L. NEUFELD
                                                  PAUL S. MARKS
                                                  Attorneys for defendant
                                                  OCEAN DUKE CORPORATION