IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>Defendant. | CIVIL NO. 04-00055 BMK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

After a six day trial, the jury determined that Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") infringed all of the asserted claims of the Kowalski Patent, that the infringement was willful, Ocean Duke did not prove the Kowalski Patent invalid, and that Ocean Duke should pay Plaintiff $2.2 million in reasonable royalty damages. Plaintiff WILLIAM R. KOWALSKI ("*Plaintiff*") brings this motion for prejudgment interest and costs pursuant to 35 U.S.C. § 284 ("*Section 284*"), which provides for "interests and costs." For the reasons discussed herein, the Court should award Plaintiff prejudgment interest in the manner set forth below, the fees of his expert witness on damages, and post-judgment interest in accord with 28 U.S.C. § 1961.

ImanageDB:821236.4

## II. ARGUMENT

### A. Plaintiff Is Entitled To Prejudgment Interest In An Amount Necessary To Make Him Whole.

Title 35, United States Code § 284 provides, in relevant part:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, **together with interest and costs** as fixed by the court.

35 U.S.C. § 284 (emphasis added).

The Supreme Court has held that "prejudgment interest should ordinarily be awarded." General Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983). "In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." Id. at 656.

Ocean Duke's infringement of the Kowalski Patent has spanned over eight years. Plaintiff was entitled to reasonable royalty payments beginning in 1999 through the entry of judgment. An award of prejudgment interest is necessary to compensate Plaintiff for the foregone use of the money that should have been paid to him.

**B.     Prejudgment Interest Should Be Calculated By Using The Interest Rate That Plaintiff Incurred On Borrowed Funds During The Period Of Infringement Compounded Annually.**

Unlike the calculation of **post-judgment** interest, which is dictated by 28 U.S.C. §1961, selection of the appropriate interest rate and compounding method used to calculate **pre-judgment** interest is largely left to the discretion of the court. See Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791 (Fed. Cir. 1990) ("The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court."). The Federal Circuit advises, however, that "[i]n exercising that discretion . . . the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" Bio-Rad Lab., Inc. v. Nicolet Instr. Corp., 807 F.2d 964, 969 (Fed. Cir. 1986).

In light of the purpose of awarding prejudgment interest, the Federal Circuit has sanctioned use of the rate at which the patent holder paid on his borrowed funds during the period of infringement. See Bio-Rad Lab., Inc., 807 F.2d at 969 (reversing district court's use of 7% rate uncompounded where "the only evidence in the record relating to the appropriate rate of interest suggest[ed] the use of either the prime rate **or the rate that Bio-Rad paid on its corporate borrowings during the period of infringement.**") (emphasis added), Lam, Inc. v. Johns-

Manville Corp., 718 F.2d 1056 (Fed. Cir. 1983), Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991) ("**A trial court is afforded wide latitude in the selection of interest rates, and may award interest at or above the prime rate.**"). Where as here the patent holder is a net borrower, using the interest rate that was imposed on the patent holder for borrowing funds furthers the purpose of Section 284 because it reimburses the patent holder for interest expense that (s)he would not have incurred absent the defendant's infringement. In Muniauction, Inc. v. Thomson Corp., 2 F. Supp. 2d 477 (W.D. Pa.2007), the district court explained:

> We find that plaintiff's proposed interest rate most accurately reflects a full compensatory award to plaintiff. The jury determined that defendant's infringement caused plaintiff to lose $38.4 million in profits. Plaintiff had to borrow money in order to account for that financial shortfall. Plaintiff borrowed money at the prime rate, plus one percent. **Awarding plaintiff prejudgment interest at its borrowing rate compensates plaintiff for what it actually lost as a result of defendant's infringement. Had defendants not infringed, and plaintiff not been forced to borrow such money, plaintiff would not have incurred such interest costs over the last six years.**

Id. at 484 (emphasis added); see also Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21 (D. Del. 1993) ("If the Court's purpose here is to award interest to make Mars whole for the loss of the use of this money during the period from the date of the harm to the judgment, the prime rate suggested by Mars serves that purpose better than the Treasury Bill rate suggested by Conlux. **In this case the cost of borrowing money – and not the rate of return on investing money –**

**provides a better measure of the harm Mars suffered as a result of the loss of the use of money over time.")** (emphasis added).

