IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., | CIVIL NO. 04-00055 BMK |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION** |
| v. | |
| OCEAN DUKE CORPORATION, | |
| Defendant. | |

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT ......................................................................................1

    A.    A Permanent Injunction Is Warranted Under The
          Circumstances Of This Case ....................................................1

          1.    Irreparable injury .......................................................2

          2.    Adequate remedy at law ............................................7

          3.    Balancing of hardships..............................................9

          4.    Public interest..........................................................11

    B.    Alternatively, If The Court Does Not Grant A Permanent
          Injunction, A Compulsory License/On-Going Royalty
          Requiring Ocean Duke To Pay Royalties To Plaintiff At The
          Rate Determined By The Jury And On Further Terms Proposed
          By Plaintiff Should Be Imposed .........................................12

III.  CONCLUSION ...............................................................................16

# TABLE OF AUTHORITIES

## CASES

800 Adept, Inc. v. Murex Securities, Ltd., 505 F. Supp. 2d 1327
(M.D. Fla. 2007) ...............................................................3, 8, 9, 11

Brooktrout, Inc. v. Eicon Networks Corp., No 03-CV-59, 2007 WL 1730112
(E.D. Tex. June 14, 2007)...................................................8, 13, 14

Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. Inc.,
492 F. Supp. 2d 600 (E.D. Tex. 2007) ...........................5, 7, 10, 11

EBay, Inc. v. Mercexchange, LLC, 126 S.Ct. 1837 (2006) .......................................2

Hybritch, Inc. v. Abbot Labs., 849 F.2d 1446 (Fed. Cir. 1985) ................................7

Innogenetics N.V. v. Abbott Lab., Nos. 2007-1145, 2007-1161, 2008 WL
151080 (Fed. Cir. Jan. 17, 2008) ...................................................13

John Hopkins Univ. v. Datascope Corp., 513 F. Supp. 2d 578 (D. Md. 2007).........7

Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477 (W.D. Pa. 2007)...........6

Novozymes A/S v. Genencor Int'l, Inc., 474 F. Supp. 2d 592 (D. Del. 2007)3, 4, 5, 8

Paice LLC v. Toyota Motor Corp., 504 F.3d 1293 (Fed. Cir. 2007).....................13

Roper Corp. v. Litton Sys., Inc., 757 F.2d 1266 (Fed. Cir. 1985)............................5

Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978 (W.D.
Tenn. 2006).....................................................................................2, 8

Tech., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437 (E.D. Tex. 2006)...9, 13, 14, 15

Tivo Inc. v. Echostar Communications Corp., 446 F .Supp. 2d 664 (E.D.
Tex. 2006).........................................................................3, 5, 9, 11

## STATUTES

35 U.S.C. § 283 ......................................................................................1, 2

## MEMORANDUM IN SUPPORT OF MOTION

I.    **INTRODUCTION**

After a six day trial, the jury determined that Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") infringed all of the asserted claims of the Kowalski Patent, that the infringement was willful, Ocean Duke did not prove the Kowalski Patent invalid, and that Ocean Duke should pay Plaintiff $2.2 million in reasonable royalty damages.  Plaintiff WILLIAM R. KOWALSKI ("*Plaintiff*") requests that the Court permanently enjoin Ocean Duke's infringing activities pursuant to 35 U.S.C. § 283.  Alternatively, if the Court declines to grant a permanent injunction, Plaintiff requests that the Court impose a compulsory license/on-going royalty at the rates determined by the jury, i.e.:  20 cents per pound for tuna, swordfish, and grouper, and 4 cents per pound for Ocean Duke's other infringing species -- shark, snapper, and mahimahi, and on further reasonable license terms proposed by Plaintiff, on Ocean Duke's post-verdict sales of the infringing products.

II.    **ARGUMENT**

A.    **A Permanent Injunction Is Warranted Under The Circumstances Of This Case.**

Title 35, U.S.C. § 283 ("*Section 283*") provides, in relevant part:

The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

35 U.S.C. § 283. In EBay, Inc. v. Mercexchange, LLC, 126 S.Ct. 1837 (2006), the

Supreme Court held that a plaintiff seeking a permanent injunction must satisfy

the following four-factor test by demonstrating: (1) that it has suffered an

irreparable injury, (2) that remedies available at law, such as monetary damages,

are inadequate to compensate for that injury, (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted, and

(4) that the public interest would not be disserved by a permanent injunction. See

id. at 1839 ("*EBay factors*").

