```
                                                                        1

 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3
     WILLIAM R. KOWALSKI and      ) CIVIL NO. 04-00055BMK
 4   HAWAII INTERNATIONAL         )
     SEAFOOD, INC.,               ) Honolulu, Hawaii
 5                                ) December 6, 2007
                Plaintiff,        ) 8:59 a.m.
 6                                )
          vs.                     )
 7                                )
     OCEAN DUKE CORPORATION,      )
 8                                )
                Defendant.        )
 9   _____)

10
              TRANSCRIPT OF JURY TRIAL (DAY 2)
11         BEFORE THE HONORABLE BARRY M. KURREN,
             UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:      MILTON M. YASUNAGA
14                           ALLISON MIZUO LEE
                             Cades Schutte LLP
15                           1000 Bishop St., Ste. 1200
                             Honolulu, Hawaii  96813-4216
16
     For the Defendant:      LOUISE K.Y. ING
17                           Alston Hunt Floyd & Ing
                             1800 ASB Tower
18                           1001 Bishop Street
                             Honolulu, Hawaii  96813
19
                             PAUL MARKS
20                           Neufeld Law Group
                             360 East 2nd Street, Ste. 703
21                           Los Angeles, California 90012

22   Official Court          GLORIA T. BEDIAMOL, RPR, RMR
     Reporter:                United States District Court
23                           P.O. Box 50131
                             Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

**EXHIBIT B**

```
1              THE COURT:  80 is admitted.
2              (Exhibit 80 was received in evidence.)
3              MR. YASUNAGA:  Your Honor, may I read it to speed
4    things up, rather than having the witness read it or part of
5    it?
6              THE COURT:  Part of it.
7    BY MR. YASUNAGA:
8    Q    "Ahold USA is considering awarding a tasteless cold smoked
9    process yellow fin tuna products contract to qualified
10   vendors."
11             Then the second paragraph says, "Your company is
12   invited to submit a proposal in accordance with this request."
13             So this request for proposal went out to through
14   people in the industry?
15   A    Yes, they selected companies that they invited to bid on.
16   Q    You talked about Ahold being very large.  In this request
17   for proposal, I believe, is a list of members, right?
18   A    Yes.  In this proposal they map out their different stores
19   in the US and foreign countries.
20   Q    And is this screen here a listing of their member
21   supermarket chains at the time?
22   A    Yes, it is.
23   Q    And the top says -- the top shaded line says "Ahold USA,"
24   right?
25   A    Yes, that's correct.
```

31

1  Q    And there that line, I have a laser pointer, but I think
2  it probably will make people sick because I can't hold it
3  steady.  I'll use the mouse.
4       How many U.S. stores does it have?  I think it says
5  number here in the shaded line.  Can you look at the exhibit
6  itself?
7  A    Yeah, let me find it.  It's 1,063.
8  Q    And in the left column are the different names of the
9  supermarket chains, right?
10 A    Yes, that's correct.
11 Q    Below that are the number of European stores -- does it
12 have some number about the sales of the U.S. supermarkets?
13 A    Yes, it does.
14 Q    What is that total sales?
15 A    I think it's 10 billion.  10.5 billion.
16 Q    And I'm going to zoom in on a particular chains.  Among
17 the U.S. supermarket chains are Giant-Carlisle, Giant-Landover,
18 right?
19 A    Yes, that's correct.
20 Q    Now, I'm going to turn to the particular specification
21 page.  And, Mr. Kowalski, that's Attachment A.  It's about four
22 or five pages after the list of supermarkets.
23 A    Yes, I found it.
24 Q    Okay.  The top it says, "Specification," right?
25 A    Yes, that's correct.

