IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL
SEAFOOD, INC.,

        Plaintiffs,

    v.

OCEAN DUKE CORPORATION,

        Defendant.

CIVIL NO. 04-00055 BMK

MEMORANDUM IN SUPPORT OF
MOTION

## **MEMORANDUM IN SUPPORT OF MOTION**

ImanageDB:818247.5

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ....................................................................................... 1

    A.   The Read Factors Weigh In Favor Of Enhancing The Damage
        Award Assessed By The Jury .................................................... 3

        1.   Deliberate copying by Ocean Duke ................................ 3

        2.   No Good Faith Investigation and Belief of Non-
             Infringement ................................................................... 5

        3.   Litigation Behavior ....................................................... 13

        4.   Size and Financial Condition of Ocean Duke ............... 18

        5.   The Case Was Not Close ............................................... 19

        6.   Over Seven Year Duration of Infringement .................. 27

        7.   No Remedial Action Taken By Ocean Duke ................. 28

        8.   Motivation to Harm ....................................................... 30

        9.   Concealing Misconduct ................................................. 30

    B.   Treble Damages, Or An Otherwise Significant Enhancement Of
        The Damage Award, Is Warranted ........................................... 32

# TABLE OF AUTHORITIES

## CASES

Avia Group, Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557
    (Fed. Cir. 1988) ............................................................... 1

Ball Aerosol & Specialty Container v. Limited Brands, Inc., 514 F. Supp. 2d
    1051, 1070 (N.D. Ill. 2007)................................ 27, 31, 36

Domestic Fabrics Corp. v. Sears, Roebuck & Co., 326 F. Supp. 2d 694
    (E.D.N.C. 2004) ................................ 1, 17, 18, 27, 28, 30, 35, 36

Eli Lilly & Co. v. Am. Cyanamid Co., 82 F.3d 1568 (Fed. Cir. 1996) ................. 20

Intra Corp. v. Hamar Laser Instr., Inc., 662 F. Supp. 1420 (E.D. Mich. 1987)...... 28

Jurgens v. CBK, Ltd., 80 F.3d 1566 (Fed. Cir. 1996)............................ 2, 3, 6, 8, 12

King Instruments  Corp. v. Perego, 65 F.3d 941 (Fed. Cir. 1995)................... 35, 36

Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209
    (Fed. Cir. 2006) ................................................................ 2

Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477
    (W.D. Pa. 2007) ....................................................... 4, 12, 28, 33

Read Corp. v. Portec, Inc., 970 F.2d 816
    (Fed. Cir. 1992)...................................  ......2, 3, 5, 18, 28, 30, 32, 33, 36, 37

SRI Int'l Inc. v. Advanced Tech. Lab., Inc., 127 F.3d 1462
    (Fed .Cir. 1997) ....................................................... 1, 3, 28, 35, 36

Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958
    (Fed. Cir. 2000) ................................................................ 2

Third Wave Tech., Inc v. Stratagene, Corp., 405 F. Supp. 2d 991, 1018
    (W.D. Wis. 2005) ...................................................... 36

Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870
  (Fed. Cir. 1991) ........................................................................................ 15

## STATUTES

35 U.S.C. § 271(g) ......................................................................................... 20

35 U.S.C. § 282 .............................................................................................. 14

35 U.S.C. § 284 ................................................................................................ 1

35 U.S.C. § 284 ................................................................................................ 2

## I.    **INTRODUCTION**

WILLIAM R. KOWALSKI brings this motion for enhanced damages

pursuant to 35 U.S.C. § 284 ("***Section 284***").  Section 284 provides the Court with

discretion to increase the damages awarded by the jury up to three times the

amount assessed.  Enhanced damages are appropriate in this case because the jury

returned a verdict finding that OCEAN DUKE CORPORATION ("***Ocean Duke***")

willfully infringed the Kowalski Patent. The Court should award treble damages,

or alternatively, significantly increase the reasonable royalty damage award

assessed by the jury.

## II.    **ARGUMENT**

Title 35, United States Code § 284 provides that "the court may increase the

damages up to three times the amount found or assessed."  One of the purposes of

this statutory provision "is to deter willful patent infringement by punishing the

willful infringer." <u>Domestic Fabrics Corp. v. Sears, Roebuck & Co.</u>, 326 F. Supp.

2d 694, 700 (E.D.N.C. 2004) (citing <u>Avia Group, Int'l, Inc. v. L.A. Gear Cal., Inc.</u>,

853 F.2d 1557, 1566 (Fed. Cir. 1988)).  "[T]he remedy of enhancement of

damages . . . [also] has the secondary benefit of quantifying the equities as between

patentee and infringer." <u>SRI Int'l Inc. v. Advanced Tech. Lab., Inc.</u>, 127 F.3d

1462, 1468 (Fed .Cir. 1997).

The Federal Circuit "ha[s] interpreted the increased damages part of section

284 as requiring a two step process. First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).

An act of willful infringement "is, without doubt, sufficient to meet the first requirement to increase a compensatory damage award." Id. In fact, where, as here, the jury has determined that the infringement was willful, the court must articulate reasons for refusing to award enhanced damages. Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958, 971 (Fed. Cir. 2000).

In deciding the second step, the Federal Circuit advises consideration of the following factors:

> (1) whether the infringer deliberately copied the ideas or design of another;
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) defendant's size and financial condition, (5) the closeness of the case, (6) duration of defendant's misconduct, (7) remedial action by the defendant, (8) defendant's motivation for harm, (9) whether defendant attempted to conceal its misconduct.

Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing Read Corp. v. Portec. Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992)) ("**_Read factors_**").

"[T]he enhancement of damages and the amount thereof remains within the discretion of the court." <u>SRI Int'l Inc.</u>, 127 F.3d at 1468-69.  The Federal Circuit advises, however, that "[a]lthough a trial court many times has discretion to weigh the closeness of the case and the scope of the infringer's investigation in deciding whether to increase a damages award, it does not have discretion to reweigh this evidence once the matter has been decided by the jury and the court finds evidence sufficient to support the jury's determination." <u>Jurgens</u>, 80 F.3d at 1572.  As discussed in detail below, the <u>Read</u> factors support an award of enhanced damages under the circumstances of this case.

## A.    <u>The Read Factors Weigh In Favor Of Enhancing The Damage Award Assessed By The Jury.</u>

### 1.    **Deliberate copying by Ocean Duke.**

The first factor considers "whether the infringer deliberately copied the ideas or design of another[.]" <u>Read Corp.</u>, 970 F.2d at 827.  This factor also encompasses copying the commercial embodiment, not merely the elements of a patent claim. <u>Id.</u> at 827, n.7.

