```
                                                                    1

 1                 IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3
     WILLIAM R. KOWALSKI and    ) CIVIL NO. 04-00055BMK
 4   HAWAII INTERNATIONAL       )
     SEAFOOD, INC.,             ) Honolulu, Hawaii
 5                              ) December 7, 2007
              Plaintiff,        )
 6                              ) TESTIMONY OF WAYNE
        vs.                     ) IWAOKA, PH.D.
 7                              )
     OCEAN DUKE CORPORATION,    )
 8                              )
              Defendant.        )
 9   _____)

10
            PARTIAL TRANSCRIPT OF JURY TRIAL (DAY 3)
11          BEFORE THE HONORABLE BARRY M. KURREN,
                 UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:       MILTON M. YASUNAGA
14                            ALLISON MIZUO LEE
                              Cades Schutte LLP
15                            1000 Bishop St., Ste. 1200
                              Honolulu, Hawaii  96813-4216
16
     For the Defendant:       LOUISE K.Y. ING
17                            Alston Hunt Floyd & Ing
                              1800 ASB Tower
18                            1001 Bishop Street
                              Honolulu, Hawaii  96813
19
                              PAUL MARKS
20                            Neufeld Law Group
                              360 East 2nd Street, Ste. 703
21                            Los Angeles, California 90012

22   Official Court           GLORIA T. BEDIAMOL, RPR, RMR
     Reporter:                 United States District Court
23                            P.O. Box 50131
                              Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

**EXHIBIT K**

1  Q     And Ocean Duke Corporation's lawyers, for example, didn't
2  show you any photographs of the machines actually used to
3  create the fish that Ocean Duke Corporation sells?  Photographs
4  as opposed to that diagram that's in the Shih patent.
5  A     Okay.
6            THE COURT:  Now, you are getting really into
7  cross-examination here.  Do you have anything else specifically
8  on qualification, or are we done with that?
9            MR. YASUNAGA:  I'm done with the questioning.
10           THE COURT:  Okay.  So I'm going to talk with the
11 lawyers outside for a moment.
12                  (Sidebar on the record:)
13           MR. YASUNAGA:  Milton Yasunaga.  Your Honor, I object
14 to Dr. Iwaoka being used for the opinions that Ocean Duke
15 Corporation wants to use him for.  Those opinions, I guess,
16 were set out in his report, and one of them was, he said, Oh,
17 something is wrong with the Kowalski patent because it
18 improperly uses the word "smoke" because after you take out the
19 taste-causing components, what remains should not be called
20 smoke anymore.
21           And, you know, that's just a totally baseless opinion
22 because it's contrary to patent law, contrary to Your Honor's
23 own rulings and contrary to FDA rulings that are already into
24 evidence.  In fact, the FDA requires that such smoke be labeled
25 as "tasteless smoke."  And it's going to create a really bad

1  and harmful misimpression that somehow the Kowalski patent is
2  invalid because of that.
3       He also objects to the term "react" as used in the
4  Kowalski patent. He says that "react" has to do with
5  scientifically, so that two different compounds come together
6  and create a third compound. Whereas, "react" is used in the
7  patent just to say when the hot smoke hits the ice, the ice
8  melts quickly because of the hot responding to the cold. It's
9  that kind of opinion that really has nothing to do with his
10 training and is misleading.
11      Now, on his other opinions about smoking and not so
12 much about techniques of separating out components, which he
13 said is his training although he has no training in smoking.
14 Now, he used the descriptions -- he doesn't know anything about
15 smoking, but he went to the library and he is very skilled in
16 learning how to learn new things, but he has no professional
17 experience or training in the field of smoking.
18      THE COURT: Okay. What about these points?
19      MS. ING: Your Honor, Louise Ing. He may have no
20 specific experience, but I think he has testified at length
21 about his knowledge and skill and education that gives him the
22 tools to do the analytical analysis of processes that are at
23 issue here.
24      What Mr. Yasunaga is getting at really only goes to
25 the weight of the evidence, and I think that what he has is

1  relevant to what a person in the field of food processing would
2  look at in terms of determining, well, okay, is this -- you
3  know, it goes to not only infringement but willfulness. You
4  know, what can one reasonably understand from this patent as
5  well as in validity issue such as indefiniteness and written
6  description, what do you understand from the specifications as
7  opposed to what the lawyers are saying the claims are.
8          THE COURT: Well, what about the specific points that
9  Mr. Yasunaga made about interpreting the terms?
10         MS. ING: Well, again, I think that those go to --
11         THE COURT: They've been -- the Court has defined the
12 terms of the patent.
13         MS. ING: Right, but it goes to --
14         THE COURT: And so he is going to take issue with some
15 of these?
16         MS. ING: He is going to take -- he's going to talk
17 about his understanding of the patent as he reads it with
18 respect to what the invention and the process means. You know,
19 the claims -- again, it goes to our issue that the claims are
20 so overbroad that it really defines way beyond --
21         THE COURT: Well, he can't vary from the terms as they
22 now have been defined. Do you understand that? I mean he
23 can't do that.
24         MR. YASUNAGA: Your Honor, may I -- this is Milton
25 Yasunaga. Now she's added a new thing. The reason I was

1  would be maybe one that's also generated in the smoking
2  process.  The active ingredient in vinegar is acetic acid, and
3  that's very soluble in water, as you can -- you can add
4  different amounts of acetic acid to vinegar.
5       So if there were acetic acid, which is one of the
6  components in smoke, if that were present at the same time with
7  a water droplet and the water droplet were to come in contact
8  with a cold finger, it might just be dissolved in the water as
9  it condenses on the surface.
10      However, if you have acetic acid molecule away from
11 that cold finger, it would not have any opportunity to come in
12 contact with a water molecule.  So it might just go through to
13 the final bag -- be in the final product.
14 Q   Some water soluble things would be removed when you
15 condense down those vapors into liquid and remove the liquid,
16 right?  That's what you told us.
17 A   Some things might -- yes.  That's correct.
18 Q   And then also you said there might be some things that are
19 not water soluble such as particles?
20 A   Yes.
21 Q   Right.  And you said that in the Shih process, it's
22 possible that some particles might be little bits of the
23 charcoal that get into that smoke.
24 A   It might.
25 Q   Right.  And then you said that in this condensing process,

1  turning the vapors into liquid and removing it, some particles
2  that would be in that smoke would also be removed as you
3  removed the liquid, right?
4  A   It could.
5  Q   All right.
6  A   However, if you look at the burning of charcoal versus the
7  burn of wood or saw dust, in this case, if you were to look at
8  a Hibachi with charcoal in it, you don't see too many
9  particulate matter or small particles being formed. It's
10 mostly pure burning. And so if there's anything -- if any
11 particulate matter -- and obviously I cannot say there won't be
12 any -- you would have a real minimum of any particulate matter
13 with the burning of charcoal. So, you know, if it does come
14 through, if by chance it happens to occur, it could either get
15 trapped or it could either come through. Okay. But the amount
16 would be miniscule compared to smoke itself.
17 Q   And so that condensation process that we have been talking
18 about that can remove things in the smoke besides water, you
19 don't prefer to call that filter -- you don't prefer to use the
20 term "filtering," right?
21 A   No, I don't.
22 Q   But it does involve some or could involve some removing of
23 other stuff, right?
24 A   Yes, water in this case.
25 Q   Are you aware that some people have talked about