

## CADES SCHUTTE FLEMING & WRIGHT
### A T T O R N E Y S    A T    L A W

Cades Schutte Fleming & Wright Building · 1000 Bishop Street · Suite 1200 · Honolulu, Hawai'i 96813-4216
P.O. Box 939 · Honolulu, Hawai'i 96808-0939 · Tel (808) 521-9200 · Fax (808) 521-9210 · www.cades.com

**Milton M. Yasunaga** ·(808) 544-3833 · Direct Fax (808) 540-5053 · E-mail myasunaga@cades.com

January 24, 2000


Ocean Duke Corp.
Attn:  Mr. Duke Lin, President
3450 Fujila Street
Torrance, CA  90505

<u>Re:  Notice Of Infringement of U.S. Patent No. 5,972,401</u>

Ladies and Gentlemen:

### I.  <u>Process Patent Act Notification Of Infringement</u>

     **This letter gives notice of infringement of U.S. Patent 5,972,401 (the "Patent"), pursuant to 35 U.S.C. §287(b)(5).**

     This law firm represents Hawaii International Seafood, Inc., and its President, William R. Kowalski, owner of the Patent, which was issued on October 26, 1999.  A copy of the Patent is enclosed.  **The Patent broadly covers using tasteless smoke to treat food.**  As you apparently are aware, one important use (but not the only use) of this process is to treat tuna steaks with tasteless smoke to create a frozen tuna product that retains a fresh-like taste and color after freezing and defrosting.

     **You should be aware that the Patent is NOT limited to the use of any particular equipment, any particular method of removing taste components from the smoke, any particular names (e.g., "tasteless smoke", "Filtered Wood Smoke", "Purified", "flavorless smoke", or any other name), etc.** The claims in the Patent, which define the scope of the Patent, are numbered "1." through "73." and appear in the last four pages of the Patent.  Because a patent is infringed if even one of the patent's many claims are infringed, **any unauthorized activity falling within even a single one of the broadest of the claims of the patent constitutes infringement of the patent.** As you can see from Patent 5,972,401, **the Patent's claims include several very broad claims, such as Claims 1., 49., 50., 67., 68., or 69., which do not mention (and are therefore not limited to) any particular equipment, method for removing taste from the smoke, names, etc. Thus, if food is exposed to smoke from which smoke taste components have been removed so that the smoke does not impart a smoke**

Exhibit 71

**EXHIBIT L**

Ocean Duke Corp.
January 24, 2000
Page 2

flavor to the food, that food is made by the process covered by the Patent, regardless of the equipment used and other particulars.[1]

This Notice of Infringement is to put you on notice, pursuant to 35 U.S.C. §287(b)(5), that the owner of U.S. Patent 5,972,401 in good faith believes that you are, without authorization, importing, offering to sell, selling or using a product which is made by the patented process.

Our clients have informed us that some facts supporting that belief are as follow in the next two paragraphs.

In response to an inquiry by our clients' representative John L. Stalker on January 20, 2000, your representative, Chris Regone, acknowledged that (1) your company is offering for sale frozen seafood treated with tasteless smoke, (2) the tasteless smoke used to treat the seafood was made by removing smoke flavor components from the smoke, (3) the tasteless smoke treated seafood does not retain a smoke flavor after treatment with the smoke, and (4) the tasteless smoke treated seafood maintains its red color at -10° F. Because of (1) these facts about your company's activities and (2) the fact that U.S. Patent 5,972,401 broadly covers the process of treating food with tasteless smoke, regardless of the equipment used and other particulars, the patent owner in good faith believes the product you are selling necessarily was made using the patented process.

The patent owner has at this point authorized only his own company, Hawaii International Seafood, Inc., to use his process, and our clients' information indicates that at least some of the above-described tasteless smoke treated seafood you are importing, offering for sale, selling, or using is not from Hawaii International Seafood, Inc., so the patent owner believes that your importation, offering for sale, sale or use of that product constitutes infringement of U.S. Patent 5,972,401 under 35 U.S.C. §271.

