LOUISE K. Y. ING         2394-0
ALLISON KIRK GRIFFITHS   8156-0
ALSTON HUNT FLOYD & ING
1800 ASB Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email: ling@ahfi.com
       agriffiths@ahfi.com

TIMOTHY L. NEUFELD (Admitted *Pro Hac Vice*)
PAUL S. MARKS (Admitted *Pro Hac Vice*)
NEUFELD LAW GROUP
360 East 2nd Street. Suite 703
Los Angeles, California 90012
Telephone: (213) 625 -2625
Facsimile:;: (213) 625-2650
Email: tneufeld@neufeldlawgroup.com
       pmarks@neufeldlawgroup.com

Attorneys for defendant OCEAN DUKE CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. CV 04-00055 BMK <br><br> **DECLARATION OF PAUL S. MARKS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURSUANT TO THE LANHAM ACT** <br><br> (15 U.S.C. § 1117) |

131503.1

**EXHIBIT 1**

## DECLARATION OF PAUL S. MARKS

I, Paul S. Marks, declare as follows:

1.  I am a lawyer with Neufeld Law Group, counsel to defendant Ocean Duke Corporation. I make this declaration in support of the Motion for Attorneys' Fees under the Lanham Act.

2.  I have personal knowledge of the facts described in this declaration, and if called upon to testify in court under oath, I could and would so testify.

3.  Attached hereto as Exhibit A is a true and correct copy of the Judgment in this case, dated December 21, 2007.

4.  Attached hereto as Exhibit B are true and correct copies of the billing invoices for attorneys' fees incurred by Ocean Duke Corporation and charged by Neufeld Law Group ("NLG"), my law firm, in this case. I am familiar with the method by which the attached documents were created in NLG's ordinary course of business. On a daily basis, attorneys working on a given litigation matter enter their time entries and work descriptions into a computer database powered by a timekeeping software named "Timeslips." Attorneys at NLG are required by firm policy to add their hours to the Timeslips software on the same day as, or on the next business day after, the legal work they perform. The time entries and work descriptions are entered under client and matter numbers that have been assigned to the particular lawsuit the lawyers are handling. The Timeslips software keeps track

131503.1

of each lawyer's time entries, and has the ability to sort the entries by date, client and matter number, and other criteria. The software also keeps track of the hourly rate of each attorney, which differs depending on the level of skill and experience of each lawyer. The software can then be made to generate monthly bills to be sent to each client, for each matter that is open for each client. The software maintains all entries in a database, which enables users to generate historical printouts of all time expended by each lawyer on a given matter, going back several years.

5. The attached Exhibit B invoices were generated by the Timeslips software, and they represent the entries of the lawyers at NLG who worked on this matter. I have reviewed the attached printouts in detail, and I believe them to be true, complete and accurate descriptions of the work performed by NLG lawyers in this lawsuit.

6. My hourly billing rate for work done on this matter has ranged from $375 per hour in 2006 to $395 per hour in 2007 and later. I have practiced commercial litigation in Southern California for over nineteen years and have brought over twenty trials to judgment, including at least ten jury trials as "first chair." I believe that the rates we charged Ocean Duke for this representation are reasonable and well within the standard market rates for work of this sort by lawyers at the subject level of experience. The rates for the other NLG lawyers listed on the Exhibit B printout are within these standard market rates, as follows: Timothy

131503.1                                    2

L. Neufeld (referred to as "TLN" in the invoices) -- $325 to $400, and Judy L. Khang ("JLK") -- $250 to $285. Mr. Neufeld has been practicing civil litigation in the Los Angeles area continuously for over 33 years, has tried numerous cases to verdict, and was instrumental in this matter in case preparation, client counseling, and settlement. Ms. Khang has practiced civil litigation for eight years, and conducted research, pleading drafting, discovery, and other "associate"-type work.

