IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., | CIVIL NO. 04-00055 BMK |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF MOTION |
| v. | |
| OCEAN DUKE CORPORATION, | |
| Defendant. | |

## **MEMORANDUM IN SUPPORT OF MOTION**

## I.  **INTRODUCTION**

Plaintiff WILLIAM R. KOWALSKI ("*Plaintiff*") brings this motion for attorneys' fees pursuant to Fed. R. Civ. P. 54(d) and 35 U.S.C. § 285 ("*Section 285*"). Section 285 provides the Court with discretion to award reasonable attorneys fees to the prevailing party in "exceptional cases." This case qualifies as an "exceptional case" under Section 285 because the jury returned a verdict finding that Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") willfully infringed the Kowalski Patent. For the reasons discussed below, the Court should award Plaintiff his reasonable attorneys' fees incurred in prosecution of this action.

## II.  **ARGUMENT**

### A.  **Plaintiff Is Entitled To The Attorneys Fees & Expenses He Incurred In Prosecuting This Patent Infringement Action.**

Title 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "When considering a request for an award of attorneys fees under 35 U.S.C. § 285, the trial judge undertakes a two-step inquiry: he or she must determine whether there is clear and convincing evidence that the case is 'exceptional,' and if so, whether an award of attorney fees to the prevailing party is warranted." Intersprio USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 933 (Fed. Cir. 1994).

A finding of willful infringement suffices to establish that an award of attorneys fees is proper. See Water Tech. Corp. v. Calco, Ltd., 850 F.2d 660 (Fed.

Cir. 1988) ("Having found this to be a case of willful infringement, the district court's discretionary award of attorneys fees was proper."), <u>L.A. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1128 (Fed. Cir. 1993) ("[w]illfulness of infringement is a sufficient basis for finding a case exceptional"). The Federal Circuit has observed that "[d]istrict courts have tended to award attorneys fees when willful infringement has been proven, and this court has uniformly upheld such awards." <u>S.C. Johnson & Son, Inc. v. Cater-Wallace, Inc.</u>, 781 F.2d 198, 200 (Fed. Cir. 1986). Where, as here, willful infringement is found, it is incumbent on the trial court to explain why the case should not be deemed to be "exceptional." <u>See</u> <u>id.</u> ("It is equally necessary for the trial court to explain why this is not an exceptional case in the face of its express finding of willful infringement.").

"As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." <u>Jurgens v. CBK, Ltd.</u>, 80 F.3d 1566, 1573, n.4 (Fed. Cir. 1996). An exceptional case is also supported by proving, among other things, litigation misconduct, or vexatious, unjustified, and otherwise bad faith litigation. <u>See</u> <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 270 F. Supp. 2d 751, 761 (E.D. Va. 2003) (citation omitted).

As discussed in detail below, this case is "exceptional" and an award of attorneys fees is warranted.

1.    This case is "exceptional" given the jury's finding of willful infringement and Plaintiff is clearly the prevailing party.

There can be no doubt that Plaintiff is the prevailing party. The jury found that (1) Ocean Duke infringed all of the asserted claims, (2) the infringement was willful, (3) none of the asserted claims of the Kowalski Patent were proven invalid, (4) reasonable royalty damages in the amount of $2,200,000 should be paid to Plaintiff. While it is likely that Ocean Duke will elevate the significance of dismissal of Hawaii International Seafood, Inc. as a Plaintiff and the trademark infringement and deceptive trade practices claims, "[d]etermination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the numbers of claims and defenses." Brooks Furniture Manuf. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1380 (Fed. Cir. 2005). This case was first and foremost a patent infringement case. The objective of the litigation was to establish that Ocean Duke was liable for infringement and that objective was certainly achieved.

Moreover, the jury's willful infringement verdict establishes conclusively that this case is "exceptional." See L.A. Gear, Inc., 988 F.2d at 1128, S.C. Johnson & Son, Inc., 781 F.2d at 200. The Court should exercise its discretion to award Plaintiff his attorneys' fees for the reasons that follow.

