CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA        2954-0
ALLISON MIZUO LEE     7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN DUKE CORPORATION,<br><br>Defendant. | CIVIL NO. 04-00055 BMK<br><br>**PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT, BASED ON PATENT INVALIDITY ON GROUNDS OF INDEFINITENESS; DECLARATION OF MILTON M. YASUNAGA; EXHIBITS "A" - "E"; CERTIFICATE OF SERVICE**<br><br>(Non-Hearing Motion) |

**PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT, BASED ON PATENT <u>INVALIDITY ON GROUNDS OF INDEFINITENESS</u>**

I.  **INTRODUCTION**

OCEAN DUKE CORPORATION's Motion for Entry of Judgment, Based on Patent Invalidity On Grounds of Indefiniteness (the "*Motion*") should be denied. **The law is clear that a patent claim is legally "indefinite" only when it is "not amenable to construction" or is "insolubly ambiguous" – that is, a claim can be found "indefinite" "only if reasonable efforts at claim construction prove futile."** Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 3147-48 (Fed. Cir. 2005) ("Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of validity and … follow the requirement that clear and convincing evidence be shown to invalidate a patent."). **Thus, the fact that this Court was able to construe the asserted claims establishes conclusively that the asserted claims are not indefinite.** Moreover, as discussed in further detail below, the language of the asserted claims delineate the scope of Plaintiff's invention and adequately notifies the public, as Ocean Duke acknowledges, that Plaintiff's right to exclude covers smoke-treated food products that do not have a smoke taste or odor.

II.  **ARGUMENT**

The definiteness requirement derives from 35 U.S.C. § 112, ¶ 2, which

requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." Id. at 1347.[1]  Because a patent is presumed valid, and the burden of establishing invalidity rests upon the party asserting invalidity, Ocean Duke must come forth with clear and convincing evidence to invalidate the subject patent claims.  See Aero Products Int'l, Inc. v. Intex Recreation Group, 466 F.3d 1000, 1015 (Fed. Cir. 2007).  "In light of the presumption [of validity] and the difference in posture between an applicant whose application has been rejected and a patentee with an issued patent, close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."  Exxon Research & Eng. Co v. United States, 265 F.3d 1371, 1380  (Fed. Cir. 2001).

Ocean Duke relies solely on Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342 (Fed. Cir. 2005), in support of its contention that the claim language "to reduce taste imparting components below thresholds for imparting smoke odor and

---

[1] Thus, it is the second paragraph of 35 U.S.C. §112 that is the basis for the indefiniteness requirement, so Ocean Duke's Memorandum in Support of Motion at p. 3 is incorrect to quote as well the first paragraph of 35 U.S.C. §112 as setting "forth the standards by which a patent's claims are to be adjudged for definiteness" – §112's first paragraph (which begins with the words "The specification shall contain a written description, and then mentions the word "enable" and concludes with "shall set forth the best mode contemplated by the inventor for carrying out his invention") deals, not with the definiteness requirement, but instead with the requirements of written description, enablement, and best mode.

taste" renders the Kowalski Patent indefinite. In <u>Datamize, LLC</u> the Federal Circuit set forth the relevant legal principles governing the indefiniteness analysis as follows:

> Because the claims perform the fundamental function of delineating the scope of the invention, the purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.
>
> According to the Supreme Court, "[t]he statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." The definiteness requirement, however, does not compel absolute clarity. **Only claims "not amenable to construction" or "insolubly ambiguous" are indefinite. Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning. Furthermore, a difficult issue of claim construction does not ipso facto result in a holding of indefiniteness. "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." In this regard it is important to note that an issued patent is entitled to a statutory presumption of validity. "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of validity and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." In this way we also follow the requirement that clear and convincing evidence be shown to invalidate a patent.**

<u>Id.</u> at 3147-48(citations omitted) (emphasis added).[2]

---

[2] <u>Datamize</u> was relying heavily upon and quoting from <u>Exxon Research and Engineering Co. v. U.S.</u>, 265 F.3d 1371, 1375 (Fed. Cir. 2001), which emphasized that **"we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction.... [C]ases frequently present close questions of claim construction on which expert witnesses, trial courts, and even**

