LOUISE K. Y. ING        2394-0
ALLISON KIRK GRIFFITHS  8156-0
ALSTON HUNT FLOYD & ING
1800 ASB Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile:  (808) 524-4591
Email:  ling@ahfi.com
        akirk@ahfi.com

TIMOTHY L. NEUFELD (Admitted *Pro Hac Vice*)
PAUL S. MARKS (Admitted *Pro Hac Vice*)
NEUFELD LAW GROUP
360 East 2nd Street. Suite 703
Los Angeles, California 90012
Telephone: (213) 625 -2625
Facsimile:  (213) 625-2650
Email: tneufeld@neufeldlawgroup.com
        pmarks@neufeldlawgroup.com

Attorneys for defendant OCEAN DUKE CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>        Plaintiffs,<br><br>  v.<br><br>OCEAN DUKE CORPORATION,<br><br>        Defendant. | CIVIL NO. CV 04-0055 BMK<br><br>**DEFENDANT OCEAN DUKE CORPORATION'S MEMORANDUM IN OPPOSITION TO MOTION FOR ENHANCED DAMAGES;** DECLARATION OF PAUL S. MARKS; EXHIBITS A-H; CERTIFICATE OF SERVICE |

**DEFENDANT OCEAN DUKE CORPORATION'S MEMORANDUM IN OPPOSITION TO MOTION FOR ENHANCED DAMAGES**

## I.    INTRODUCTION.

The law on willfulness has changed as of August 2007, with the Federal Circuit's *en banc* decision in the case of *In Re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). Now, in order to qualify for enhanced damages based on willfulness, a patentee must prove (*inter alia*) that the alleged infringer acted with "objective recklessness."

Here, that standard was not met.

First, as shown below, the remedy of enhanced damages was not properly pled, and hence was never in issue.

But even if that technical defect is ignored, this case does not support enhanced damages. In this lawsuit, two plaintiffs filed suit, claiming lost profits damages well in excess of ten million dollars, and pursuing a settlement strategy based on those inflated damages. Upon completion of the trial, however, one plaintiff suffered a defense judgment on all counts, and the other plaintiff was denied all lost profits (the bulk of his claimed damages), and prevailed only on his claim for patent infringement (suffering an adverse judgment on all other claims), while recovering only a fraction of his asserted damages.

In addition, there was no evidence of objective recklessness on the part of Ocean Duke Corporation ("Ocean Duke"). Ocean Duke never used any aspect of plaintiff's patent; rather, it only imported fish from its supplier in Bali, and that supplier's processing methodology ***pre-dated*** the patent in question in this lawsuit. Further, when Mr. Kowalski obtained his patent, hired Mr. Stalker to pursue patent litigation against his competitors, and sent out demand letters, Ocean Duke retained patent counsel to advise the company on its rights and obligations. Ocean Duke reasonably relied on that advice -- even though such reliance is no longer mandated, after *Seagate, supra*.

Then, shortly before trial in this case, this court invalidated the Kowalski patent on grounds that the claims of the patent were too broad. Although the court later vacated that ruling for procedural reasons, a post-trial motion in this case raises the exact same issue. Therefore, it is and has always been at least plausible that, as a matter of law, Mr. Kowalski has no rights he can impose upon Ocean Duke. Certainly, the outcome of the trial was mixed, and the excessive damages asserted by plaintiffs did not come to fruition in the resulting judgment.

Under these circumstances, Ocean Duke urges that this is not a case for enhanced damages, and respectfully requests that the court deny plaintiff's motion.

## II.    ENHANCED DAMAGES WERE NOT PROPERLY PLED AND ARE THEREFORE NOT IN ISSUE.

Plaintiff Kowalski by this motion seeks to treble the damages awarded by the jury on the one and only claim -- for patent infringement -- on which either plaintiff prevailed.  However, plaintiffs' complaint pleads treble damages *only* with regard to plaintiffs' trademark claims.  (*See* Marks Decl., Exh. A; "Sixth Claim for Relief.")   Further, on those claims for which treble damages were pled, Ocean Duke won defense judgments, without fail.  Thus, because there is no request in the pleadings for the trebling of damages on plaintiffs' *patent* claims, this type of "special" damage is not in issue in the litigation.

