CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
ALLISON MIZUO LEE    7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-0055 BMK <br><br> **PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR ATTORNEYS' FEES PURSUANT TO LANHAM ACT; DECLARATION OF MILTON M. YASUNAGA; EXHIBITS "A" – "F"; CERTIFICATE OF SERVICE** <br><br> **TRIAL: December 4 - 13, 2007** |

**PLAINTIFF WILLIAM R. KOWALSKI'S MEMORANDUM IN OPPOSITION TO DEFENDANT OCEAN DUKE CORPORATION'S MOTION FOR ATTORNEYS' FEES PURSUANT TO LANHAM ACT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT ....................................................................................1

    A.   Ocean Duke Is Not Entitled To Attorneys' Fees Under Section
        1117 Because Plaintiff's Lanham Act Claim Was Neither
        Groundless, Unreasonable, Vexatious, Nor Pursued in Bad
        Faith ...........................................................................................1

    B.   Assuming Arguendo That Ocean Duke Is Entitled To Recover
        Attorneys' Fees Under The Lanham Act, Ocean Duke Has Not
        Sustained Its Burden Of Showing That $100,000 Is A
        Reasonable Fee ...........................................................................11

        1.   Twenty to Twenty Five Percent Is A Gross Over-
            Estimation Of The Actual Amount Of Attorneys' Fees
            Attributable To Ocean Duke's Defense Of The Lanham
            Act Claim .....................................................................12

        2.   Ocean Duke Has Not Properly Substantiated Its Fee
            Request Nor Fulfilled The Requirements Of Local Rule
            54.3 .............................................................................15

III.  CONCLUSION .................................................................................19

# TABLE OF AUTHORITIES

## CASES

Applied Information Sciences Corp. v. Ebay, Inc., 511 F.3d 966 (9th Cir. 2007) ..................................................................1, 11

Cairns v. Franklin Mint Co., 292 F.3d 1139 (9th Cir. 2002)....................................11

Cont'l Connector Corp. v. Cont'l Specialities Corp., 492 F. Supp. 1088 (D. Conn. 1979)..................................................................4, 7, 8

Doe v. Keala, 361 F. Supp. 2d 1171 (D. Haw. 2005)....................................................3

Gracie v. Gracie, 217 F.3d 1060 (9th Cir. 2000)........................................1, 4, 11, 12

Hensley v. Eckerhart, 461 U.S. 424 (1983)..............................................................11

Mutual of Omaha Ins. Co. v. Novak, 836 F.2d 397 (8th Cir. 1988) .........................8

Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955 (2d Cir. 1995) .........................................................................8

Stephen W. Boney, Inc. v. Boney Services, Inc., 127 F.3d 821 (9th Cir. 1997) ........................................................................1, 11

Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625 (9th Cir. 2005).........4

Taj Mahal Enter., Ltd. v. Trump, 745 F. Supp. 240 (D.N.J. 1990)....................9, 10

True Center Gate Leasing, Inc. v. Sonoran Gate, LLC, 427 F. Supp. 2d 946 (D. Ariz. 2006)..............................................................10

## STATUTES

15 U.S.C. § 1117 ....................................................................................1, 9, 11

## I.    <u>INTRODUCTION</u>

Despite suffering a $2.2 million jury verdict and a finding that the patent infringement was willful (and thus raising the prospect of treble damages), Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") claims that it is entitled to $100,000 in attorneys fees under 15 U.S.C. § 1117 ("*Section 1117*"), i.e. the Lanham Act, as the prevailing party.  Besides the fact that Ocean Duke's status as the "prevailing party" is very questionable, it must be noted that Section 1117 provides the court with discretion to award reasonable attorneys' fees only in "exceptional cases."  For the reasons discussed in detail below, Ocean Duke falls far short of establishing that (1) Plaintiff WILLIAM R. KOWALSKI's ("*Plaintiff*") Lanham Act claim was "unreasonable" or "baseless" and (2) $100,000 is a reasonable fee for defense of Plaintiff's Lanham Act claim.

