```
                                                                          1

 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3
     WILLIAM R. KOWALSKI and      ) CIVIL NO. 04-00055BMK
 4   HAWAII INTERNATIONAL         )
     SEAFOOD, INC.,               ) Honolulu, Hawaii
 5                                ) December 6, 2007
              Plaintiff,          ) 8:59 a.m.
 6                                )
          vs.                     )
 7                                )
     OCEAN DUKE CORPORATION,      )
 8                                )
              Defendant.          )
 9   _____)

10
              TRANSCRIPT OF JURY TRIAL (DAY 2)
11         BEFORE THE HONORABLE BARRY M. KURREN,
              UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
       For the Plaintiff:        MILTON M. YASUNAGA
14                               ALLISON MIZUO LEE
                                 Cades Schutte LLP
15                               1000 Bishop St., Ste. 1200
                                 Honolulu, Hawaii  96813-4216
16
       For the Defendant:        LOUISE K.Y. ING
17                               Alston Hunt Floyd & Ing
                                 1800 ASB Tower
18                               1001 Bishop Street
                                 Honolulu, Hawaii  96813
19
                                 PAUL MARKS
20                               Neufeld Law Group
                                 360 East 2nd Street, Ste. 703
21                               Los Angeles, California 90012

22   Official Court              GLORIA T. BEDIAMOL, RPR, RMR
       Reporter:                 United States District Court
23                               P.O. Box 50131
                                 Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

**EXHIBIT "B"**

33

1  treated with tasteless smoke from wood?
2  A    Yes.  If you'll read the line above or couple lines above,
3  it says, "Product must be free of supplemental processing with
4  additional carbon monoxide."
5  Q    This line that I'm --
6  A    They wanted to make sure it was genuine tasteless smoke
7  without any carbon monoxide added.
8  Q    And did -- of course, your company's products fulfilled
9  this -- met this specification, right?
10 A    Yes.
11 Q    And so Ahold was a customer of your company, right?
12 A    Yes.  Prior to this bid, we were selling Ahold our
13 product.
14 Q    And then Ahold was familiar with your product and your
15 invention, right?
16 A    Yes, we had very successful business with them prior to
17 this bid.
18 Q    And Ahold specified expressly your product treated with
19 your invention, right?
20 A    Yes, what they asked for in this was exactly the same
21 product they were buying from me.
22 Q    And did there ever come a time when somebody took your
23 Ahold customer from you?
24 A    Yes.  After this bid went out, we were notified that
25 somebody else got the bid and that our business with them

1   ended.
2   Q   Who was that somebody else, as far as you know?
3   A   That was Ocean Duke.
4       MR. YASUNAGA:  May I have Exhibit 106 handed to the
5   witness for identification, please.
6   BY MR. YASUNAGA:
7   Q   Mr. Kowalski, is Exhibit 106 information about Ocean Duke
8   that anyone can access off of the internet?
9   A   Yes, this is a report off the internet.
10  Q   It's an internet service called Contact Direct?
11  A   Contact Direct.
12  Q   And does it give information about the brands that Ocean
13  Duke sells its products under?
14  A   Yes, it does.
15      MR. YASUNAGA:  Your Honor, I would like to move
16  Exhibit 106 into evidence.
17      MR. MARKS:  No objection Your Honor.
18      THE COURT:  106 is admitted.
19      (Exhibit 106 was received in evidence.)
20  BY MR. YASUNAGA:
21  Q   Again, to speed things along, let's see, okay, here it
22  says on the top, "contact-direct-dot-com."  Says "Company,
23  Ocean Duke Corporation."  Then it says the brands that Ocean
24  Duke uses.  Black Tie and Paradise, right?
25  A   Yes, that's correct.

```
 1          MR. YASUNAGA:  Your Honor, I'd like to move 103 into
 2   evidence.
 3          THE COURT:  Any objection?
 4          MR. MARKS:  No objection, Your Honor.
 5          THE COURT:  103 is admitted.
 6              (Exhibit 103 was received in evidence.)
 7   BY MR. YASUNAGA:
 8   Q    Now, at the top it says, "Paradise."  Whose brand is that?
 9   A    Paradise is Ocean Duke's brand.
10   Q    And then that next name, what is that?
11   A    The next name is Cryofreeze.
12   Q    And what was the name that you and your company Hawaii
13   International Seafood, Inc., used to describe your brands
14   tasteless smoke product?
