# Milton Yasunaga

**From:** Milton Yasunaga
**Sent:** Friday, September 21, 2007 2:06 PM
**To:** 'Paul S. Marks'
**Cc:** LOUISE ING
**Subject:** Settlement offer to Ocean Duke -- Confidential settlement communication - Rule 408 applies



545265_4.DOC (45 KB)

ONFIDENTIAL SETTLEMENT COMMUNICATION -- Rule 408 applies.

Enclosed is a settlement offer from Plaintiffs, in the form of a proposed settlement agreement.

It should be noted that three years have passed since the 2004 mediation with Ocean Duke. That long period is significant because (1) it constitutes three more years of clearly willful infringement by Ocean Duke and three more years of litigation expense for Plaintiffs and (2) Ocean Duke would now be one of the last companies to settle rather than one of the first. Originally, a sweetheart deal was contemplated with Ocean Duke in order to reward Ocean Duke for setting a precedent for the rest of the industry and to give Plaintiffs a warchest to go after other infringers, but now such sweetheart deals have already been given to others, and Ocean Duke is now one of the last not to settle, and so has become an entity that Plaintiffs must be, and are, prepared to take all the way through trial.

Thus, what it will take to settle this case is justifiably different than what might have settled it three years ago. Nevertheless, Plaintiffs will still attempt to settle. Although the cash payment amount is larger than what was discussed three years ago, there have been three additional years of infringment and legal expense since then, and the minimum royalty provision that was in our last offer has been dropped, so the payment amount in the current offer is reasonable and justified.

The enclosed settlement documents were created working from the documents used for our settlement with Hilo Fish, with improvements generated in our settlement with Phillips Foods. The documents thus include protections that were incorporated at the insistence of Hilo and its attorneys and the mediator appointed by the court for the Hilo settlement, and by Phillips and its attorneys, so they should be acceptable to Ocean Duke.

To make the settlement documents comprehensive and specific -- so the licensee knows exactly what the deal is, but to also make the key terms easy to spot and simple to read, the settlement documents consist of a very short basic agreement that contains the key terms a chief executive would be most interested in seeing, and 4 detailed appendices that contain all the smaller, "attorney-type" details and technicalities, such as boilerplate settlement terms, details that should be in a license to make it enforceable, details about auditing, dispute resolution, how licensee is also entitled to foreign licenses when Kowalski gets licenses in foreign countries, how Ocean Duke's supplier and buyer are protected from infringement claims by Kowalski for any fish upon which Ocean Duke has already paid royalty, etc.

Attached to this e-mail is the basic agreement of the key terms. It basically says that the parties will settle and Kowalski will grant Ocean Duke a license with a royalty rate for tuna, yellowtail and swordfish of 8 cents a pound, the parties will release their claims against each other, and Ocean Duke will pay for the past by paying the amount stated in the report of expert David Francom for single lost profit damages. This amount leaves out approximately $2.5 million of excess finance cost damages stemming from the infringement and approximately $2.5 million of prejudgment interest, plus it also leaves out the trebling of the damages, plus attorneys' fees and costs. Thus, the proposed settlement amount is a significant reduction of the over $25 million that Plaintiffs feel should be awarded at trial. Furthermore, as mentioned, the minimum royalty requirement that was in our offer three years ago has been dropped.

1

Exhibit "F"

    Paragraph 4 points out that, although the parties may find it convenient to have a signed, separate license document, the settlement agreement and appendices contain all the necessary terms and so the signing of the settlement will create a binding deal -- it contains all the terms, so both sides will be bound even if a future separate license document is not signed.  Paragraph 5 says that Ocean Duke agrees not to challenge the patent in the future -- Bill is giving up substantial claims for the past (the law allows him to get up to three times gross margin, without any deduction for overhead, plus attorneys' fees and interest, plus the additional consequential damages of higher finance costs), so he should at least get the piece of mind that Ocean Duke won't try to challenge the patent after he's given up his valuable claims for only a fraction of what he could win at trial.  Paragraph 6 provides for the entry of a consent judgment and injunction -- this is provides court protection for enforcing the settlement agreement.  Hilo and Phillips both agreed to this kind of consent judgment and injunction, so Ocean Duke should as well.  Paragraph 7 covers Ocean Duke stopping use of the name "Cryofreeze".

    The appendices will follow via other email.