CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
ALLISON MIZUO LEE      7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., Plaintiffs, v. OCEAN DUKE CORPORATION, Defendant. | CIVIL NO. 04-0055 BMK<br><br>PLAINTIFF WILLIAM R. KOWALSKI'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR PREJUDGMENT INTEREST, (NON-TAXABLE) COSTS UNDER 35 U.S.C. § 284, AND POST-JUDGMENT INTEREST UNDER 28 U.S.C. § 1961; DECLARATION OF MILTON M. YASUNAGA; DECLARATION OF WILLIAM R. KOWALSKI; EXHIBITS "O" – "S"; CERTIFICATE OF SERVICE<br><br>TRIAL: December 4 - 13, 2007 |
|---|---|

PLAINTIFF WILLIAM R. KOWALSKI'S
REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR
PREJUDGMENT INTEREST, (NON-TAXABLE) COSTS
UNDER 35 U.S.C. § 284, AND POST-JUDGMENT INTEREST
UNDER 28 U.S.C. § 1961

ImanageDB:843187.2

## I. INTRODUCTION

Defendant OCEAN DUKE CORPORATION ("***Ocean Duke***") does not contest that Plaintiff WILLIAM R. KOWALSKI's ("***Plaintiff***") is entitled to both post-judgment and prejudgment interest, nor does it challenge that prejudgment interest should be calculated by compounding interest on an annual basis. Thus, the only remaining issues are: (1) the appropriate interest rate to use in calculating prejudgment interest and (2) whether Plaintiff is entitled to recover the fees of his expert witness on damages as a "cost" under 35 U.S.C. § 284 ("***Section 284***"). For the reasons discussed in detail below, prime plus 2% is a conservative proxy to measure the harm suffered by Plaintiff as a result of the loss of royalty payments that Ocean Duke should have paid over the past eight years. Moreover, because the purpose of Section 284 is to make the patentee whole, Plaintiff should be allowed to recover his expert witness fees.

## II. ARGUMENT

### A. The Conservative Rate of Prime Plus 2 Percent Should Be Used To Calculate Prejudgment Interest

Plaintiff and Ocean Duke agree that the purpose of an award of prejudgment interest under Section 284 is to place Plaintiff in as good a position as he would have been had Ocean Duke entered into a reasonable royalty agreement. Compare Ocean Duke's Opp. at 4 with Memo. in Support of Mot. at 2, 3. Ocean Duke's proposed rate presumes that Plaintiff would have put all of the royalty payments

ImanageDB:843187.2

received from Ocean Duke into a risk free investment accruing interest at the treasury bill rate.

The record is clear, however, that Plaintiff would not have invested Ocean Duke's royalty payments in this manner. As of December 21, 2000, and continuing through April 2007, Plaintiff was obligated to pay his company Hawaii International Seafood, Inc. ("**HISI**") the patent royalties that he received net of any advances made by HISI to him. See Ex. "O" (Management Services Agreement) at ¶ 5; Ex. "P" (Kowalski Depo.) at 271: 23-25, 272: 1-12; see also Kowalski Decl. ¶ 2. Infringement of Plaintiff's patent by Ocean Duke financially weakened Plaintiff and his 100% owned Subchapter S corporation HISI. As explained in the Motion, in 2000, short on funds, Plaintiff was forced to borrow money in his personal capacity and give a mortgage on his residence and a lien on his patent at an aggregate effective rate of interest that greatly exceeded prime plus 2 percent. See Kowalski Decl. ¶ 3. In fact, the average rate of 14% referenced in the Motion is much lower than the actual rate that Plaintiff has paid because it does not include Plaintiff's obligation under the Loan Agreement to pay 5% of royalties and patent lawsuit recoveries. See Kowalski Decl. ¶ 5.

Ocean Duke urges the Court to adopt its myopic view that HISI should not be considered or even mentioned in the Motion because HISI "lost on all claims brought." Opp. at 2-4. But, HISI is highly relevant to the position that <u>Plaintiff</u>

would have been in had Ocean Duke entered into a reasonable royalty agreement because the record is clear that Plaintiff would have put the royalty payments received from Ocean Duke into his company. As explained, because Ocean Duke wrongfully refused to pay Plaintiff royalties from 1999 through the current period, Plaintiff was forced to borrow funds in his personal capacity at very high interest rates to compensate for the shortfall because HISI could not obtain loans on its own and Plaintiff did not have any spare cash and could not qualify for conventional loans at market rates. See Kowalski Decl. at ¶ 3.

