THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

WILLIAM R. KOWALSKI and

HAWAII INTERNATIONAL SEAFOOD, INC.

v.

OCEAN DUKE CORPORATION

Case No.: CV0400055 DAE BMK

EXPERT REPORT

by

DAVID B. FRANCOM, MS, PHD (ABD)

July 16, 2007

SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**EXHIBIT R**

*Hawaii International v. Ocean Duke*
*Expert Report of David B. Francom*
*July 16, 2007*

*Subject to a Protective Order*
*Highly Confidential-Attorneys' Eyes Only*

the '401 patented technology. I also take into account existing licenses in the seafood industry.[56] In addition, I consider the availability of substitutes to the '401 patented technology. I understand that during the infringement period Ocean Duke had no available and acceptable non-infringing alternatives to the patented invention.

51. Another consideration in establishing an initial starting point for the hypothetical negotiation is Ocean Duke's anticipated profits generated by sales of the licensed product. An accepted convention among licensing professionals is that, at least as a starting point for negotiation, the licensor would receive approximately 25% of expected future benefit and the licensee approximately 75%. I am not aware that Ocean Duke has produced any information regarding its anticipated profit margin for the alleged infringing product. However, Ocean Duke did provide a summary of profit by species for years 1999 through 2005.[57] Nevertheless, Ocean Duke does not specify what expenses it deducted to determine its profit shown on its "Annual Sales of Treated Fish." As a result, it is not clear whether Ocean Duke's profit summary is for net profit, profit after taxes, or something else. If Ocean Duke produces more information, I reserve the right to update my damage analysis as requested.

53. Another approach to establishing a reasonable royalty rate is the analytical method. This method considers the excess profits earned on products using the patented invention compared to the normal industry profit. Licensing professionals often consider the excess profit as the portion attributable to the patented invention and, therefore, a useful beginning point for royalty rate negotiations.

54. Although I do not have industry profit information, I understand that the additional profit Ocean Duke enjoyed from the use of the '401 patented invention is significant. Ocean Duke's profit summary

---

[56] My search for comparable licenses led to a summary of one fish industry license between Acadiana Processors Inc. and Louisiana State University.

[57] However, my analysis and calculations show that Ocean Duke's invoices for 2003 reflect higher pounds of treated fish sold than does its summary.