CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
ALLISON MIZUO LEE        7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-0055 BMK <br><br> PLAINTIFF WILLIAM R. KOWALSKI'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR ENHANCED DAMAGES UNDER 35 U.S.C. § 284; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF MILTON YASUNAGA; EXHIBITS "Z"- "AC"; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5; CERTIFICATE OF SERVICE <br><br> TRIAL: December 4 - 13, 2007 |

PLAINTIFF WILLIAM R. KOWALSKI'S
REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR ENHANCED DAMAGES UNDER 35 U.S.C. § 284

ImanageDB:834853.5

## I. INTRODUCTION

Defendant OCEAN DUKE CORPORATION ("***Ocean Duke***") opposes Plaintiff WILLIAM R. KOWALSKI's ("***Plaintiff***") Motion for Enhanced Damages Under 35 U.S.C. § 284 (the "***Motion***"), arguing initially that Plaintiff is not entitled to treble damages because it was not pled, but that argument is clearly false (and its assertion supports enhanced damages). The Complaint states:

> 23. ... **Defendant's infringement of the '401 Patent** has been and continues to be deliberate and willful and Defendant did not respond in good faith to the notice of infringement under 35 U.S.C. § 287, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285, **and entitling Plaintiffs to treble damages** ....

Ex. "A" of Def.'s Opp. to Mot.

As shown below, Ocean Duke's analysis of the Read Factors fares no better.

## II. ARGUMENT

Ocean Duke suggests, without authority, that In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) ("***Seagate***"), alters in its favor the Read Factor analysis. Plaintiff is unaware of any authority suggesting that the change in the willful infringement standard in Seagate affects the Read Factor analysis. Moreover, the jury found that Ocean Duke willfully infringed the Kowalski Patent under the more onerous standard set forth in Seagate, which suggests that enhanced damages is even more appropriate because the higher burden has been met.

1.     **Deliberate copying by Ocean Duke ("Factor 1").**

Ocean Duke's arguments – 1) Shih's invention predates Plaintiff's,[1] 2) the Shih and Kowalski processes differ, 3) the trademark claim was unsuccessful and 4) the Ahold evidence is irrelevant - miss the mark. The proper analysis focuses **Ocean Duke's** (not Shih or PT Intisamudera Citra Perkasa's ["*PT*"], e.g., Domestic Fabrics Corp. v. Sears, Roebuck & Co., 326 F. Supp. 2d 694, 702 (E.D.N.C. 2004) (focusing on importer's, not Asian vendors', conduct in decision to treble damage award)) culpability and deliberate copying of the CRYOFRESH product, i.e. the commercial embodiment of the Kowalski Patent.  The Read Corp.

---

[1]   Relying solely on Duke Lin's vague and self-serving deposition testimony, Ocean Duke claims that Shih's invention pre-dated Plaintiff's. As explained, Shih's actions are not the focus of Factor 1. In any event, Duke's testimony, at best, supports that Shih was processing and selling fish using a CO machine in 1996. Shih, however, did not apply for his patent until August 2000, nearly a year after Plaintiff's patent issued in October 1999. Duke's testimony is questionable at best, because if true, Shih's patent violates the on sale bar that prohibits issuance of a patent if the invention is commercially used for more than a year before the application. 35 U.S.C. §102(b). Furthermore, **even assuming arguendo Shih invented tasteless smoke first, that would not be a defense because patent law gives priority to one who first comes forward to apply for a patent and thereby share with the public the details of how to practice the process (albeit for a royalty until the patent runs out) over someone who invents the process earlier but chose to keep the details for practicing the process non-public rather than apply for a patent. E.g., W.L. Gore & Associates v. Garlock, Inc.,** 721 F.2d 1540, 1550 (Fed. Cir. 1983)("Early public disclosure is a linchpin of the patent system. **As between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter.**").

v. Portec, Inc., 970 F.2d 816, 827 n.7 (Fed. Cir. 1992) ("'Ideas' and 'design' would encompass, for example, copying the commercial embodiment, not merely the elements of the patent claim.").

