CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA         2954-0
ALLISON MIZUO LEE      7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | CIVIL NO. 04-0055 BMK <br><br> PLAINTIFF WILLIAM R. KOWALSKI'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR PERMANENT INJUNCTION, OR ALTERNATIVELY, FOR COMPULSORY LICENSE/ON-GOING ROYALTY; DECLARATION OF MILTON M. YASUNAGA; EXHIBITS "K" AND "L"; CERTIFICATE OF SERVICE <br><br> <u>Hearing</u> <br> Date: March 14, 2008 <br> Time: 10:00 a.m. <br> Judge: The Hon. Barry M. Kurren |
|---|---|

ImanageDB:846753.2

PLAINTIFF WILLIAM R. KOWALSKI'S
REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR
PERMANENT INJUNCTION, OR ALTERNATIVELY, FOR
COMPULSORY LICENSE/ON-GOING ROYALTY

**I.    INTRODUCTION**

In response to Plaintiff WILLIAM R. KOWALSKI's ("*Plaintiff*") request for a permanent injunction, Defendant OCEAN DUKE CORPORATION ("*Ocean Duke*") submitted a one and a half page opposition containing conclusory assertions that (1) the Motion is moot and (2) Plaintiff is not entitled to injunctive relief. Ocean Duke does not raise any specific arguments regarding the Ebay factors discussed in detail in the Motion, nor does it challenge the scope of the requested injunction. For the reasons discussed below, the Court should grant the Motion and issue the injunction requested by Plaintiff.

**II.   ARGUMENT**

   **A.   Plaintiff's Request For a Permanent Injunction Is Not Moot Because Ocean Duke Has Not Presented Evidence Sufficient To Establish That Further Infringement Will Not Take Place.**

Ocean Duke argues that "issuance of a preliminary[1] injunction in this case is moot" because "[f]ollowing trial of this matter, Ocean Duke determined that its best interest lay in discontinuing its importation of products treated with the Shih process." Opp. at 1. In support of its purported voluntary cessation of

---

[1] The Motion is clear that Plaintiff's request is for a permanent, not preliminary, injunction.

infringement, Ocean Duke offers nothing but: (1) a report by Ocean Duke's consultant Charles Cardile ("***Cardile***")[2] representing that PT Intisamudera Citra Perkasa ("***PT***") is using "commercially prepared Carbon Monoxide ("***CO***")" as its color retention mechanism and (2) the following statement from its trial counsel:

> 2. Following the jury verdict in this lawsuit, Ocean Duke Corporation determined that its best interest lay in discontinuing its importation of products treated with the Shih process, and it implemented that decision by requesting that its supplier in Bali treat seafood for sale to Ocean Duke solely with carbon monoxide not derived from smoke. Ocean Duke Corporation also retained a consultant to verify that this request had been implemented, and the consultant's report is attached hereto as Exhibit A.

Marks Dec. ¶ 2.

It is well-settled that a defendant cannot avoid an injunction by claiming to have stopped the challenged conduct. See LGS Architects, Inc. v. Concordia Homes, 434 F.3d 1150, 1153 (9th Cir. 2006) ("Voluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . '[A]n action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendant's [sic] would be free to return to their old ways.'"). Rather, defendants "face a heavy burden" to show that "there is no reasonable likelihood that the wrong will

---

[2] Ocean Duke has retained Cardile for over 20 years. See Cardile Decl., dated 11/19/07, at ¶ 2 ("I was retained in approximately 1986 by Ocean Duke Corporation."). He is far from an independent third-party.

be repeated." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 375 (1983).

In W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1275 (Fed. Cir. 1988), the Federal Circuit found that the district court had abused its discretion in refusing to enjoin the defendant based on the reasoning that follows:

> The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place. "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him."
>
> **The only evidence in this case is that at the time of the trial, Garlock had stopped making and selling PTFE filament and braided packing material. No reason was given for the cessation. There is nothing to suggest that Garlock no longer has the capacity to make the filament or braided packing material or that the equipment has been sold or dismantled or that Garlock has no intention to resume making it.**
>
> **The mere fact that Garlock was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.** No other reason appears on this record for denying the requested injunction. Accordingly, we conclude that the district court abused its discretion in refusing to enjoin Garlock from further manufacture and sale of PTFE filament and LATTICE BRAID packing material, and we direct the district court, on remand, to enter an appropriate injunction against Garlock.

Id. at 1281-82 (internal citations omitted).

Ocean Duke has not met its burden of showing that there is "no reasonable likelihood that the wrong will be repeated." Certainly, Ocean Duke's trial counsel's declaration does not suffice. Mr. Marks, who is not an employee or officer of either company, does not purport to have personal knowledge of Ocean

Duke's or PT's actual operations.

Moreover, Cardile's assertion that PT is using "commercially prepared CO" as its color retention mechanism is not sufficient. It is unclear from Cardile's report what is meant by "commercially prepared CO." Notably, in the past, Cardile has described the Shih process, which the jury determined was covered by Plaintiff's patent, as the production of "CO." For example, in a declaration dated November 19, 2007 that Ocean Duke submitted in support of its Opposition to Plaintiff's Motion in Limine #4 (Exclusion of Charles Cardile as a Witness), filed on 11/20/04, Cardile made the following representations:

> 4.   .... **Specifically, I have been to Mr. Shih's factory and have observed the mechanism that produces CO in that factory. I was told the CO was being produced pursuant to a patented process developed by Mr. Shih.** I have also witnessed the treatment of seafood, including tuna products, by this process at the Shih factory. These observations were made on or about twelve (12) separate occasions over the last decade.
>
> 5.   On those occasions, I was requested to observe the machine in action and make recommendations for safety (proper ventilation), **production and storage of CO**, application to the seafood, and treatment time. **My company also introduced Steven Shih to a testing system to determined the concentration of CO produced by the process.** ....

