CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
MARTIN E. HSIA        2954-0
ALLISON MIZUO LEE     7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUKE CORPORATION, <br><br> Defendant. | **CIVIL NO. 04-0055 BMK** <br><br> **PLAINTIFF WILLIAM R. KOWALSKI'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND DISBURSEMENTS UNDER 35 U.S.C. § 285; DECLARATION OF MILTON YASUNAGA; EXHIBITS "Q" – X"; CERTIFICATE OF SERVICE** <br><br> **TRIAL: December 4 – 13, 2007** |

## PLAINTIFF WILLIAM R. KOWALSKI'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND DISBURSEMENTS UNDER 35 U.S.C. § 285

## I.    <u>INTRODUCTION</u>

Despite requesting a minimum of $100,000 in attorneys' fees for defense of the admittedly "secondary" [1] Lanham Act claim, Defendant Ocean Duke Corporation ("***Ocean Duke***") incredibly contends that Plaintiff William R. Kowalski ("***Plaintiff***") is not entitled to any attorneys' fees, or alternatively, that $33,000 (i.e. one-twelfth of Plaintiff's requested fees) should be awarded.

The jury found that Ocean Duke infringed all of the asserted claims of Plaintiff's patent, the infringement was willful, and none of the asserted claims were proven invalid. Plaintiff is most certainly the "prevailing party" and he is entitled to attorneys' fees and disbursements under 35 U.S.C. § 285 ("***Section 285***") for the reasons that follow. The Motion should be granted.

## II.    <u>ARGUMENT</u>

### A.    <u>Plaintiff Is The "Prevailing Party" Under Section 285.</u>

Ocean Duke's suggestion that Plaintiff did not prevail on his patent claim is ridiculous. The jury found that (i) Ocean Duke infringed all of the asserted claims of Plaintiff's patent, (ii) the infringement was willful, and (iii) Ocean Duke failed

---

[1] Ocean Duke's counsel admitted that "in this case as litigated, the Lanham Act claims were secondary in scope and importance to the patent claims," <u>see</u> Ex. "R" (Marks Decl., dated 1/24/08) at ¶ 12, and a very poor second, given that Ocean Duke spent less than 5 hours on the non-patent claims before the trial. <u>See</u> Plt's Opp. to Def.'s Motion to Attorneys Fees Under Lanham Act, filed 3/5/08.

to prove that any of the asserted claims were invalid.[2]  See Ex. "Q" (Special

Verdict Form) at 2-3.

To downplay Plaintiff's success, Ocean Duke harps on the dismissal of

Plaintiff's company Hawaii International Seafood, Inc. ("*HISI*").  HISI was

included as a plaintiff as a precautionary measure because it operated closely with

Plaintiff in using the patent and served as a means of selling product made with the

patented process.  Plaintiff wanted to avoid the hassle of someone later claiming

that HISI should have been a co-plaintiff, much like how Ocean Duke attempts to

overturn the jury's verdict by asserting that Sandau should have been joined as a

party.  HISI was not made a party for purposes of seeking additional relief that

Plaintiff was not entitled to in his own right.[3]  Plaintiff could have recovered the

lost profits of HISI as his own personal damage.  See Ex. "S" (Partial Tr. Def's

---

[2] Dixie Cup Co. v. Paper Container Mfg. Co., 169 F.2d 645 (7th Cir. 1948), cited
by Ocean Duke in support of its claim to "prevailing party" status, is
distinguishable.  There, the "plaintiff instituted th[e] litigation by suing on fourteen
patents with a total of five hundred and ninety claims."  Id. at 651.  Ten were
withdrawn before trial, and of the 26 claims remaining, only 23 of the claims were
found valid and infringed.  See id.  Thus, the Dixie Cup Co. court had a basis for
its comment that "it is true that plaintiff is a prevailing party, but so is the
defendant," id., because the defendant actually prevailed with respect to some of
the asserted patents and/or claims of an asserted patent.  Ocean Duke, to the
contrary, did not successfully defend against any of the asserted claims.