It is likely that Ocean Duke will urge the Court, as many infringers do, that prejudgment interest should be calculated using the U.S. Treasury Bill rate. Numerous courts have prudently rejected the U.S. Treasury Bill rate because it does not fairly compensate the patent holder. See, e.g., id., Stryker Corp., 891 F. Supp. at 833 ("in the Court's view the prime rate is more reflective of Osteonic's cost of funds than the 3 month Treasury Rate"), IMX, Inc. v. LendingTree, LLC, 469 F. Supp. 2d 203, 227 (D. Del. 2007). The court's explanation in In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 831 F. Supp. 1354 (N.D. Ill. 1993), is highly persuasive on this point:

> **IMPRA [infringing party] asks me to award interest at the rate the United States pays to borrow money, the rate that by statute is used for post-judgment interest. Both the Federal Circuit and the Seventh Circuit have held that such a rate is inappropriate.** Professor Hausman contended that the appropriate rate for prejudgment interest "is the rate over the relevant period on U.S. three-month Treasury Bills. Any lower rate would not properly compensate Dr. Mahurkar or Quinton for the time value of the money. Any higher rate would be improper, since a higher rate would serve to compensate Dr. Mahurkar and Quinton for financial risks associated with investing the alleged lost royalties/profits that Dr. Mahurkar and Quinton did not undertake." This passage recognizes that interest compensates not only for the time value of money (deferred consumption or other use of money) but also for the risk of nonpayment. Yet Quinton and Mahurkar have had their funds at risk. **Winners in litigation are not called "judgment creditors" for nothing. They have made a large, involuntary, unsecured loan to a debtor of uncertain credit-worthiness that is doing its utmost to avoid paying. In the market the rate of interest on such loans greatly exceeds the rate the United States**

**Government has to pay – a rate that economics usually call the "risk-free rate." Plaintiffs did not make a risk free loan.**

Id. at 1394 (internal citations omitted) (emphasis added) ("***Mahurkar***").

In this case, the rationale of Mahurkar is particularly compelling. Plaintiff made an involuntary high-risk unsecured loan to Ocean Duke from 1999 to 2008 amounting to $2.2 million in borrowed funds.

The evidence at trial showed that Ocean Duke's infringement financially weakened Plaintiff and his company Hawaii International Seafood, Inc. ("***HISI***"). See Kowalski Decl. ¶ 2, see also Ex. "A" (Trial Tr. Day 2 – Kowalski) at 141: 1-4. Both he and his company were forced to borrow money at much higher than market or industry rates. For example, in 2000, Plaintiff Kowalski was forced to borrow funds **personally** (which were put into his company HISI), and although the loan was secured by a mortgage on his personal residence and a lien on his patent, the loan agreement called for Kowalski to pay interest at an aggregate effective rate which greatly exceeds prime plus 2% or even the state statutory rate of 10%, because the loan agreement, attached as Ex. "B," set the aggregate interest rate as (a) "prime plus 1%" plus (b) an amount equal to 5% of any damages/settlements received from patent infringers (net of legal costs) plus (c) an amount equal to 5% of royalties collected plus (d) an amount equal to 1 cent per pound of fish sold by HISI, which amounted to an **average rate of about 14%** over the years from the second half of 2000 (when that lending began) through

2007 (see chart Ex. "C"). **In fact, because payments (b), (c), and (d) above will continue even after the loan balance has been reduced further and even when it is paid off, the effective rate of interest is far higher than 14% (note, e.g., that the rates in the most recent three years, when the loan balance is the smallest, were between 17 and 20%).** See Kowalski Decl. ¶ 2, see also Ex. "B" and Ex. "C". Furthermore, Plaintiff Kowalski's company had to borrow money at a rate that exceeded prime plus 2 percent, and this rate was of personal significance to Kowalski because he had to sign a personal guaranty. Kowalski Decl. ¶ 3, see also Ex. "D" and Ex. "E". If Kowalski had the royalties from Ocean Duke throughout these years, he could have put that money into the company, and avoided at least a corresponding amount of the loan at above-market/industry interest and the related personal guaranty, or at least could have avoided part of the personal loan, which averaged interest of 17-20% in the last three years. See Kowalski Decl. ¶ 3.