     Ocean Duke has been and apparently intends to continue selling the

infringing products notwithstanding the jury's verdict. See Ex. "A" (Ocean Duke

website offering infringing products for sale as of 1/16/08). As discussed in detail

below, the EBay factors weigh in favor of the issuance of a permanent injunction

in this case.

          1.       **Irreparable injury.**

     Ocean Duke's continued infringement of the Kowalski Patent will result in

irreparable harm to Plaintiff. "Monetary damages generally are not an adequate

remedy against future infringement because the central value of holding a patent is

the right to exclude others from using the patented product." Smith & Nephew,

Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006) (citation

omitted). Also, where, as here, the patent holder "pioneers an invention in the

marketplace, irreparable harm flows from a competitor's attempt to usurp the pioneering company's market position and goodwill." 800 Adept, Inc. v. Murex Securities, Ltd., 505 F. Supp. 2d 1327, 1337 (M.D. Fla. 2007) (citations omitted). Direct competition between the plaintiff's product and the defendant's products is indicative of irreparable harm because "the availability of infringing products leads to loss of market share for Plaintiff's products." Tivo Inc. v. Echostar Communications Corp., 446 F .Supp. 2d 664, 670 (E.D. Tex. 2006); see also Novozymes A/S v. Genencor Int'l, Inc., 474 F. Supp. 2d 592, 612 (D. Del. 2007) ("These are head-to-head competitors, and Novozymes [plaintiff] has a right, granted by Congress, not to assist its rival with the use of proprietary technology.").

Ocean Duke will likely argue, as it did in the context of challenging Plaintiff's ability to recover lost profit damages, that Plaintiff cannot rely on harm that will be borne by his wholly owned company Hawaii International Seafood, Inc. ("*HISI*"). This contention is incorrect. While Plaintiff maintains that he is entitled to recover the lost profits of HISI, the Court's ruling as a matter of law that Plaintiff did not meet the evidentiary threshold of showing a profit stream from HISI to Plaintiff does not mean that harm to HISI resulting from Ocean Duke's continued infringement of the Kowalski Patent is irrelevant for purposes of assessing the propriety of a permanent injunction. See Novozymes, 474 F. Supp.

at 612. In fact, the Court's ruling supports Plaintiff's entitlement to an injunction.

In <u>Novozymes</u>, the court held that the Plaintiff was not entitled to recover the lost profits of its subsidiary. <u>See id.</u> at 612. The court, however, nevertheless granted the plaintiff's motion for permanent injunction, reasoning as follows:

> Here, Novozymes owns two related patents for alpha-amaylases. It licenses both patents to its U.S. subsidiary, not only in exchange for a 40% royalty, but also with the expectation that the value of its subsidiary will increase with the successful marketing of the licensed technology. The subsidiary markets one of the two alpha-amylases, and Novozymes expects that its patents to exclude competitors from marketing either of them. In those circumstances, even though Novozymes does not market the alpha-amylases itself, it has suffered harm beyond the reasonable royalty that it can recover from Defendants. And Novozymes will continue to suffer such irreparable harm if Defendants are not enjoined from infringing on Novozymes's right to exclude.

> Legal remedies are not adequate to compensate Novozymes for the infringement of its patent. Because Novozymes markets its technology by licensing it to a subsidiary, the legal remedy of lost profits damages is not available. Even if it were, the statutory right to exclude represents a benefit that, under these circumstances, cannot be equated by an award of cash. These are head-to-head competitors, and Novozymes has a right, granted by Congress, not to assist its rival with the use of proprietary technology.

<u>Id.</u>.

The circumstances of this case are similar to <u>Novozymes</u> in that the products sold by HISI directly competes with Ocean Duke's infringing products. For example, the evidence at trial showed, among other things, that Plaintiff's former customer Ahold awarded Ocean Duke a contract to provide products treated with smoke generated under Plaintiff's patented process. <u>See</u> Ex. "B" (Trial Tr. Day 2 -

Kowalski) at 30-32, 33:11-25, 34: 1-3 . Plaintiff and HISI's loss of market share

and good will constitutes irreparable harm.  See Tivo Inc., 446 F .Supp. 2d at 670;

see also Novozymes A/S, 474 F. Supp. 2d at 612.