```
 1   Q    And the -- third or second paragraph.  At the top first
 2   line, it specifies the product that they wanted?
 3   A    Yes.
 4   Q    It had to be that product, right?
 5   A    Yes.
 6   Q    And that was "frozen tasteless cold smoked," parenthesis,
 7   "wood origin," closed paren, "processed yellow fin skinless
 8   tuna steaks," right?
 9   A    Yes.
10   Q    What does "wood origin" mean?
11   A    Wood origin means that the smoke will be made by wood,
12   using wood.
13   Q    And then this product had to be accurately labeled, right?
14   A    Yes.
15   Q    And this -- at the bottom, this specification says how
16   that -- what would be accurate labeling to properly describe
17   this product, right?
18   A    Yes.
19   Q    And after the cold -- second-to-the-bottom line, it says,
20   "Yellow fin tuna steaks No. 1 cooking grade, natural tasteless
21   wood smoke used to maintain fresh-like taste and color"?
22   A    Yes, that's exactly correct.
23   Q    And did your company Hawaii International sell -- oh, one
24   more thing.  Was there another requirement in this
25   specification by Ahold besides that the product had to be
```

1   treated with tasteless smoke from wood?
2   A    Yes.  If you'll read the line above or couple lines above,
3   it says, "Product must be free of supplemental processing with
4   additional carbon monoxide."
5   Q    This line that I'm --
6   A    They wanted to make sure it was genuine tasteless smoke
7   without any carbon monoxide added.
8   Q    And did -- of course, your company's products fulfilled
9   this -- met this specification, right?
10  A    Yes.
11  Q    And so Ahold was a customer of your company, right?
12  A    Yes.  Prior to this bid, we were selling Ahold our
13  product.
14  Q    And then Ahold was familiar with your product and your
15  invention, right?
16  A    Yes, we had very successful business with them prior to
17  this bid.
18  Q    And Ahold specified expressly your product treated with
19  your invention, right?
20  A    Yes, what they asked for in this was exactly the same
21  product they were buying from me.
22  Q    And did there ever come a time when somebody took your
23  Ahold customer from you?
24  A    Yes.  After this bid went out, we were notified that
25  somebody else got the bid and that our business with them

1   ended.
2   Q   Who was that somebody else, as far as you know?
3   A   That was Ocean Duke.
4           MR. YASUNAGA:  May I have Exhibit 106 handed to the
5   witness for identification, please.
6   BY MR. YASUNAGA:
7   Q   Mr. Kowalski, is Exhibit 106 information about Ocean Duke
8   that anyone can access off of the internet?
9   A   Yes, this is a report off the internet.
10  Q   It's an internet service called Contact Direct?
11  A   Contact Direct.
12  Q   And does it give information about the brands that Ocean
13  Duke sells its products under?
14  A   Yes, it does.
15          MR. YASUNAGA:  Your Honor, I would like to move
16  Exhibit 106 into evidence.
17          MR. MARKS:  No objection Your Honor.
18          THE COURT:  106 is admitted.
19          (Exhibit 106 was received in evidence.)
20  BY MR. YASUNAGA:
21  Q   Again, to speed things along, let's see, okay, here it
22  says on the top, "contact-direct-dot-com."  Says "Company,
23  Ocean Duke Corporation."  Then it says the brands that Ocean
24  Duke uses.  Black Tie and Paradise, right?
25  A   Yes, that's correct.

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

1   that question again.

2          The patent that we have been talking about today,

3   which we have been calling the Kowalski patent, and you

4   remember the part when Mr. Yasunaga gave the official title,

5   which is U.S. patent number, and then it had a big long number?

6   A    Yes.

7   Q    And then usually the way people refer to these patents is

8   they just refer to the last three numbers, right?

9   A    Yes.

10   Q    And yours is the 401 patent?

11   A    Right, that's correct.

12   Q    But you have other patents, don't you?

13   A    Yes.

14   Q    And you have applied for other patents besides the ones

15   that you've got, right?

16   A    Yes.

17   Q    Have you ever applied to the United States Patent and

18   Trademark Office for a patent that involves the treatment of

19   seafood for color retention where the gas that was used was

20   pure carbon monoxide?

21   A    I applied for a patent that would cover both smoke or

22   carbon monoxide.

23   Q    And that was the 844 patent, right?

24   A    Pardon?

25   Q    Was that the 844 patent?

134

```
 1   right?
 2   A    Probably.
 3   Q    Do you remember the video that Mr. Yasunaga showed to the
 4   jury and the Court on Tuesday afternoon?
 5   A    Yes.
 6   Q    It's the one where somebody lopped the head off of a tuna.
 7   You remember that?
 8   A    Yes, I remember that.
 9   Q    By the way, this is a little bit of a -- going off on a
10   tangent, but are you experimenting with processing seafood with
11   tasteless smoke by using live fish; in other words, treating
12   live fish with tasteless smoke?
13   A    Yes, we have done some experiments with that.
14   Q    How does that work?
15   A    We dissolve the smoke into water and the fish breathe the
16   smoke.
17   Q    Is that something that was shown on the video?
18   A    No.
19   Q    What was shown on the video was the processing of seafood,
20   right?
21   A    Yes, that's correct.
22   Q    That video did not show, if I recall, how the -- your
23   patented process creates tasteless smoke; is that correct?
24   A    It showed one way that my patented process creates
25   tasteless smoke.
```

```
 1   Q    Mr. Kowalski, I believe the question was:  Is your company
 2   Hawaii International Seafood, Inc., in serious financial
 3   difficulty?
 4   A    Yes, we have financial difficulties right now.
 5   Q    I'm just going to cover one last topic very briefly, and
 6   then I'll sit down, if that's all right with you.
 7   A    Okay.
 8   Q    There is a claim for trademark infringement.  Is that
 9   right?
10   A    Yes.
11   Q    And is it you or your company that's the owner of the
12   trademark Cryofresh?
13   A    I am personally.
14   Q    Okay.  And that's a brand name for your company, right?
15   A    For my product.
16   Q    For your product, right.  And you are accusing Ocean Duke
17   of infringing, right?
18   A    Yes.
19   Q    Ocean Duke's brand names, however, as you testified, are
20   Black Tie and Paradise, right?
21   A    Yes.
22   Q    And Ocean Duke's brand name is not Cryofreeze, right?
23   A    I think people refer to it as a brand, it's printed in big
24   letters all over their product.
25             THE COURT:  Mr. Kowalski, be sure you have the
```