With respect to willful infringement, the jury was instructed that it should consider "whether Ocean Duke intentionally copied a product of Mr. Kowalski covered by the patent." Jury Instr. No. 29, filed 12/13/07.  The willful infringement verdict indicates that the jury likely believed that Ocean Duke intentionally copied Plaintiff's tasteless smoke "CRYOFRESH" product.

Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477, 486 (W.D. Pa. 2007) ("The jury's finding of willful infringement could indicate that the jury believed that plaintiff had proven deliberate copying. On balance, this factor weighs in favor of enhancing damages.").

Indeed, the evidence supports that Ocean Duke engaged in deliberate copying. In September 1997, an industry article reported that the FDA banned the use of chemical carbon monoxide to treat tuna, but that the use of a tasteless wood smoke process may be considered acceptable. Ex. "A". Plaintiff later received government approval of his tasteless smoke process and openly marketed his product with the trademark "CRYOFRESH" from early 1997. Ex. "B" (3/28/97 memo re Cryofresh label).

Competitors such as Ocean Duke were quick to follow. Ex. "C" (Cano Memo, dated 9/3/98) at 2 ("Many firms are using statements such as 'tasteless smoke' which was first coined by Hawaii International as part of their accepted method, but has been 'borrowed' by others ....").

In January 1999, Ocean Duke's Indonesian supplier PT Intisamudera Citra Perkasa ("*PT*"), with the assistance of Ocean Duke, became listed as an United States Department of Commerce ("*USDC*") accepted facility treating fish with tasteless smoke. Ex. "D".

Even worse, Ocean Duke labeled and began selling the infringing product with the name "CRYO-FREEZE," which is remarkably similar to Plaintiff's "CRYOFRESH" trademark. At trial, Duke Lin testified that Ocean Duke began using the name "CRYO-FREEZE" somewhere around 1998. This indicates a calculated decision on Ocean Duke's part to assimilate the infringing product with Plaintiff's CRYOFRESH brand so as to capitalize on Plaintiff's marketing and product development efforts and customer base. Ocean Duke's deliberate copying is further evidenced by the fact that Plaintiff's customer Ahold was taken by Ocean Duke. At trial, Plaintiff testified that his product met Ahold's specification and that his company Hawaii International Seafood, Inc. ("*HISI*") had a successful business with Ahold, but that after a 2000 request for proposal for tuna treated with tasteless smoke, Ex. "E" (Ahold specification), HISI was notified that Ocean Duke had gotten the bid and that HISI's business with Ahold was ended. Ex. "F" (Trial Tr. Day 2 - Kowalski) at 33-34. Ocean Duke's copying weighs in favor of increasing the damage award.

2.    **No Good Faith Investigation and Belief of Non-Infringement.**

The second factor considers "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed[.]" Read Corp., 970 F.2d

at 827.  Re this factor, the jury's finding of willful infringement is controlling.

Jurgens, 80 F.3d at 1572.  Re willful infringement, the jury was instructed:

> Mr. Kowalski argues that Ocean Duke willfully infringed Kowalski's patent.
>
> . . . .
>
> In addition, to prove willful infringement, Mr. Kowalski must persuade you by clear and convincing evidence that prior to the filing date of the complaint, January 27, 2004, Ocean Duke acted with reckless disregard of the claims of Kowalski's patent.
>
> To demonstrate such "reckless disregard," Mr. Kowalski must satisfy a two-part test.  The first part of the test is objective.  **Mr. Kowalski must persuade you that Ocean Duke acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent.  The state of mind of Ocean Duke is not relevant to this inquiry.  You should focus on whether a reasonable person in the position of Ocean Duke, after learning of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable.**  If a reasonable person in the position of Ocean Duke could not have held such a belief, then you need to consider the second part of the test.
>
> **The second part of the test does depend on the state of mind of Ocean Duke.  Mr. Kowalski must persuade you that Ocean Duke actually knew, or it was so obvious that Ocean Duke should have known, that its actions constituted infringement of a valid and enforceable patent.**
>
> In deciding whether Ocean Duke acted with reckless disregard for the Kowalski Patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:
>
> > (1)    Whether Ocean Duke acted in a manner consistent with the standards of commerce for its industry; and
>
> > (2)    Whether Ocean Duke intentionally copied a product of Mr. Kowalski covered by the patent; and
>
> > (3)    Whether Ocean Duke relied on a legal opinion that was well-supported and believable and that advised Ocean Duke (1) that the

process used by PT Inti Samudera did not infringe the Kowalski patent or (2) that the patent was invalid. You may consider the timing of when Ocean Duke obtained the advice.

Jury Instr. No. 29, filed 12/13/07.

The jury's willful infringement verdict indicates that the jury determined that Ocean Duke not only "acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent," but in fact, "actually knew, or it was so obvious that Ocean Duke should have known, that its actions constituted infringement of a valid and enforceable patent."

The evidence at trial was compelling that Ocean Duke did not investigate or perform a good faith infringement (or invalidity)[1] analysis in response to Plaintiff's January 2000 notice of infringement letter. There was no evidence showing that Ocean Duke took any measures to verify whether or dispute that their sales manager Chris Ragone[2] in fact admitted to HISI's John Stalker that Ocean Duke's "tasteless smoke ahi saku" product was treated with a process where "smoke flavor components have been removed from the smoke to make tasteless smoke" and "[t]he tasteless smoke treated seafood does not retain a smoke flavor after smoke

---

[1] Ocean Duke did not claim the Kowalski Patent was invalid until a few weeks before trial. The jury was properly instructed to consider Ocean Duke's pre-litigation conduct in its assessment of willful infringement.

[2] None of Ocean Duke's witnesses denied that Ragone admitted to Stalker that Ocean Duke's product was treated with smoke in which the smoke flavor components had been removed to make tasteless smoke, not even Ragone, who currently serves as Ocean Duke's Vice President of Sales.

treatment." Ex. "G" (Notice of Infringement) at 2. Ocean Duke never responded to Plaintiff's notice of infringement letters, not even to deny the allegations contained therein.[3]

Rather, the evidence supports that Ocean Duke, did not attempt in good faith to assess whether the process used by PT to treat Ocean Duke's imported fish infringed the claims of the Kowalski Patent, choosing instead to wait for Mr. Shih to get a patent,[4] and then to insist, incorrectly, that Mr. Shih's patent constituted a valid defense to infringement of the Kowalski Patent. Roger Lin testified:

> [A]    So the discussion we [Roger and Duke] had was – the action we took was that we followed up on Mr. Shih to see where the status of this patent is. And in the meantime we decided to put it in a holding pattern until we get a response from Mr. Shih. And eventually he got his patent in the end of 2001, and we got a hold of a copy of the patent in early 2002. And that's when we turned it over to our patent attorney. Those are the actions that we took.
>
> A.    Right.