You should promptly transmit this written notification of infringement to the manufacturer (or, if the manufacturer is not known to you, to the supplier) of the product purchased, or to be purchased by you. 35 U.S.C. 287(b)(5)(C). You may suffer adverse consequences if you continue to buy from that manufacturer (or supplier) without receiving from that manufacturer (or supplier) a written statement "which on its face sets forth a well grounded factual basis for a belief that the identified patent [is] not infringed."

## II. Licenses/Agreements, Avoidance Of Litigation

The patent owner prefers to avoid the need for litigation, and is therefore offering licenses to manufacturers and, for a time, temporary licenses to importers. Importers should make future purchases of tasteless smoke treated food that comes from Hawaii International Seafood, Inc., or other sources that are licensed or should obtain one of the temporary licenses being offered to importers. Distributors should purchase tasteless smoke

---

[1] See also, for example, the section of the Patent titled "Summary Of The Invention", at lines 25-30 of column "12", which states, "Smoke can be superpurified by any method, or combination of methods ...."

Ocean Duke Corp.
January 24, 2000
Page 3

treated food that comes from Hawaii International Seafood, Inc., or other sources that are licensed. Those matters are addressed in separate correspondence sent to you concurrently with this letter. **However, regardless of whether you are interested in pursuing those kinds of measures, you should still comply with the instructions in the preceding paragraph regarding sending this notice to the manufacturer (or supplier).** Furthermore, if, upon proper investigation, analysis, and proof, you conclude that you are not engaged in any activity that constitutes infringement of U.S. Patent 5,972,401, we would very much appreciate hearing from you promptly the reasons for such a conclusion.

Very truly yours,

Milton M. Yasunaga
for
CADES SCHUTTE FLEMING & WRIGHT

Enclosure
IMANHONO:277201.1



# CADES SCHUTTE FLEMING & WRIGHT
### ATTORNEYS AT LAW

Cades Schutte Fleming & Wright Building · 1000 Bishop Street · Suite 1200 · Honolulu, Hawai'i 96813-4216
P.O. Box 939 · Honolulu, Hawai'i 96808-0939 · Tel (808) 521-9200 · Fax (808) 521-9210 · www.cades.com

**Milton M. Yasunaga** ·(808) 544-3833 · Direct Fax (808) 540-5053 · E-mail myasunaga@cades.com

January 24, 2000

Ocean Duke Corp.
Attn: Mr. Duke Lin, President
3450 Fujila Street
Torrance, CA  90505

## LETTER PROVIDING SUPPLEMENTAL INFORMATION

### I. Introduction/Scope Of The Patent/Proper Handling Of The Notice

You were given notice of infringement of U.S. Patent 5,972,401 (the "Patent") in a separate letter ("Notice of Infringement Letter") sent concurrently with this one.  The present letter provides some supplemental information you may find helpful, including citation to legal authorities.  (However, we, of course, are not your attorneys, and assume no such responsibility.)

As mentioned in the Notice of Infringement Letter, this law firm represents Hawaii International Seafood, Inc., and its President, William R. Kowalski, owner of the Patent, which was issued on October 26, 1999.  A copy of the Patent is enclosed with the Notice of Infringement Letter.