7.  I have consulted the so-called Laffey Matrix to assess the reasonableness of our hourly rates. Many federal courts use the Laffey Matrix, which is compiled by the United States Attorney's Office for the District of Columbia. The "Laffey Matrix" approach to fee awards has been followed by district courts in, for example, *Weatherhead v. United States*, 112 F.Supp.2d 1058, 1077-1078 (E.D.Wa. 2000), and *In Re HPL Tech., Inc. Securities Litigation*, 366 F. Supp.2d 912, 921 (N.D.Cal. 2005), among many other cases.

8.  The Laffey Matrix sets hourly rates according to the years of experience and category of timekeeper for lawyers, law clerks and paralegals. The Laffey Matrix was developed in a massive fee application battle in a District of Columbia employment law case, and has been regularly updated by The United States Attorney's Office over the years, and has been available on its web site each year since 1981 for the Washington, D.C. area. When used for geographical areas other than the District of Columbia, the Laffey Matrix rates must be adjusted to account for

the local difference in wages. This can be done by using the federal Bureau of Labor Statistics wage information for local areas.

9. I have determined that the most recent wage data provided by the Bureau of Labor Statistics is dated June 19, 2007. Because both Mr. Neufeld and I practice in Los Angeles, I checked the rates for Los Angeles and determined that Los Angeles has a slightly higher cost of wages than the District of Columbia for lawyers. Thus, an upward adjustment to 105% of the "Laffey Matrix" rate is required for lawyers practicing in Los Angeles.

10. The Laffey Matrix for 2006-2007, as adjusted for Los Angeles, is as follows:

| EXPERIENCE | RATE |
|---|---|
| 20+ years | $446 |
| 11-19 years | $394 |

Thus, if one were to use the Laffey Matrix rates for 2006-2007, as adjusted for the Los Angeles market, these would be the rates applicable for this case for Ocean Duke's principal counsel:

| PROFESSIONAL | YEARS OF EXPERIENCE | RATE |
|---|---|---|
| Neufeld | 33 | $446 |
| Marks | 19 | $394 |

131503.1

4

Thus, in my opinion the hourly rates actually charged by Ocean Duke's chief counsel ($400 and $395 per hour) are and were within the reasonable ranges established by the Laffey Matrix.

11. Attached hereto as Exhibit C are true and correct copies of the invoices of Alston Hunt Floyd and Ing, local counsel for Ocean Duke, showing fees in the amount of approximately $118,000.

12. As set forth in the Marks Declaration, total fees charged to Ocean Duke for the Kowalski matter, since its inception in 2004, were in the range of $383,893.00. Including fees charged by local counsel, the total amount is approximately $500,000. Because it is clear that, in this case as litigated, the Lanham Act claims were secondary in scope and importance to the patent claims, I believe it is appropriate that there be an apportionment of fees that takes into account that aspect of the litigation.

13. I believe that a 20% to 25% apportionment to the Lanham Act claims is appropriate under the circumstances, and that therefore a minimum fee award of $100,000 is therefore justified. I make this estimate based on having tried this case and having experienced all depositions, discovery, and trial proceedings first hand, and based thereon making a good faith estimate of the time spent by counsel dealing with trademark as opposed to patent matters.

14.  I have reviewed all time entries herein, and I believe the fees incurred were reasonable and necessary under the circumstances. I am also aware that, according to a 2003 report by the American Intellectual Property Law Association, the average cost of defending a patent case where claimed damages were between $1 million and $25 million (the damages range that covers the Kowalski/HIS case), average defense costs were approximately $2 million. I have to presume that the "average" patent case does not entail a two-week jury trial. Thus, even with a jury trial, NLG and its local counsel charged its client about one-quarter of the "average" fee for such cases.

I declare under penalty of perjury under the laws of the United States of America and the State of Hawaii that the foregoing is true and correct.

Executed in Los Angeles, California, on January 24, 2008.

*/s/ Paul S. Marks*

PAUL S. MARKS