    2.      An attorneys' fee award is warranted under the circumstances of this case.

The <u>Read</u> factors,[1] discussed at length in connection with Plaintiff's Motion for Enhanced Damages Under 35 U.S.C. § 284,[2] clearly weigh in favor of granting Plaintiff's request for attorneys' fees. See <u>Jurgens</u>, 80 F.3d at 1573 n. 4. The <u>Read</u> factors, as applied to the circumstances of this case, are summarized below:

(1)    <u>Deliberate copying</u>:  Ocean Duke's copying of Plaintiff's tasteless smoke product and labeling of the infringing product with the name "CRYO-FREEZE," which bears a striking similarity to Plaintiff's company's "CRYOFRESH" trademark;

(2)    <u>Lack of good faith belief</u>:  The jury's determination – supported by the evidence at trial that Ocean Duke did not engage in a good faith investigation to assess the legitimacy of the infringement allegations in Plaintiff's notice of infringement letter – that Ocean Duke knew, or it was so obvious that Ocean Duke should have known, that it was infringing a valid patent;

(3)    <u>Litigation behavior</u>:  Ocean Duke's inadequate discovery responses, failure to meet deadlines, wholesale reliance on the legally deficient defense that the Shih patent shielded infringement liability, and unreasonable settlement position;

(4)    <u>Size and financial condition</u>:  Ocean Duke's over $200 million in annual sales and financial strength relative to Plaintiff's weak financial condition;

---

[1] The factors relevant to enhanced damages set forth in <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816 (Fed. Cir. 1992), are referred to herein as the "<u>Read</u> factors."

[2] Plaintiff incorporates by reference all of its arguments and evidence offered in support of his Motion for Enhancement of Damages Under 35 U.S.C. § 284 that are not specifically set forth herein.

(5)     <u>Closeness of case</u>:  Ocean Duke's reliance on irrelevant arguments and lack of persuasive evidence or witnesses on the issues of infringement and invalidity;

(6)     <u>Duration of infringement</u>: Ocean Duke's over seven years of infringement commencing in 1999 through present (i.e. even after the jury's verdict of infringement);

(7)     <u>Remedial action</u>:  Ocean Duke took no remedial action, instead increasing sales of the infringing product after receiving Plaintiff's notice of infringement letter;

(8)     <u>Motivation for harm</u>:  Ocean Duke's intent to target Plaintiff, labeling his product with a name similar to Plaintiff's Cryofresh brand, telling its customers not to license, all for the purpose of making money at Plaintiff's expense.

(9)     <u>Concealing misconduct</u>:  Ocean Duke's refusal to provide full-information relevant to the calculation of damages.

The circumstances of this case are similar to those in <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 270 F. Supp. 2d 751 (E.D. Va. 2003).  There, the jury found that the defendant infringed the plaintiff's patents and the infringement was willful.

The plaintiff moved for attorneys' fees pursuant to Section 295.  <u>See</u> <u>id.</u> at 760.

The district court granted the motion, reasoning as follows:

> Although the moving party must show that attorney fees are warranted, in the face of the jury's express finding of willful infringement, which, standing alone, is a sufficient basis to award attorney's fees, RIM [the defendant] must put forth a showing as to why attorney fees are not warranted in this case.  RIM argues that this is not an exceptional case by asserting the closeness of the case, its own good faith defenses, and NTP's litigation conduct.  However, based on the discussion of the *Read* factors, it is clear that this is an exceptional case.  Again, there is substantial doubt as to whether any investigation of the Campana Patents occurred upon receipt of the Notice Letter.  Even if an investigation was conducted, it was not

sufficient to meet its duty of care. RIM's litigation behavior, including its discovery tactics, post-trial motions which rehashed issues previously dealt with on summary judgment, its attempt to advance evidence through an expert that the claim construction is erroneous,[3] and its fraudulent demonstration of the TekNow! system with updated software installed by Gary Mousseau, also adds to the exceptionality of this case. **Moreover, as discussed earlier, this was not a close case.** Therefore, there is clear and convincing evidence that this case is sufficiently exceptional to warrant an award of attorney fees.

Id. at 761 (emphasis added); see also Third Wave Tech., Inc. v. Stratagene Corp.,

405 F. Supp. 2d 991, 1014-18 (W.D. Wis. 2005).

Similarly, in this case, the Read factors show that this is an "exceptional"

case. Like in NTP, Inc., the investigation undertaken by Ocean Duke was

manifestly deficient. The evidence at trial was compelling that Ocean Duke did

not investigate or perform a good faith infringement (or invalidity)[4] analysis in

response to Plaintiff's January 2000 notice of infringement letter. There was no

evidence showing that Ocean Duke took any measures to verify whether or dispute

that their sales manager Chris Ragone[5] in fact admitted to HISI's John Stalker that

---

[3]    Plaintiff notes that Ocean Duke similarly attempted to have Dr. Iwaoka testify that certain terms used in the Kowalski Patent were improper, despite that the Court had provided the jury with its construction of those terms. See Ex. "K" (Trial Tr. Day 3 – Iwaoka) at 27-29.