Based on these principles, the Federal Circuit held that the claim term "aesthetically pleasing" was not capable of a reasonable, definite construction that would allow the public to determine the scope of the claimed invention. See id. at 1350-53 ("the phrase 'aesthetically pleasing' fails to delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."). The court noted that (1) the ordinary meaning of "aesthetically pleasing" is "'having beauty that gives pleasure or enjoyment' or, in other words, 'beautiful.'" (id. at 1348), (2) "the inventor does not attempt to explain what distinguishes "good standards of aesthetics" from those that are "not good" (id. at 1352), and (3) the patentee's own expert could not say how to determine whether an interface screen met the "aesthetically pleasing" requirement:

> The expert also provided a list of what he denominated "generally accepted" parameters of design that contribute to a display getting high marks from

---

the judges of this court may disagree. Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have **not** adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.... By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, ... and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." (Emphasis added.)

> users for being "aesthetically pleasing." The list included symmetry, consistency, predictability, simplicity, cleanliness, and non-crowdedness....
>
> ... But the identification of parameters one might consider fails to explain how the parameters should be evaluated or weighed to reach the conclusion that an interface is "aesthetically pleasing." ... [E]ven the expert could not determine whether the look and feel of particular interface screens are "aesthetically pleasing" using the parameters he specified, instead testifying that whether an interface screen is "aesthetically pleasing" is a "multidimensional question" that is "not amenable to a single-word answer." The inability of the expert to use the parameters he himself identified to determine whether an interface screen is "aesthetically pleasing" militates against the reasonableness of those parameters as delineating the metes and bounds of the invention.

Id. at 1353-54.

Thus, when the court in Datamize LLC concluded "aesthetically pleasing" was indefinite because the court could not construe it and "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention," (id. at 1350), the court was referring to the situation where the claim step involved the "multidimensional," personal preference question of what has "beauty that gives pleasure or enjoyment," which even the inventor and his expert could not describe how to determine.

Ocean Duke says that the phrase "to reduce taste imparting components below thresholds for imparting smoke odor and taste" in claim 1 of the Kowalski Patent ("***the challenged Kowalski claim language***") is the equivalent of the term "aesthetically pleasing" in Datamize LLC because "whether a product has a smoke

odor or taste is subjective, not objective." Ocean Duke's reliance on <u>Datamize LLC</u> is misplaced for the reasons that follow.

Unlike in <u>Datamize LLC</u>, the challenged Kowalski claim language is capable of a reasonable and definite construction. The Court properly construed the subject claim language as meaning to "reduce the taste imparting components (i.e. parts) of the generated (i.e. produced) smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat when brought into contact with the meat." Order Construing Claims 1, 33, 67, 68 and 69 of the Kowalski Patent, filed 11/19/07, at 10. In fact, during the claim construction phase of this case, Ocean Duke did not offer any arguments against Plaintiff's proposed construction of the subject claim language. <u>See</u> Ocean Duke's Memo. in Opp. to Plts' Cross Mot. for Claim Construction, filed 11/1/07 at 10-11 ("In its TPI Markman Ruling, the court decline the invitation by the parties adverse to the Kowalski patent to read numerical limits into the phrase 'below thresholds for imparting smoke odor and taste' that appears in Claim 1, or the similar phrase 'below limits for imparting smoke flavoring to food' that appears in Claim 67. Defendant ODC does not challenge that decision in this opposition.").

The subject claim language, therefore, is not "insolubly ambiguous;" nor did "reasonable efforts at claim construction prove futile." <u>Datamize, LLC</u>, 417 F.3d at 1347; <u>see also</u> <u>Metabolite Lab., Inc. v. Lab. Corp. of Am.</u>, 370 F.3d 1354, 1366

(Fed. Cir. 2004) ("Only when a claim remains insolubly ambiguous without a discernable meaning after all reasonable attempts at construction must a court declare it indefinite. In this case, as already noted, the claim construction exercise at the trial court produced a discernible and clear meaning. No 'material ambiguities' cloud the meaning of 'correlating' to the extent that one of skill in the art would find the claim wholly indefinite.") (citations omitted). The public is adequately notified that reducing the taste imparting components (i.e. parts) of the generated (i.e. produced) smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat when brought into contact with the meat is within the scope of Plaintiff's right to exclude. See Datamize, LLC, 417 F.3d at 1347.