Rule 9(g) of the Federal Rules of Civil Procedure provides that "[i]f an item of special damage is claimed, it must be specifically stated."  "Special damages" consist of damages that are "the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case."  (5 Wright & Miller, Federal Practice & Procedure, § 1310.)  Special damages must be pled "in order to avoid unfair surprise to the defendant."  (*See Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir.1995) (defining special damages as "not the natural damages associated with such a claim"); *Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir.1973) (contractual attorneys' fees are special damages which must be pled to be recovered).)  Where an item of special damages has not been pled,

either originally or within the time established by the court for amendments to the pleadings, that item of damages is deemed waived. (*National Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916 (8th Cir. 1997) (attorneys' fees are special damages, and are not recoverable where not originally pled or alleged in an amended pleading prior to the court deadline for amendments).

Throughout this case, plaintiffs have sought to gain litigation advantage by strict application of rules they allege that Ocean Duke has violated. Here, plaintiffs have failed to plead an element of the special damages they are now seeking. Ocean Duke asserts that plaintiffs should be held to the same standard of strict scrutiny they have long required of Ocean Duke in this litigation.

## III.    STANDARDS GOVERNING ENHANCED DAMAGES.

If plaintiff Kowalski is allowed to proceed with his motion for enhanced damages despite the failure to so plead, Ocean Duke respectfully submits that such damages should not be awarded under the facts and circumstances of this case.

The jury's finding of willfulness does not mandate that damages be enhanced. (*Electro Sci. Indus. Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1353 (Fed. Cir. 2001); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 815 (Fed. Cir. 1990); *Cybos Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998).)

Rather, in determining whether to enhance damages after a finding of willfulness,

the court should consider the "totality of the circumstances" -- in other words, factors

that are mitigating, as well as factors which allegedly support enhanced damages.

In his motion, plaintiff asserts that the *Read* factors control.  These factors

include:

(1)    whether there was deliberate copying;
(2)    whether the infringer had a good-faith belief that the patent
       was invalid or not infringed;
(3)    the infringer's behavior during the litigation;
(4)    the infringer's size and financial condition;
(5)    closeness of the case:
(6)    duration of the infringer's misconduct;
(7)    remedial action by the infringer;
(8)    the infringer's motivation for harm; and
(9)    whether the infringer attempted to conceal its misconduct.

(*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992).)  However, as

explained below, these factors must be read in conjunction with the holdings of the

recent *Seagate* case.  Ocean Duke asserts that reading these factors in conjunction

with *Seagate*, and applying them to the facts of this case, militates against an award

of enhanced damages.

## IV.    THE *READ* FACTORS DO NOT SUPPORT AN AWARD OF ENHANCED DAMAGES.

Ocean Duke respectfully submits that the totality of the circumstances in this

case do not support the enhancement of damages.  As explained below, application

of the *Read* factors bears this out.

A.    *Deliberate Copying.*

There was no evidence whatsoever of deliberate copying of Mr. Kowalski's invention.  It simply did not happen, and there was no evidence to that effect introduced by plaintiffs.

First, Mr. Shih's invention pre-dated Mr. Kowalski's.  (*See* Marks Decl., ¶ 3, Exh. B.)  Although this fact does not prevent an infringement claim, on its face it proves that Mr. Shih did not copy the Kowalski process to create his invention.  Certainly there was no evidence presented that Mr. Shih knew about, or had access to, any of Mr. Kowalski's inventions in creating his own patented process.  Indeed, there was no evidence about how Mr. Shih created his invention, just that it pre-dated the Kowalski patent.  This lack of evidence from plaintiffs flows naturally from the fact that plaintiffs ***never*** went to Bali, either before, during, or after filing suit, to investigate the Shih process.