## II.    <u>ARGUMENT</u>

### A.    <u>Ocean Duke Is Not Entitled To Attorneys' Fees Under Section 1117 Because Plaintiff's Lanham Act Claim Was Neither Groundless, Unreasonable, Vexatious, Nor Pursued in Bad Faith.</u>

A successful defendant can establish that a case is sufficiently "exceptional" only where it shows that the "plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." <u>Applied Information Sciences Corp. v. Ebay, Inc.</u>, 511 F.3d 966, 973 (9th Cir. 2007), <u>Stephen W. Boney, Inc. v. Boney Services, Inc.</u>, 127 F.3d 821, 827 (9th Cir. 1997).  "Exceptional" circumstances are interpreted narrowly in the Ninth Circuit.  <u>See</u> <u>Gracie v. Gracie</u>, 217 F.3d 1060,

1071 (9th Cir. 2000).

Ocean Duke contends that this case is "exceptional" because Plaintiff's Lanham Act claim was purportedly groundless and unreasonable. With absolutely no proof whatsoever, Ocean Duke falsely accuses Plaintiff of asserting the Lanham Act claim to "wrest from Ocean Duke a large pre-trial settlement[.]" Mot. at 4. Ocean Duke also argues that the Lanham Act claim was groundless because Plaintiff did not present evidence of damages, Plaintiff did not conduct a consumer survey, and the Court directed a verdict in Ocean Duke's favor on this claim.

Ocean Duke's accusation that Plaintiff's trademark claim was used as a "basis for claiming multi-million dollar damages under the Lanham Act" is contrived. As the Court will recall, at no time during settlement negotiations did Plaintiff demand any money amounts as compensation for Ocean Duke's violation of his "CRYOFRESH" trademark. See Yasunaga Decl. at ¶ 3, see, e.g., Exhibit "F" (email from M. Yasunaga to P. Marks, dated 9/21/07, indicating that Plaintiff's settlement request is based on the single lost profit patent infringement damages stated in Francom's damage report – see Ex. "E", and as the Court will recall, further settlement offers were very substantial reductions of this single lost profit patent infringement damage amount). This is supported by the fact that the record shows that Plaintiff made clear in his pretrial submissions that he was only seeking injunctive relief, not money damages, with respect to his trademark infringement

claim. See, e.g., Ex. "E" (Expert Report dated **July 16, 2007**) (explaining that

expert was retained only for purposes of providing "an opinion of damages arising

from the alleged infringement of U.S. patent 5,972,401[,]" not for trademark

infringement); Plt's Memo. in Opp. to Def's Mot. to Continue Trial, filed 11/15/07,

at 9, n. 3 ("With respect to Ocean Duke's argument regarding HISI's Lack of

Standing for trademark damages, **Plaintiffs point out that they request**

**injunctive relief with respect to the trademark claim, but are not seeking**

**separate trademark damages**.") (emphasis added), Plts' Objections to Ocean

Duke's Proposed Set of Jury Instructions, filed 11/30/07 at 16 ("**Not appropriate**

**to give OD-31 and OD-32 because Plaintiffs are not seeking damages with**

**respect to their trademark infringement claim.**") (emphasis added).  Ocean

Duke knew early on that Plaintiff was not seeking damages for trademark

infringement because Ocean Duke prevented such a possibility by failing to

provide in response to document requests any documents mentioning the name

"Cryo-Freeze" or any accounting or other information indicating the amount of

sales involving that name (the only documents in the case mentioning the name

"Cryo-Freeze" were photos of examples of box and package labels that Plaintiff

obtained on its own from a supermarket and cold storage facility) – Ocean Duke

should not be allowed to benefit from the lack of a trademark damage claim which

was caused by Ocean Duke's own failure to properly respond to discovery.