15   A    Our brand was Cryofresh.  So not only were they selling
16   the tasteless smoke product, they were using the name
17   Cryofreeze with the exception of the last 3 characters, it's
18   the same as my brand.
19   Q    You think those names are similar?
20   A    Yes.  And especially in conjunction with tasteless smoke.
21   Q    You mean --
22   A    Because people knew I invented tasteless smoke, they knew
23   that was my process and they knew my brand Cryofresh.
24   Q    And are you aware of any instances of confusion by people
25   in the industry between Ocean Duke using Cryofreeze for its
```

1    tasteless smoke tuna and other fish your company Hawaii
2    International Seafood, Inc. using the name Cryofresh for
3    tasteless smoked tuna and other fish?
4    A    Yes.
5    Q    Would you tell us about that?
6    A    Well, we got -- one time I got a call from one of my
7    brokers and they're saying that I was selling this company my
8    Cryofresh product.  And I said, No, I didn't sell them
9    Cryofresh product.  And he says, Well, he's got the product and
10   it's got Cryofresh right on it.  And I said, Well, go check it
11   out.  So went and he checked it out, and he said, Oh, that
12   wasn't Cryofresh; that was Cryofreeze.
13   Q    And this was someone who was in the industry who would
14   have more knowledge and expertise than a regular consumer,
15   right?
16   A    Yes.
17   Q    I want to -- I guess I don't need to blow up this name
18   "Giant" here, but I want to blow up the description that's on
19   the label for this Paradise Ocean Duke Cryofreeze tuna steak,
20   this part here.  And that was the description that was on the
21   Ocean Duke product that you purchased?
22   A    I thought that was a description that was on the receipt
23   printed by Giant, not on the product, but they had actually
24   printed this on the receipt.
25   Q    That's what Giant had been led to believe --

1  microphone closer to you when you talk.
2           THE WITNESS: I'm sorry.
3  BY MR. MARKS:
4  Q    Do you know whether somebody else out there has the
5  trademark Cryofreeze?
6  A    I don't know.
7  Q    Ocean Duke does not use your trademark Cryofresh, correct?
8  A    As far as I know.
9  Q    And you haven't done any surveys to determine whether
10 people, other than the one phone call you talked about, are
11 actually confused, whether there's consumer confusion out there
12 about Cryofresh versus Cryofreeze? Would you agree with that?
13 A    It's come up more than once.
14 Q    But you haven't -- I mean, the way these things work in
15 trademark litigation is people go out and commission surveys to
16 determine whether there's consumer confusion. You haven't done
17 that, have you?
18 A    No, we have not.
19 Q    And am I also correct that you have no evidence of even a
20 single lost sale of your product because consumers were
21 confused between Cryofresh and Cryofreeze?
22 A    I found out since my last depositions that that one
23 company that was confused about that I mentioned before that
24 confused Cryofreeze with Cryofresh was buying product from
25 Ocean Duke.

```
 1   Q    Okay.  Your last deposition was in November of this year,
 2   right?
 3   A    Yes.
 4   Q    It was just about a month ago, right?
 5   A    Yeah.  I made a phone call.
 6   Q    You made a phone call after that, right?
 7   A    Yes.
 8   Q    But in the eight years between the time -- I shouldn't say
 9   eight -- seven years, almost eight years between the time that
10   you sent the demand letter to Ocean Duke and the time I took
11   your deposition last week, is that correct, that you didn't
12   have any evidence of a single lost sale because people were
13   confused between Cryofresh and Cryofreeze?
14   A    I don't think I would say I didn't have any evidence.
15   Maybe I would say I don't have any proof.
16   Q    That's what you told me in the deposition last month,
17   right?
18   A    Yes.
19   Q    Okay.
20        MR. MARKS:  Thank you very much, Mr. Kowalski.  I told
21   you I wasn't going to be as long as Mr. Yasunaga.
22        THE WITNESS:  Thank you very much.
23        THE COURT:  Redirect?
24        MR. YASUNAGA:  Yes, Your Honor.  Could --
25        THE COURT:  How much --
```