While Ocean Duke says that it should not be punished for Plaintiff's business failings, see Opp. at 5, it conveniently overlooks the fact that its failure to pay royalties for the past eight years, all the while pocketing what it admits was nearly $4 million in profit from just 1999 to 2005 alone (not including 2006 through current, and not including the fact that the actual marginal net profits were much higher because the $4 million admitted number appears to have been arrived at by Ocean Duke by improper deduction of "overhead and expense"[1]) by selling

---

[1] For example, the chart, Trial Ex. 193, a copy of which is attached as Exhibit "P" to Plaintiff's Motion for Enhanced Damages, contains a column for deducting "cost of goods," but then also contains a further column for deducting in addition "overhead and expenses." Overhead is not properly deducted from sales revenue for infringing product in determining the profits made from the infringement because the infringer would have had those fixed expenses in any event (Ocean Duke indicated the infringing product was only a small fraction of its overall sales – see Exhibit "Q" indicating 7 million admitted pounds of infringing product from 1999-2005 versus annual overall sales of 125 million pounds), and

the infringing product, has not only brought about that business failing, but caused Plaintiff to put his personal residence and patent rights at risk. Calculating the interest owed to Plaintiff by using prime plus 2 percent, a rate which is much lower than the actual cost of the loss of money over time, is not punitive, but required to put Plaintiff closer to the position that he would have been in if Ocean Duke had entered into a reasonable royalty agreement. Thus, in this case, rejection of the Treasury Bill rate is necessary to fulfill the purpose of prejudgment interest. See Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21 (D. Del. 1993) ("In this case, the cost of borrowing money – and not the rate of return on investing money

---

therefore using sales revenue of the infringing products to cover fixed overhead would be an improper benefit to the infringer which increases its overall profits. See, e.g., Abbot Laboratories v. Unlimited Beverages, Inc., 218 F.3d 1238 (11th Cir. 2000). Aside from the fact that overhead should not be deducted at all to determine the wrongful profits, Ocean Duke never identified the expenses that went into the "overhead and expenses" category, which is a further reason such deductions are improper, and thus understated the actual profit Ocean Duke received from the infringing product. See, e.g., Exhibit "R," the cover page and page 19 of damage expert Francom's report stating that "Ocean Duke does not specify what expenses it deducted to determine its profit shown on its "Annual Sales of Treated Fish." [Trial Exhibit 193, a copy of which is attached as Exhibit "P" to Plaintiff's Motion for Enhanced Damages]. As a result, it is not clear whether Ocean Duke's profit summary is for net profit, profit after taxes, or something else." and, at trial, Roger Lin admitted that he did not know the overhead costs deducted from sales revenue to arrive at the admitted $4 million net profit figure for 1999 to 2005 (see Exhibit "Q" (Trial Tr of Roger Lin's December 7, 2007 testimony in which he admitted that cost of buying the fish was deducted under the column " cost of goods" and that, as for additional deductions under the heading "overhead and expenses," he did not know all of the expenses deducted under that heading).

– provides a better measure of the harm Mars suffered as a result of the loss of the use of money over time."), Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995), IMX Inc. v. Lending Tree, LLC, 469 F. Supp. 2d 203, 227 (D. Del. 2007).

Given the above facts, Laitram Corp. v. NEC Corp, 115 F.3d 947, 955 (Fed. Cir. 1997), cited by Ocean Duke in its Opposition, actually supports Plaintiff's position. In Laitram, the Federal Circuit affirmed the district court's use of the Treasury Bill rate because "[t]he district court found that there was no evidence that Laitram borrowed money at a higher rate, what that rate was, or there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of NEC's infringement." 115 F.3d at 955. Here, there is strong evidence that: (1) Plaintiff borrowed money at a much higher rate than the Treasury Bill rate, (2) Plaintiff paid more than 14% in annual interest on the borrowed funds, and (3) Plaintiff would not have had to borrow the amounts owed by Ocean Duke at the high interest rate if Ocean Duke had made reasonable royalty payments over time, or alternatively, could have paid down the principal balance owed on his personal loan or on HISI's high interest loan from Moon Marine, for which Plaintiff signed a personal guaranty, and avoided at least a corresponding amount of interest at the high rates. See Kowalski Decl. at ¶¶ 3-5. This evidence presents a compelling case for using at least prime plus 2 percent to

calculate prejudgment interest, a rate that when compared with the Treasury Bill rate proposed by Ocean Duke, more closely reflects (but actually still understates) Plaintiff's actual losses. See id., Bio-Rad Lab., Inc. v. Nicolet Instr. Corp., 807 F.2d 964, 969 (Fed. Cir. 1986), Muniauction, Inc. v. Thomson Corp., 2 F. Supp. 2d 477, 484 (W.D. Pa. 2007) ("Awarding plaintiff prejudgment interest at its borrowing rate compensates plaintiff for what it actually lost as a result of defendant's infringement. Had defendants not infringed, and plaintiff not been forced to borrow such money, plaintiff would not have incurred such interest costs over the last six years.").