The evidence shows that Ocean Duke deliberately copied Plaintiff's CRYOFRESH product. Plaintiff openly promoted and developed a market for his product that he labeled with the trademark "CRYOFRESH" in early 1997. Ex. "B" to Motion (3/28/07 memo re Cryofresh label). Duke Lin testified at trial that, about a year later, Ocean Duke began placing the "CRYO-FREEZE" label on its products imported from Shih's plant in 1998. Ex. "Z" (Duke Lin Trial Tr.) at 41: 18-22 ("Q. And do you know when Ocean Duke started using the name Cryofreeze? A. I don't remember exactly the date. Q. Well, do you have an approximation? A. **Somewhere around 1998 or something.**") (emphasis added). The similarity between Plaintiff's mark "CRYOFRESH" and Ocean Duke's "CRYO-FREEZE," placed on directly competing products, regardless of the outcome of the trademark claim, strongly suggests that Ocean Duke deliberately sought to mimic Plaintiff's product. Applera Corp. v. MJ Research Inc., 372 F. Supp. 2d 233, 236 (D. Conn. 2005). That Ocean Duke fulfilled the requirements of Ahold's specification for "Frozen Tasteless Cold Smoked (wood origin) Processed Yellowfin Tuna Steaks," Ex. "E" to Motion at 7, shows that Ocean Duke's copying of Plaintiff's CRYOFRESH product was commercially successful.

While Ocean Duke proclaims that the "reckless disregard" standard in Seagate was not met, the jury disagreed. The Court's willful infringement instruction, which Ocean Duke proposed on the basis that it reflected the change in law effected by Seagate, Def's "Corrected and Updated Jury Instr. No. 12," Objections to Plt's Proposed Jury Instructions, filed 12/11/07, instructed the jury to consider "[w]hether Ocean Duke deliberately copied a product of Kowalski covered by the patent." Jury Instr. No. 27, filed 12/13/07. The verdict indicates that the jury evaluated the above evidence and determined that Ocean Duke deliberately copied Plaintiff's CRYOFRESH product. Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477, 486 (W.D. Pa. 2007) ("The jury's finding of willful infringement could indicate that the jury believed that plaintiff had proven deliberate copying. On balance this factor weighs in favor of enhancing damages.").

    2.    **No Good Faith Investigation Or Belief Of Non-Infringement ("Factor 2").**

Ocean Duke's argument that it acted in good faith after receiving Plaintiff's notice of infringement is squarely at odds with the jury's verdict. The jury found that Ocean Duke acted with "reckless disregard" of the claims of the Kowalski Patent, i.e. that Ocean Duke not only "acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent," but in fact "actually knew, or it was so obvious that Ocean Duke should have known, that

its actions constituted infringement of a valid and enforceable patent." Jury Instr. No. 29, filed 12/13/07. The jury's determination is conclusive. Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996).

Ocean Duke points to its analysis of its unsuccessful business relationship with Plaintiff, Roger Lin's purported investigation of the Shih factory, and retention of an attorney, none of which show good faith. First, Ocean Duke cites no law to support that a past unsuccessful business relationship with the patent holder constitutes a defense or shows that the infringing party acted in good faith. In fact, that Ocean Duke used the lame excuse that Plaintiff "bankrupted his first fish company," Def.'s Opp. at 12, as justification for putting Plaintiff's infringement allegations in a "holding pattern" rather than addressing the merits of Plaintiff's allegations evidences Ocean Duke's bad faith.

Second, Roger Lin testified that the purpose of his trip to Bali in 2002 (two years after Ocean Duke received Plaintiff's notice of infringement) was to conduct a sanitation inspection, not to investigate Plaintiff's infringement allegations, which explains why he did not get within 20 feet of the smoke generating machine or spend more than five minutes discussing the smoke treatment process with Shih. Ex. "H" to Motion at 18: 6-23 ("Q. You got this letter from Kowalski's attorney in January of 2000 and then you went to the factory in 2001, but, gee, you must have not been focusing on that machine because you don't really remember seeing it.

And then in 2002, you do remember seeing it; that's correct, right?  A.  That would be accurate.  Q.  And then when I questioned you back in October, and you were under oath, I asked you about 2002 when you went to it.  And you said you never got closer than 20 feet away, right?  A.  You could a lot of things from 20 feet away.  Q.  Okay, but your answer was, no, you didn't get closer than 20 feet away?  A.  That's correct because I was in fear of breathing in any CO.  Q.  Okay.  And you said you only saw it in passing in your sanitation inspection for maybe five minutes, right?  A.  That's correct.").  The fact that Roger Lin took no interest in whether PT had a smoke machine in 2001 (he doesn't remember seeing one then), and in 2002 only spent five minutes from 20 feet away, again shows bad faith.