Ex. "K" (Cardile Decl., dated 11/19/07) at ¶¶ 4-5 (emphasis added). Thus, it is very possible that Cardile's reference to "commercially prepared CO" in his January 22, 2008 report in fact refers to CO produced pursuant to the Shih method. In any event, Cardile's report does not make clear that Ocean Duke is no longer importing product treated with smoke made with Shih's process.

Even assuming *arguendo* that Cardile's report verifies that PT is in fact currently not using Shih's infringing process to treat the fish imported by Ocean Duke, an injunction against future infringement is still warranted.  See W.L. Gore & Assoc., Inc., 842 F.2d at 1282-83 (The mere fact that Garlock was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.").  There is no representation from either Ocean Duke or PT that PT and Ocean Duke will not return to their infringing ways in the future, or that PT no longer has the capability to produce smoke according to the Shih process because the smoke machine has been dismantled or sold, or any other concrete proof to suggest that it is reasonably likely that infringement will not occur in the future.  See, e.g., id. ("There is nothing to suggest that Garlock no longer has the capacity to make the filament or braided packing material or that the equipment has been sold or dismantled or that Garlock has no intention to resume making it."); LGS Architects, Inc., 434 F.3d at 1154 ("Concordia's representation that it has no intention to use LGS's architectural plans in the future does not make it 'absolutely clear' that Concordia will permanently refrain from future infringement.  If the opposite were true, any defendant could moot a preliminary injunction appeal by simply representing to the court that it will cease its wrongdoing.  Indeed, it is not even apparent from the record whether Concordia has presently discontinued its use of LGS's copyrighted

material. Although all of the houses in Arbor Glen II have now been sold, Concordia nowhere avers that it has ceased reproducing, distributing, or publicly displaying the plans in connection with that project."); Lyons P'ship, L.P. v. Morris Costumes, Incorp., 243 F.3d 789, 800-01 (4th Cir. 2001) (indicating that district court should have required more than "the defendant's bald assertions that they would cease distributing the costumes and would hand over those costumes remaining in their possession following the termination of the litigation" and noting that "Morris Costumes did not make an affirmative showing that continuing infringement was, practically speaking, nearly impossible."). Cardile's report is devoid of any indication that PT has permanently discontinued its smoke operations. No explanation is provided as to what Ocean Duke has done with respect to its clients, for example A-hold, that require product made with "Frozen Tasteless Cold Smoked (wood origin)" that is "free of from supplemental processing with additional chemical carbon monoxide." Ex. "L" (Ahold Spec.).

Because Ocean Duke has failed to meet its burden of showing that "there is no reasonable likelihood that the wrong will be repeated," Iron Arrow Honor Soc'y, 464 U.S. 67 (1983), Plaintiff's request for a permanent injunction is not moot. Moreover, if Ocean Duke truly intends to avoid infringing in the future as it appears to contend, but does not explicitly state, it will not be harmed by Plaintiff's requested injunction. See W.L. Gore & Assoc., Inc., 842 F.2d at 1281-82.

### B. Plaintiff Is Entitled To Injunctive Relief In His Own Right Based On The E-Bay Factors

Ocean Duke next argues that Plaintiff is not entitled to an injunction because the injunction would benefit Plaintiff's company Hawaii International Seafood, Inc. ("*HISI*") and HISI "has no rights under the patent and no rights under the judgment." Opp. at 1. The court in Novozymes A/S v. Genencor Int'l, Inc., 474 F. Supp. 2d 592 (D. Del. 2007), explained that the patentee is harmed beyond the reasonable royalty it can recover from the infringer when its subsidiary/licensee is harmed through direct competition with the infringer. See id. at 612.

Moreover, Ocean Duke ignores that Plaintiff is entitled to an injunction in his own right. In support of the Motion, Plaintiff set forth numerous reasons why he was entitled to an injunction, namely:

(1) irreparable harm based on diversion of resources to litigation instead of innovation, see Memo. in Support of Mot. at 5, harm to his reputation as an innovator in the industry, id. at 6, compromising his ability to license his patent, id at 7;

(2) money damages are inadequate because Plaintiff may not be entitled to lost profit damages and he will suffer a loss of reputation, opportunities for innovation/development of technology, market share and good will, see id. at 8-9,

(3) balancing of hardships weighs in favor of an injunction because of Ocean Duke's overall financial strength, see id. at 9-11,

(4)   public interest weighs in favor of an injunction because the law favors enforcement of valid patents and HISI has the capacity to fulfill Ocean Duke's sales of the infringing product. See id. at 11-12.

As to the above points, Ocean Duke did not offer any counter-arguments. Moreover, Ocean Duke did not oppose the scope of the injunction sought by Plaintiff. Thus, the requested injunction should issue.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion.

DATED: Honolulu, Hawaii, March 10, 2008.

                CADES SCHUTTE LLP

                /s/ Milton M. Yasunaga
                MILTON M. YASUNAGA
                MARTIN E. HSIA
                ALLISON MIZUO LEE
                Attorneys for Plaintiffs
                WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.