[3] Notably, Magistrate Chang held that allowing HISI to join as a co-plaintiff with
Kowalski was appropriate in Kowalski v. Jana Brands, Inc., Civ. No. 03-0015
DAE-KSC.  See Ex. "W" (Order Granting Motion For Leave To Amend
Pleadings).

Mot.) at 5: 16-25, 6: 1-15. Thus, the dismissal of HISI did not negatively impact Plaintiff's prospects for recovery or Plaintiff's litigation objective.

Ocean Duke's attempt to artificially inflate its success rate by portraying HISI's claims as independent of Plaintiff's is blatant. Despite that Plaintiff and HISI jointly asserted five causes of action (i.e. patent infringement, trademark infringement (15 U.S.C. § 1114), unfair competition (15 U.S.C. § 1125), HRS Chapter 480, and common law unfair competition – see Compl., filed 1/27/04), Ocean Duke says that it was victorious on 11 out of 12 claims. Even this count is misleading, for if one looks at the huge number of defenses Ocean Duke asserted and lost, Ocean Duke lost on far more defenses and claims than it won.

In any event, Ocean Duke's skewed win/loss tally is inapposite because "[d]etermination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Ocean Duke's counsel admits that the patent claim was of primary importance in this lawsuit. See supra footnote 1. Indeed, the work reflected in the attorney invoice summaries submitted by both parties in support of their respective fee requests show that minimal time was spent on the non-patent claims. See discussion infra Section II.C. This supports that the "objective of the litigation" was to establish that Ocean Duke was infringing Plaintiff's patent.

Plaintiff certainly achieved this goal, with the jury even finding that the infringement was willful.  (Further, before Ocean Duke had spent 5 hours on the non-patent claims, Plaintiff made clear he was not seeking damages only for the patent claim.  See Plt's Opp. to Def.'s Mot. for Attorneys' Fees Under Lanham Act, filed 3/5/08.).

Ocean Duke asserts, however, that Plaintiff's objective was not achieved because the jury's $2.2 million award was "far less" than the lost profits requested and the purported $8 million that Plaintiff demanded in settlement.  Ocean Duke does not offer any support (not even the declaration of its counsel) for its assertion that Plaintiff demanded a $8 million[4] settlement.  Well before the last settlement conference held on the eve of trial, Plaintiff made it clear to the Court and to Ocean Duke that Plaintiff was willing to accept considerably less than $2 million with a license at 8 cents a pound going forward, as Magistrate Chang recommended.  See Yasunaga Decl. ¶ 2.  To Plaintiff's knowledge, Ocean Duke's final offer to Plaintiff before trial was $350,000, with a one-year license at 2 cents per pound.[5]

---

[4] Ocean Duke's accounts of Plaintiff's settlement demand are not only inaccurate, but inconsistent as well.  While claiming here that Plaintiff  demanded $8 million, in support of its Opposition to Plaintiff's Motion for Enhanced Damages, Ocean Duke recently asserted, again with no back-up, that Plaintiff's settlement demand was "close to $7 million".  See Opp. to Mot. for Enhanced Damages, filed 2/4/08, at 14 ("Plaintiffs were demanding close to $7,000,000 to settle the case – almost four times the amount that went to the jury").

[5] Notably, the 2 cent royalty offered by Ocean Duke was only 1/10 of the 20 cent royalty adopted by the jury and Ocean Duke made no promise to refrain from

See id.

Moreover, that Plaintiff did not recover lost profit damages does not detract from his status as the prevailing party. A prevailing party need not prevail on every contention raised to recover his attorneys' fees. Cf. Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("a plaintiff who has won substantial relief should not have his attorneys' fees reduced simply because the district court did not adopt each contention raised"), Carpenter Tech. Corp. v. Armco, Inc., 808 F. Supp. 408, 411 (E.D. Pa. 1992) ("plaintiff's claims for interest and negative royalties stem from its main claim . . . and are unquestionably related to that main claim. Therefore, a reduction of plaintiff's fee award to reflect the time expended on its unsuccessful claims would be inappropriate in this case."). As discussed, Plaintiff achieved his objective of establishing that Ocean Duke's import and sale of PT's product constituted infringement of his patent rights and obtained a multi-million dollar verdict. See Brooks Furniture Mfg., Inc., 393 F.3d at 1381. The jury even found that Ocean Duke's infringement was willful, making Plaintiff eligible for treble damages, which in combination with prejudgment interest, could exceed the lost profit amount. Plaintiff is the "prevailing party" for purposes of Section 285.