While Section 284 sanctions using the high rate that Plaintiff paid to borrow funds during the period of Ocean Duke's infringement, Plaintiff instead proposes calculating prejudgment interest using the prime rate plus 2% compounded annually. This is a modest and reasonable proposal under the circumstances of this case given that it does not fully compensate or make Plaintiff whole. See Devex Corp., 461 U.S. at 656, Ziggity Sys., Inc. v. Val Watering Sys., 769 F. Supp. 752

(E.D. Pa. 1990) ("His analysis is conservative in that it assumes that the interest is compounded annually and not due until the end of each year."), Stryker Corp., 891 F. Supp. at 833 (noting willful infringement finding in support of decision to compound interest).

Using prime plus 2 percent to calculate prejudgment interest also makes sense because it is the industry standard, i.e. the standard rate at which companies such as Ocean Duke can obtain financing. See Ex. "F" (Francom report) at 17 (noting that prime plus 2 percent is the "industry standard."). Plaintiff has made an involuntary loan to Ocean Duke in the amount of the royalties owed to Plaintiff over the 1999- 2007 period. See In re Mahurkar, 831 F. Supp. at 1394. Ocean Duke should pay Plaintiff at least the interest expense it would have incurred to borrow from a **willing** lender. See Mahurkar, 831 F. Supp. at 1394. Using the prime rate (average annual rate) plus 2% compounded annually on amounts owed at the end of each year results in a total of **$ 689,085.80** in prejudgment interest. See Ex. "G" (Excel prime plus 2% spreadsheet); see also Lee Decl. ¶ 2, 4.

Alternatively, Plaintiff proposes adoption of Plaintiff's expert's calculation of prejudgment interest in the amount of **$ 777,943.00**, which was based on the state statutory rate of 10% compounded annually. See Ex. "H" (Francom chart summarizing prejudgment interest calculations). The state statutory rate is frequently used to calculate prejudgment interest. See, e.g., Brooktree Corp. v.

Adv. Micro Devices, Inc., 757 F. Supp. 1101 (S.D. Cal. 1990) ("While it is true that the state statutory rate is not controlling in the context of a suit based on a federal claim, courts do often use the statutory rate in the state in which they sit to calculate an award of prejudgment interest."), In re Hayes Microcomputer Prod., Inc. Patent Litigation, 766 F. Supp. 818, 824 (N.D. Cal. 1991) (applying California statutory rate). The Hawaii statutory rate, while slightly higher than prime rate plus 2%, is entirely fair and reasonable because it is still far less than the actual cost that Plaintiff incurred to borrow funds during the period of infringement.[1]

As a last alternative, while the prime rate falls short of making Plaintiff whole because he was forced to borrow at a much higher rate, Plaintiff proposes use of the prime lending rate compounded annually if the Court somehow decides not to use prime plus 2 percent or the state statutory rate. The prime rate is clearly sanctioned as an appropriate rate to use in calculating prejudgment interest. See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995), Grain Processing Corp. v. Am. Maize-Products Co., 893 F. Supp. 1386, 1396 (N.D. Ind. 1995), *rev'd on other grounds*, 108 F.3d 1392 (Fed. Cir.

---

[1] Mr. Francom's calculation is also conservative because it only accounts for interest accruing through December 4, 2007 (the date trial commenced) and does not include interest for the additional time that will lapse before the entry of judgment.

1997), <u>Studiengesellschaft Kohle v. Dart Indus., Inc.</u>, 862 F.2d 1564, 1579 (Fed .Cir. 1988) (prime rate compounded quarterly not an abuse of discretion).

The prime rate represents the rate at which lending institutions are willing to lend to large credit-worthy businesses, and hence, serves as a conservative proxy for the cost of funds that Ocean Duke would have incurred during the period of infringement, especially given the evidence that the industry standard is prime plus 2 percent.  <u>See</u> Ex. "F" (Francom report) at 17.  Notably, Mr. Kowalski is not a large credit worthy business and had to borrow at much higher rates.  However, using the prime rate, compounded annually, results in a total of **$ 502,058.05** in prejudgment interest.  <u>See</u> Ex. "I" (Excel prime rate spreadsheet); <u>see also</u> Lee Decl. ¶ 3, 4.