In any event, even when ignoring Plaintiff's relationship with HISI,

irreparable harm to Plaintiff, himself, is apparent.  "A patentee that does not

practice, and may never have practiced, his invention may establish irreparable

harm, .e.g. by showing that an existing infringement precludes his ability to license

his patent or to enter the market."  Roper Corp. v. Litton Sys., Inc., 757 F.2d 1266,

1273 (Fed. Cir. 1985).  If Ocean Duke is not permanently enjoined from infringing

Plaintiff's patent rights, Plaintiff will need to continually chase Ocean Duke to

enforce his rights, thus diverting valuable time and financial resources away from

innovation and the development of further advances in his field and instead into

litigation.  See Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech.

Inc., 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007) ("Having its patents challenged

via the courts not only impugns CSIRO's reputation as a leading scientific research

entity but forces it to divert millions of dollars away from research and into

litigation costs.  Delays in funding result in lost research capabilities, lost

opportunities to accelerate existing projects or begin new projects."); see also Ex.

"B" (Trial Tr. Day 2 - Kowalski) at 102: 12-16 (testimony regarding Plaintiff's

other patents), 134: 9-16 (testimony regarding experimenting with processing

seafood with tasteless smoke by using live fish).

Moreover, Plaintiff's reputation as an innovator in the industry is harmed by Ocean Duke's continued infringement.  The evidence at trial showed that Plaintiff and HISI were known in the industry as the leaders in development of the tasteless smoke process.  See Ex. "C" (Cano memo) at 2 ("Many firms are using statements such as 'tasteless smoke' which was first coined by Hawaii International as part of their accepted method[.]").  Ocean Duke's infringement and encouragement of others in the industry to ignore Plaintiff's patent rights, see Ex. "D" (Trial Tr. Day 5 - Roger Lin) at 33: 17-25, 34: 1-16, Ex. "E" (Roger Lin letter to attorney re draft letter to Ocean Duke's customers re Plaintiff) ("The intent is to assure customers to continue business as usual and not enter into any agreement with Kowalski, without exposing Ocean Duke to unnecessary risk or liability."), has caused irreparable injury to Plaintiff's reputation and ability to license his patent.  See Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477, 483 (W.D. Pa. 2007) ("plaintiff was the first to conduct municipal bond auctions over the Internet. Plaintiff received media attention for doing so.  Defendants' infringement has usurped that attention, and in turn, done harm to plaintiff's reputation as the leading innovator in this field.  Recognition as the industry innovator is a tangible benefit afforded by a patent.  …. Such a harm is not compensable in damages, and is irreparable, making equitable relief appropriate.").  Allowing Ocean Duke to

continue its infringement will validate Ocean Duke's actions in the eyes of its customers and associates and therefore cause additional irreparable injury to Plaintiff.

Also, Plaintiff's ability to license his patent will be compromised if an injunction is not granted. Other infringers will be encouraged to risk litigation rather than observe Plaintiff's intellectual property rights. See John Hopkins Univ. v. Datascope Corp., 513 F. Supp. 2d 578, 586 (D. Md. 2007) ("If the Plaintiffs do not obtain injunctive relief, others may be encouraged to infringe their patents and risk litigation, thus devaluing Plaintiffs' property."); Commonwealth Scientific & Indus. Research Corp., 492 F. Supp. 2d at 603 (citing Hybritch, Inc. v. Abbot Labs., 849 F.2d 1446, 1456 (Fed. Cir. 1985), for the proposition that "in the absence of the injunction other potential infringers will be encouraged to infringe"). As mentioned above, Ocean Duke advised its customers and associates not to take a license with Plaintiff. An injunction is necessary to signal that Ocean Duke's advice was wrong and in violation of Plaintiff's patent rights.

Plaintiff will suffer irreparable harm if Ocean Duke is allowed to continue to infringe. This factor weighs in favor of granting a permanent injunction.

        2.      **Adequate remedy at law.**

Money damages do not adequately compensate Plaintiff. Courts have recognized that "[b]ecause the principal value of a patent is its statutory right to

exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." 800 Adept, Inc., 505 F. Supp. 2d at 1337 (citing Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994)); see also Smith & Nephew, Inc. v. Synthes, 466 F. Supp. 2d 978, 984, 984 (W.D. Tenn. 2006) ("Relief in the form of monetary damages alone would not meet the ends of justice here because this remedy would allow infringement to continue.  Monetary damages are generally not an adequate remedy against future infringement because the central value of holding a patent is the right to exclude others from using the patented product.").