---

[3] Ocean Duke did not deny Ragone's statements because it wanted to (and did in fact) promote its product by telling people in the industry that their product was treated with smoke from which taste causing components were filtered out so the smoke was tasteless and the food did not have a smoke taste.

[4] Notably, Mr. Shih did not apply for his patent until August 1, 2000, over a half a year after Ocean Duke received Plaintiff's first notice of infringement letter. See Ex. "T" (Shih Patent). The Shih patent was not issued until December 18, 2001. See id. Even assuming incorrectly that the Shih patent constituted a defense to infringement, Ocean Duke continued to import the allegedly infringing product from PT for nearly two years after receiving Plaintiff's notice of infringement letter despite that the Shih Patent had not issued.

Q.    So you put Mr. Kowalski on a holding pattern until 2002 even though he wrote this letter in January and sent it to you in 2000, right?

A.    That's correct.  Usually, when somebody is serious about an issue, you get a pretty quick follow-up letter.  When you don't get a notice for two years, I mean, we really don't consider that a serious intent.

Ex. "H" (Trial Tr. Day 3 – Roger Lin) at 16: 5-19.

Besides that stalling with no defense is bad faith, reliance on the hoped for Shih Patent is further evidence of bad faith because the law was clear that, as Jury Instruction 27 states, "The existence of a patent does not constitute a defense to infringement of someone else's patent."  The evidence showed that Ocean Duke had long and ample experience with patents and had multiple patent counsel, so it knew or should have known the law.  Ex. "J" (Trial Tr. Day 5 – Roger Lin) at 28:16-25, 32:2-12.

Roger Lin's failure to investigate in any meaningful way the process used to treat Ocean Duke's product while he was at PT's facilities for sanitation inspections in 2001 and 2002 (after receiving Plaintiff's notice of infringement letters) was very telling of Ocean Duke's reckless disregard of Plaintiff's patent rights.  Roger Lin testified that he did not get within 20 feet of PT's smoke machine or spend more than about five minutes discussing with Mr. Shih the process used by PT to treat the fish products imported by Ocean Duke.  Ex. "H" (Trial Tr. Day 3- Roger Lin) at 18: 12-25.  Also, Duke Lin admitted that he did not

read the Shih patent or the Kowalski patent, but nevertheless told Mr. Shih "Don't

worry, You have patent." Ex. "I" (Duke Lin Depo. Tr.) at 76: 15-25, 77: 1-2.

Ocean Duke will likely rely, as it did at trial, on the opinion letter authored

by its patent counsel Mr. Aaron Borrowman, Esq. ("***Mr. Borrowman***"). The

testimony at trial revealed that:

(1)    Mr. Borrowman was not a neutral third-party, but rather "one of

Ocean Duke's regular patent attorneys," that had been retained by Ocean Duke to

provide legal services on various other patent matters, Ex. "J" (Trial Tr. Day 5 –

Roger Lin) at 32: 2-9;

(2)    Ocean Duke had not sought a legal opinion until years after receiving

Plaintiff's first notice of infringement letter because it was waiting for Mr. Shih's

patent to issue, Ex. "J" (Trial Tr. Day 5 – Roger Lin) at 27: 7-15 ("Q. Mr.

Kowalski's notice of infringement letter was received by Ocean Duke on January

25, the year 200, right, as indicated by the FedEx receipt? A. Yes. Q. And you

did not approach Ocean Duke's attorney about coming up with an opinion letter

until more than two years later, right? A. That's correct because the Shih patent

was not issued until that time."); and

(3)    Mr. Borrowman was given the Shih Patent and the Kowalski Patent

but Ocean Duke did not provide him with information about the actual process

used by PT to treat the fish imported by Ocean Duke, such as the fact that Duke

Lin saw filtering material like in a home water filtration device or that Mr. Shih wrote on Trial Ex. 177 (Ex. X hereto) "We used a filter over here", or that – as Ocean Duke's own expert acknowledged (Ex. "K", quoted at p. 22 herein) and, e.g., liquid smoke patents[5] show -- condensation extracts smoke taste causing components from smoke, even though Mr. Borrowman specifically requested this information.  Ex. "I" (Tr. of 10/9/07 Depo. Of Duke Lin) at 47:3-21; Ex. "K" (email from Borrowman to Lin) ("it is not quite as clear if there is a problem with Kowalski.  Kowalski claim superpurifying or otherwise filtering the smoke to eliminate smoke taste and odor components.  The Shih patent does not get into detail of what is involved in the filtering process where in the water is removed from the smoke.  **Do you have any additional details of this step of the process?**") (emphasis added); Ex. "J" (Trial Tr. Day 5 – Roger Lin) at 22: 18-25, 23: 13-25, 24: 1-25, 25:7-25, 26: 1-25, 27:2 (testimony regarding providing Borrowman with patents and demand letter, but no additional facts or information regarding actual process used at PT).

The jury found that Ocean Duke acted in "reckless disregard" of the claims of the Kowalski Patent, notwithstanding Ocean Duke's proclaimed reliance on its

---

[5]  E.g., Trial Ex. 167 – Underwood's 1992 liquid smoke patent, at abstract ("liquid smoke made from the condensable liquids of pyrolyzed wood") and Trial Ex. 170 – Fessman's 1969 patent at Col. 1, L. 47-49 ("wood is heated to produce wood gas, which is then condensed and subjected to fractional distillation"), both attached at Ex. Y hereto.

experienced patent counsel's opinion, thus indicating that Mr. Borrowman's opinion letter was in some way flawed. Ocean Duke cannot rely on Mr. Borrowman's opinion here. <u>Jurgens</u>, 80 F.3d at 1572; <u>Muniauction, Inc. v. Thomson, Corp.</u>, 502 F. Supp. 2d 477, 485 (W.D. Pa. 2007) ("There is no question that an opinion letter is typically used to shield an accused infringer from a verdict of willful infringement. There is no dispute that defendants had an opinion letter in this case. There is also no dispute that the jury entered a verdict of willful infringement despite the letter. Therefore, the jury found that the opinion letter was deficient in some way. We will not contradict the jury's conclusion. This factor weighs in favor of enhancing damages.").

Ocean Duke's failure to perform a good faith investigation of the process used by PT to treat Ocean Duke imported fish at the time it received Plaintiff's notice of infringement, its insistence that the Shih Patent precluded liability, and most compelling, the jury's determination that Ocean Duke knew, or should have known, that it was liable for infringement weighs in favor of increasing the damage award.

3.    **Litigation Behavior.**

The next factor gives consideration to "the infringer's behavior as a party to the litigation." Enhancement of damages is supported by various aspects of Ocean Duke's conduct in this lawsuit.