**It is important that you be aware that the Patent is NOT limited to the use of any particular equipment, any particular method of removing taste components from the smoke, any particular names (e.g., "tasteless smoke", "Filtered Wood Smoke", "Purified", "flavorless smoke", or any other name), etc.  On the contrary, the Patent broadly covers using tasteless smoke to treat food, regardless of the equipment, method for removing taste from the smoke, names, and other particulars involved.  The claims in a patent (rather than any other sections of a patent) define the scope of the patent.  SRI International v. Matsushita Elec. Corp., 775 F.2d 1107 (Fed. Cir. 1985).  The claims of Patent 5,972,401 are numbered "1." through "73." and appear in the last four pages of the Patent.  A patent is infringed if even one of the patent's many claims are infringed – the patent owner does NOT need to show that each claim, or more than one claim, has been infringed.  Bio-Technology General Corp. v. Genentech, Inc., 80 F.3d 1553 (Fed. Cir. 1996).  Therefore, even though certain claims of the Patent may be rather specific about equipment, temperature, etc., any unauthorized activity falling within even a single one of the broadest of the claims of the Patent constitutes infringement of the patent.  As you can see from Patent 5,972,401, the Patent's claims include several very broad claims, such as Claims 1., 49., 50., 67., 68., or 69., which do not mention (and are therefore not limited to) any particular equipment, method for removing taste from the smoke, names, etc.  Thus, if food is exposed to smoke from which taste**

Ocean Duke Corp.
January 24, 2000
Page 2

components have been removed so that the smoke does not impart a smoke flavor to the food, that food is made by the process covered by the Patent, regardless of the equipment used and other particulars.[2]

As the Notice of Infringement Letter stated, you should promptly transmit the Notice of Infringement Letter to the manufacturer (or, if the manufacturer is not known to you, to the supplier) of the product purchased, or to be purchased by you. 35 U.S.C. 287(b)(5)(C). **You are advised to also send a copy of this supplemental letter to the manufacturer (supplier) along with the Notice of Infringement Letter. You may suffer adverse consequences if you continue to buy from that manufacturer (or supplier) without receiving from that manufacturer (or supplier) a written statement "which on its face sets forth a well grounded factual basis for a belief that the identified patent [is] not infringed."** Failure to take the actions called for in 35 U.S.C. 287(b)(5)(C) might be deemed absence of good faith unless there are mitigating circumstances. Id.

As for how you should deal with the response, if any, from the manufacturer, you should consult your own counsel, but we note that the treatise 2 Horwitz & Horwitz, Intellectual Property Counseling And Litigation §12.05[4] (1996) states:

> If the manufacturer merely states that a different process than the patented one is used, without setting out the details of the process, this would not supply a well grounded factual basis....

> Questions of patent validity require a study of the prior art and the patent's file wrapper. Testimony of experts may be involved in deciding that a product is not produced by a patented process under the doctrine of equivalents. Can an opinion on such issues be a "well grounded factual basis for a belief that the identified patents are not infringed" if it does not emanate from the manufacturer's patent counsel? Probably not. Moreover, such an opinion should be run by recipient's own patent counsel to make sure that "on its face" it sets forth the well grounded factual basis for non-infringement.

As stated in United States Senate Report 83[3]:

> **[A] party who sends to his manufacturer/supplier a notification of infringement ... and who does not receive from that manufacturer/supplier an adequate assurance that the patented process is not being used, and sufficient supporting information to make an assurance credible should almost certainly be found to have notice of infringement should he choose to continue to deal in the goods of that supplier/manufacturer.**

---

[2] See also, for example, the section of the Patent titled "Summary Of The Invention", at lines 25-30 of column "12", which states, "Smoke can be superpurified by any method, or combination of methods ...."

[3] S. Rep. 100-83, 100th Cong. 1st Sess. at 56 (1987).

Ocean Duke Corp.
January 24, 2000
Page 3

As for the consequences that may result from a failure to properly deal with a notice of infringement letter and an absence of sufficient assurance from the manufacturer/supplier, 2 Horwitz & Horwitz, <u>Intellectual Property Counseling And Litigation</u> §12.05[4] states:

> Failure to take the proper steps by the recipient of the notification letter means that the recipient may be held to lack good faith, to be subject to liability for infringement, and perhaps be liable for willful infringement and attorneys' fees.