[4]    Ocean Duke did not take the position that the Kowalski Patent was invalid until a few weeks before trial. The jury was properly instructed to consider Ocean Duke's pre-litigation conduct in its assessment of willful infringement.

[5]    None of Ocean Duke's witnesses denied that Ragone admitted to Stalker that Ocean Duke's product was treated with smoke in which the smoke flavor

Ocean Duke's "tasteless smoke ahi saku" product was treated with a process where "smoke flavor components have been removed from the smoke to make tasteless smoke" and "[t]he tasteless smoke treated seafood does not retain a smoke flavor after smoke treatment."[6] Ex. "L" (Notice of Infringement, Trial Ex. 71) attached hereto, at 2. Ocean Duke never responded to Plaintiff's notice of infringement letters, not even to deny the allegations contained therein.

The evidence supports that Ocean Duke acted with reckless disregard of Plaintiff's patent rights paying little to no attention to whether the process used by PT to treat Ocean Duke's imported fish infringed the claims of the Kowalski Patent, choosing instead to wait for Mr. Shih to get a patent,[7] and then to insist, incorrectly, that Mr. Shih's patent constituted a valid defense to infringement of the Kowalski Patent. Roger Lin testified at trial that:

---

components had been removed to make tasteless smoke, not even Ragone, who currently serves as Ocean Duke's Vice President of Sales.

[6] Ocean Duke did not deny Ragone's statements because it wanted to and did in fact promote its product by telling people in the industry that their product was treated with smoke from which taste causing components were filtered out so the smoke was tasteless and the food did not have a smoke taste.

[7] Notably, Mr. Shih did not apply for his patent until August 1, 2000, over a half a year after Ocean Duke received Plaintiff's first notice of infringement letter. The Shih patent was not issued until December 18, 2001. Assuming incorrectly that the Shih patent constituted a defense to infringement, Ocean Duke continued to import the allegedly infringing product from PT for nearly two years after receiving Plaintiff's notice of infringement letter despite that the Shih Patent had not issued.

A.    So the discussion we [Roger and Duke] had was – the action we took was that we followed up on Mr. Shih to see where the status of this patent is. And in the meantime we decided to put it in a holding pattern until we get a response from Mr. Shih.  And eventually he got his patent in the end of 2001, and we got a hold of a copy of the patent in early 2002.  And that's when we turned it over to our patent attorney.  Those are the actions that we took.

A.    Right.  So you put Mr. Kowalski on a holding pattern until 2002 even though he wrote this letter in January and sent it to you in 2000, right?

Q.    That's correct.  Usually, when somebody is serious about an issue, you get a pretty quick follow-up letter.  When you don't get a notice for two years, I mean, we really don't consider that a serious intent.

Ex. "M" (Trial Tr. Day 3 – Roger Lin) at 16: 5-19.

Roger Lin's failure to investigate in any meaningful way the process used to treat Ocean Duke's product while he was at PT's facilities for sanitation inspections in 2001 and 2002 (after receiving Plaintiff's notice of infringement letters) was very telling of Ocean Duke's reckless disregard of Plaintiff's patent rights.  Roger Lin testified that he did not get within 20 feet of PT's smoke machine or spend more than about five minutes discussing with Mr. Shih the process used by PT to treat the fish products imported by Ocean Duke.  See Ex. "N" (Trial Tr. Day 3 - Roger Lin) at 18: 12-25.  Also, Duke Lin admitted that he did not read the Shih patent or the Kowalski patent, but nevertheless told Mr. Shih "Don't worry, You have patent."  Ex. "O" (Duke Lin Depo. Tr.) at 76: 15-25, 77: 1-2.  For further proof/bases of Ocean Duke's "recklessness" see Plaintiff

Kowalski's Motion For Enhanced Damages filed January 24, 2008 and Kowalski's Opposition to Motion For New Trial filed January 8, 2008.