Ocean Duke's contention that "[p]ersons skilled in the art who honestly want to avoid infringing on the Kowalski patent cannot tell how to avoid doing so, because the key factor involved – i.e., whether the end product has a smoke taste or odor – is totally subjective," Memo. in Support of Mot. at 7, is factually incorrect, and in any event even if it were true, would not render the Kowalski Patent indefinite. "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." Smithkline Beecham Corp. v. Apotex. Corp., 403 F.3d

1331, 1341 (Fed. Cir. 2005) (Datamize LLC, itself (417 F.3d at 1354) cited Smithkline ("indefiniteness does not depend on the difficulty experienced by a particular person in comparing the claims with the prior art or the claims with allegedly infringing products or acts. See SmithKline Beecham ....").) Ocean Duke's proclaimed difficulties in ascertaining whether or not its product has a smoke taste or odor is not relevant for purposes of claim definiteness -- the critical point is that the subject claim language makes clear that a smoke-treated food product that ends up with no smoke taste or odor is within the bounds or scope of Plaintiff's invention. See id. ("**The scope of this claim is clear; [even if] the infringement of the Apotex product is not.** Even if a claim is broad enough to embrace undetectable trace amounts of the claimed invention, 'breadth is not indefiniteness.'") (emphasis added); cf. Acumed LLC v. Stryker Corp., 483 F.3d 800, 806 (Fed. Cir. 2007) ("Stryker also argues that the district court's exclusion of 'sharp corners or sharp angles' renders the construction insufficiently definite, since the court did not specify precisely how 'sharp' is too sharp. However, a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems – especially easy ones like this one – is properly left to the trier of fact."), Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc., Nos. 00-1271, 00-1299, 2001 WL 253459 *1, *4 (Fed. Cir. 2001) (unpublished op.) ("Stripped to its core, Bridgestone's argument is that

one of ordinary skill in the art would not know precisely 'how much is exposed, projecting cord would be necessary to meet the claim limitations.' Bridgestone misses the point. So long as the fabric cord project enough above the bladder surface to reduce adhesion to uncured rubber, an accused bladder will fall within the scope of the claim. Since the claim language makes no attempt to quantify the reduction in adhesion, quantification of the amount of cord that projects above the rubber surface of the bladder is not required, either for infringement or validity analysis. 'If the claims reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more.'").

In any event, Ocean Duke's contention that it (and other competitors) cannot tell whether its end product has a smoke odor or taste and therefore cannot determine whether it is infringing on Plaintiff's patent is disingenuous. Ocean Duke admitted at trial that it expects that the infringing smoked product purchased from PT Intisamudera Citra Perkasa will not have a smoke taste or odor, see Ex. "A" (Trial Tr. Day 4 – Roger Lin) at 9: 12-14 ("Q. Is the fish that Ocean Duke has been buying from PT Intisamudera supposed to have a smoked taste? A. No, I don't believe so."). Indeed, Ocean Duke represents to customers and people in the industry that the infringing product does not have a smoke taste or odor. See Ex. "B" (Trial Ex. 70 – Stalker survey) ("The tasteless smoke treated seafood does not

retain a smoke flavor after smoke treatment. -- YES"). Despite selling millions of pounds of the infringing product, 7,110,905 pounds in 1999 to 2005 alone, see Ex. "C" (Trial Ex. 193 – Ocean Duke Annual Sales Chart), Ocean Duke could not recall one instance in which a customer complained or said that Ocean Duke's product had a smoke flavor. See Ex. "A", wherein Roger Lin tried his best at trial to promote Ocean Duke's indefiniteness argument, but then was forced to admit that Ocean Duke intends that its fish not have a smoke taste and, in practice, there is no difficulty in supplying customers with fish that does not have a smoke taste (regardless of alleged differences in people's sensitivity to taste) (Trial Tr. Day 4 – Roger Lin) at 8:8-16, 9:6-14:

> Q. You mean, you tell some people, Gee, it might be smoky tasting?
>
> A. We don't say one way or the other. We tell them it's treated for color retention. **But, again, we let the customer make a judgment whether there is in fact odor or taste remaining in the product.**
>
> **Q. Has anyone come back and complained that, gee, the customer said the fish had a smoke flavor?**
>
> **A. Not that we know of.**
>
> Q. And you don't put on [the label] "smoked fish with good smoked taste" or anything like that, right?
>
> A. No, we do not.
>
> Q. Because **that fish is not supposed to have a smoked taste, right?**
>
> A. I suppose, the way you ask it, **yeah**.
>
> Q. Is the fish that Ocean Duke has been buying from PT Intisamudera supposed to have a smoked taste?

>   A. No, I don't believe so.

(emphasis added). Thus, Ocean Duke is well aware that its smoked product does not have a smoke taste or odor, it intends that its product not have a smoke taste, and Ocean Duke has no difficulty determining how to produce a product that does not have a smoke taste, and millions of pounds of smoked fish that has no smoke taste has been successfully sold to millions of consumers by many companies (e.g., see Kowalski's testimony and Trial Exhibits 56, 64, 67, 80, 85, 88, 103, and 193) – which shows that all Ocean Duke's talk about not knowing how to proceed because people allegedly have such different tasting abilities is a sham. This also demonstrates that a claim limitation of "no smoke taste" is fundamentally different from a claim limitation of "aesthetically pleasing."

Dr. Maga's trial testimony squares with Ocean Duke's professed reliance on consumers to determine whether the product has a smoke taste or odor, and shows that the claim step about ending up with a smoked food that does not have a smoke taste is not indefinite and that practitioners in the industry can and do create smoked food that does not have a smoke taste, and that customers that do not want a food with smoked taste can be effectively supplied such product, despite the argument that some people's tasting powers are greater than others':

>   Q. Would companies that do food smoking and sell smoked products, whether with a smoke taste or, as in Mr. Kowalski's inventions case, without a smoke taste, would companies like that operate by having people at the factory smell and taste the food before it's shipped out to the customers?

> A. Definitely. I mean, product uniformity is a very, very important issue in commercial food operations. You have to have a consistently uniform product. Just applying the purified smoke and then having the panel decide, yes, it's acceptable, then the product can be distributed. And, of course, the final evaluation is the consumer. If you were going to consume this product in two hours or whatever, tomorrow, you decide, boy, that's what I'm looking for. It's good. There is no smoke taste, no smoke odor in that product.
>
> Q. I think you mentioned earlier – is this – the factories rely on some people to taste and smell before they ship the product out, and you said the final test is the consumers eat it, and they don't complain that it's not supposed to have smoke taste and it has a smoke taste, or something like that, is that related to what I think you mentioned as rely on people?
>
> A. Definitely.
>
> Q. And that's common in the industry and usual practice?
>
> A. Yes. . . . .
>
> Q. So if someone with ordinary or average skill in the field of food smoking saw Mr. Kowalski's patent and saw a step in the process that said something like, reduce the taste imparting parts of the smoke at least enough so that the resulting or remaining smoke would not give smoke odor or taste to meat, when brought into contact with the meat, that person, in your opinion, would they understand that step and be able to do it?
>
> A. Oh, definitely. If they are in any phase of the smoking industry.
>
> Q. They wouldn't need to have a step that mentions specific numbers and requires chemically analyzing the food for how many parts per million of this chemical or that chemical?
>
> A. Correct, yes.

Ex. "D" (Trial Tr. Day 5 – Maga) at pp. 17-20. Thus, far from being incapable of determination as Ocean Duke contends, the trial testimony clearly shows that people in the industry, and even Ocean Duke itself, effectively rely on

people/consumers to decide whether or not the product has a smoke taste or odor, and the fact that some people can be said to be more sensitive than others in tasting ability is no practical or other bar to understanding and implementing the "no smoke taste" claim limitations.