Second, a comparison of the two processes themselves demonstrates that there was no copying of any sort, let alone deliberate copying.  (*See, e.g., Read Corp. v. Portec, Inc.*, *supra,* 970 F.2d 816, 827, n. 7 (Fed. Cir. 1992) (analysis of deliberate copying includes copying of "commercial embodiment" of the patent).)  Indeed, plaintiff ***must*** agree with this fact.  After all, throughout trial, plaintiff's counsel took pains to argue, both in front of the jury and through objections during opening statement and closing argument, that the ***numerous*** differences between the Shih

process and the Kowalski process were *irrelevant*, since patent infringement analysis compares patent claims, as construed by the court, to allegedly infringing processes. But the comparison of the two processes is clearly relevant to willfulness, and one need look no further than the attributes of the two inventions, as disclosed in the patents, to see that there was no copying:

| Kowalski | Shih |
|---|---|
| Sawdust | Charcoal |
| No vacuum chamber | Vacuum chamber |
| High temperatures | 180 degrees Centigrade |
| Large ice tower with cloth | Small separating chamber (contents unproven) |
| Alleged "tasteless smoke" | No claim of "tasteless smoke" |

*To be blunt, if Mr. Shih deliberately copied Mr. Kowalski's "invention," then he did an exceedingly poor job.*  Indeed, the Patent and Trademark Office must not have thought that Mr. Shih engaged in deliberate copying, since the Shih patent was issued over the Kowalski patent, as disclosed on the face of the Shih patent.

Undoubtedly recognizing that Mr. Kowalski cannot (or, at least, did not) show deliberate copying, plaintiffs' counsel has resorted to resurrecting the CRYOFRESH/CRYO-FREEZE issue.  (*See* Motion at p. 5.)  However, plaintiffs lost on all of their trademark infringement claims.  No authority has been presented in support of the idea that an enhanced damages award can be based on a *separate* claim that the *plaintiffs lost at trial.*

131619.1                                        7

Finally, plaintiffs also cite the evidence relating to Ahold, a former customer of plaintiff Hawaii International Seafood, Inc. ("HIS").  (*See* Motion at p. 5.)  This is a surprise, because, first of all, the Ahold issue has nothing to do with deliberate copying of a patented process.  The point of the Ahold evidence was (apparently) to paint Ocean Duke with the brush of wrongful conduct, and to suggest (wrongly) that Ocean Duke was calling its produce "tasteless smoke."  However, on close scrutiny the testimony and documents do not prove this.  Even Mr. Kowalski testified that the label that said "tasteless smoke" was merely a grocer's receipt; no one contradicted the evidence that Ocean Duke was far removed in the supply chain from that receipt.  Further, if Ahold was anyone's customer, it was a customer of HIS -- the ***only*** party at trial that ***unequivocally lost on all claims to which it was a party.***  Thus, Ahold was not a customer of the moving party herein, Mr. Kowalski (since Mr. Kowalski himself had no customers).  The Ahold evidence is therefore completely irrelevant to the claims brought in this motion by Mr. Kowalski for enhanced damages.

But even if the Ahold evidence is considered, the evidence is exceedingly weak.  Notwithstanding the harsh rhetoric about "stealing customers," the evidence from both sides was that HIS lost this customer through a competitive bidding process, and there was no credible evidence that it was Ocean Duke (as opposed to its middleman) that engaged in that bid process.  (*See* Marks Decl., Exh. C.)  Moreover, there was no evidence whatsoever of the grounds on which HIS lost the

bid.  Perhaps HIS lost the bid because it had not complied with its agreements with Ahold, just as the (uncontradicted) evidence showed that HIS had not complied with its agreements with Ocean Duke back in the 1980's and 1990's when the two did business together.

Ocean Duke submits that infringement can only be found in this case by stretching the Kowalski patent's claims so far beyond anything that Mr. Kowalski invented as to swallow up virtually every other patented process that treats seafood for color retention.  Mr. Shih's process copied nothing from Mr. Kowalski, and there is no evidence to the contrary.

B.     *Ocean Duke's Good Faith Belief based on Investigation.*

Ocean Duke's conduct after receiving the notice of infringement was reasonable, and Ocean Duke acted in good faith.