Furthermore, Ocean Duke has come forth with no proof whatsoever to support its offensive accusation. Its conclusory statements about Plaintiff's motivation to extract a large settlement are insufficient to show bad faith. See Gracie, 217 F.3d at 1071 ("Carley uses strong language to call into question Rorion's motives in filing the 'Gracie Jiu-Jitsu' counterclaim, but Carley fails to cite any specific record evidence to support his aggressive speculation regarding Rorion's state of mind. As noted by the district court, 'plaintiff's make no showing of any improper purpose in Defendants' filing the counterclaim for trademark infringement. They present no proof that Defendants acted in bad faith or filed the counterclaim unreasonably.'").

Ocean Duke's assertion that Plaintiff's trademark claim was groundless also fails. "A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625 (9th Cir. 2005) (citation omitted). Factors relevant to analyze the likelihood of confusion include, among others, "relatedness of the goods," "similarity of the marks," "evidence of actual confusion," and "marketing channels." Id. at 631 (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)); see also Cont'l Connector Corp. v. Cont'l Specialities Corp., 492 F. Supp. 1088, 1093-

94 (D. Conn. 1979) ("The best evidence that can be presented to satisfy the Lanham Act standard that defendant's trademark is 'likely to cause confusion or mistake or deceive purchasers' is proof of actual confusion. While such proof is not essential . . . its absence necessarily presents the plaintiff with the more difficult and complex task of satisfying the Lanham Act standard by indirect means. The next best evidence, and the best evidence in an indirect nature, is proof that the trademarks are confusingly similar, and that the defendant's goods are in direct competition with the plaintiff's. Such proof, while it does not demonstrate that actual confusion has occurred, makes the probability of such confusion quite substantial.") (internal citations omitted).

There is no dispute that Plaintiff owned a valid trademark registration for "CRYOFRESH." See Ex. "A" (USPTO Registration for CRYOFRESH/Trial Exhibit 62). As to consumer confusion, Plaintiff testified:

> Q.    And what was the name that you and your company Hawaii International Seafood, Inc., used to describe your brands tasteless smoke product?
>
> A.    Our brand was Cryofresh. So not only were they selling the tasteless smoke product, they were using the name Cryofreeze with the exception of the last 3 characters, it's the same as my brand.
>
> Q.    You think those names are similar?
>
> A.    Yes. And especially in conjunctive with tasteless smoke.
>
> Q.    You mean –

A.    Because people knew I invented tasteless smoke, they knew that was my process and they knew my brand Cryofresh.

Q.    And are you aware of any instances of confusion by people in the industry between Ocean Duke using Cryofreeze for its tasteless smoke tuna and other fish your company Hawaii International Seafood, Inc. using the name Cryofresh for tasteless smoke tuna and other fish?

A.    Yes.

Q.    Would you tell us about that?

A.    Well, we got – one time I got a call from one of my brokers an they're saying that I was selling this company my Cryofresh product.  And I said, No, I didn't sell them Cryofresh product.  And he says, Well, he's got the product and it's got Cryofresh right on it.  And I said, Well, go check it out.  So went and he checked it out, and he said, Oh, that wasn't Cryofresh; that was Cryofreeze.

Q.    And this was someone who was in the industry who would have more knowledge and expertise than a regular consumer, right?

A.    Yes.

Ex. "B" (Kowalski Trial Tr. – Day 2) at 36: 12-25, 37: 1-16.

Plaintiff's above testimony[1] clearly sets forth the basis of a colorable

---

[1] During cross-examination, Plaintiff also testified that:

Q.    And you haven't done any surveys to determine whether people, other than the one phone call you talked about, are actually confused, whether there's consumer confusion out there about Cryofresh versus Cryofreeze?  Would you agree with that?