Additionally, prime plus 2 percent is a fair and reasonable interest rate because it is the standard lending rate in the industry. The court in In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 831 F. Supp. 1354 (N.D. Ill. 1993), aptly analogized an infringer's failure to make reasonable royalty payments to a high-risk and involuntary loan by the patentee. See id. at 1394; see also Mot. at 5-8. Plaintiff, in effect, was forced to loan Ocean Duke $2.2 million over the course of seven to eight years. While the cost to Plaintiff of this high-risk involuntary loan was much higher than prime plus 2 percent, Ocean Duke should have no qualms about paying Plaintiff interest at the rate that a willing commercial lender would have charged.

In summary, the Treasury Bill rate proposed by Ocean Duke does not serve the purpose of prejudgment interest "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." In calculating the amount of prejudgment interest owed by Ocean Duke, the Court should use prime plus 2 percent, or a higher interest rate.

### B. Plaintiff Is Entitled To Recover His Expert Witness Fees As A "Cost" Under Section 284.

In addition to prejudgment interest, Section 284 also provides for "costs." Expert witness fees in excess of the statutory amount are compensable as a "cost" under Section 284. See, e.g., Eldon Indus., Inc. v. Vanier Mfg, Inc., 1990 WL 160220 *1 (C.D. Cal. Jan. 8, 1990).

Contrary to Ocean Duke's contention, Eldon did not rely on Mathis v. Spears, 857 F.2d 749 (Fed. Cir. 1988), as a basis for awarding the patentee its expert witness fees under **Section 284**. Mathis clearly evaluated the propriety of awarding expert witness fees as a component of attorneys' fees under 35 U.S.C. § 285 ("*Section 285*"). In Eldon, the district court specifically held:

> The matter presently before the Court however involves the awarding of expert witness fees as costs, and thus 35 U.S.C. § 285 cannot be relied upon as the Congressional provision that allows expert witness fees in excess of the $30-per-day specified in § 1821(b). For the present case, another statutory provision must be considered.
>
> In 35 U.S.C. § 284 Congress has allowed the court to include "costs as fixed by the Court" in its assessment of damages. Furthermore, the section's mandate is to "award [the prevailing] claimant damages adequate to

> compensate for the infringement." Part of the damages of the infringement are the expenses incurred in litigation necessary to protect the patent rights. Expert witnesses are practically a requirement in patent litigation. Since there is no reference to the allowed amounts of § 1821(b), it would appear that Congress has provided for expert fees as costs to not be bound by the $30-per-day limitation. The Court may therefore assess expert fees in excess of $30 per diem.

1990 WL 160220 at *2.

Calculation of the damages owed to Plaintiff resulting from Ocean Duke's infringement was not a simple task and the jury clearly relied on Mr. Francom's testimony regarding the appropriate amount of reasonable royalties that Ocean Duke should pay Plaintiff for its infringement of Plaintiff's patent. Mr. Francom's billing invoices, submitted by Plaintiff in support of its request, do not indicate that a substantial amount of time was spent to calculate lost profit damages. Ocean Duke's failure to produce items such as its financial statements, accounting reports, tax returns, and 2006 and 2007 sales figures for the infringing products in 2006 and 2007, while providing sales figures that did not square with certain invoices produced, unnecessarily increased Mr. Francom's burden, leading to increased fees. See Mot. at 12. As such, Ocean Duke should compensate Plaintiff for the full amount of Mr. Francom's fees as a "cost" under Section 284.

### III. CONCLUSION

For the foregoing reasons, the Motion should be granted. Prejudgment interest should be calculated by using the prime rate plus 2 percent compounded

annually for a total of $689,085.80. Plaintiff should also be awarded $44,481.00 as a "cost" under Section 284 for the fees of his expert witness on damages.

DATED: Honolulu, Hawaii, March 5, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
ALLISON MIZUO LEE
Attorneys for Plaintiff
WILLIAM R. KOWALSKI