Third, the jury rejected Ocean Duke's reliance on the Borrowman letter. <u>Muniauction, Inc.</u>, 502 F. Supp. at 485. ("the jury found that that the opinion letter was deficient in some way.  We will not contradict the jury's conclusion.  This factor weighs in favor of enhancing damages").  The Borrowman letter was properly rejected because Ocean Duke failed to provide Borrowman with relevant and correct information.  <u>See</u> Motion at 10-12.

Constrained by the verdict and unfavorable facts, Ocean Duke resorts to criticizing Plaintiff's pre-suit investigation.  Ocean Duke's accusations are irrelevant and baseless.  The evidence shows that Plaintiff had ample support for suing.  Plaintiff heard from persons in the industry that Ocean Duke was selling

fish treated with tasteless smoke and Stalker confirmed this when Ocean Duke's sales manager Ragone admitted Ocean Duke's product was treated with smoke **from which the smoke flavor components were removed and the treated fish had no smoke taste.** Ex. "G" to Motion at 2. Plaintiff also sent multiple notices of infringement to Ocean Duke (mentioning the Ragone's admissions), the allegations of which were never denied or even responded to. PT was listed as a USDC-approved tasteless smoke facility from 1999, Ex. "D" to Motion, and Ocean Duke was awarded a contract to provide "Frozen Tasteless Cold Smoked (wood origin) Processed Yellowfin Skinless Tuna Steaks." Ex. "E" to Motion at 7. Plaintiff thus had very good reason to believe that Ocean Duke was infringing, and the jury agreed. As the Motion mentions, Ocean Duke's failure to respond to the notices of infringement and its reliance on patently faulty defenses (such as the false argument that later obtaining a patent is a defense to infringement of another patent) and its reliance on an opinion letter that came years later and was based on false and incomplete information (Borrowman was never told Shih mentioned a filter, that condensation filters, or that Iwaoka admitted the process produced smoke) support enhanced damages.

    3.    **Litigation Behavior ("Factor 3").**

Plaintiff's Motion pointed to various aspects of Ocean Duke's conduct that warranted enhanced damages. Notably, Ocean Duke does not contest that it:

- attempted at the last minute to (1) raise many previously undisclosed and unexplained defenses (obviousness, best mode, indefiniteness, anticipation, misuse, first invention by Shih, etc.), (2) introduce undisclosed witnesses (e.g., Garay, Friend, also Cardile and McEnerney), Mot. at 13;

- failed to meet various trial deadlines, i.e. did not timely serve its trial exhibits by the deadline set by the Court or its proposed jury instructions, impeding Plaintiff's ability to object to the same and meet his deadlines, id. at 13;

- failed to produce (despite entry of a stipulated order compelling discovery) financial statements, accounting reports, and tax returns and provided only a one-page unsupported summary that purported to represent Ocean Duke's sales of the infringing product, but had no information for 2006 and 2007 or explanation for expense categories, id.;

- forced Plaintiff to waste time doing deposition designations for Roger Lin, Duke Lin and Dr. Iwaoka because it refused to reveal which witnesses it would bring to trial, Mot. at 18;

- represented falsely to Plaintiff's counsel during trial that Chris Ragone would be called as its next witness, causing Plaintiff to waste time and resources preparing for cross-examination, id.

Given these undisputed facts, it is not surprising that Ocean Duke prefers that the Court focus on "the conduct of the parties in connection with the substantive aspects of patent law, and not the types of discovery or other procedural issues . . . ." Caselaw,[2] however, indicates the proper analysis involves

---

[2] Ocean Duke's citation to Seagate for the proposition that "[a] patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-

examination of both the substantive and procedural aspects of the infringing party's conduct in litigation. , e.g., Third Wave Tech., Inc. v. Stratagene Corp., 405 F. Supp. 2d 991, 1016 (W.D. Wisc. 2005) (untruthful answers to interrogatories, disobedience of court order to produce all documents relating to a topic, meritless challenge to the plaintiff's ownership of the patent, etc.), Applera Corp., 372 F. Supp. 2d at 240 (defense strategy aimed at delay, new grounds for inequitable conduct and invalidity defenses based on prior art that was not previously disclosed raised 3 days before trial, attempt to have undisclosed experts testify, etc.). Thus, Ocean Duke's conduct described above is highly relevant.