---

infringing after expiration of the one-year license. Plaintiff could not accept these unreasonable terms.

**B.**    **The Interests Of Justice Weigh Decidedly In Favor Of Awarding Plaintiff His Attorneys' Fees.**

Without proposing any alternative considerations, Ocean Duke suggests that evaluation of the <u>Read</u> Factors is improper. <u>See</u> Opp. at 3-4. The Federal Circuit advises, however, that "[a]s a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." <u>Jurgens v. CBK, Ltd.</u>, 80 F.3d 1566, 1573 n.4 (Fed. Cir. 1996). Considerations such as "the closeness of the case, the tactics of counsel, the conduct of parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser" are relevant. <u>See</u> <u>S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.</u>, 781 F.2d 198, 201 (Fed. Cir. 1986). Thus, in determining whether Plaintiff is entitled to attorneys' fees under Section 285, the Court can legitimately consider the <u>Read</u> Factors, especially the "closeness of the case." <u>See, e.g.,</u> <u>Third Wave Tech., Inc. v. Stratagene Corp.</u>, 405 F. Supp.2d 991, 1018 (W.D. Wis. 2005) ("For all the reasons [referring to <u>Read</u> factors] catalogued above, this is an exceptional case for which an award of attorney fees is well justified."), <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 270 F. Supp. 2d 751, 761 (E.D. Va. 2003) ("However, based on the discussion of the Read factors, it is clear that this is an exceptional case."); <u>see</u> <u>also</u> <u>Ncube Corp. v. Seachange Int'l, Inc.</u>, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (no abuse of discretion where "exceptional case" found on grounds that the "case for literal infringement was not close," and the defendant "had not

formed a good faith belief excusing its conduct.").

Ocean Duke insists that this was a "very close case," but offers little back-up to support its contention.[6] <u>See</u> Opp. at 3. It points to no specific evidence (documentary, witness testimony, etc.) or argument that the jury could have found persuasive or used as a basis to conclude that Ocean Duke was not infringing Plaintiff's patent rights. Ocean Duke does not even attempt to explain why the "four critical points" that it emphasized at trial were relevant and does nothing to refute Plaintiff's assertion that it made no attempt at trial to show that the process used by PT to treat its imported products did not fall within the steps of the asserted claims. <u>See</u> Mot. at 9-16. The jury found in Plaintiff's favor on all of the issues presented, and even awarded slightly more than the reasonable royalty damages requested by Plaintiff.[7] The case was not close.

---

[6] Ocean Duke relies on the dismissal of the non-patent claims, <u>see</u> Opp. at 3, but even its own counsel admits that those claims were "secondary in scope and in importance" to the patent claim. <u>See</u> Ex. "R" (Marks' Decl., 1/24/08) at ¶ 12.

[7] Ocean Duke cites <u>Oiness v. Walgreen Co.</u>, 774 F. Supp. 1277 (D. Colo. 1991), and <u>Brooktree Corp v. Advanced Micro Devices, Inc.</u>, 757 F. Supp. 1088 (S.D. Cal. 1990), as examples where attorneys fees were not awarded despite a finding of willful infringement. Notably, the court in <u>Oiness</u> awarded treble damages before concluding that attorneys' fees were not warranted and the facts, not described with any detail in the opinion, likely distinguishable because there "[t]he outcome of the litigation was by no means certain." 774 F. Supp. at 1287. In <u>Brooktree Corp.</u>, the district court denied attorneys' fees finding that there was relatively weak evidence on willful infringement. <u>See</u> 757 F. Supp. at 1098. Unlike Ocean Duke, the defendant in <u>Brooktree</u> was not aware of the existence of the plaintiff's patent until the onset of the litigation. <u>See id.</u> at 1093-94.