In summary, Ocean Duke's failure to pay royalties over the 1999 to 2007 period forced Plaintiff to take out personal loans at extremely high interest rates. Plaintiff requests that the Court calculate the prejudgment award by using the conservative rate of prime plus 2 percent, compounded annually.  Alternatively, Plaintiff proposes use of the state statutory rate, or, as the worst alternative, the prime rate.

| Interest Rate | Prejudgment Interest Amount |
|---|---|
| **Prime Rate plus 2 percent** | $ 689,085.80 |
| 1st Alternative, State Statutory Rate | $ 777,943.00 |
| 2nd Alternative, Prime Rate | $ 502,058.05 |

C.  **Plaintiff's Damage Expert's Fees Are Recoverable As A "Cost" Under Section 284.**

Plaintiff acknowledges that expert witness fees are not ordinarily recoverable in an amount that exceeds the $40 per day statutory amount prescribed for witnesses as per 28 U.S.C. § 1821.  Section 284, however, calls for an award of "costs."  The purpose of the award of costs under Section 284, as with prejudgment interest, is to adequately compensate the patent holder for the infringement.  See 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court."); see also Eldon Indus., Inc. v. Vanier Mfg., Inc., No. 86-7521, 1990 WL 160220 *1, *2 (C.D. Cal. Jan. 8, 1990).  In Eldon Indus., Inc., the court awarded the patent holder the expenses incurred in connection with its expert witness fees under Section 284 reasoning as follows:

> Part of the damages of infringement are the expenses incurred in litigation necessary to protect the patent rights.  Expert witnesses are practically a requirement in patent litigation.  Since there is no reference to the allowed amounts under § 1821(b), it would appear that Congress has provided for expert fees as costs not to be bound by the $30-per-day limitation.  The Court may therefore assess expert fees in excess of $30 day per diem.

Id.; see also Triplex Safety Glass Co. v. Duplate Corp., 10 F. Supp. 420, 425 (W.D. Pa. 1934) ("the plaintiff having prevailed before the master, we are of the opinion that as a matter of course the costs of the accounting must be assessed against defendants"), this aspect of case aff'd on appeal 81 F.2d 352, 358 (3d Cir. 1935).

In this case, expert witness testimony was essential to prove the appropriate

amount of damages owed as a result of Ocean Duke's infringement. The jury's reasonable royalty damage award shows that the jury found Mr. Francom's testimony to be very helpful in determining the appropriate amount of damages to award. Moreover, that the jury determined that Ocean Duke's infringement was willful, Ocean Duke did not provide the information requested by Plaintiff in discovery for the purpose of calculating damages,[2] and the fact that the very incomplete invoices that Ocean Duke provided indicated that the one-page summary provided by Ocean Duke greatly understated its sales, support reimbursement of Mr. Francom's expert witness fees. See Yasunaga Decl. ¶ 5.

Plaintiff incurred expenses in the amount of $44,481.00 for Mr. Francom's services. See Ex. "L" (Campos & Stratis invoices); see also Yasunaga Decl. ¶ 4. The Court should award Plaintiff with Mr. Francom's fees as a "cost" under Section 284.

### D. **Plaintiff Is Entitled To Post-Judgment Interest As Set Forth in 28 U.S.C. § 1961**

Title 28, United States Code § 1961 ("*Section 1961*") provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

---

[2] For example, Ocean Duke produced no financial statements, accounting reports, or tax returns, and the one-page summary it did provide contained no numbers for 2006 and 2007, and included inappropriate costs. See Yasunaga Decl. ¶ 5.

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. the date of the judgment." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." Id. at § 1961(b). Plaintiff is entitled to post-judgment interest on the money judgment to be entered in this lawsuit, calculated in the manner set forth in Section 1961.

### III. CONCLUSION

For the foregoing reasons, the Motion should be granted. Plaintiff respectfully requests that the Court award prejudgment interest in the amount of $689,085.80 and (non-taxable) costs in the amount $44,481.00 under 35 U.S.C. § 284. Plaintiff also respectfully requests that the Court order Ocean Duke to pay post-judgment interest as required under 28 U.S.C. § 1961(a).

DATED: Honolulu, Hawaii, January 24, 2008.

                              CADES SCHUTTE LLP

                              /s/ Milton M. Yasunaga
                              MILTON M. YASUNAGA
                              MARTIN E. HSIA
                              ALLISON MIZUO LEE
                              Attorneys for Plaintiffs
                              WILLIAM R. KOWALSKI and HAWAII
                              INTERNATIONAL SEAFOOD, INC.