Money damages are inadequate in this case because as discussed in Novozymes supra, Plaintiff is not entitled to lost profit damages.  The reasonable royalty amount represents only a portion of the profit that Ocean Duke realizes from its sale of the infringing products.  See Novozymes, 474 F. Supp. 2d at 613; see also Brooktrout, Inc. v. Eicon Networks Corp., No 03-CV-59, 2007 WL 1730112 *1, *2 (E.D. Tex. June 14, 2007) ("The inability to calculate the plaintiff's future damages with reasonable precision makes legal remedies inadequate in this case.").  Ocean Duke and Plaintiff/HISI are direct competitors, and Plaintiff "has a right, granted by Congress, not to assist its rival with the use of proprietary technology." Novozymes, 474 F. Supp. 2d at 613.

Moreover, it is well-settled that money damages is not an adequate substitute for lost reputation, opportunities for innovation/development of additional technology, market share or good will.  See 800 Adept, Inc., 505 F. Supp. at 1338 ("injunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages."); see also Tivo Inc., 446 F. Supp. 2d at 670; z4 Tech., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006).  As such, this factor weighs in favor of granting a permanent injunction.

### 3.    **Balancing of hardships.**

The balance of hardships weighs decidedly in favor of granting an injunction.  As discussed above, Plaintiff will suffer irreparable harm that cannot be compensated adequately by payment of money damages.  The evidence at trial showed that HISI is experiencing financial difficulty, see Ex. "B" (Trial Tr. Day 2 - Kowalski) at 141: 1-4, while Ocean Duke, on the other hand, (by its own admission) rakes in $200 million in annual sales revenue, including close to $4 million in net profit from the sale of the infringing product from 1999 to 2005 alone (this figure is according to Ocean Duke, but Ocean Duke never identified the expenses it deducted nor any proof that the expenses it deducted existed in fact or were appropriately deducted from this revenue, as opposed to being fixed overhead that stemmed from the rest of its business.  See Ex. "F" (Ocean Duke Annual Sales

1999-2005, which is Trial Exhibit 193), and, e.g., Ex. "H" (Trial Tr. Day 3) at

9:21 to 10:8. Notably, Ocean Duke's sale of the infringing product constitutes

only 3% of Ocean Duke's overall business. See Ex. "D" (Trial Tr. Day 5) at 4: 17-

23 ("Q. The treated seafood is the processed seafood that we're dealing with in

this lawsuit, right? A. That's correct. The product treated for color retention. Q.

Do you have a percentage estimate of the volume of business that your company

does in that particular line? A. **I would say about three percent**.") (emphasis

added). In fact, the proper estimate is only about 1%, because Trial Exhibit 206

(Exhibit I hereto), dated 2005, states that Ocean Duke is "a 125-million-pounds –

per-year seafood" business (which Mr. Lin confirmed at trial)[3] while Trial Exhibit

193 (Exhibit F hereto) indicates that in 2005 Ocean Duke sold only about

1,250,000 pounds of seafood treated for color retention. Products involving

Plaintiff's patented process, by contrast, are 100% of HISI's business. See

Kowalski Decl. ¶ 2. Under these circumstances, the balance of hardship clearly

weighs in Plaintiff's favor. See Commonwealth Scientific & Indus. Research Org.,

492 F. Supp. 2d at 606 ("Since wireless products make up only eleven percent of

Buffalo Technology's business, Buffalo's hardship if it is precluded from making

_____

[3] See Exhibit "J" (Trial Tr. Day 4 – Roger Lin) at 4: 7-11 ("Q … [I]n this document Ocean Duke … represents that its volume is actually, fourth line, 125 million pounds per year. That was an accurate number when you gave it? A Sounds about right, yes.").

future wireless sales in the United States is far from catastrophic."), <u>800 Adept, Inc.</u>, 505 F. Supp. 2d at 1338 (noting that infringing activity was a small part of the defendant's business as a reason for granting a permanent injunction), <u>Martek Biosciences Corp. v. Nutrinova, Inc.</u>, No. 03-896, 2007 WL 3181307 *1, *16 (D. Del. Oct. 30, 2007) (same).