First, Ocean Duke recognized that its discovery responses were so lacking that it stipulated to an order compelling discovery, which entered on October 25, 2006 ("***Order Compelling***"). Notwithstanding the Order Compelling, Ocean Duke failed to identify and explain its defenses, instead raising numerous unsupported invalidity defenses (obviousness, best mode, indefiniteness, anticipation, misuse, etc.) for the first time within a few weeks of trial. Certain witnesses, e.g. Richard Friend, Rock Garay, were identified for the first time only two weeks before trial. Ocean Duke produced no financial statements, accounting reports, or tax returns, and the one-page summary it did provide contained no numbers for 2006 and 2007, and included inappropriate costs that Roger Lin could not explain, even though at trial, Roger Lin testified that the documents existed on Ocean Duke's accounting system. Yasunaga Decl. ¶ 3, Ex. "L" (MMY email to Marks re additional information for damage calculation), discussion infra Section II.A.8. Ocean Duke did not meet various trial deadlines, including failing to serve its trial exhibits by the deadline imposed by the Court, and its proposed jury instructions as required by Local Rule 51.1 which prevented Plaintiff from complying with the

requirements of the same.  Yasunaga Decl. ¶ 25.  Ocean Duke's above

shortcomings should not be overlooked in assessing this factor.

Second, Ocean Duke's attempt to persuade the jury during closing that

someone else had invented tasteless smoke prior to Mr. Kowalski was improper

and particularly disturbing given that (1) Ocean Duke had not, though required by

35 U.S.C. § 282, identified the invalidating prior art 30 days prior to trial, (2)

Ocean Duke's counsel represented at the hearing on motions in limine that the only

invalidity defense it would assert was related to the "overbreadth" issue (i.e.

written description), (3) the Court had rejected Ocean Duke's attempt to slip in

jury instructions on the previously undisclosed anticipation and obviousness

invalidity defenses, and these arguments were misleading and contrary to the law

and facts (footnotes 7 and 8 below).  Ocean Duke continues to belabor these

inappropriate, incorrect, and late arguments in post-trial motions.[6]  See Ocean

Duke's Reply Memo. in Support of Mot. for New Trial, filed 1/18/08, at 2

---

[6] Ocean Duke also remains intent on focusing on issues that are not relevant
to the infringement analysis of whether the process used by PT to treat Ocean
Duke's fish is covered by the asserted claims of the Kowalski Patent, as construed
by the Court.  Without citation to the trial transcripts or any other support, Ocean
Duke insists that Plaintiff misled the jury into believing that he had facilities for
producing smoke and by referring to carbon monoxide as the "suicide gas."  See
Ocean Duke's Reply Memo. in Support of Mot. for New Trial, filed 1/18/08 at 2.

(insisting that PescaRich, i.e. Yamaoka, is the true pioneer of tasteless smoke,[7] --

similarly, in closing argument Ocean Duke argued that the fact that the June 1999

letter to Senator Inouye listed multiple members of the Tasteless Smoked Seafood

Association proved that those other members invented the tasteless smoke process

before Kowalski because his patent did not issue until October 1999,[8] etc.).

Third, Ocean Duke's wholesale reliance on the contention that the Shih

patent precluded liability for infringement of the Kowalski Patent was

unreasonable and contrary to law.  <u>Vaupel Textilmaschinen KG v. Meccanica Euro</u>

<u>Italia SPA</u>, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991).

Ocean Duke in closing argument also raised other time-barred, contrary to

law and Ocean Duke's own representations to the Court, and highly misleading

arguments.  For example, Ocean Duke's counsel argued that Kowalski's

application to the FDA to have the use of tasteless smoke to treat food classified as

---

[7] As pointed out to the jury in rebuttal closing argument, Pesca Rich was the company of Mr. Yamaoka, and the USPTO analyzed Mr. Yamaoka's patent and Pesca Rich (see Trial Ex. 2), and ruled that "Applicant [Kowalski] defines over prior art of record [Yamaoka] by not imparting smoke taste" (Trial Ex. 9), so the after the fact taking of credit by Pesca Rich in the hearsay May 1998 article (Trial Ex. 53) did not evidence inventorship of the Kowalski process by someone else.

[8] As pointed out to the jury in rebuttal closing argument, this argument was a blatant effort to mislead, because Ocean Duke's counsel knows that priority is determined, not by the date the patent issued, but by the date the patent was applied for, and the Kowalski Patent was applied for in March 1997, so the letter dated June 1999 cannot be evidence that someone else invented the process first.

"Generally Recognized As Safe" ("GRAS") proved that he did not deserve a patent

because his smoke was not anything new because it did not differ from traditional

smoke, but the GRAS application only concerns food safety (not whether an

invention is novel), so the comparisons in the GRAS application merely showed

that **in terms of food safety**, tasteless smoke is at least as safe as traditional smoke

because tasteless smoke does not add things to traditional smoke, but removes taste

components from traditional smoke.  See e.g.,  Judge Ezra's 6/23/06 Order

Granting Plaintiffs' Motion For Summary Judgment in Kowalski, et al. v. Jana

Brands, CV3-15 DAE-KSC ("When read in the context of the entire GRAS

submission, it is clear that Plaintiffs' statements therein only stand for the

proposition that tasteless smoke contains no additional elements not found in

conventional smoke ….").  Also, Ocean Duke's tardiness and prior assurances to

the Court and Plaintiff made raising the argument in closing improper.  Other

misleading, irrelevant, and waived arguments of Ocean Duke included (1) that

Kowalski allegedly misled the jury into thinking the factory in the video was his

(when in fact he and the damage expert stressed that he had no factories and

relying on third parties to process the fish was an advantage because that allowed

easier handling of increased sales); (2) Ocean Duke's repeated argument that

Kowalski did not have a product patent (which tried to confuse the jury into

thinking he either has no valid patent or cannot sue over the product of fish treated

with tasteless smoke, when in fact the lack of a product patent just means he

cannot sue people for merely making the product of smoke that does not give

smoke taste, but he certainly can sue sellers of fish processed with such smoke),

(3) the false allegation that tasteless smoke is no different from pure carbon

monoxide, etc.

Ocean Duke's unreasonable settlement position is also appropriately

considered. <u>Cf.</u> <u>Domestic Fabrics Corp.</u>, 326 F. Supp. 2d at 701 (considering one-

sided settlement negotiations in assessing "the infringer's behavior as a party to the

litigation" factor). Despite having no persuasive evidence, witnesses, or argument

on the issues of infringement and invalidity, and no evidence to contradict

Plaintiff's expert's damage opinion, Ocean Duke did not participate meaningfully

in settlement negotiations. Ocean Duke's best offer was to pay a tiny fraction of

the amount awarded by the jury for reasonable royalty damages for past

infringement and to agree to pay future royalties for only one year (despite the

patent's multiyear life) at a royalty rate that was a very small fraction of the 20

cent rate determined by the jury. When Judge Kevin Chang tried to get Ocean

Duke to talk settlement during the week before trial, Ocean Duke refused and

insisted that it would only talk settlement the day before trial, even though the

Judge pointed out that waiting that long would force the Court to incur the expense

of bringing Neighbor Island witnesses to Honolulu and make the parties incur

substantial additional legal expenses.  Yasunaga Decl. ¶ 22.