## II. <u>Statutory Presumption That The Product Was Made By The Patented Process</u>

It should also be noted that, if there is an action for infringement, and the patent holder has made a reasonable, although unsuccessful, effort to ascertain the process actually used, and has established a substantial likelihood that the product was made using the patented process, a presumption arises under 35 U.S.C. §295 that the product was in fact made using the patented process, and that presumption places the burden of proof on the defendant (that is, the alleged infringer) to prove the product was not made using the patented process.

## III. <u>Affirmative Duty To Avoid Infringement</u>

As held in <u>Underwater Devices, Inc. v. Morrison-Knudsen, Inc.</u>, 717 F.2d 1380, 1389 (Fed. Cir. 1983):

> Where ... a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing.... Such an affirmative duty includes, inter alia, the duty to seek and obtain competent legal advice from counsel ....

<u>See also</u> <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1190 (Fed. Cir. 1998).

An attorney's oral opinion that consists of conclusory opinions without supporting reasons is not sufficient to avoid a finding of willful infringement. <u>Bott v. Four Star Corp.</u>, 807 F.2d 1567, 1572 (Fed. Cir. 1986).

Furthermore, merely obtaining a written opinion of an attorney does not discharge the duty – more is required. In <u>Underwater Devices</u>, 717 F.2d at 1390, the appeals court upheld the trial court's finding of willful infringement and award of treble damages and prejudgment interest because Morrison-Knudsen was found to have failed to exercise its affirmative duty since it relied only upon "conclusory and unsupported" memoranda by an attorney who "was not a patent attorney," rather than upon a written "patent validity analysis, properly and explicitly predicated on a review of the file histories of the patents at issue, and an infringement analysis that, inter alia, compared and contrasted the potentially infringing method or apparatus with the patented inventions ...."

Moreover, even if competent patent counsel supplies a written opinion containing specific supporting reasons for the opinion, the written opinion will not prevent a finding of

Ocean Duke Corp.
January 24, 2000
Page 4

willful infringement if the defendant has failed to supply the attorney with all material information. Comark Communications, Inc. v. Harris Corp., 156 F.3d at 1191.

Indeed, **"an 'aggressive strategy' [of denying infringement] unsupported by any competent advice of counsel, thorough investigation of validity and infringement, discovery of more pertinent uncited prior art, or similar factors, is the type of activity the reference in the patent law to increased damages seeks to prevent. An alleged infringer who intentionally blinds himself to the facts and law, continues to infringe, and employs the judicial process with no solidly based expectation of success, can hardly be surprised when his infringement is found to have been willful."** Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1429 (Fed. Cir. 1988).

**(Of course, an entity who obtains a license from the patent owner or who purchases only from sources that clearly have been licensed/authorized by the patent owner would not have the problems and burdens of an entity who purchases from an unauthorized or questionable source.)**

## IV. Damages And Treble Damages

35 U.S.C. §284 provides that "Upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, ... together with interest and costs as fixed by the court [and furthermore] the court may increase the damages up to three times the amount found or assessed." Such trebling of the damages is a means of punishing infringement that is found to have been willful. (However, see also 35 U.S.C. §271(g) regarding limitations on remedies for noncommercial use, retail sales, etc., as well as other relevant statutory sections.)

## V. Insurance

Although Hawaii International Seafood and Mr. Kowalski strongly hope that litigation can be avoided, you should be aware that the Patent is covered by a "patent infringement abatement" insurance policy issued by Intellectual Property Insurance Services Corporation. The policy, in essence, provides the patent owner money for legal fees and costs to enforce the insured patent via litigation. (Of course, when the patent owner prevails in the lawsuit, the infringer may be the entity ultimately liable for paying for the patent owner's legal fees and expenses.) **The information in this paragraph should not be taken to indicate any desire or existing intention to begin litigation – it is hoped that litigation can be avoided.**

## VI. Product Already In Your Possession Or In Transit Before Your Receipt Of Notice

**The patent owner has no intention of suing you for selling tasteless smoke treated product which was already in your possession or in transit to you before your receipt of notice of infringement** (however, on the issue of whether the product was already in your possession or in transit before your receipt of notice, the law places the burden of proof on you).