Another similarity shared with <u>NTP, Inc.</u>, is that this case was not close. Ocean Duke offered nothing at trial but irrelevant and misleading arguments that were contrary to the jury instructions, the law and the facts. This is illustrated, for example, by the Ocean Duke (through counsel) telling the jury in opening and closing statements[8] that there were four "critical" facts in this case.

Ocean Duke told the jury that the first critical point it should remember is that Ocean Duke did not process or treat seafood. Ocean Duke clearly knew this argument was irrelevant, however, because 35 U.S.C. § 271(g) ("***Section 271(g)***") imposes liability on any person who "without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States" without regard to whether the person actually processes the product or not. An act of infringement occurs by importing and selling the product. <u>See</u> <u>Eli Lilly & Co. v. Am. Cyanamid Co.</u>, 82 F.3d 1568, 1572 (Fed. Cir. 1996). Ocean Duke was well aware of this law because Preliminary Jury Instruction No. 5, which was proposed by Plaintiff weeks before

---

[8] Notably, Plaintiff's counsel was informed by the court reporter that the transcripts of counsels' opening and closing statements are not yet available. <u>See</u> Yasunaga Decl. ¶ 2. However, the Court will recollect these arguments Ocean Duke's counsel relied upon and stressed at trial.

trial and was read to the jury and counsel immediately before opening statement, stated:

### PRELIMINARY JURY INSTRUCTION NO. 5

Where, as in this case, a process patent is involved, the owner of the patent has the right, for the life of the patent, to prevent others from importing into the United States or selling or using within the United States a product which was made by the process or method covered by that patent.

Second, Ocean Duke argued with emphasis that the second critical point the jury should remember was that "the party who is accused of infringing," i.e. PT Inti Samudera Citra Perkasa ("PT"), was not sued in this lawsuit. This was untrue because the party Plaintiff was accusing of infringement was Ocean Duke. More important, Preliminary Jury Instruction No. 5 and Section 271(g) made it clear to Ocean Duke's counsel that Plaintiff was justified in suing just the importer/seller of the product made with the allegedly infringing process, and Section 271(g) does not require the patent holder to sue the processor. Ocean Duke was also well-aware that the patent holder can get relief from the U.S. importer and need not sue the foreign processor given the briefing done in connection with Plaintiff's Motion in Limine #1 Re Presumption of Infringement Under 35 U.S.C. § 295, which set out Congress' recognition of the "great difficulties" a patentee may have "where the manufacturer is not subject to service of process in the United States." See Plt.'s Mot. in Limine #1, filed 11/13/07, at 16-17. Ocean Duke's knowledge that

the processor need not be sued indicates that Ocean Duke's argument about the

second "critical" point (and indeed, about all four allegedly "critical" points) was

part of Ocean Duke's improper attempt to mislead the jury.

Ocean Duke told the jury that the third critical point to remember is that

Ocean Duke allegedly had an arms-length buyer-seller relationship with supplier

PT.  This assertion was called into question by Ocean Duke's marketing materials,

which listed PT and Ocean Duke as part of the "Yelin Group-Vertical Integration,"

Ex. "P" (Trial Ex. 240), and, again, more importantly, was irrelevant for purposes

of determining liability under Section 271(g).

Ocean Duke's counsel told the jury that the fourth and final critical fact was

that what goes on in Bali is not infringement because of comparisons he listed on

the easel and discussed, but these comparisons concerned irrelevant things that do

not at all indicate a lack of patent infringement, and so even if they had been

proven, Ocean Duke would not have been absolved of liability.  Jotting down the

word "Charcoal in one column and the word "sawdust" in the other, he said Shih

(the owner of Ocean Duke's supplier PT) heats charcoal to create smoke while the

Kowalski Patent heats sawdust, but this was clearly misleading and contrary to the

law and facts of the patent, because, as Ocean Duke's counsel knew or should have

known (see, e.g., Preliminary Jury Instruction No. 12 and Jury Instruction 27),

determination of patent infringement involves comparing the process used on

Ocean Duke's product with the claims of the Kowalski Patent, and the claim step of "heating organic material to generate smoke" clearly included heating charcoal because charcoal is an organic material that is heated to generate smoke, and especially because the Court expressly construed that claim language to include heating charcoal: "heating carbon containing materials (including wood, and the sawdust and charcoal that can be made from wood) to make smoke" (Preliminary Jury Instruction No. 11). Furthermore, Ocean Duke's counsel was aware of further law making it clear that such comparisons to only raw materials or equipment in a specific example in the Kowalski Patent are irrelevant, such as reflected in Jury Instruction 23 (proposed weeks earlier, and based on clear law), which stated in pertinent part:

> Therefore, you should not compare the process used to make Ocean Duke's fish with any specific example set out in the Kowalski patent … Furthermore, you should not compare the equipment or machinery or raw materials. … because apparatus distinctions are irrelevant in determining infringement of process claims.