Moreover, the detection of the existence of smoke odor, taste and/or flavor in a product is not, as Ocean Duke contends, "purely subjective." Sensory analysis **"is an objective, precise and reproducible scientific method** of obtaining descriptions of the sensory properties of products that are independent of time and location." Ex. "E" (Sensory Research) at 2 (emphasis added). Sensory panels are able to determine, among other things, whether an ingredient is detectable in food. See id. at 1 ("The sensory panel will be able to answer the following questions: 1) Is the ingredient detectable?"). Dr. Maga testified that sensory evaluation panels usually are comprised of several people, as many as 10 people, who are trained routinely. See Ex. "D" (Trial Tr. Day 4 – Maga) at 17: 22-25, 18: 1-11. Notably, Plaintiff's patent does not claim to cover products that have a "pleasant" or "beautiful" smoky taste or odor, which would be more akin to the term "aesthetically pleasing" in Datamize LLC. Unlike in Datamize, LLC, the scope of the subject claim language of the Kowalski Patent does not "depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." 417 F.3d at 1350. As shown above, Datamize LL involved the

term "aesthetically pleasing," which means "having beauty that gives pleasure or enjoyment," which is a "multidimensional" matter of purely personal preference, and which even the inventor and his expert could not say how a competitor or alleged infringer could determine, whereas the Kowalski claims do not involve a complicated determination of personal preference, but merely the issue of whether the smoked food can be sold to the general public as a food that does not have a smoke taste, rather than a food that has a smoke taste, which is a determination easily and successfully made all the time by many companies and millions of consumers, regarding cheese, fish, meat, and other foods that can be purchased in different varieties with or without smoke flavor. Whether a food has smoke taste or not is a much simpler, and more appropriately deemed "objective" determination than whether something is "aesthetically pleasing", so Datamize LLC is certainly not authority suggesting that the Kowalski claims are indefinite.

That an individual's sensitivity to smoke taste or odor may not be exactly uniform from person to person does not render the subject claim language indefinite. In Sienna, LLC v. CVS Corp., No. 06-3364, 2007 WL 13102 *1 (S.D.N.Y. Jan. 3, 2007), the district court rejected an argument very similar to Ocean Duke's indefiniteness challenge. There, the defendants argued that the term "excessive manual force" was "too imprecise since not all individuals are equally strong." Id. at *7. The court disagreed and held that "[t]he defendants are

impermissibly raising the standard that is required to meet definiteness; mathematical precision is not required. In the context of forcing a light bulb into a socket, the ordinary meaning of the word 'excessive' is sufficiently clear and definite for one skilled in the art." Id.

In summary, the subject claim language has been properly construed by the Court to mean reducing the taste imparting components (i.e. parts) of the generated (i.e. produced) smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat when brought into contact with the meat. The subject claim language, therefore, is amenable to construction, and thus meets the requirement that claims be "definite." Ocean Duke's professed inability to determine whether its product infringes (i.e. whether its product has a smoke taste or odor) is of no import to the indefiniteness inquiry, and in any event, the evidence at trial conclusively established that reliance on taste panels and consumers to decide whether the product has a smoke taste or odor is standard in the industry. The subject claim language gives adequate notice to persons skilled in the art, as Ocean Duke recognizes, that Plaintiff's invention covers smoke treated food products that do not have a smoke taste and odor. The definiteness requirement is satisfied. Ocean Duke certainly has not met its burden of proving invalidity by clear and convincing evidence. See Datamize, LLC, 417 F.3d at 1347.

## III. CONCLUSION

For the foregoing reasons, the Motion should be denied.

DATED: Honolulu, Hawaii, February 4, 2008.

                                CADES SCHUTTE LLP

                                /s/ Milton M. Yasunaga
                                MILTON M. YASUNAGA
                                Attorney for Plaintiffs
                                WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.