Ocean Duke did the following in response to the notice of infringement:

1.     Analyzed its past unsuccessful business relationship with Mr. Kowalski;

2.     Went to Bali to investigate the Shih factory; and

3.     Retained a patent lawyer to obtain a patent opinion.

(*See* Marks Decl., Exh. C to Exh. F.)

After *Seagate, supra,* it is questionable that Ocean Duke even had to do any of the foregoing to avoid enhanced damages.  In addition to establishing that a patentee must show "objective recklessness" to prove willfulness on the part of an alleged

infringer, *Seagate* addressed the obligations of a party receiving notice of alleged

infringement.  In announcing the "objective recklessness" standard, the court took

issue with the rule establishing an affirmative duty of due care on the part of alleged

infringers, as set forth in *Underwater Devices Inc. v. Morrison-Knudsen Co.*,

717 F.2d 1380 (Fed. Cir. 1983).  The *Seagate* court found that such a duty of due

care was no longer the correct standard, since it was "more akin to negligence."

On that basis, the court overruled *Underwater Devices:*

> Because we abandon the affirmative duty of due care, we also
> reemphasize that there is no affirmative obligation to obtain
> opinion of counsel.

(497 F.3d at 1371.)  Thus, under current law, Ocean Duke clearly exceeded

its obligation to act reasonably by doing that which the law no longer requires --

obtaining advice from patent counsel.

Plaintiff, in contrast, has relied on the testimony of John Stalker to support

its cause.  (*See* Motion at p. 7.)  This is surprising for a variety of reasons.  First,

Mr. Stalker's testimony highlighted the fact that, before filing suit, plaintiffs did

absolutely nothing to investigate how Ocean Duke actually processed its seafood,

other than having someone call a salesperson and ask a few questions -- none of

which had to do with "processes."  (*See* Marks Decl., Exh. G.)  Thus, it is interesting

to compare what plaintiffs did to investigate their claim for patent infringement

(*i.e.*, make a single phone call)[1] with what Ocean Duke did after receiving notice

of infringement (*i.e.,* visit Bali, investigate the Shih process, hire a lawyer, and obtain

a written opinion of counsel).  For plaintiffs now to assert that these facts show bad

faith on the part of ***Ocean Duke*** is puzzling, to say the least.[2]

Plaintiff also bemoans the quality of the patent opinion issued by Ocean

Duke's patent lawyer, and the lawyer's independence.  (*See* Motion at p.10-11.)

But these arguments do not wash.  Ocean Duke and the patent lawyer did far more

analysis of the Shih process than anything plaintiffs did before filing suit, and Ocean

Duke's patent counsel was no less independent than any lawyer hired by any other

client.

Finally, plaintiffs make much of the fact that Ocean Duke did not respond

to plaintiffs' notice of infringement.  But such a response would have been futile,

and would not have altered the analysis under this factor.  Ocean Duke did prepare

a draft response letter, denying liability.  (Marks Decl., Exh. E.)  How would it have

---

[1]      "[W]hen a complaint is filed, a patentee must have a good faith basis for
         alleging willful infringement.  Fed. R. Civ. Pro. 8, 11(b).  So a willfulness
         claim asserted in the original complaint must necessarily be grounded
         exclusively in the accused infringer's pre-filing conduct."  (*Seagate, supra,*
         497 F.3d at 1374.)

[2]      It is also puzzling that plaintiffs would cite Mr. Stalker's testimony at all,
         since that testimony supported Ocean Duke more so than plaintiffs, in that
         Mr. Stalker testified that he left HIS and applied for a job at Ocean Duke –
         fearful that he, too, would get sued by Mr. Kowalski.  (Marks Decl., Exh. G.)

mattered if that response had been sent?  The lawsuit would have been filed in either

event.  Regardless, Ocean Duke had had prior unsuccessful business dealings with

Mr. Kowalski, before he bankrupted his first fish company, so any analysis of Ocean

Duke's response to the notice of infringement must be considered with a view toward

the past history between the parties.

Ocean Duke respectfully submits that it acted in good faith throughout this

entire process, and urges that this factor favors Ocean Duke.