A.    It has come up more than once.

Q.    But you haven't – I mean, the way these things work in trademark litigation is people go out and commission surveys to determine whether there's consumer confusion.  You haven't done that, have you?

trademark claim. In addition to the record evidence of actual confusion, the names "CRYOFRESH" and "CRYO-FREEZE" are inherently similar. <u>See</u> <u>Cont'l Connector Corp.</u>, 492 F. Supp. at 1096 ("If the number of letters is the same, and there is a significant overlap in the letters used, that is generally sufficient to sustain a claim of similarity."). Moreover, Plaintiffs' "CRYOFRESH" product directly competes with and is distributed through the same channels as Ocean Duke's "CRYO-FREEZE" product. <u>See</u> Ex. "C" (Giant label/Trial Ex. 103); Ex. "B" (Kowalski Tr. – Day 2) at 33: 11-25: 34: 1-3 (re Ahold specification and bid). Evidence that "trademarks are confusingly similar, and that the defendant's goods are in direct competition with plaintiff's[,] . . . while . . . not demonstrat[ing] that actual confusion has occurred, makes the probability of such confusion quite substantial." <u>Cont'l Connector Corp.</u>, 492 F. Supp. at 1093-94.

Ocean Duke argues, however, that the trademark claim was lacking in the "bona fides" because Plaintiff did not present evidence of lost sales or actual

---

A.    No, we have not.

Q.    And am I also correct that you have no evidence of even a single lost sale of your product because consumers were confused between Cryofresh and Cryofreeze?

A.    I found out since my last deposition that that one company that was confused about that I mentioned before that confused Cryofreeze with Cryofresh was buying product from Ocean Duke.

Ex. "B" (Kowalski Trial Tr. – Day 3) at 142: 9-25, 143.

damages. See Opp. at 4. This issue arose in the course of settling jury instructions when Plaintiff reiterated that he was seeking injunctive relief only. The Court correctly concluded that actual damages are not necessary to sustain a trademark claim. See Ex. "D" (Transcript of Defendant's Motions) at 15: 18-21 ("And I believe the parties, you know, are in agreement that you do not necessarily have to have proof of damages for a trademark claim to be sustained. The Court can – can order equitable relief."); see also Mutual of Omaha Ins. Co. v. Novak, 836 F.2d 397, 403 n.11 (8th Cir. 1988) ("'In trademark infringement, it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief.'"); Cont'l Connector Corp., 492 F. Supp. at 1094, 1098 (concluding that plaintiff entitled to injunctive relief but not money damages).

Ocean Duke also faults Plaintiff for not undertaking a consumer survey. In addition to being cost prohibitive, the law is clear that consumer surveys are not required to sustain a trademark infringement claim. See Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 964 (2d Cir. 1995) ("Although the absence of surveys is evidence that actual confusion cannot be shown, a trier of fact may still conclude that actual confusion exists in the absence of such evidence, so long as there is other evidence of actual confusion.") (citation omitted).

Finally, Ocean Duke relies on the court's dismissal[2] of Plaintiff's trademark claim and the absurd presumption that Plaintiffs somehow conceded the weaknesses of this claim. As to Ocean Duke's latter contention, Plaintiff is not aware of, nor has Ocean Duke cited, any procedural rule or authority requiring Plaintiff to move for judgment notwithstanding the verdict or for a new trial to preserve the right to appeal this decision.

Moreover, summary disposition of a trademark claim does not automatically warrant an attorneys' fees award under Section 1117. For example, in Taj Mahal Enter., Ltd. v. Trump, 745 F. Supp. 240 (D.N.J. 1990), notwithstanding its grant of summary judgment dismissing the trademark claim, the district court denied the defendant's request for attorneys' fees by reasoning as follows:

> Based on the history of the present litigation, we cannot conclude that this is an exceptional case. While plaintiff has failed to present more than a mere scintilla of evidence to support its claims and summary judgment will be entered in favor of defendants, it is clear that plaintiff has a colorable claim. There is no indication that plaintiff filed suit in bad faith or with the