In any event, assessment of Ocean Duke's conduct regarding substantive legal issues does not lead to a different result. Ocean Duke does not deny that it placed wholesale reliance on the legally erroneous contention that the Shih Patent precluded liability for infringement of the Kowalski Patent throughout the lawsuit. id. at 15. Throughout trial, Ocean Duke also raised many irrelevant and frivolous arguments, including for example, emphasizing that Ocean Duke does not process fish, PT is not a party to the lawsuit, and there is no relationship between PT and Ocean Duke other than an arms-length buyer and seller. Memo. in Support of Mot. at 14, 15-17. Defendant also attempted to mislead the jury with Dr. Iwaoka's

---

filing conduct" is inapposite because the jury found that Ocean Duke willfully infringed the Kowalski Patent based on Ocean Duke's pre-filing conduct.

improper testimony (e.g., comparing PT's equipment to HISI's, claiming it was misleading to use the word smoke after filtering even though the FDA and USPTO approved it, and he said the Kowalski process should be "in the public domain" because smoking to give a good smoke taste has been known for "eons". Ex. AC.).

Finally, instead of attempting to defend its unreasonable settlement position, Ocean Duke blames Plaintiff for purportedly insisting on $7 million in settlement. While this contention is false, Yasunaga Decl. ¶ 5, even assuming *arguendo* that Plaintiff did insist on a $7 million settlement, such demand would not have been unreasonable given that Plaintiff's $11 million lost profit damage claim (plus the prospect of treble damages) was viable then, the jury awarded Plaintiff $2.2 million in royalty damages and found willful infringement possible entitling Plaintiff to an additional $4.4 million in treble damages, approximately $700,000 in prejudgment interest, and approximately $500,000 in attorneys' fees and other costs (and an injunction). The Court knows Plaintiff offered to accept much less than the jury award, while Defendants only offered a mere fraction of it.

Ocean Duke's litigation conduct weighs in favor of increasing the damage award. Third Wave Tech., Inc., 405 F. Supp. 2d at 1016, Applera Corp., 372 F. Supp. 2d at 240, Domestic Fabrics Corp., 326 F. Supp. 2d at 701.

    4.    **Size and Financial Condition of Ocean Duke ("Factor 4").**

While admitting that it has annual sales of $200 million, Ocean Duke

incredibly contends this factor is "neutral, at best." At trial, Ocean Duke represented that from the years 1999 to 2005 only (not including 2006 and 2007), its sale of the infringing product (1) resulted in net profit of approximately $3.8 million, Ex. "P" to Motion, and (2) constitutes merely 3% of Ocean Duke's overall business. Ex. "J" to Mot. (Trial Tr. Day 5 – Roger Lin) at 4:17-23 ("Q. The treated seafood is the processed seafood that we're dealing with in this lawsuit, right? A. That's correct. The product treated for color retention. Q. Do you have a percentage estimate of the volume of business that your company does in that particular line? A. **I would say three percent.**"). Thus, a reasonable estimate[3] of Ocean Duke's overall profits for the years 1999 to 2005 (not including 2006 and 2007, for which information Ocean Duke failed to produce infromation) is **$126.7 million** (3% of $126.7 million ≈ $3.8 million), for an average of over **$20 million in profit per year**. (Furthermore, that $3.8 million amount is probably too low because Ocean Duke could not explain the costs that it deducted to get down to that profit amount. Plaintiff's Reply re his Motion for Prejudgment Interest.)

Ocean Duke offers no tangible proof to show that it cannot absorb an increase in the damage award. Ball Aerosol & Specialty Container v. Limited Brands, Inc., 514 F. Supp. 2d 1051, 1069 (N.D. Ill. 2007) ("Limited Defendants

---

[3] Any lack of evidence of Ocean Duke's "overall profits" is attributable to Ocean Duke's refusal to produce its financial statements, tax returns, etc. in discovery. Yasunaga Decl. ¶ 6.

fail to present any arguments that their size and financial condition would leave them unable to absorb an award of damages that exceeds the compensatory damages."). While casting itself as financially weak and small in size for purposes of the Motion, notably, in October 2005, Roger Lin was quoted as saying "Anything from Southeast Asia that can be sourced, we [Ocean Duke] have a hand in the business." Ex. "M" (Sysco Today) to Motion. In 2001, Ocean Duke was ranked the 62nd largest company in Los Angeles. Ex. "AA" (Los Angeles Business Journal). Given Ocean Duke's financial strength and resources, in stark contrast with Plaintiff's weak financial condition, Factor 4 certainly weighs in favor of enhancing the damage award. Third Wave Tech., 405 F. Supp. 2d at 1017, Domestic Fabrics Corp., 326 F. Supp. 2d at 702.