Ocean Duke's arguments as to the remaining <u>Read</u> Factors are also weak.  A

summary of Plaintiff's counter-arguments[8] follows:

1.     <u>Deliberate Copying.</u>  Ocean Duke (not Shih or PT) deliberately copied the commercial embodiment of Plaintiff's patent by labeling its competing product "CRYO-FREEZE" within a year after Plaintiff introduced and began marketing his "CRYOFRESH" product.  <u>See</u> Enhanced Damages Reply at 2-3.

2.     <u>"Good Faith Belief In Patent Invalidity"[9]/Non-Infringement.</u>  Ocean Duke did not "investigate" the Shih factory to meaningfully assess the allegations in Plaintiff's January 2000 notice of infringement.  Roger Lin testified that he was there to conduct a <u>sanitation</u> inspection.  He took no interest in whether PT had a smoke machine in 2001 and in 2002 only spent five minutes from 20 feet away.  <u>See id.</u> at 5-6.  Also, the jury concluded that Ocean Duke failed to provide its patent attorney with information regarding Shih's process and so the opinion was inherently unreliable and flawed.  <u>See id.</u> at 6.

3.     <u>Litigation Behavior.</u>  Ocean Duke does not deny that it inadequately responded to discovery requests, failed to meet deadlines, and that it relied wholly on the legally deficient defense that the Shih Patent shielded liability.  Well before the last settlement conference held on the eve of trial, Plaintiff made it clear to the Court and to Ocean Duke that Plaintiff was willing to accept considerably less than $2 million with a license at 8 cents a pound going forward, as Magistrate Chang recommended, while Ocean Duke unreasonably offered only $350,000 with a one-year license at 2 cents per pound.

4.     <u>Size and Financial Condition.</u>  Ocean Duke admitted that its annual sales are approximately $200 million, and emphasized at trial that

---

[8] Each of these points are discussed in detail in Plaintiff's Reply Memorandum in Support of his Motion for Enhanced Damages, filed 3/05/08, ("***Enhanced Damages Reply***"), which Plaintiff incorporates by reference.

[9] It is very disingenuous of Ocean Duke to claim that it had a good faith belief that the Kowalski Patent was invalid as an excuse for its infringement.  Ocean Duke's patent counsel's opinion letter was silent as to invalidity, <u>see</u> Ex. "T" (Borrowman Letter), and Ocean Duke raised invalidity as a defense for the first time only a month before trial.

Plaintiff/HISI was financially weak while Ocean Duke's sales of the infringing product constituted only 3% of its business. See id. at 10-11.

5.   Closeness of Case.[10] The Court vacated its decision on the Markman motion (in a different case and on an issue never raised by Ocean Duke prior). See id. at 12. The jury found for Plaintiff on all issues submitted, i.e. infringement on all claims, willful infringement, invalidity, and awarded Plaintiff slightly more than the amount that he requested in reasonable royalty damages. See Ex. "Q" Special Verdict Form.

6.   Duration of Misconduct. Ocean Duke's infringement spanned over seven years, which constitutes a long duration under the relevant caselaw. See Enhanced Damages Reply at 14-15.

7.   Remedial Action. Ocean Duke increased its sales of the infringing product after receiving Plaintiff's notice of infringement and after the lawsuit was filed. Even after the jury rendered its verdict, Ocean Duke offered the infringing product for sale on its website. Ocean Duke's counsel claimed that Ocean Duke discontinued import of the product for the first time as a response to the threat of treble damages and entry of a permanent injunction. See id. at 15.

8.   Motivation for Harm. Ocean Duke's bald assertion that it had no motivation whatsoever to harm Plaintiff is belied by its advice to associates and customers to not license with Plaintiff and its refusal to pay even a penny in royalties while pocketing nearly $4 million in profit in the years 1999 to 2005 alone (not including 2006 and 2007). See id. at 16.