### 4.    **Public interest**.

Last, the public interest weighs in favor of a permanent injunction.  Courts have repeatedly recognized that there is a substantial public interest in enforcing valid patents.  <u>See id.</u>, <u>Tivo, Inc.</u>, 446 F. Supp. 2d at 670 ("The public has a strong interest in maintaining a strong patent system.  This interest is served by enforcing an adequate remedy to patent infringement."), <u>Commonwealth Scientific & Indus. Research Org.</u>, 492 F. Supp. 2d at 607 ("In general, public policy favors the enforcement of patent rights.  The public maintains an interest in protecting the rights of patent holders as well as enforcing adequate remedies for patent infringement.  Permanent injunctions serve that interest.").

The testimony at trial established that HISI has the capability to fulfill Ocean Duke's sales of the infringing product.  <u>See</u> Ex. "G" (Trial Tr. Day 4 - Francom) at 25: 22-25, 26: 1-2.  Thus, the public will not be harmed by the removal of Ocean Duke's infringing products from the marketplace.  <u>See id.</u> ("The public interest would not be disserved by a permanent injunction because WLAN products are

obtainable from multiple sources other than Buffalo."). This factor also weighs in Plaintiff's favor.

The four <u>Ebay</u> factors support a permanent injunction. Money damages are not an adequate remedy for the irreparable harm that Plaintiff will suffer, including without limitation, his loss of reputation, opportunities to develop new technologies and make further advances in his field, market share and good will. Sale of the infringing product represents only 3 % (in fact, 1%) of Ocean Duke's business, making the balance of harms tip decidedly in favor of an injunction. Finally, the public interest is best served by permanently enjoining Ocean Duke from infringing Plaintiff's patent rights. As such, a permanent injunction should issue.

**B. <u>Alternatively, If The Court Does Not Grant A Permanent Injunction, A Compulsory License/On-Going Royalty Requiring Ocean Duke To Pay Royalties To Plaintiff At The Rate Determined By The Jury And On Further Terms Proposed By Plaintiff Should Be Imposed.</u>**

As discussed above, a permanent injunction is necessary in this case to fully protect Plaintiff's patent rights. However, if the Court denies Plaintiff's request for a permanent injunction, a compulsory license/on-going royalty arrangement should be imposed to afford Plaintiff with an expeditious remedy for Ocean Duke's continued infringement.

The Federal Circuit has indicated that Section 283 provides the court with authority to fashion an on-going royalty to prevent violation of rights secured by patents. See Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1314 (Fed. Cir. 2007).[4] The reasonable royalty imposed should be calculated using the rate determined by the jury. See Innogenetics N.V. v. Abbott Lab., Nos. 2007-1145, 2007-1161, 2008 WL 151080 *1, *13 (Fed. Cir. Jan. 17, 2008), z4 Technologies, Inc. v. Microsoft Corp., 434 F. Supp. 2d 437 (E.D. Tex. 2006).

The Federal Circuit's very recent decision in Innogenetics N.V. is illustrative. There, the district court granted a permanent injunction despite that the jury's damage award incorporated an upfront entry fee based on future sales by the infringer in a long term market. See 2008 WL 151080 at *13. The jury's award "exactly tracked" the damages proposed by the plaintiff's expert at trial -- $7 million, which included an upfront payment that equated to approximately $5.8

---

[4] Plaintiff acknowledges that in Paice LLC, the Federal Circuit advised that:

> In most cases, where the district court determines that a permanent injunction is not warranted, the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an on-going royalty. Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement.

504 F.3d at 1315. While Plaintiff may be willing to negotiate a licensing agreement if the Court denies Plaintiff's request for a permanent injunction, Plaintiff believes that the rate determined by the jury, i.e. 20 cents per pound for tuna, swordfish and grouper and 4 cents per pound for other species, should control.

million and a running royalty of 5 to 10 Euros per test on the 190,000 tests the infringer had sold up to that point. See id. The Federal Circuit reversed and remanded the case back to the district court "to delineate the terms of the compulsory license." Id. The Federal Circuit specifically required that the district court condition the future sales of the infringing products on payment of the running royalty, using "the 5-10 Euros per genotyping assay kit" rate determined by the jury. Id.