At trial, Roger Lin tried to run away from his sworn deposition testimony

that Ocean Duke's fish is treated with smoke[9] and Duke Lin tried to run away from

his deposition testimony that when he inspected the process used by his supplier

PT he saw filtering material like that used in home water filtering devices[10] (as

Ocean Duke's own expert confirmed, activated carbon is used to remove odors and

tastes).

Ocean Duke's counsel refused to reveal which witnesses it would bring to

trial, thus forcing Plaintiff to waste time doing deposition designations for Roger

Lin, Duke Lin, and Dr. Iwaoka.  During trial, Ocean Duke said its witness the next

trial day would be Chris Ragone, which forced Plaintiff's counsel to prepare for

him, but Ocean Duke never brought that witness to testify.  Yasunaga Decl. ¶ 31

Ocean Duke's above litigation conduct weighs in favor of enhancing the

damage award.  See also the misleading tactics explained in Subsection 5 below.

4.      **Size and Financial Condition of Ocean Duke.**

The next factor considers the Defendant's size and financial condition.  Read

Corp., 970 F.2d at 827; Domestic Fabrics Corp., 326 F. Supp. 2d at 702 ("in the

---

[9]  Ex. J, Trial Tr. of Roger Lin 10/10/07, at 25:17 to 26:7

[10]  Transcript of Duke Lin's trial testimony not yet available.

context of punitive damages, this factor is very relevant, especially where, as here, a 'giant' company infringes on the patent of a small company such as plaintiff").

The undisputed evidence at trial supports that Ocean Duke is a large corporation with significant financial resources. There was testimony at trial that Ocean Duke's annual revenues are in the range of $200 million, and that as of 2005, Ocean Duke imported and sold approximately 125 million pounds of seafood per year. Ex. "M". In comparison, Ocean Duke elicited testimony from Mr. Kowalski to the effect that his company HISI is financially weak. Ex. "F" (Trial Tr. Day 2 – Kowalski) at 141: 1-4. Ocean Duke's size and financial strength weighs in favor of enhancing the damage award. Also, because the infringing product makes up only 1% of Ocean Duke's business, treble damages would be appropriate (compare 125 million pounds total annual sales in 2005, as shown in Ex. M, versus sales of only about 1.25 million pounds of fish treated for color retention, as shown in Ex. P.

### 5. The Case Was Not Close.

This case was not close. Ocean Duke offered nothing at trial but irrelevant and misleading arguments that were contrary to the jury instructions, the law and the facts. This is shown by the points discussed above, but also by Ocean Duke's

telling the jury in opening and closing statements[11] that there were four "critical" facts in this case.

Ocean Duke told the jury that the first critical point it should remember is that Ocean Duke did not process or treat seafood. Ocean Duke clearly knew this argument was irrelevant, however, because 35 U.S.C. § 271(g) ("**Section 271(g)**") imposes liability on any person who "without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States" without regard to whether the person actually processes the product or not. An act of infringement occurs by importing and selling the product. Eli Lilly & Co. v. Am. Cyanamid Co., 82 F.3d 1568, 1572 (Fed. Cir. 1996). Ocean Duke was well aware of this law because Preliminary Jury Instruction No. 5, which was proposed by Plaintiff weeks before trial and was read to the jury and counsel immediately before opening statement, stated:

> Where, as in this case, a process patent is involved, the owner of the patent has the right, for the life of the patent, to prevent others from importing into the United States or selling or using within the United States a product which was made by the process or method covered by that patent.

---

[11] Plaintiff's counsel was informed by the court reporter that the transcripts of counsels' opening and closing statements are not yet available. Yasunaga Decl. ¶ 2.

Second, Ocean Duke argued that the second critical point the jury should remember was that "the party who is accused of infringing," i.e. PT Inti Samudera Citra Perkasa ("PT"), was not sued in this lawsuit. This was untrue because the party Plaintiff was accusing of infringement was Ocean Duke. More important, Preliminary Jury Instruction No. 5 and Section 271(g) made it clear to Ocean Duke's counsel that Plaintiff was justified in suing just the importer/seller of the product made with the allegedly infringing process, and Section 271(g) does not require the patent holder to sue the processor. Ocean Duke was also well-aware that the patent holder can get relief from the U.S. importer and need not sue the foreign processor given the briefing done in connection with Plaintiff's Motion in Limine #1 Re Presumption of Infringement Under 35 U.S.C. § 295, which set out Congress' recognition of the "great difficulties" a patentee may have "where the manufacturer is not subject to service of process in the United States." Plt.'s Mot. in Limine #1, filed 11/13/07, at 16-17. Ocean Duke's knowledge that the processor need not be sued indicates that Ocean Duke's argument about the second "critical" point (and indeed, about all four allegedly "critical" points) was part of Ocean Duke's improper attempt to mislead the jury.

Ocean Duke told the jury that the third critical point to remember is that Ocean Duke allegedly had an arms-length buyer-seller relationship with supplier PT. This assertion was irrelevant for purposes of determining infringement, and

furthermore was false, as indicated by Ocean Duke's marketing materials, which listed PT and Ocean Duke as part of the "Yelin Group," Ex. "P" (Trial Ex. 240).

Ocean Duke's counsel told the jury that the fourth and final critical fact was that what goes on in Bali is not infringement because of comparisons he listed on the easel, but these comparisons concerned irrelevant things that do not at all indicate a lack of patent infringement, and so even if they had been proven, Ocean Duke would not have been absolved of liability. Jotting down the word "Charcoal in one column and the word "sawdust" in the other, he said Shih (the owner of Ocean Duke's supplier PT) heats charcoal to create smoke while the Kowalski Patent heats sawdust, but this was clearly misleading and contrary to the law and facts of the patent, because, as Ocean Duke's counsel knew or should have known (Preliminary Jury Instruction No. 12 and Jury Instruction 27), determination of patent infringement involves comparing the process used on Ocean Duke's product with the claims of the Kowalski Patent, and the claim step of "heating organic material to generate smoke" clearly included heating charcoal because charcoal is an organic material that is heated to generate smoke, and especially because the Court expressly construed that claim language to include heating charcoal: "heating carbon containing materials (including wood, and the sawdust and charcoal that can be made from wood) to make smoke" (Preliminary Jury Instruction No. 11). Furthermore, Ocean Duke's counsel was aware of further law

making it clear that such comparisons to only raw materials or equipment in a

specific example in the Kowalski Patent are irrelevant, such as reflected in Jury

Instruction 23:

> Therefore, you should not compare the process used to make Ocean
> Duke's fish with any specific example set out in the Kowalski patent
> … Furthermore, you should not compare the equipment or machinery
> or raw materials. … because apparatus distinctions are irrelevant in
> determining infringement of process claims.