Ocean Duke Corp.
January 24, 2000
Page 5

**Rather, the patent owner's concern is with unauthorized product _not_ already in your possession or _not_ in transit to you before your receipt of notice.**

### VII. Licenses/Agreements, Avoidance Of Litigation

As mentioned in the Notice of Infringement Letter, **the patent owner prefers to avoid the need for litigation, and is therefore offering licenses to manufacturers and, for a time, temporary licenses to importers. However, regardless of whether you are interested in pursuing those kinds of measures or buying only from authorized sources, you should still comply with the instructions in the fourth paragraph of this letter regarding sending (1) the Notice of Infringement and also (2) this supplemental letter to your manufacturer (or, if the manufacturer is unknown, supplier).**

Very truly yours,

Milton M. Yasunaga
for
CADES SCHUTTE FLEMING & WRIGHT

**FedEx** *USA Airbill*    8056 2939 2936    **0210**    **Sender's Copy**

**From** (please print and press hard)

1/24/00    Sender's FedEx Account Number 2092-0183-6

Bill Kowalski    Phone (808) 839-5010

HAWAII INT'L SEAFOOD

371 AOKEA PL

HONOLULU    State HI    ZIP 96819

Your Internal Billing Reference Information
(Optional) (First 24 characters will appear on invoice)

**To** (please print and press hard)

Mr. Kuke Lin    Phone (310)370-0061

Ocean Duke Corporation dba Duke International

3450 Fujita St.

Torrance    State CA    ZIP 90505

For HOLD at FedEx Location check here

For WEEKEND Delivery check here

**4a Express Package Service** *Packages under 150 lbs.*

☐ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx First Overnight
☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service** *Packages over 150 lbs.*

☐ FedEx Overnight Freight
☐ FedEx 2Day Freight
☐ FedEx Express Saver

**5 Packaging**
☐ FedEx Letter  ☐ FedEx Pak  ☐ FedEx Box  ☐ FedEx Tube  ☐ Other Pkg.

**6 Special Handling**
Does this shipment contain dangerous goods?
☐ No  ☐ Yes  ☐ Yes
☐ Dry Ice
☐ Cargo Aircraft Only

**7 Payment**
☐ Sender  ☐ Recipient  ☐ Third Party  ☐ Credit Card  ☐ Cash/Check

FedEx Acct No.
Credit Card No.    Exp. Date

Total Packages    Total Weight    Total Declared Value    Total Charges
$    .00 $

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

321

*The World On Time*   157 9812

005021679 4

Wed Feb  2 03:10:23 2000

Federal Express Corporation          U.S. Mail: PO Box 727          Telephone 901-369-3600
Customer Support                     Memphis, TN 38194-4643
Domestic Times
2875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116



February 02, 2000

Bill Kowalski
(808) 833-0712

Dear Bill Kowalski:

This is in response to your request for proof of delivery for package tracking number
805629392936.  You will find the delivery information below.

SHIPMENT INFORMATION:

Tracking No:  805629392936            Ship Date:  January 24, 2000

Shipper:  BILL KOWALSKI              Recipient:  MR KUKE LIN
          HAWAII INTL SEAFOOD                    OCEAN DUKE CORPORATION
          371 AOKEA PL                           DBA DUK
          HONOLULU, HI 968191828                 3450 FUJITA ST
                                                 TORRANCE, CA 90505
                                                 US

DELIVERY INFORMATION:

Signed For By:  H. TUNNELL

*Heidi Tunnell* (signature)

Delivered to:  3450 FUJITA

Delivery Date:  January 25, 2000

Delivery Time:  09:36 AM

Your business is greatly appreciated and we look forward to the opportunity of serving your future
express shipping needs.

Federal Express Corporation
Worldwide Customer Service
1-800-GO-FEDEX
Reference No: R2000020200015798112