Ocean Duke's counsel's other comparisons regarding his fourth "critical" point were similarly irrelevant and misleading. Ocean Duke's counsel said Shih "heats" while Kowalski "burns", Shih uses 180°C while Kowalski is limited to temperatures above "260°C", and Shih uses a "vacuum chamber" while Kowalski does not, and listed these comparisons down in his two columns, but as the patent claim language and the Court's claim construction show, the asserted claims of the

Kowalski Patent expressly state the word "heating", and the asserted claims are not limited to heating above 260°C or the use of any particular equipment, so Ocean Duke's asserted facts re Shih clearly fell within the smoke generation step of the Kowalski Patent claims.

Ocean Duke's counsel emphasized the comparison that Kowalski uses an ice tower while Shih does not, but the ice tower is merely one example of the Kowalski process and the asserted patent claims clearly are not limited to any particular type of equipment for the step of removing or separating out or filtering out smoke taste causing components. See, e.g., Jury Instruction 23 and Preliminary Jury Instruction No. 11. Ocean Duke's counsel listed and emphasized that Shih separates out water while Kowalski uses "superpurifying", but Ocean Duke's counsel certainly knew the Court construed the Claim 67 language "filtering components that impart smoke flavor from said smoke to below limits for imparting smoke flavoring to food" to mean "filtering or separating out or reducing (including by cooling, **condensing**, settling out, and/or aging) the parts of the smoke which give smoke flavor to food at least enough so that the resulting or remaining smoke does not give smoke flavoring to food when food is exposed to that smoke" and that the Court similarly construed Claim 1's step mentioning "superpurifying said smoke to reduce taste imparting components to below thresholds for imparting smoke odor and taste". The undisputed testimony at trial

(and by both sides' experts well before trial) supported that the separation of water

from the smoke in the Shih process performed the filtering step of reducing

(including by cooling, **condensing**, settling out and/or aging) the parts of smoke

which give smoke flavor to food.  This was made clear, not just by Dr. Maga's

testimony (Ex. "P" [Trial Tr. Day 5 – Maga] pages 14-16), but also by Ocean

Duke's own expert, Dr. Iwaoka -- see Ex. "K" (Trial Tr. Day 3 - Iwaoka) at 68: 14-

25: 69: 1-4:

> A.  Some water soluble things would be removed when you condense
> down those vapors into liquid and remove the liquid right?  That's
> what you told us [in your deposition].
>
> A.  Some things might – yes.  That's correct.
>
> Q.  Right.  And you said that in the Shih process, it's possible that
> some particles might be little bits of the charcoal that get into that
> smoke.
>
> A.  It might.
>
> Q.  Right.  And then you said that in this condensing process, turning
> the vapors into liquid and removing it, some particles that would be in
> that smoke would also be removed as you removed the liquid, right?
>
> A.  It could.

Thus, Ocean Duke's insistence that the Shih process involved condensation and

removal of water in fact served to reinforce Plaintiff's position that the process

used by PT to treat Ocean Duke's fish was covered by the asserted claims.

Ocean Duke also tried to mislead the jury into thinking that the fact that

Ocean Duke's supplier had a patent meant Ocean Duke could not be infringing,

even though, as Jury Instruction 27 states: "The existence of a patent does not constitute a defense to infringement of someone else's patent."

Ocean Duke (including it's expert) also repeatedly tried to compare parts of the Shih Patent to parts of the Kowalski Patent (moreover, the comparison was only made to the non-claims portions of the Kowalski Patent), even though, as Jury Instruction 27 states, "Whether or not there is infringement by Ocean Duke of the Kowalski patent is not determined by comparing the Kowalski patent with the Shih patent. Instead, you must compare the Kowalski patent's claims, as [the judge] defined them, to the process used to produce Ocean Duke's fish, and determine whether or not there is infringement."