C.     *Litigation Behavior.*

The *Seagate* court also dealt with the proper role of litigation conduct in

willfulness/enhanced damages analysis.  In discussing the issue of waiver of the

attorney-client privilege, the court stated as follows:

> [I]n ordinary circumstances, willfulness will depend on an infringer's
> pre-litigation conduct.  It is certainly true that patent infringement is
> an ongoing offense that can continue after litigation has commenced.
> However, when a complaint is filed, a patentee must have a good faith
> basis for alleging willful infringement.  Fed. R. Civ. Pro. 8, 11(b).
> So a willfulness claim asserted in the original complaint must
> necessarily be grounded exclusively in the accused infringer's pre-filing
> conduct.  By contrast, when an accused infringer's post-filing conduct is
> reckless, a patentee can move for a preliminary injunction, which
> generally provides an adequate remedy for combating post-filing
> willful infringement.  *See* 35 U.S.C. § 283; *Amazon.com, Inc. v.
> Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).
> ***A patentee who does not attempt to stop an accused infringer's
> activities in this manner should not be allowed to accrue enhanced
> damages based solely on the infringer's post-filing conduct.***  Similarly,
> if a patentee attempts to secure injunctive relief but fails, it is likely the
> infringement did not rise to the level of recklessness.

(497 F.3d at 1374; emphasis added.)

Ocean Duke submits that this "litigation conduct" factor refers to the conduct of the parties in connection with the substantive aspects of patent law, and not the types of discovery or other procedural issues raised by plaintiff in his motion.  Since plaintiff chose not to seek an injunction in this case, *Seagate* teaches that plaintiff "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."

In contrast, plaintiff finds it "disturbing" that Ocean Duke argued that someone other than Mr. Kowalski invented tasteless smoke, since the prior art defense was not allowed to go to the jury.  But this argument was not a "prior art" defense issue; rather, the evidence was highlighted in closing argument in order to illustrate that Mr. Kowalski is simply not a credible witness.  In brief, Mr. Kowalski stated numerous times that he "invented" tasteless smoke and that he "enabled" an industry; however, his own documentary evidence illustrated that others had done so, and that the only industry he seems to have enabled is the litigation industry, spurred on by his witness Mr. Stalker.

This court witnessed all of the conduct of the parties and their counsel during this trial.[3]  Ocean Duke is comfortable permitting the court to assess that conduct, based on the court's own recollection of the trial.

Finally, plaintiff asserts that it is appropriate to consider the settlement positions of the parties.  (*See* Motion at p. 17.)  In that regard, Ocean Duke merely points out that, as of the settlement conference two months before trial, plaintiffs were demanding close to $7,000,000 to settle the case -- almost four times the amount that went to the jury.  And one of those plaintiffs lost all of the claims it brought.  Ocean Duke respectfully submits that it was no less reasonable than plaintiffs during settlement negotiations.

D.     *Ocean Duke's Size and Financial Condition.*

Plaintiff argues that Ocean Duke is "giant" and should suffer as a result. (*See* Motion at p. 19.)  But simply because a business generates $200,000,000 in annual revenues does not mean, in and of itself, that the company is profitable, or "giant," or deserving of punishment.  Plaintiff has not put the gross revenue number in context, and there was no evidence presented of overall profits.  Further, Ocean Duke has fewer than 30 employees, and as such is hardly "giant."

---

[3]     Plaintiff continues to complain about discovery.  Ocean Duke submits that plaintiff must have been satisfied with the information provided, since the only discovery motion plaintiffs brought was the unsuccessful motion to compel Ocean Duke depositions in Hawaii.  (Marks Decl., ¶ 9.)

More to the point, plaintiff's own expert confirmed that, when it comes to the products at issue in this lawsuit, Mr. Kowalski's company is actually larger than Ocean Duke.  (Marks Decl., Exh. H.)

This factor is neutral, at best.

E.      *Closeness of the Case.*

Plaintiff maintains that this case was not "close."  However, about six weeks before trial, this court invalidated the Kowalski patent, in ruling on a *Markman* motion.  This fact alone shows that the case was, and still is, "close."