---

[2] While Ocean Duke contends that the trademark claim was dismissed because the Court granted its Rule 50 motion, the record is clear that the dismissal was *sua sponte* given that Ocean Duke's Rule 50 motion was based on the failure to prove damages, and the Court decided correctly that injunctive relief could be granted without proof of actual damages. Compare Defendant's Motion For Judgment As A Matter Of Law Based On Failure To Prove Damages, filed 12/11/07, at 3-4, with Ex. "D" (Partial Transcript Defendant's Motion) at 16: 20-24 ("So that I find in looking at the elements of a trademark claim that there is really no evidence, certainly not sufficient evidence, on actual confusion and the other elements that would have to be established when you examine closely the instructions that are being proposed on the trademark claim.").

intention of placing economic coercion on defendants. Mere suspicions about plaintiff's motivations will not suffice. After all, plaintiff does have a registered service mark for the name TAJ MAHAL, and it has used that name in conjunction with its Indian restaurant for the past 25 years. As we have discussed above, a few instances of confusion between plaintiff's restaurant and defendants' hotel and casino have arisen. Due to these facts, it is difficult to characterize plaintiff's decision to file suit as unreasonable or vexatious; descriptions such as unrealistic and overly optimistic may be more apropos.

Id. at 253; see also True Center Gate Leasing, Inc. v. Sonoran Gate, LLC, 427 F. Supp. 2d 946, 950 (D. Ariz. 2006) ("The Court granted summary judgment in K-Zell's favor on True Center's Lanham Act claims, but did not conclude that they were groundless in the sense intended by the Lanham Act attorneys' fees provision. . . . . The alleged similarity between True Center and K-Zell gates, and True Center's contention that the marketing of such gates by K-Zell impliedly represented that K-Zell had invented the gates, provided at least a colorable basis for the claims.").

Plaintiff has a registered trademark for CRYOFRESH. See Exhibit "A". The similarity between Plaintiff's mark and Ocean Duke's CRYO-FREEZE is undeniable. The similar nature (and direct competition between) the CRYOFRESH and CRYO-FREEZE products, i.e. fish treated for color retention, and the similar channels of distribution used by Plaintiff and Ocean Duke alone make for, at the very least, a colorable trademark infringement claim. Moreover, the record contains evidence of actual confusion by persons in the industry who

presumably are more apt to discern the difference between Plaintiff's and Ocean Duke's products. In short, Plaintiffs' Lanham Act claim was not frivolous. <u>See</u> <u>Boney</u>, 127 F.3d at 827 ("SWB's case was not frivolous and raised debatable issues of law and fact."), <u>Applied Information Sciences Corp.</u>, 511 F.3d at 973. This case is not an exceptional case warranting an award of attorneys' fees under Section 1117.

**B.** **Assuming _Arguendo_ That Ocean Duke Is Entitled To Recover Attorneys' Fees Under The Lanham Act, Ocean Duke Has Not Sustained Its Burden Of Showing That $100,000 Is A Reasonable Fee.**

Assuming _arguendo_ that the Court determines that Ocean Duke is entitled to recover attorneys' fees under the Lanham Act, Ocean Duke must also establish the reasonableness of the amount of fees requested. <u>See Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1157 (9th Cir. 2002) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) for the proposition that "According to the 'lodestar' method developed by the Supreme Court, 'the most useful starting point for determining the amount of a reasonable free is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"); <u>see also Gracie</u>, 217 F.3d at 1070 ("'In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable."). As discussed in detail below, Ocean Duke has not properly substantiated its request for $100,000 in attorneys' fees.

1.    Twenty to Twenty Five Percent Is A Gross Over-Estimation Of The Actual Amount Of Attorneys' Fees Attributable To Ocean Duke's Defense Of The Lanham Act Claim.

Ocean Duke acknowledges that it is not entitled to recover fees for work done on non-Lanham Act claims, nor does it contend that differentiating between the non-Lanham Act claims and the Lanham Act claim is impossible. Indeed, there was little to no overlap in the legal and factual issues involved in the patent and trademark claims. See Yasunaga Decl. ¶ 4.