  5.  **The Case Was Not Close ("Factor 5").**

Ocean Duke contends that this case is "clearly" close because the Court ruled *sua sponte* in a different lawsuit, just a few months before trial, that claims 1 and 67 of the Kowalski Patent were invalid for failure to meet the written description requirement ("*written description decision*"). Ocean Duke fails to mention that it did not pursue the written description defense in any fashion for the nearly four years that the lawsuit had been pending before the written description decision was issued in the other case, that the Court soon thereafter vacated that decision, Order, filed 11/15/07 (Tuna Processors, Inc. v. Hawaii Int'l Seafood,

Inc., Civ. Nos. 05-517 BMK, 05-679 BMK, 06-182 BMK, 05-787 BMK), at 7, and that the jury soundly rejected Ocean Duke's invalidity challenge.

Ocean Duke also says that the case was close because it does not process seafood. As discussed in the Motion, that Ocean Duke does not process seafood is no defense because the law is clear that importing and selling a product covered by the patented process constitutes infringement – Ocean Duke's raising of this meritless argument is bad litigation conduct meriting enhanced damages.

Ocean Duke also asserts that the case was close because Plaintiff never presented any first-hand evidence of the process used in Bali.[4] Yet, Plaintiff introduced into evidence a diagram containing Shih's handwritten notes, Ex. "X" to the Motion, which purported to explain the process used by PT to treat Ocean Duke's fish. This "first-hand" evidence from Shih showed that the process used by PT to treat Ocean Duke's fish was covered by Plaintiff's patent. Furthermore, such evidence was unnecessary because Ocean Duke's own detailed admission of the process used – i.e., sales manager Ragone's detailed admission of the process used

---

[4] Ocean Duke repeatedly criticizes Plaintiff for not inspecting PT's facilities. The jury found, however, that Plaintiff fulfilled its burden of proving by a preponderance of the evidence that Ocean Duke was liable for infringement. Plaintiff's choice to refrain from expending valuable time and financial resources to travel to a foreign country (in which the court lacked jurisdiction to compel discovery) just to confirm the already overwhelming evidence supporting infringement was well-reasoned and justified, especially in light of the jury's verdict.

involving removing the smoke taste causing components from the smoke and the smoke treated fish ending up with no smoke taste – was sufficient evidence by itself to prove infringement (the Court will recall how the jury was shown the precise matchup between Ragone's admissions and the various steps of the patent claims).

While Ocean Duke characterizes the outcome of the trial as "mixed," the central issue was whether the products imported from PT were treated with a process covered by the Kowalski Patent and on this issue Ocean Duke had no persuasive evidence or arguments, and its counsel at trial did not even try to show how any of the various steps of the patent claims were not met by the evidence of the process used (he instead focused on clearly irrelevant comparisons, such as of PT's equipment with HISI's equipment). The jury found that Ocean Duke infringed all of the asserted claims of the Kowalski Patent, and most notably, that the infringement was willful. The case was not close.

6. **Over Seven Year Duration of Infringement ("Factor 6").**

Although it admits that it sold the infringing product for more than seven years, Ocean Duke amazingly takes the position that this factor is "neutral." Opp. at 16. The case law is clear that infringement of this long duration weighs in favor of an enhanced damage award. Ball Aerosol & Specialty Container, 514 F. Supp. 2d at 1070 (2 years), Domestic Fabrics Corp., 326 F. Supp. 2d at 701 (3 years),

SRI Int'l Inc. v. Advanced Tech Lab., Inc., 125 F.3d 1462, 1469 (Fed. Cir. 1997) (5 years), Muniauction, Inc., 502 F. Supp. 2d at 485 (6 years).

### 7. No Remedial Action Taken By Ocean Duke ("Factor 7").

According to Ocean Duke's counsel (pointedly not an officer or employee of the company with personal knowledge), Ocean Duke has "<u>now</u> phased out importation and sale of seafood processed under the Shih process, and is importing seafood processed only with pure carbon monoxide." Opp. at 16. Ocean Duke does not dispute that it did not take any remedial action prior to entry of judgment against it, and in fact increased sale of the infringing product after receiving Plaintiff's notice of infringement and while the lawsuit was pending. Even after judgment entered, and until very recently (at least January 16, 2008), Ocean Duke still offered the infringing product for sale on its website. Ex. "Q" to Motion. Ocean Duke's purported phase out of importation and sale of seafood processed under the Shih process after the jury's verdict and as an evasive maneuver to avoid treble damages, is too little, too late. Domestic Fabrics Corp., 326 F. Supp. 2d at 702 (accused infringer continued to import and sell infringing products more than three years following the cease and desist letter), Applera Corp., 372 F. Supp. 2d at 243 (no remedial measures taken while lawsuit pending), Ball Aerosol & Specialty Container, Inc., 514 F. Supp. 2d at 1070 (lack of remedial action after infringement determined weighs in favor of enhanced damages). Factor 7 weighs in favor of

increasing the damage award.