---

[10] Ocean Duke cites S.C. Johnson & Son, Inc. v. Carter-Wallace, 186 WL 494, 231 U.S.P.Q. 668 (S.D.N.Y. Sept. 10, 1986). One of the primary reasons for the district court's decision was that the defendant "made its relevant decision relating to the RISE products several years before Underwater Devices was decided and this Court believes that Underwater Devices did more than simply restate the earlier law on willfulness." Id. at *2. Conversely, here, the recent change in the willful infringement standard benefited Ocean Duke. Ocean Duke's relevant decision making should have been guided by the higher standard of care established by Underwater Devices, but the jury found that Ocean Duke did not even meet Seagate's lower standard of "reckless disregard."

9.    <u>Attempted Concealment.</u>  Plaintiff presented ample evidence that Ocean Duke did not cooperate in disclosure of its financial records, which constitutes concealment.  <u>See id.</u> at 17-18.

The interests of justice truly favor awarding Plaintiff his attorneys' fees in this case.  For years, Ocean Duke disregarded the merits of Plaintiff's detailed allegations of infringement and pocketed millions of dollars of profit by selling the infringing product while Plaintiff suffered financially and was forced to take on large debt at high interest rates.  <u>See</u> Plt.'s Mot. for Prejudgment Interest, filed 1/24/08.  Receiving no response to his notice of infringement or offer to license, Plaintiff had no choice but to initiate and fund expensive litigation to enforce his patent rights.  After unsuccessfully attempting to move this lawsuit to Ocean Duke's hometown in Los Angeles to make the litigation even more expensive and burdensome to Plaintiff, Ocean Duke offered nothing in mediation, nothing before the October 1, 2007 settlement conference, and then only $10,000 and $50,000 at the settlement conference.  <u>See</u> Yasunaga Decl. ¶ 2.  When the Court suggested additional attempts to settle, Ocean Duke insisted that further settlement talks take place only on the day before trial (forcing Plaintiff to expend significant resources to prepare for trial).  <u>See id.</u>  To Plaintiff's best knowledge, Ocean Duke's final offer prior to trial was $350,000 with a one-year license (and no promise to refrain from infringing after its expiration) at 2 cents a pound.  <u>See id.</u>

Ocean Duke's settlement position, which was manifestly unreasonable in

light of the very weak case it ultimately presented at trial (not bringing Shih or even Ragone to testify, not having any evidence to show why PT's process – as represented in the diagram with Shih's handwriting that Ocean Duke produced and was admitted as Trial Exhibit 193 – did not fall within the court's construction of the asserted claims, not having an expert on damages or even asking the jury to consider an alternative damage figure), forced Plaintiff to endure years of litigation and an expensive trial just to recover amounts that Ocean Duke should have paid him since 1999. Ocean Duke's refusal to offer more than $350,000 with a one-year license going forward at 2 cents per pound, especially when juxtaposed with the jury's $2.2 million verdict based on a royalty of 20 cents for tuna, swordfish and grouper and 4 cents for lesser species, the possibility of treble damages stemming from the jury's willfulness finding, and Plaintiff's willingness to settle the case for less than $2 million, can hardly be characterized as "good faith."

Under these circumstances, as well as the Read considerations, the burdens of litigation are fairly allocated to Ocean Duke. Plaintiff should be awarded his reasonable attorneys' fees.

**C.    A Reduction In The Fee Request, If Any, Should Reflect The Minimal Work Attributable To The Non-Patent Claims.**

As an initial matter, Ocean Duke's contention that Plaintiff's counsel "ran up a bill of more than $430,000" is not well-taken given that Ocean Duke's counsel expended upwards of $500,000 in attorneys' fees (not including costs or other expenses) while losing on all issues that went to the jury and obtaining a hollow victory on the trademark claims for which Plaintiff sought no damages and little attention was paid.  As justification for its own request for attorneys fees, Ocean Duke's counsel represented in his declaration:

> 14.    . . . .  I am also aware that, according to a 2003 report by the American Intellectual Property Law Association, the average cost of defending a patent case where claimed damages were between $1 million and $25 million (the damages range that covers the Kowalski/HIS case) **the average defense costs were approximately $2 million**.