In z4 Technologies, Inc, the district court declined to enter a permanent injunction because, among other things, the infringing product was a small component of Microsoft's Office and Windows software products, the burden of an injunction on Microsoft would have been high and carried potential negative effects to certain sectors of the public. See 434 F. Supp. 2d at 443-44. The court, in recognition of the need for an efficient method for the plaintiff's recovery of future monetary damages, concluded that reasonable royalties should be paid on the infringing products sold by Microsoft, the computation of which "can be made **based on the same reasonable royalty calculation used by the jury at trial** and by referring to Microsoft's internal records showing the number of sales for the infringing copies of software during the time period." Id. at 442 (emphasis added). The Court ordered Microsoft to file quarterly reports in a new action for post-judgment infringement, indicating the number of units sold with regard to all

Microsoft products found to infringe.  See id. at 444 ("This will preserve z4's

rights to future monetary damages in an efficient manner, while relieving

Microsoft of the hardship and expense that would be occasioned by the issuance of

a permanent injunction.").

Similarly, in this case, the jury's reasonable royalty damage award indicates

that the jury followed Plaintiff's expert's proposed rate of 20 cent per pound for

tuna, swordfish and grouper and 4 cents per pound for Ocean Duke's other

infringing species -- shark, snapper, and mahimahi.  See Ex. "H" (Trial Tr. Day 4 –

Francom Testimony) at 59: 19-23 ("So, in reality, my opinion is that the 20 cents

per pound for tuna, grouper, and swordfish is the appropriate reasonable royalty . .

. four cents per pound for the infringing shark, snapper, and mahimahi."), 61: 13-

14 ("My calculation is the four cents and 20 cents per pound.  And that total

calculation is $2,009,073.  That's for the four cent – we'll call it the four cent and

20 cent reasonable royalty.").  In the event that the Court declines to enter a

permanent injunction, Ocean Duke should be required to pay Plaintiff a reasonable

royalty on its post-verdict sale of infringing products, at the rates determined by

the jury, i.e. 20 cents per pound for tuna, swordfish and grouper and 4 cents a

pound for its other infringing species (i.e. shark, snapper and mahimahi).

Furthermore, Ocean Duke should be required to pay monthly, label the product as

being made under the '401 patent, make monthly reports of the pounds of the

infringing products that it sells, verified by an independent third-party, and promptly pay the royalty owed.

## III.    CONCLUSION

For the foregoing reasons, the Motion should be granted.  Ocean Duke, its officers, agents , servants, employees, and attorneys; and other persons who are in active concert or participation with them, should be permanently enjoined from the following acts:

(1)    making, having made, using, offering to sell, selling or importing food (including but not limited to fish) infringing on U.S. Patent 5,972,401, including as the claims have been construed by the Court in this litigation;

(2)    making, having made, using, offering to sell, selling or importing the type of treated fish that Ocean Duke was purchasing from PT Inti Samudera Citra Perkasa before the trial in this action;

(3)    making, having made, using, offering to sell, selling or importing food processed in accordance with U.S. Patent 6,331,322;

(4)    making, having made, using, offering to sell, selling or importing food (including but not limited to fish) treated with a process comprising[5]:

heating carbon containing materials (including wood, and the sawdust and charcoal that can be made from wood) to make smoke;

filtering or separating out or reducing (including[6] by cooling, condensing, settling out, and/or aging) the parts of the smoke which

---

[5] "Comprising" means including the following limitations set forth in the claim so that a process infringes if it includes those limitations in the claim, regardless of whether it also includes other steps or features.

give smoke flavor to food at least enough so that the resulting or remaining smoke does not give smoke flavoring to food when food is exposed to that smoke;

exposing to or bringing into contact with each other (a) the smoke and (b) the food, without giving a smoke flavor to that food.

Alternatively, in the event that the Court declines to enter a permanent injunction, Plaintiff respectfully requests that the Court impose a compulsory license/on-going royalty requiring Ocean Duke to pay royalties on its post-verdict sales of infringing products at the rate of 20 cents per pound for tuna, swordfish and grouper, and 4 cents a pound for Ocean Duke's other infringing species (i.e. shark, snapper and mahimahi).

DATED:  Honolulu, Hawaii, January 24, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.

---

[6] The word "including," as used here means "including, but not limited to," as opposed to "including only the following."