Ocean Duke's counsel's other comparisons regarding his fourth "critical"

point were similarly irrelevant and misleading. Ocean Duke's counsel said Shih

"heats" while Kowalski "burns", Shih uses 180°C while Kowalski is limited to

temperatures above "260°C", and Shih uses a "vacuum chamber" while Kowalski

does not, and listed these comparisons down in his two columns, but as the patent

claim language and the Court's claim construction show, the asserted claims of the

Kowalski Patent expressly state the word "heating", and the asserted claims are not

limited to heating above 260°C or the use of any particular equipment, so Ocean

Duke's asserted facts re Shih clearly fell within the smoke generation step of the

Kowalski Patent claims.

Ocean Duke's counsel emphasized that Kowalski uses an ice tower while

Shih does not, but the ice tower is merely one example of the Kowalski process

and the asserted patent claims clearly are not limited to any particular type of

equipment for the step of removing or separating out or filtering out smoke taste

causing components. Jury Instruction 23 and Preliminary Jury Instruction No. 11. Ocean Duke's counsel listed and emphasized that Shih separates out water while Kowalski uses "superpurifying", but Ocean Duke's counsel certainly knew the Court construed the Claim 67 language "filtering components that impart smoke flavor from said smoke to below limits for imparting smoke flavoring to food" to mean "filtering or separating out or reducing (including by cooling, **condensing**, settling out, and/or aging) the parts of the smoke which give smoke flavor to food at least enough so that the resulting or remaining smoke does not give smoke flavoring to food when food is exposed to that smoke" and that the Court similarly construed Claim 1's step mentioning "superpurifying said smoke to reduce taste imparting components to below thresholds for imparting smoke odor and taste". The undisputed testimony at trial (and by both sides' experts well before trial) supported that the separation of water from the smoke in the Shih process performed the filtering step of reducing (including by cooling, **condensing**, settling out and/or aging) the parts of smoke which give smoke flavor to food. This was made clear, not just by Dr. Maga's testimony (Ex. "W" [Trial Tr. Day 5 – Maga] pages 14-16), but also by Ocean Duke's own expert, Dr. Iwaoka -- Ex. "K" (Trial Tr. Day 3 - Iwaoka) at 68:14-25: 69: 1-4:

> A. Some water soluble things would be removed when you condense down those vapors into liquid and remove the liquid right? That's what you told us [in your deposition].

A.  Some things might – yes.  That's correct.

Q.  Right.  And you said that in the Shih process, it's possible that some particles might be little bits of the charcoal that get into that smoke.

A.  It might.

Q.  Right.  And then you said that in this condensing process, turning the vapors into liquid and removing it, some particles that would be in that smoke would also be removed as you removed the liquid, right?

A.  It could.

Thus, Ocean Duke's insistence that the Shih process involved condensation and removal of water in fact served to reinforce Plaintiff's position that the process used by PT to treat Ocean Duke's fish was covered by the asserted claims.

Ocean Duke also tried to mislead the jury into thinking that the fact that Ocean Duke's supplier had a patent meant Ocean Duke could not be infringing, even though, as Jury Instruction 27 states:  "The existence of a patent does not constitute a defense to infringement of someone else's patent."

Ocean Duke repeatedly tried to compare parts of the Shih Patent to parts of the Kowalski Patent (moreover, the comparison was only made to the non-claims portions of the Kowalski Patent), even though, as Jury Instruction 27 states, "Whether or not there is infringement by Ocean Duke of the Kowalski patent is not determined by comparing the Kowalski patent with the Shih patent.  Instead, you must compare the Kowalski patent's claims, as [the judge] defined them, to the

process used to produce Ocean Duke's fish, and determine whether or not there is infringement."

Whereas Plaintiff's counsel demonstrated to the jury precisely how specific items of evidence of the process used on Ocean Duke's fish met each of the steps of the asserted claims of the Kowalski Patent, Ocean Duke's counsel never even tried to rebut this and never even tried to show that the evidence did not fall within the steps of the asserted claims, and instead relied upon misleading and irrelevant points such as those mentioned above.

Ocean Duke's attempt to convince the jury that the Kowalski Patent was invalid fared no better. Its arguments regarding invalidity of the Kowalski Patent were scant, unpersuasive and confusing at best. Ocean Duke fell far short of overcoming the presumption of validity and establishing by clear and convincing evidence that the asserted claims were invalid for failure to meet the written description requirement. Plt's Opp. to Ocean Duke's Mot. for Judgment As A Matter of Law Notwithstanding the Verdict, filed 1/8/08, at 2-26.

By contrast, as requested by Plaintiff, the jury (1) found Ocean Duke had infringed all the asserted claims, (2) awarded slightly more than the full-amount of reasonable royalty damages requested, and (3) determined that Plaintiff had met its burden of establishing that Ocean Duke's infringement was willful. The case was far from close. This factor also weighs in favor of increasing the damages award.

For further proof/bases that the case was not close, see Plaintiff Kowalski's Opposition to Motion For New Trial filed January 8, 2008, plus the points made in previous subjections herein.

### 6.    Over Seven Year Duration of Infringement.

Ocean Duke did not dispute that it sold the infringing product as early as 1999 and continued to sell the infringing product notwithstanding Plaintiff's January 2000 notice of infringement letter or the filing of this lawsuit.[12] Ex. "P" (sales chart), Ex. "H" (Trial Tr. Day 3 – Roger Lin) at 13: 12-15 ("Q. And Ocean Duke has continued to deal with import and sale of fish treated with smoke for color retention and not to add smoke taste and odor after 2005, right?  A.  Yes."). There was no indication that Ocean Duke refrained from importing and selling the product at any time prior to entry of the verdict **or thereafter**.  Ex. "Q" (Ocean Duke website offering infringing products for sale as of January 16, 2008).  The over seven year period of infringement by Ocean Duke weighs in favor of increasing the damage award.  <u>Ball Aerosol & Specialty Container</u>, 514 F. Supp. 2d at 1070 (2 years of infringing sales prior to infringement determination characterized as "long duration"), <u>Domestic Fabrics Corp.</u>, 326 F. Supp. 2d at 701

---

[12]  In fact, as discussed <u>infra</u> Section II.A.7, Ocean Duke increased sales of the infringing product after receiving Plaintiff's notice of infringement letter in January 2000.

(3 years after notice of infringement), <u>SRI Int'l Inc.</u>, 127 F.3d at 1469 (5 years),

<u>Muniauction, Inc</u>, 502 F. Supp. 2d at 485 (6 years).

### 7.    No Remedial Action Taken By Ocean Duke.

The evidence established Ocean Duke did not take any remedial action, in

the form of voluntarily refraining from importing or selling the infringing product,

either after receiving the notice of infringement letter in January 2000 or after

Plaintiff filed this lawsuit.  <u>Read Corp.</u>, 970 F.2d at 828 (citing <u>Intra Corp. v.</u>

<u>Hamar Laser Instr., Inc.</u>, 662 F. Supp. 1420, 1439 (E.D. Mich. 1987), for the

proposition that "Damages only doubled because defendant 'voluntarily ceased

manufacture and sale of infringing systems during the pendency of this

litigation'"); <u>Domestic Fabrics Corp.</u>, 326 F. Supp. 2d at 702 ("Defendant took no

remedial action (factor 7).  Instead, for more than three years following the cease

and desist letter from plaintiff, defendant continued to import and sell the

infringing products.  This infringement continued for the purpose of making

money, as much as $2,629,936 in net profits (factor 8)").

As shown in the chart below, Ocean Duke's sales of the infringing product

increased after it received Plaintiff's notice of infringement letter in January 2000.

| <u>Year</u> | Total Pounds of Infringing Fish<br><u>Sold By Ocean Duke</u> |
|:---:|:---:|
| 1999 | 438,704 |

| | |
|---|---|
| 2000 | 560,098 |
| 2001 | 937,498 |
| 2002 | 1,364, 494 |
| 2003 | 1,318,238 |

Even after the lawsuit was filed in January 2004, Ocean Duke continued to sell the infringing products, including 1,225,522 pounds in 2004 and 1,266,381 pounds in 2005.  Ex. "P".  Ocean Duke admitted it continued to sell the infringing product after 2005, Ex. "H" (Trial Tr. Day 3 – Roger Lin) at 13:12-15, and it appears that Ocean Duke is still (notwithstanding the jury's verdict) offering the infringing product for sale.  Ex. "Q" (Ocean Duke website offering infringing products as of 1/16/08).

Also, far from voluntarily ceasing its infringing activities, Ocean Duke assisted the efforts of its supplier PT to remain on the approved tasteless smoke facilities list.  On or about February 1, 2000, a few days after receiving Plaintiff's notice of infringement letter, Roger Lin wrote to Steven Wilson of the National Marine Fisheries Services requesting an "USDC-NOAA verification inspection" for its supplier PT.  Ex. "V".  Later that same year, Ocean Duke successfully out-bid Plaintiff's company HISI for a contract to provide "frozen tasteless cold smoked (wood origin) processed yellowfin skinless tuna steaks."  Ex. "E" (Ahold request for proposal); Ex. "F" (Trial Tr. Day 2 - Kowalski), at 33-34.

Contrary to taking remedial action, Ocean Duke increased its sales of the infringing product after receiving Plaintiff's notice of infringement letter and actively sought to increase its business in the market for products treated with Plaintiff's patented process. This factor weighs in favor of increased damages.

### 8.   Motivation to Harm.

Ocean Duke's continued sales of the infringing product was for the purpose of making money. <u>Domestic Fabrics Corp.</u>, 326 F. Supp. 2d at 702 ("This infringement continued for the purpose of making money, as much as $2,629,936 in net profits (factor 8)"). Indeed, Ocean Duke reported net profit from sales of the infringing products in the amount of $3,768,523 for the years 1999 to 2005 alone (i.e. not including 2006 and 2007). Ex. "P".

Moreover, Ocean Duke's use of the name "CRYO-FREEZE" indicates an intent to target Plaintiff and HISI's brand "CRYOFRESH." Ocean Duke also sent letters to its customers/associates to the effect that they should not license or abide by Mr. Kowalski's patent Ex. "J" (Trial Tr. Day 5 – Roger Lin) at 33:14-25, 34: 1-16; Ex. "U". Ocean Duke's intent to harm Plaintiff weighs in favor of enhancement.

### 9.   Concealing Misconduct.

Finally, a party's failure to preserve its records and disclose them in discovery is relevant to the "concealing misconduct" factor. <u>Read Corp.</u>, 970 F.2d

at 827, for the proposition that "Enhanced damages supported in part by findings 'that the defendant had failed to preserve its records and had failed to cooperate as it should at the trial on the issue of damages.'"); also Ball Aerosol & Specialty Container, 514 F. Supp. 2d at 1070.

Despite formal interrogatories, requests for production of documents and informal requests by counsel, and even a stipulated order compelling discovery from Ocean Duke, Ocean Duke did not provide the information desired by Plaintiff and his expert to calculate damages.  Yasunaga Decl. ¶ 3; Ex. "L".  Although Ocean Duke provided a summary of its annual sales 199-2005, Ex. "P", the summary was incomplete (2006 and 2007 sales omitted) and lacked detail and back-up documentation.  E.g., Roger Lin could not explain what expenses comprised the category "overhead and expenses" or how those figures were calculated, indicating that the expenses were made up or unsupported or included improper costs.  Ocean Duke produced no financial statements, accounting reports, or tax returns, and the one-page summary it did provide contained no numbers for 2006 and 2007, and included inappropriate costs, Yasunaga Decl. ¶ 3, even though Roger Lin admitted at trial that back-up documents existed.  Ex. "J" (Trial Tr. Day 3 – Roger Lin) at 13: 16-22 ("Q.  Do you know who created this chart [Trial Ex. 193] at Ocean Duke?  A.  Yes.  I did.  Q.  You did.  But you don't know all of the expenses that went into the overhead and expenses column, right?  A.  I don't

remember every one of them.  Q.  **And are there any backup documents for this?  A.  Probably our accounting system, yes**.") (emphasis added).  Ocean Duke only provided invoices for the year 2003, and those invoices, when analyzed by Plaintiff's expert, indicated that the total number of pounds of fish reflected in Ocean Duke's summary of annual sales were substantially under-reported.  See Ex. "R" (Trial Tr. Day 4 – Francom) at 80-81, Ex. "S" (Francom Report) at 8.  These inconsistencies and Ocean Duke's failure to fully disclose its records pertaining to its sale of the infringing product weighs in favor of increasing the damage award.

**B.    Treble Damages, Or An Otherwise Significant Enhancement Of The Damage Award, Is Warranted.**

Consideration of the Read factors, summarized below, advises that a significant enhancement of damages is warranted:

(1)    Deliberate copying:  Ocean Duke's copying of Plaintiff's tasteless smoke product and labeling of the infringing product with the name "CRYO-FREEZE," which bears a striking similarity to Plaintiff's company's "CRYOFRESH" trademark;

(2)    Lack of good faith belief:  The jury's determination – supported by the evidence at trial that Ocean Duke did not engage in a good faith investigation to assess the legitimacy of the infringement allegations in Plaintiff's notice of infringement letter – that Ocean Duke knew, or it was so obvious that Ocean Duke should have known, that it was infringing a valid patent;

(3)    Litigation behavior:  Ocean Duke's inadequate discovery responses, failure to meet deadlines, wholesale reliance on the legally deficient defense that the Shih patent shielded infringement liability, and unreasonable settlement position;

(4)    <u>Size and financial condition</u>:  Ocean Duke's $200 million + in annual sales and financial strength relative to Plaintiff's weak financial condition;

(5)    <u>Closeness of case</u>:  Ocean Duke's reliance on irrelevant arguments and lack of persuasive evidence or witnesses on the issues of infringement and invalidity;

(6)    <u>Duration of infringement</u>: Ocean Duke's over seven years of infringement commencing in 1999 through present (i.e. even after the jury's verdict of infringement);

(7)    <u>Remedial action</u>:  Ocean Duke took no remedial action, instead increasing sales of the infringing product after receiving Plaintiff's notice of infringement letter;

(8)    <u>Motivation for harm</u>:  Ocean Duke's intent to target Plaintiff, labeling his product with a name similar to Plaintiff's Cryofresh brand, telling its customers not to license, all for the purpose of making money at Plaintiff's expense.

(9)    <u>Concealing misconduct</u>:  Ocean Duke's refusal to provide full-information relevant to the calculation of damages.

A substantial damage award does not militate against a significant enhancement where the Read factors indicate that it is appropriate.  <u>Muniauction, Inc.</u>, 502 F. Supp. 2d at 487 ("Although not punitive the jury verdict [$38,482,088.00] is undeniably substantial.  However, with eight out of the nine <u>Read</u> factors weighing in favor of enhancement, a jury verdict of willful infringement, and no mitigating circumstances, a significant enhancement is still warranted.  Therefore, we will double the jury's damage award.  Thus, we increase the jury's damages award from $38,482,088.00 to $76,964,016.00.").  Anyway, the

jury's $2.2 million reasonable royalty damage award, in light of Ocean Duke's

nearly $4 million in net profit on just the infringing product (approximately 3% of

Ocean Duke's business according to Roger Lin – see Ex. "J" at 4: 17-23, but

actually only 1% as explained above) in 1999 to 2005 alone (not including the

period after) is not substantial, especially given that that profit figure is understated

due to the deduction of improper costs and exclusion of sales.

The damage award reflected the amount the jury believed was an appropriate

reasonable royalty, and a reasonable royalty does not include a punitive

component.  Ocean Duke reported that it made a net profit of $3,768,523 from

1999 to 2005 alone on 7,110,905 pounds of treated fish (and this does not include

2006 and 2007) and there is evidence indicating that this amount under-reports

Ocean Duke's actual profit.  **Mr. Francom's findings were that**, had Mr.

Kowalski's company Hawaii International had Ocean Duke's sales from

November 1999[13] through 2005, plus Ocean Duke's probable sales for 2006 and

2007 until the trial date of Dec 4, 2007 (reasonably assumed to be at the same

annual level as 2005, since Ocean Duke failed to produce information for 2006 and

2007, which made **the total pounds of treated fish 10,945,048 pounds for**

**November 1999-December 4, 2007**), **the profit would have been $6,358,983 for**

---

[13] He included only the sales occurring after the issuance of the patent on
10/26/99.

**Ocean Duke's treated fish sales from 10/26/99 to 12/4/07,[14] which indicates that Ocean Duke's profit was about this figure of $6,358,983 (or higher because Ocean Duke is a bigger company, with economies of scale). This profit determination of $6,358,983 for the period 10/26/99 to 12/04/07 supports trebling the $2,200,000 jury verdict for a total of $6,600,000. (The difference between the $6,358,983 found by Mr. Francom and $6,600,000 result of trebling can be justified by the fact that the jury determined that royalties should be awarded at a slightly higher rate than Mr. Francom's rates, and the fact that his calculations stopped at December 4, whereas Ocean Duke's sales have continued beyond that date.)** Ocean Duke should not be allowed to retain profit achieved through willful infringement. An increased damage award is necessary to "to deter willful patent infringement by punishing the willful infringer," Domestic Fabrics Corp., 326 F. Supp. 2d at 700, and to "quantify[] the equities as between patentee and infringer." SRI Int'l Inc., 127 F.3d at 1468.

      **Moreover, that Plaintiff was not awarded lost profit damages in this case weighs in favor of an increased award.** The Federal Circuit has recognized that reasonable royalty damages are often inadequate compensation and suggested as a solution "awards of treble damages, attorney fees and prejudgment interest, and discretionary awards greater than a reasonable royalty." King Instruments

---

[14] Exhibit R at 36-42.

Corp. v. Perego, 65 F.3d 941, 951 n. 6 (Fed. Cir. 1995) ("The problem of inadequate compensation when damages are based on a reasonable royalty has been expressly recognized in several cases. The solutions suggested include awards of treble damages, attorneys fees and prejudgment interest, and discretionary awards greater than a reasonable royalty."). **The Federal Circuit has explained "discretionary increases may be appropriate where plaintiffs cannot prove direct and foreseeable damage in the form of lost profits with reasonable probability."** Id.

Where, as here, the relevant factors on balance weigh strongly in favor of increasing the damage award, courts have trebled the damage award. See, e.g., Domestic Fabrics Corp., 326 F. Supp. 2d at 702 ($838,230 reasonable royalty damage award trebled where Read factors weighed in favor of enhanced damages), Third Wave Tech., Inc., 405 F. Supp. 2d at 1018 ($5,290,000 reasonable royalty damage award trebled where six of the Read factors weighed in favor of enhanced damages), SRI Int'l, Inc., 127 F.3d at 1469 (affirming treble damages where defendant infringed for 5 years after being contacted by the plaintiff); Ball Aerosol & Specialty Container, Inc., 514 F. Supp. 2d at 1070 (doubling damage award time period prior to 1/31/06 and trebling damage award for time period between 8/1/06 and 6/24/07 where five of nine Read factors weighed in favor of enhancement).

With all of the <u>Read</u> factors weighing in favor, treble damages, or alternatively a significant enhancement of the damage award, is warranted in this case.

    DATED:  Honolulu, Hawaii, January 24, 2008.

                CADES SCHUTTE LLP

                /s/ Milton M. Yasunaga
                MILTON M. YASUNAGA
                ALLISON MIZUO LEE
                Attorneys for Plaintiff
                WILLIAM R. KOWALSKI