Whereas Plaintiff's counsel, using charts of the claim construction and exhibits projected on the video screen, demonstrated to the jury precisely how specific items of evidence of the process used on Ocean Duke's fish met each of the steps of the asserted claims of the Kowalski Patent, Ocean Duke's counsel never even tried to rebut this and never even tried to show that the evidence did not fall within the steps of the asserted claims, and instead relied upon misleading and irrelevant points such as those mentioned above.

Ocean Duke's attempt to convince the jury that the Kowalski Patent was invalid fared no better. Its arguments regarding invalidity of the Kowalski Patent were unpersuasive and confusing at best. Ocean Duke fell far short of overcoming

the presumption of validity and establishing by clear and convincing evidence that the asserted claims of the Kowalski Patent were invalid for failure to meet the written description requirement.  See Plt's Opp. to Ocean Duke's Mot. for Judgment As A Matter of Law Notwithstanding the Verdict, filed 1/8/08, at 2-26.

By contrast, as requested by Plaintiff, the jury (1) found that Ocean Duke had infringed all of the asserted claims, (2) awarded slightly more than the full amount of reasonable royalty damages requested, and (3) determined that Plaintiff had met its burden of establishing that Ocean Duke's infringement was willful.

For further proof/bases that the case was not close, see Plaintiff Kowalski's Motion For Enhanced Damages filed January 24, 2008 and Kowalski's Opposition to Motion For New Trial filed January 8, 2008.

The case was far from close.  Awarding Plaintiff with his attorneys' fees is warranted under Section 285.  See Ncube Corp. v. Seachange Int'l, Inc., 436 F.3d 1317, 1325 (Fed. Cir. 2006) (affirming fee award on grounds that "[m]ost importantly . . . the case for literal infringement was not close").

**B.    Summary of Plaintiff's Reasonable Attorneys' Fees & Disbursements.**

The purpose of Section 285 is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  Central Soya Co., Inc. v. Geo A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983).  The term "attorneys fees" is therefore interpreted by the Federal Circuit "to include those

sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit[,]" id., such as lawyer's fees spent on the issue of attorneys' fees, disbursements, non-legal personnel, and paralegal personnel. See id. (citing Codes Corp. v. Milgo Electronic Corp., 541 F. Supp. 1198, 1201 (D. Mass 1982)); see also Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1069 (Fed. Cir. 1983) ("section 285 also permits the prevailing party to recover disbursements that were necessary for the case").

"In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir. 1983). The hourly billing rates charged by each of Plaintiff's attorneys, which range from $140 to $305 hour depending on experience level of each attorney over the years 2004 to 2008, are indicated in the chart below. These rates are reasonable in consideration of the prevailing market rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. See Yasunaga Decl. ¶ 4; see also Doe v. Keala, 361 F. Supp. 2d 1171, 1183 (D. Haw. 2005) (approving in 2005 attorney billing rates of $275 for more experienced/partner level attorneys, $140 per hour for less experienced attorney and $85 for paralegal).

The following chart summarizes the number of hours expended by

Plaintiff's counsel in the prosecution of this lawsuit per year beginning January 1, 2004 through the filing of this Motion (i.e. January 23, 2008):

| Attorney | Date | # of Hours | Rate | Lodestar |
|---|---|---|---|---|
| Milton M. Yasunaga (partner) | 2004<br>2005<br>2006<br>2007<br>2008 | 81.25<br>14.00<br>45.00<br>683.50<br>78.00 | $250<br>$260<br>$275<br>$295<br>$305 | $20,312.50<br>$3,640.00<br>$12,375.00<br>$201,632.50<br>$23,790.00 |
| Martin E. Hsia (partner) | 2007 | 7.50 | $295 | $2,212.50 |
| Allison Mizuo Lee (junior associate) (senior associate) | 2004<br>2007<br>2008 | 40.00<br>350.25<br>140.75 | $140<br>$200<br>$210 | $5,600.00<br>$69,200.00*<br>$29,557.50 |
| Teri-Ann Nagata (junior associate) | 2007 | 13.25 | $180 | $2,385.00 |
| Keri-Ann Shigemura (junior associate) | 2007 | 10.50 | $145 | $1,522.50 |
| Cheryl Yasunaga (paralegal) | 2007 | 58.50 | $120 | $7,020.00 |
| | | SUB-TOTAL | | $379,247.50 |
| | | General Excise Tax (4.166%) | | $1,746.70 |
| | | General Excise Tax (4.712%) | | $15,894.52 |
| * amount is less than lodestar due to time designated "no charge." See, e.g., AML's time entry for 12/03/07 re settlement conf. | | TOTAL | | $396,888.72 |

Exhibit "A" attached hereto is a breakdown of the number of hours expended by Plaintiff's legal team and a detailed description of the tasks performed organized chronologically.

The total time and billable amounts attributed to each phase of litigation identified in Local Rule 54.3(d)(1) is summarized below (includes time and charges by non-legal/staff personnel discussed below), with back-up documentation attached as Exhibits "B" to "I":

| Litigation Phase | Exhibit | # of Hours | Billable Amount |
|---|---|---|---|
| Case development, background setup, preparation of budgets, and routine communications with client, co-counsel, opposing counsel and the court | B | 151.50 | $32,506.25 |
| Pleadings | C | 15.00 | $3,750.00 |
| Interrogatories, document production, and other written discovery | D | 62.75 | $17,370.00 |
| Depositions | E | 121.75 | $35,916.25 |
| Motions practice | F | 269.25 | $60,293.75 |
| Trial preparation, attending trial | G | 718.25 | $166,347.50 |
| Post-trial motions | H | 245.25 | $60,107.50 |
| Settlement | I | 53.75 | $13,641.25 |
| TOTAL | | 1637.50 | $389,932.50 |

Non-legal personnel fees are also recoverable under Section 285. <u>See</u> <u>Central Soya Co., Inc.</u>, 723 F.2d at 1578. The following charges, which total $10,685.00, were incurred by Plaintiff in the preparation for and performance of legal services related to this suit:

| Non-Legal/Staff | Date | # of Hours | Rate | Lodestar |
|---|---|---|---|---|
| Rian Tatsutani (Tech. Support) | 2007 | 64.50 | $120 | $7,740.00 |
| Walea Kalama (Tech. Support) | 2007 | 6.00 | $120 | $720.00 |
| Rose Kuniyoshi (Accounting) | 2007 | 44.50 | $50 | $2,225.00 |
| | | | SUBTOTAL | $10,685.00 |
| | | General excise tax (4.712%) | | $503.48 |
| | | | TOTAL | $11,188.48 |

A detailed description of the tasks performed and hours expended for the above individuals are included in the chronological summary attached hereto as Exhibit "A."

Finally, Section 285 provides for recovery of "disbursements that were necessary for the case." <u>Lam, Inc.</u>, 718 F.2d at 1069. In this case, Plaintiff's counsel disbursed funds in the amount of $18,097.71 for items and expenses, including without limitation telephone, fax, postage, photocopies, transcripts, travel, supplies, equipment rental and other miscellaneous items (not including the fees of Plaintiff's damage expert David Francom, which are sought pursuant to 35

U.S.C. § 284 in Plaintiff's Motion for Prejudgment Interest, Non-Taxable Costs, and Post Judgment Interest, filed on January 24, 2008). See Yasunaga Decl. ¶ 14. The chart below summarizes these disbursements by category with back-up documentation attached hereto as Exhibit "J":

| Category | Amount |
|----------|--------|
| Telephone, Fax and Postage | $86.79 |
| Photocopies | $7,551.03 |
| Transcripts | $4,922.12 |
| Travel Expenses | $3,598.99 |
| Supplies & Equipment Rental | $549.55 |
| Other miscellaneous | $1,389.23 |
| TOTAL DISBURSEMENTS | $18,097.71 |

To summarize, Plaintiff requests $396,888.72, in attorneys' fees (including general excise tax at the applicable rates), $11,188.48 for non-legal/staff personnel fees (including general excise tax at the applicable rate), and $18,097.71 in disbursements, for a total of $426,174.91.

## III.   CONCLUSION

For the foregoing reasons, the Motion should be granted. The Court should award Plaintiff a total of $426,174.91 in attorneys' fees and other litigation expenses compensable under Section 285. Plaintiff acknowledges that many of the disbursements awardable under Section 285 are independently recoverable as

taxable costs under 28 U.S.C. § 1920.  Plaintiff intends to submit a Bill of Costs pursuant to Fed. R. Cir. P. 54(d) after final judgment or the Court's order on Ocean Duke's motions for new trial and/or judgment as a matter of law notwithstanding the verdict is issued seeking all appropriate cost items not recovered in connection with this Motion.

DATED:  Honolulu, Hawaii, January 24, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
ALLISON MIZUO LEE
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.