If someone had really gone out and deliberately copied Mr. Kowalski's invention -- which taught just **one way** among many to process seafood -- perhaps that case would not be a "close case."  But that is not what happened here.  Ocean Duke does not even process seafood, and plaintiffs sued Ocean Duke with no knowledge of the process actually used by Ocean Duke's supplier.  Even after litigation began, plaintiffs and their counsel never went to Bali to investigate, and they never presented any first-hand evidence of the process used in Bali.

As stated earlier, it is only the exceedingly overbroad claims of the Kowalski patent that make this a case of infringement.  As argued at trial and in post-trial motions, the Kowalski patent is based on heating ranges above the stated temperature in the Shih patent.  Thus, the Shih process can only infringe on the Kowalski patent if the claims of the Kowalski patent ignore, as they do, the temperature limitations

131619.1                                    15

disclosed in the Kowalski invention. Thus, without overbroad claims, there can be

no infringement here. This court has once found the Kowalski patent invalid on that

ground, and Ocean Duke is elsewhere requesting that this court enter such an order

again. Clearly, this is a close case.

F.    *Duration of Conduct.*

This factor is neutral. As plaintiff argues, Ocean Duke did indeed import and

sell product for the seven years since the Kowalski patent was issued. But Ocean

Duke also imported and sold the exact same product before that, and the Shih process

was in operation before the Kowalski patent was issued.

G.    *Remedial Action by the Infringer.*

Ocean Duke has now phased out importation and sale of seafood processed

under the Shih process, and is importing seafood processed only with pure carbon

monoxide. (Marks Decl., ¶ 11.) Presumably, since Mr. Kowalski ***unsuccessfully***

attempted to obtain a patent for processing with pure CO, he will not allege that such

importations and sales infringe upon his patent. Thus, this factor favors Ocean Duke.

H.    *Ocean Duke's Motivation for Harm.*

Ocean Duke had no motivation whatsoever to harm Mr. Kowalski. If Ocean

Duke and HIS had been competitors, one might argue that Ocean Duke would have a

motivation for harming HIS (as opposed to Mr. Kowalski). But HIS had no rights

under the patent, and Ocean Duke prevailed on all of its claims against HIS.

Plaintiff's motion points to no motivation on the part of Ocean Duke for harming Mr. Kowalski. Rather, plaintiff again cites the trademark infringement issues, but plaintiff lost all of those claims; hence, the evidence supporting those claims is irrelevant.

This factor also favors Ocean Duke.

I.    *Attempted Concealment.*

Finally, there was no attempted concealment, and plaintiff has presented no evidence of concealment.

Indeed, plaintiffs' theory of the case is that all they needed to know to be able to sue consisted of the information voluntarily disclosed by Ocean Duke to a complete stranger, John Stalker. Although Ocean Duke maintains that this minimal effort constitutes insufficient investigation into the allegedly infringing processes, it also shows that Ocean Duke cannot be said to have "concealed" information relating to the subject matter at hand.

Instead, plaintiff takes a different angle, and complains once again about discovery. However:

1.    Ocean Duke turned over in excess of 30,000 pages of documents in discovery;

2.    The financial documents plaintiff complains of not having relate to **lost profits** damages, which were thrown out by the court, and

do not make up any part of the verdict and judgment; and

3.    To Ocean Duke's knowledge, plaintiffs made only one discovery

motion, and that motion was ***denied.***

(Marks Decl., ¶ 9.)

Ocean Duke asserts that these facts militate in favor of Ocean Duke and

against the requested enhancement of damages.

## V.    CONCLUSION.

The law on willfulness has changed significantly.  In this post-*Seagate* world,

courts should look carefully at enhanced damages.  Although the jury here found

willfulness, this court has the discretion to deny enhanced damages.  Ocean Duke

respectfully submits that the facts and evidence introduced at trial, when viewed

through the lens of the *Read* factors discussed above and the recently-decided

*Seagate* case, dictate that that discretion should be exercised in favor of Ocean Duke.

DATED:  Los Angeles, California, February 4, 2008.


/s/ Paul S. Marks_____
PAUL S. MARKS
LOUISE K. Y. ING
Attorneys for defendant
   OCEAN DUKE CORPORATION