Instead, Ocean Duke disingenuously claims that 20% to 25% of the overall fees reported by its counsel is attributable to work on the Lanham Act claim. In support of its 20% to 25% estimation, Ocean Duke offers nothing but the conclusory assertion of its trial counsel:

13.    I believe that a 20% to 25% apportionment to the Lanham Act claims is appropriate under the circumstances, and that therefore a minimum fee award of $100,000 is therefore justified. I make this estimate based on having tried this case and having experienced all depositions, discovery, and trial proceedings first hand, and based thereon making a good faith estimate of the time spent by counsel dealing with trademark as opposed to patent matters.

Marks Decl., dated 1/24/08, at ¶ 13. Ninth Circuit law advises that the Court should not accept uncritically a party's representations concerning the time expended. See Gracie, 217 F.3d at 1070. Ocean Duke's counsel does not submit any proof to substantiate that any of the work done in connection with depositions, discovery or trial proceedings is rightfully allocated to the Lanham Act claim. In

Plaintiff's estimation, [3] Ocean Duke spent very little time on the trademark issues.

See Yasunaga Decl. ¶ 4.

Indeed, the invoices submitted by Ocean Duke's counsel confirm that the

time attributable to defense of the Lanham Act claim was minimal:

| Date | Attorney | Description | Time | Amount |
|---|---|---|---|---|
| 9/22/04 | JLK | Telephone conference with Mr. Lin re inquiries re purchases and sales and use of Kowalski's purported trademark; email local counsel re same | 0.40 | 100.00 |
| 10/29/04 | TLN | Review file and law re trademark issues | 0.50 | 162.50 |
| 12/08/07 | AKG | Legal research re Lahnham [sic] claims and prior art/obviousness issues; discuss same with P. Marks | 4.10 | 574.00 |
| 12/09/07 | AKG | Draft email to P. Marks analyzing Lanham act and trademark issues | 0.60 | 84.00 |
| 12/11/07 | AKG | Discuss trademark research issues with P. Marks | 0.20 | 28.00 |
| 12/12/07 | AKG | Legal research re trademark and right to jury trial issues; prepare cases for P. Marks review; various email to and from L. Ing re jury trial issues | 4.00 | 560.00 |
| 1/21/08 | EEB | Meet with PMarks re research on motion for attorney fees under the Lanham Act | 0.20 | 45.00 |
| 1/21/08 | PSM | Confer E Brady re research on attorneys' fees and invalidity motions; attention to preparation of motions | 1.50 | 592.50 |
| 1/23/08 | PSM | Review, analyze, and prepare post-trial motiosn for attorneys fees, invalidity | 3.30 | $1,303.50 |

---

[3] While Plaintiff agrees that the resources devoted to the trademark claim were minimal in comparison with the patent claim, Plaintiff strongly believes that the evidence at trial supported a meritorious claim for trademark infringement under the Lanham Act.

| | | and improper assignment; emails with Louise Ing re same; confer E Brady re research and draft motions | | |
|---|---|---|---|---|
| | | **TOTAL** | **14.8** | **$3,449.50** |

Notably, the entries that make up the $3,449.50 total amount include work on non-trademark matters, so the actual trademark amount would be less than $3,449.50 (e.g., the 9/22/04 entry deals, not just with trademark, but also purchases and sales – "Telephone conference with Mr. Lin re inquiries re purchases and sales and use of Kowalski's purported trademark;" the 12/8/07 entry deals, not just with trademark, but with the patent defenses of prior art and obviousness – "Legal research re Lahnham [sic] claims and prior art/obviousness issues"). Furthermore, most of the time spent on trademark by Ocean Duke was spent after the close of evidence on December 11 regarding the issue of whether a non-damage trademark claim is a matter a jury can decide (a question on which the Court ruled against Ocean Duke – see footnote 2) and on Ocean Duke's post-trial motion for fees, which should never have been brought since this is clearly not an "exceptional case" for the Lanham Act.

Thus, Ocean Duke provides substantiation for less than $3,449.50 in attorneys' fees for work done on the Lanham Act claim (including the instant Motion for Attorneys Fees). This equates to less than 1% of the overall fees reported by Ocean Duke's counsel. To the extent that Ocean Duke is entitled to

any attorneys' fees under the Lanham Act, a sum less than $3,449.50 (not $100,000) would be a reasonable amount.

<blockquote>
2.    Ocean Duke Has Not Properly Substantiated Its Fee Request Nor Fulfilled The Requirements Of Local Rule 54.3.
</blockquote>

Ocean Duke's fee request is deficient in many respects. First, Local Rule 54.3(d)(1) requires that the party requesting fees itemize the work performed organized by litigation phase, i.e. (A) case development, background investigation and case administration (includes initial investigations, file setup, preparation of budgets, and routine communications with client, co-counsel, opposing counsel and the court); (B) pleadings; (C) interrogatories, document production, and other written discovery; (D) depositions; (E) motions practice; (F) attending court hearings; (G) trial preparation and attending trial; and (H) post-trial motions. See LR 54.3(d)(1). The descriptions of work performed by the Alston Hunt Floyd & Ing firm is organized chronologically, with no attempt to comply with LR. 54.3(d)(1). See Ex. "C" to Motion. Descriptions of the work performed by the Neufeld Law Group appear to be organized by litigation phase, yet a cursory review of the entries placed under the categories "Motion Practice" and "Depositions" reveal that little attention was paid to proper categorization. For example, under the category of "Motion Practice," Ocean Duke includes numerous descriptions that appear to pertain to work done on discovery, depositions, budgeting, settlement conferences and other matters. See, e.g., Exhibit "B" to

Motion at 12, 13, 16.[4]   Under the heading "Depositions," description of work
pertaining to settlement conferences, motions and pretrial work appear.  See, e.g.,
Exhibit "B" to Motion at 20, 21.[5]

Second, many of the timekeepers for which Ocean Duke requests
reimbursement of fees are not identified, nor are these individual's billing rates
substantiated.  Ocean Duke provides no basis from which the Court and Plaintiff
can determine whether the fees attributable to the following timekeepers were
reasonable or necessarily incurred:  TYK, EEB, EN, YMS, AKG, NMK, CYH,
DKA, PA, ADS, DDP, EAH, HKC, BSN.

---

[4] The following time entries, listed under the heading "Motions," are examples:
"8/2/2006 – PSM Review correspondence from plaintiff's counsel re failure to
comply with document demands; e-mail to client re same," "8/31/2006 – PSM
Further work on responsive letter to plaintiff's counsel; telephone conference with
plaintiff's counsel re status of supplemental response to discovery," "10/2/2006 –
PSM Review discovery status; prepare e-mail to client re same," "10/26/2006 –
PSM Review e-mails from plaintiff's counsel re discovery demands; prepare e-
mail to client re same," "8/17/2007 – PSM Communications with W. Iwaoka re
deposition, e-mail to M Yasunaga re same," "9/10/2007 – PSM Conference call
with L Ing re Iwaoka deposition and strategies for settlement conference;
conference call with Dr. Iwaoka and L Ing in preparation for deposition."

[5] Representative entries improperly included under the heading "Depositions"
include, among others:  "10/16/2007 – Consult Local Rules and prepare pre-trial
statement; confer L Ing re same and re trial continuance; attention to filing of pre-
trial statement; phone call with patent counsel re Markman Motion; review e-mail
from client; attention to preparation of Markman Motion," "10/29/2007 – PSM
Confer T Neufeld re case status and settlement discussion; prepare and update
documentary mediation notebook for settlement conference; research re opposition
to Markman Motion."

Finally, many of the descriptions provided for services rendered by Ocean

Duke's counsel, in particular those reported by Timothy Neufeld (TLN), are not

sufficiently detailed (and/or placed in wrong categories) and should be reduced

accordingly. "Counsel should, at the very least, 'identify the general subject matter

of his time expenditure.'" Doe v. Keala, 361 F. Supp. 2d 1171, 1184 (D. Haw.

2005) (citation omitted). While too numerous to provide a complete list,[6] the

following descriptions are representative:

| Date | Atty | Description | Amount | Deficiency |
|------|------|-------------|--------|------------|
| CASE DEVELOPMENT and PLEADING | | | | |
| 9/21/04 | TLN | Review questions, e-mail re same | 65.00 | General subject matter not identified |
| 9/23/04 | TLN | Review email and correspondence | 65.00 | General subject matter not identified |
| 10/7/04 | TLN | Review file; call with counsel in Hawaii | 292.50 | General subject matter not identified |
| DISCOVERY | | | | |
| 11/24/04 | TLN | Review email | 65.00 | General subject matter not identified |
| 1/26/05 | TLN | Review correspondence and email | 245.00 | General subject matter not identified |
| 2/23/05 | TLN | Review case materials | 665.00 | General subject matter not identified |

---

[6] Ocean Duke has the burden of substantiating its fee request. Therefore, Plaintiff will not list each and every of the very many insufficient descriptions of services rendered by Ocean Duke's counsel.

| MOTION PRACTICE | | | | |
|---|---|---|---|---|
| 8/14/06 | TLN | Review open issues; call re same | 112.50 | General subject matter not identified |
| 10/27/06 | TLN | Review emails | 75.00 | General subject matter not identified |
| 1/22/07 | TLN | Calendar new dates | 120.00 | Administrative task, general subject matter not identified |
| DEPOSITIONS | | | | |
| 10/9/07 | TLN | Meetings with Mr. Lin, Mr. Lin and Mr. Marks; Call with Ms. Ing | 440.00 | General subject matter not identified |
| 10/29/07 | TLN | Calls with Mr. Lin; Meet with Mr. Marks; Prepare for settlement conference tomorrow | 1,120.00 | General subject matter of meeting with Mr. Marks not identified, settlement preparation improperly categorized as "depositions" |
| 11/1/07 | TLN | Review emails; call with Mr. Lin and Mr. Marks | 80.00 | General subject matter not identified |
| PRE-TRIAL AND TRIAL | | | | |
| 11/8/07 | TLN | Call from Mr. Altagen | 80.00 | General subject matter not identified |
| 11/16/07 | TLN | Call with Mr. Marks and Ms. Ing | 80.00 | General subject matter not identified |
| 11/19/07 | TLN | Calls re settlement; conference with P. Marks; review emails | 260.00 | General subject matter not identified re conference and emails |
| POST-TRIAL | | | | |
| 1/7/08 | TLN | Call with Mr. Lin and Mr. Cardille; draft email for Mr. Cardille | 280.00 | General subject matter not identified |
| 1/18/08 | EEB | Research | 67.50 | Specific issue/general subject matter of research not identified |
| 1/19/08 | GHG | Conf w/ Mr Marks; Legal Research; . . . . | 1,875.00 | Specific issue/general subject matter not identified |

To summarize, in the event that the Court permits Ocean Duke to recover attorneys' fees under the Lanham Act based on a percentage of the overall work done on the case, fees that have not been adequately substantiated by Ocean Duke should be reduced accordingly.

**III.    CONCLUSION**

For the foregoing reasons, Ocean Duke's Motion for Attorneys Fees Under the Lanham Act should be denied in its entirety. Ocean Duke fails to meet its burden of showing that this is an exceptional case. Moreover, the amount of fees requested are not properly substantiated and therefore should not be allowed.

DATED: Honolulu, Hawaii, March 5, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
ALLISON MIZUO LEE
Attorneys for Plaintiff
WILLIAM R. KOWALSKI

ImanageDB:843991.4                     19