### 8. Motivation to Harm ("Factor 8").

Ocean Duke asserts that it had no motivation whatsoever to harm Plaintiff, personally. Yet, Ocean Duke wrote to its customers and associates urging them to refrain from "entering into an agreement" with Plaintiff and to "continue business as usual." Ex. "J" at 33: 14-25, 34: 1-16 and Ex. "U" (Roger Lin letter to Bauersfeld, Esq.). attached to Motion. This hurt Plaintiff's ability to license and collect royalties and encouraged others in the industry to continue violating his patent rights. Moreover, Ocean Duke realized close to $4 million in net profit for just the years 1999 to 2005 alone, without paying Plaintiff a penny in royalties. Ex. "P" to Motion. Ocean Duke offers no explanation for why this evidence does not demonstrate motivation to harm Plaintiff <u>personally</u>.

Moreover, harm to Plaintiff's company Hawaii International Seafood, Inc. ("*HISI*") should be considered because Ocean Duke knew well the close relationship between Plaintiff and HISI. There is little doubt that Ocean Duke made a conscious decision to label the infringing product "CRYO-FREEZE" to capitalize on the market Plaintiff developed for his "CRYOFRESH" product. HISI was financially weakened by Ocean Duke's infringement, forcing Plaintiff to borrow money in his personal capacity to keep the company afloat. Plt.s' Mot. for Prejudgment Interest, filed 1/24/08, at 6-7.

There is ample evidence supporting that Ocean Duke's infringement and above conduct was for the purpose of making money, to Plaintiff's personal detriment as well as his company's. Factor 8 weighs in favor of enhancing the damage award. Domestic Fabrics Corp., 326 F. Supp. 2d at 702 ("This infringement continued for the purpose of making money, as much as $2,29,936 in net profits (factor 8).").

9. **Concealing Misconduct ("Factor 9").**

Ocean Duke does not dispute or provide a reasonable explanation for why it did not produce any financial statements, tax returns, accounting reports or any information regarding its sales of the infringing product for the years 2006 and 2007. Yasunaga Decl., dated 1/24/08 (attached to Motion), at ¶ 3. Notably, Ocean Duke neglects to say that the 30,000 pages of documents produced were irrelevant because they consisted almost entirely of individual invoices only for the year 2003 and most of them concerned products such as squid and untreated mahimahi (which were not alleged to be infringing). Those 2003 invoices showed Ocean Duke's one page summary severely understated its actual sales.

The post-trial motions make clear that Ocean Duke's undisclosed financial information is not only relevant to the issue of lost profits, but also to calculating reasonable royalty damages (i.e. Plaintiff's expert testified that a starting point for calculating a reasonable royalty is 25% of the infringer's net profit) and analyzing

whether and to what extent enhancement of the damage award is warranted (i.e. Read Factors 6, 7 and 8).

Finally, Ocean Duke's failure to disclose its tax returns, financial statements and accounting reports should not be excused merely because Plaintiff did not, after chasing Ocean Duke for many months and finally obtaining a stipulated order compelling Ocean Duke to produce the information, push the issue even further. Ex. "AB" (extensive email string between Plaintiff's counsel and Ocean Duke's counsel regarding production of documents). Factor 9 asks whether the infringing party failed to cooperate on issues such as discovery relevant to damages. Read Corp., 970 F.2d at 827 ("Enhanced damages supported in part by findings 'that the defendant had failed to preserve its records and had failed to cooperate as it should at the trial on the issue of damages.'"). The bottom line is that Ocean Duke was not cooperative in providing information relevant to damages. Factor 9 weighs in favor of enhancing the damage award.

DATED: Honolulu, Hawaii, March 5, 2008.

                                      CADES SCHUTTE LLP

                                      /s/ Milton M. Yasunaga
                                      MILTON M. YASUNAGA
                                      ALLISON MIZUO LEE
                                      Attorneys for Plaintiff
                                      WILLIAM R. KOWALSKI