Marks Decl., dated 1/24/08, at ¶ 14 (emphasis added).  The less than $400,000 in attorneys fees incurred by Plaintiff as of the filing of the Motion falls far short of the $2 million average[11] and is 20% less than the fees of Ocean Duke's counsel.

Plaintiff acknowledges that fees attributable to the non-patent claims, which had little to no overlap in the legal and factual issues involved in the patent claim, should not be included in the fee award.  However, Ocean Duke's contention that Plaintiff should receive only one-twelfth of the fees requested (**a 92% reduction**) based on its distorted win/loss tally, is outrageous and contrary to law.  See

---

[11] Assumedly, the cost of prosecuting a similar patent case would be comparable, if not higher, given that the Plaintiff has the burden of proof.

Cunningham v. County of Los Angeles, 879 F.2d 481, 485-86 (9th Cir. 1989) ("In

*Hensley*, the court expressed its agreement 'with the District Court's rejection of a

'mathematical approach comparing the total number of issues in the case with

those actually prevailed upon,' reasoning that 'such a ratio provides little aid in

determining what is a reasonable fee in light of all the relevant factors.'").

The detailed records submitted by Plaintiff in support of the Motion, see Ex.

"A" attached thereto, show that the time and fees of counsel attributable to the non-

patent claims were in fact minimal, only 10 hours for a total of $2,431.25.  See Ex.

"X".  The total amount of time and fees devoted by Plaintiff's counsel corresponds

to the 14.8 hours and $3,449.50 billed by Ocean Duke's counsel for work on the

non-patent claims (most of which was spend on Ocean Duke's fee motion and its

wrong assertion that a trademark claim can never go to a jury if damages are not

sought).  See Plt's Opp. to Def.'s Mot. for Attorneys Fees Pursuant to Lanham Act,

filed 3/5/08, at 13-14.  At most, Plaintiff's fee request should be reduced by

$2,431.25, the amount that accurately reflects the actual fees attributable to the

non-patent claims.  A reduction in this amount[12] would make for an award that

bears relation to the extent to which Plaintiff actually prevailed.  See Beckman

Instr., Inc., 892 F.2d at 1553-54 ("When infringement is found to be willful, the

---

[12] Ocean Duke did not dispute the reasonableness of any of Plaintiff's counsel's specific time entries on any other ground (i.e. hourly rate, inadequate description, etc.) nor did it challenge the amounts sought as "disbursements."

policy behind § 285 of discouraging infringement might justify imposing all of the patent owner's attorneys fees on the infringer, even if the infringer prevailed as to some of the claims in the suit. . . . . [T]he amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which the party actually prevailed.").

**D.** **Additional Fees And Disbursements Incurred By Plaintiff After The Filing Of Plaintiff's Motion For Attorneys' Fees Should Be Included In The Fee Award.**

The amount of fees requested in the Motion was based on amounts accrued through January 23, 2008. Since then, additional attorneys' fees accrued for work on post-trial motions and settlement. Plaintiff's additional attorneys' fees total $ 77,325.89. A detailed description of the tasks performed by Plaintiff's counsel are attached hereto as Exhibit "U." Additional disbursements in the amount of $ 629.29 have also been made for items such as trial transcripts, long distance phone calls, and photocopying. A detailed description of Plaintiff's additional disbursements is attached hereto as Exhibit "V".

To summarize, Plaintiff requests the following amounts:

| | |
|---|---|
| Attorneys' Fees (1/08/04 to 1/23/08) + GET | $ 396,888.72 |
| Add'l Attorneys' Fees (1/24/08 to 3/14/08) + GET | $ 77,325.89 |
| Non-Legal/Staff + GET | $ 11,188.48 |
| Disbursements | $ 18,097.71 |
| Add'l Disbursements (1/24/08 to 3/14/08) | $ 692.29 |
| **TOTAL** | **$504,193.09** |

## III.  CONCLUSION

For the foregoing reasons, the Motion should be granted.  Plaintiff

respectfully requests an award of attorneys' fees and disbursements in the amount

of $ 504,193.09.

DATED:  Honolulu, Hawaii, March 14, 2008.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
ALLISON MIZUO LEE
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI